skip to main content

Print

# CASE INFORMATION

## CV-18-904354 WELLS FARGO BANK N.A. vs. VIRGIL H. COLLINS, ET AL

### Docket Information

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 10/04/2022 | P1 | BR | BRIEF IN OPPOSITION FILED BY P1 WELLS FARGO BANK N.A. MICHAEL L WIERY 0068898 PLAINTIFF'S OPPOSITION TO DEFENDANT VIRGIL H. COLLINS' MOTION TO REMOVE TO FEDERAL COURT | 📄 |
| 09/27/2022 | D1 | OT | D1 VIRGIL H COLLINS DEFENDANT'S RESPONSE TO PLAINTIFF'S OPPOSITION TO EMERGENCY MOTION AND DEFENDANT'S MOTION TO REMOVE THIS CIVIL ACTION TO THE FEDERAL COURT OF THE NORTHERN DISTRICT OF OHIO PER 28 US CODE 1441 AND FOR INJUNCTIVE RELIEF.. PRO SE 9999999 | 📄 |
| 09/26/2022 | P1 | BR | BRIEF IN OPPOSITION FILED BY P1 WELLS FARGO BANK N.A. MICHAEL L WIERY 0068898 PLAINTIFF'S OPPOSITION TO DEFENDANT VIRGIL H. COLLINS' EMERGENCY MOTION TO EXTEND THE TIME TO RESPOND TO DECREE OF CONFIRMATION | 📄 |
| 09/26/2022 | D5 | SR | REGULAR MAIL SERVICE RECEIPT NO. 48476087 RETURNED 09/26/2022 FAILURE OF SERVICE ON DEFENDANT NEW CENTURY MORTGAGE CORPORATION NOT DELIVRBL AS ADDR NOTICE MAILED TO PLTFS ATTORNEY. $0.00 | |
| 09/26/2022 | D6 | SR | REGULAR MAIL SERVICE RECEIPT NO. 48476088 RETURNED 09/26/2022 FAILURE OF SERVICE ON DEFENDANT NEW CENTURY LIQUIDATING TRUST ATTEMPTED NOT KNOWN NOTICE MAILED TO PLTFS ATTORNEY. $0.00 | |
| 09/14/2022 | P1 | AF | AFFIDAVIT FILED BY P1 WELLS FARGO BANK N.A. ATTORNEY DOUGLAS A. HAESSIG 0079200 MILITARY AFFIDAVIT | 📄 |
| 09/14/2022 | D6 | SR | JUDGMENT ENTRY(48476088) SENT BY REGULAR MAIL SERVICE. TO: NEW CENTURY LIQUIDATING TRUST 575 ANTON BOULEVARD COSTA MESA, CA 92626 | |
| 09/14/2022 | D5 | SR | JUDGMENT ENTRY(48476087) SENT BY REGULAR MAIL SERVICE. TO: NEW CENTURY MORTGAGE CORPORATION 18400 VON KARMAN SUITE 1000 IRVINE, CA 92612 | |
| 09/14/2022 | D4 | SR | JUDGMENT ENTRY(48476086) SENT BY REGULAR MAIL SERVICE. TO: UNK. SPOUSE IF ANY OF RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |
| 09/14/2022 | D3 | SR | JUDGMENT ENTRY(48476085) SENT BY REGULAR MAIL SERVICE. TO: RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |
| 09/12/2022 | D1 | MO | D1 VIRGIL H COLLINS DEFENDANT VIRGIL H COLLINS EMERGENCY MOTION TO EXTEND THE TIME TO RESPOND TO THE DECREE OF CONFIRMATION OF SALE PURSUANT TO CIVIL RULE 60(A) AND 60 (B). PRO SE 9999999 | 📄 |
| 08/31/2022 | P1 | SR | JUDGMENT ENTRY(48476083) SENT BY EMAIL. TO: DOUGLAS A. HAESSIG OHEFILE@REIMERLAW.COM | |
| 08/31/2022 | P1 | SR | JUDGMENT ENTRY(48476082) SENT BY EMAIL. TO: MICHAEL L WIERY OHEFILE@REIMERLAW.COM | |
| 08/31/2022 | P1 | SR | JUDGMENT ENTRY(48476081) SENT BY EMAIL. TO: JOSHUA J. EPLING OHEFILE@REIMERLAW.COM | |
| 08/31/2022 | P1 | SR | JUDGMENT ENTRY(48476080) SENT BY EMAIL. TO: JOSHUA J. EPLING CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 08/31/2022 | D1 | SR | JUDGMENT ENTRY(48476079) SENT BY EMAIL. TO: JOANNE BROWN COURTFILE@YAHOO.COM | |
| 08/31/2022 | P1 | SR | JUDGMENT ENTRY(48476078) SENT BY EMAIL. TO: RONALD J CHERNEK OHEFILE@REIMERLAW.COM | |
| 08/31/2022 | P1 | SR | JUDGMENT ENTRY(48476077) SENT BY EMAIL. TO: EDWARD BOHNERT OHEFILE@REIMERLAW.COM | |
| 08/31/2022 | P1 | SR | JUDGMENT ENTRY(48476076) SENT BY EMAIL. TO: EDWARD BOHNERT CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 08/31/2022 | N/A | JE | DECREE OF CONFIRMATION (PARCEL(S) #66115060) THE SHERIFF HAVING SOLD | 📄 |

THE PROPERTY DESCRIBED IN THE ORDER OF SALE ISSUED TO HIM, THE COURT BEING SATISFIED OF THE LEGALITY OF THE SALE AND THAT THE NOTICE OF THE SALE WAS IN ALL RESPECTS IN CONFORMITY TO LAW, APPROVES AND CONFIRMS THE SAME AND DIRECTS THE SHERIFF TO EXECUTE AND DELIVER TO WELLS FARGO BANK N.A., AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC3 ASSET-BACKED PASS-THROUGH CERTIFICATES A GOOD AND SUFFICIENT DEED THEREOF. UPON FULL PAYMENT OF THE PURCHASE PRICE, THE PURCHASER WILL BE ENTITLED TO A WRIT OF POSSESSION AGAINST ALL PARTY DEFENDANTS. ALL UNDISPUTED STATE LIENS ARE PROTECTED AS PROVIDED IN R.C. SEC. 2329.192. PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER PRESCRIBED BY CIV.R. 5(B). THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE. NOTICE ISSUED

| Date | Party | Code | Description | |
|---|---|---|---|---|
| 01/24/2022 | P1 | NT | NOTICE FILED BY P1 WELLS FARGO BANK N.A. ATTORNEY JOSHUA J. EPLING 0079568 REQUEST FOR CONFIRMATION | 📄 |
| 06/04/2021 | N/A | GP | COPY OF JUDGMENT ENTRY THAT THE CONFIRMATION OF SALE OF 3/03/21 IS VACATED AND THE SHERIFF IS ORDERED TO MARK VOID ANY DEED CREATED IN RELATION TO THIS SALE SENT TO SHERIFF OF CUYAHOGA COUNTY, OHIO | |
| 06/04/2021 | N/A | JE | DEFENDANT VIRGIL H. COLLINS' EMERGENCY MOTION TO VACATE DECREE OF CONFIRMATION IS UNOPPOSED AND GRANTED. PENDING THE OUTCOME OF THE MOTION FOR EN BANC CONSIDERATION IN THE EIGHTH DISTRICT COURT OF APPEALS, CA-20-109555, THE COURT WILL RECONSIDER THE ISSUE OF CONFIRMATION OF SALE. THE CONFIRMATION OF SALE OF 3/03/2021 IS VACATED. THE SHERIFF IS ORDERED TO MARK VOID ANY DEED CREATED IN RELATION TO THIS SALE. NOTICE ISSUED | 📄 |
| 06/03/2021 | N/A | MG | DEFENDANT VIRGIL H. COLLINS' MOTION FOR LEAVE TO AMEND EMERGENCY MOTION TO VACATE DECREE OF CONFIRMATION OF SALE PURSUANT TO CIVIL RULE 60(A) AND 60(B) MOTION, FILED 05/28/2021, IS GRANTED. NOTICE ISSUED | 📄 |
| 05/29/2021 | N/A | JE | MR. COLLINS HAS REQUESTED A STAY OF FURTHER EXECUTION WHILE THE COURT CONSIDERS HIS MOTION FOR RELIEF FROM JUDGMENT. MR. COLLINS MAY FILE A SUPERSEDEAS BOND IN THE AMOUNT ESTABLISHED BY THE COURT OF APPEALS, $23,984.00, ON OR BEFORE 6-15-21. UPON THE FILING OF SAID BOND, ISSUANCE OF A DEED AND ISSUANCE OF A WRIT OF POSSESSION FOR THE PURCHASER WILL BE STAYED PENDING THE REMAINDER OF MR. COLLINS'S APPEALS. NOTICE ISSUED | 📄 |
| 05/28/2021 | D | MO | DEFENDANT VIRGIL H. COLLINS' MOTION FOR LEAVE TO AMEND EMERGENCY MOTION TO VACATE DECREE OF CONFIRMATION OF SALE PURSUANT TO CIVIL RULE 60(A) AND 60(B) MOTION 06/03/2021 - GRANTED | 📄 |
| 05/25/2021 | D5 | SR | REGULAR MAIL SERVICE RECEIPT NO. 44310303 RETURNED 05/25/2021 FAILURE OF SERVICE ON DEFENDANT NEW CENTURY MORTGAGE CORPORATION NOT DELIVRBL AS ADDR NOTICE MAILED TO PLTFS ATTORNEY. $0.00 | |
| 05/17/2021 | D6 | SR | REGULAR MAIL SERVICE RECEIPT NO. 44310304 RETURNED 05/14/2021 FAILURE OF SERVICE ON DEFENDANT NEW CENTURY LIQUIDATING TRUST NOT DELIVRBL AS ADDR NOTICE MAILED TO PLTFS ATTORNEY. $0.00 | |
| 05/06/2021 | D1 | MO | DEFENDANT VERGIL H. COLLINS' EMERGENCY MOTION TO VACATE DECREE OF CONFIRMATION OF SALE PURSUANT TO CIVIL RULE 60(A) & 60 (B) PRO SE (9999999) 06/04/2021 - GRANTED | 📄 |
| 05/03/2021 | D6 | SR | JUDGMENT ENTRY(44310304) SENT BY REGULAR MAIL SERVICE. TO: NEW CENTURY LIQUIDATING TRUST 575 ANTON BOULEVARD COSTA MESA, CA 92626 | |
| 05/03/2021 | D5 | SR | JUDGMENT ENTRY(44310303) SENT BY REGULAR MAIL SERVICE. TO: NEW CENTURY MORTGAGE CORPORATION 18400 VON KARMAN SUITE 1000 IRVINE, CA 92612 | |
| 05/03/2021 | D4 | SR | JUDGMENT ENTRY(44310302) SENT BY REGULAR MAIL SERVICE. TO: UNK. SPOUSE IF ANY OF RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |
| 05/03/2021 | D3 | SR | JUDGMENT ENTRY(44310301) SENT BY REGULAR MAIL SERVICE. TO: RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |
| 05/03/2021 | D2 | SR | JUDGMENT ENTRY(44310300) SENT BY REGULAR MAIL SERVICE. TO: UNK. SPOUSE IF ANY OF VIRGIL COLLINS 4932 NAN LINN DRIVE RICHMOND HEIGHTS, OH 44143 | |
| 05/03/2021 | N/A | GP | CERTIFIED COPY OF JUDGMENT ENTRY OF CONFIRMATION OF SALE SENT TO SHERIFF OF CUYAHOGA COUNTY, OHIO CIVIL DIVISION | |
| 05/03/2021 | P1 | SR | JUDGMENT ENTRY(44310299) SENT BY EMAIL. TO: DOUGLAS A. HAESSIG CUYAHOGA.NOTICES@REIMERLAW.COM | |

| | | |
|---|---|---|
| 05/03/2021 P1 | SR | JUDGMENT ENTRY(44310298) SENT BY EMAIL. TO: DOUGLAS A. HAESSIG CUYAHOGA.NOTICES@REIMERLAW.COM |
| 05/03/2021 P1 | SR | JUDGMENT ENTRY(44310297) SENT BY EMAIL. TO: MICHAEL L WIERY CUYAHOGA.NOTICES@REIMERLAW.COM |
| 05/03/2021 P1 | SR | JUDGMENT ENTRY(44310296) SENT BY EMAIL. TO: MICHAEL L WIERY MWIERY@REIMERLAW.COM |
| 05/03/2021 P1 | SR | JUDGMENT ENTRY(44310294) SENT BY EMAIL. TO: MICHAEL L WIERY CUYAHOGA.NOTICES@REIMERLAW.COM |
| 05/03/2021 D1 | SR | JUDGMENT ENTRY(44310293) SENT BY EMAIL. TO: JOANNE BROWN COURTFILE@YAHOO.COM |
| 05/03/2021 P1 | SR | JUDGMENT ENTRY(44310292) SENT BY EMAIL. TO: RONALD J CHERNEK CUYAHOGA.NOTICES@REIMERLAW.COM |
| 05/03/2021 P1 | SR | JUDGMENT ENTRY(44310291) SENT BY EMAIL. TO: RONALD J CHERNEK CUYAHOGA.NOTICES@REIMERLAW.COM |
| 05/03/2021 P1 | SR | JUDGMENT ENTRY(44310290) SENT BY EMAIL. TO: EDWARD BOHNERT CUYAHOGA.NOTICES@REIMERLAW.COM |
| 05/03/2021 P1 | SR | JUDGMENT ENTRY(44310289) SENT BY EMAIL. TO: EDWARD BOHNERT CUYAHOGA.NOTICES@REIMERLAW.COM |
| 05/03/2021 N/A | JE | DECREE OF CONFIRMATION (Parcel(s) #66115060) THE SHERIFF HAVING SOLD THE PROPERTY DESCRIBED IN THE ORDER OF SALE ISSUED TO HIM, THE COURT BEING SATISFIED OF THE LEGALITY OF THE SALE AND THAT THE NOTICE OF THE SALE WAS IN ALL RESPECTS IN CONFORMITY TO LAW, APPROVES AND CONFIRMS THE SAME AND DIRECTS THE SHERIFF TO EXECUTE AND DELIVER TO WELLS FARGO BANK N.A., AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC3 ASSET-BACKED PASS-THROUGH CERTIFICATES A GOOD AND SUFFICIENT DEED THEREOF. UPON FULL PAYMENT OF THE PURCHASE PRICE, THE PURCHASER WILL BE ENTITLED TO A WRIT OF POSSESSION AGAINST ALL PARTY DEFENDANTS. ALL UNDISPUTED STATE LIENS ARE PROTECTED AS PROVIDED IN R.C. SEC. 2329.192. PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS MUST SERVE, IN A MANNER PRESCRIBED BY CIV.R. 5(B), ALL PARTIES NOT IN DEFAULT FOR FAILURE TO APPEAR NOTICE OF THIS JUDGMENT AND ITS DATE OF ENTRY UPON THE JOURNAL AND MUST NOTE THE SERVICE ON THE APPEARANCE DOCKET. NOTICE ISSUED |
| 03/03/2021 N/A | JE | AS A RESULT OF THE ENTRY OF JUDGMENT BY THE 8TH DISTRICT COURT OF APPEALS DATED 02/25/2021, NO SUBSTANTIVE ACTION IS TO BE TAKEN IN THIS MATTER UNTIL THE TIME FOR FILING ANY REVIEWING MOTION TO THE 8TH DISTRICT AND/OR FOR FILING AN APPEAL TO THE OHIO SUPREME COURT HAS EXPIRED. APP. R. 25 & 26; LOC. APP. R. 26; S. CT. PRAC. R 7.01(A)(5) & (6). IF APPROPRIATE AND SUBSEQUENT TO THE APPELLATE PERIOD EXPIRING, THE CASE MAY BE RETURNED AS NECESSARY FOR FURTHER PROCEEDINGS TO THE DOCKET OF THE ORIGINATING COURT BY THE ADMINISTRATIVE JUDGE. UNLESS AS OTHERWISE AGREED UPON IN WRITING BY THE PARTIES, THE EARLIEST POSSIBLE DATE OF RE-INSTATEMENT IS 04/12/2021. THIS ENTRY TAKEN BY JUDGE BRENDAN J SHEEHAN. NOTICE ISSUED |
| 02/25/2021 N/A | JE | Affirmed. >Mary Eileen Kilbane, J., Larry A. Jones, Sr., P.J., and Lisa B. Forbes, J., concur. Notice issued. |
| 05/29/2020 P1 | CS | ABSTRACT TO STATE |
| 05/29/2020 P1 | CS | RECORDER'S FEE $2.00 |
| 05/29/2020 P1 | CT | CERTIFICATE OF TITLE $681.00 PAY TO REIMER, ARNOVITZ, CHERNEK & JEFFREY |
| 04/08/2020 D1 | CA | APPELLANT'S 9(A) RECORD TRANSMITTED TO THE COURT OF APPEALS CONSISTING OF THE CERTIFIED COPY OF THE DOCKET, JOURNAL ENTRIES AND THE ORIGINAL PAPERS ON CA NO. 109555. |
| 03/16/2020 D6 | SR | REGULAR MAIL SERVICE RECEIPT NO. 41283852 RETURNED 03/16/2020 FAILURE OF SERVICE ON DEFENDANT NEW CENTURY LIQUIDATING TRUST UNABLE TO FORWARD NOTICE MAILED TO PLTFS ATTORNEY. $0.00 |
| 03/10/2020 N/A | MG | MOTION TO STAY CONFIRMATION OF PROPERTY SALE PRO SE (9999999), FILED 03/05/2020, IS DENIED. NOTICE ISSUED |
| 03/10/2020 D1 | BR | DEFENDANT'S BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO CONFIRMATION STAY MOTION, & LEAVE TO AMEND MOTION TO STAY SALE PURSUANT TO CIVIL R. 54(B) & CIVIL R. 62(H). PRO SE (9999999) |
| 03/09/2020 P1 | BR | BRIEF IN OPPOSITION FILED BY P1 WELLS FARGO BANK N.A. PLAINTIFF'S OPPOSITION TO DEFENDANT VIRGIL H. COLLINS' MOTION TO STAY CONFIRMATION OF SALE |

| 03/06/2020 N/A | MG | MOTION FILED FOR D1 VIRGIL H COLLINS EXPEDITED MOTION TO STAY FORECLOSURE SALE DATE, FILED 02/24/2020, IS DENIED. NOTICE ISSUED | 📄 |
| 03/05/2020 D1 | MO | MOTION TO STAY CONFIRMATION OF PROPERTY SALE PRO SE (9999999) 03/10/2020 - DENIED | 📄 |
| 03/02/2020 N/A | OT | ORDER OF SALE RETURNED 03/02/2020, SOLD DATE 03/02/2020 | |
| 03/02/2020 P1 | BR | BRIEF IN OPPOSITION FILED BY P1 WELLS FARGO BANK N.A. PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S EXPEDITED MOTION TO STAY PROCEEDINGS | 📄 |
| 02/28/2020 P1 | SR | APPEAL, PRCPE, & DCKTNG STMNT(41283858) SENT BY REGULAR MAIL SERVICE. TO: EDWARD BOHNERT P.O. BOX 39696 30455 SOLON ROAD SOLON, OH 44139-0000 | |
| 02/28/2020 P1 | SR | APPEAL, PRCPE, & DCKTNG STMNT(41283857) SENT BY REGULAR MAIL SERVICE. TO: RONALD J CHERNEK P.O. BOX 39696 30455 SOLON ROAD SOLON, OH 44139-0000 | |
| 02/28/2020 P1 | SR | APPEAL, PRCPE, & DCKTNG STMNT(41283856) SENT BY REGULAR MAIL SERVICE. TO: MICHAEL L WIERY 30455 SOLON ROAD P.O. BOX 96606 SOLON, OH 44139-0000 | |
| 02/28/2020 P1 | SR | APPEAL, PRCPE, & DCKTNG STMNT(41283855) SENT BY REGULAR MAIL SERVICE. TO: DOUGLAS A. HAESSIG P.O.BOX 39696 30455 SOLON ROAD SOLON, OH 44139-0000 | |
| 02/28/2020 D3 | SR | APPEAL, PRCPE, & DCKTNG STMNT(41283854) SENT BY REGULAR MAIL SERVICE. TO: RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |
| 02/28/2020 D5 | SR | APPEAL, PRCPE, & DCKTNG STMNT(41283853) SENT BY REGULAR MAIL SERVICE. TO: NEW CENTURY MORTGAGE CORPORATION 18400 VON KARMAN SUITE 1000 IRVINE, CA 92612 | |
| 02/28/2020 D6 | SR | APPEAL, PRCPE, & DCKTNG STMNT(41283852) SENT BY REGULAR MAIL SERVICE. TO: NEW CENTURY LIQUIDATING TRUST 575 ANTON BOULEVARD COSTA MESA, CA 92626 | |
| 02/28/2020 D1 | CA | -------------------- NOTICE OF APPEAL -------------------- CA NO. 109555 NOTICE OF APPEAL FILED BY THE DEFT. APPELLANT W/A 9A PRAECIPE AND DOCKETING STATEMENT ON THE REGULAR CALENDAR. | |
| 02/28/2020 D1 | NT | NOTICE OF APPEAL FILED | 📄 |
| 02/25/2020 N/A | JE | MOTION FILED FOR P1 WELLS FARGO BANK N.A. PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE JUDGMENT AND LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM, FILED 02/17/2020, IS GRANTED. NOTICE ISSUED | 📄 |
| 02/25/2020 N/A | JE | MOTION FOR RELIEF FROM JUDGMENT $30 FILED BY JOANNE BROWN (0050039) COMBINED MOTION RELIEF FROM JUDGMENT AND LEAVE TO FILE, FILED 02/02/2020, IS DENIED. NOTICE ISSUED | 📄 |
| 02/24/2020 D1 | MO | MOTION FILED FOR D1 VIRGIL H COLLINS EXPEDITED MOTION TO STAY FORECLOSURE SALE DATE 03/06/2020 - DENIED | 📄 |
| 02/23/2020 D1 | BR | REPLY BRIEF FILED BY D1 VIRGIL H COLLINS TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE JUDGMENT | 📄 |
| 02/20/2020 N/A | MG | DEFENDANT'S MOTION FOR SETTLEMENT CONFERENCE IS UNOPPOSED AND GRANTED. A PHONE SETTLEMENT CONFERENCE IS SCHEDULED FOR FEBRUARY 27, 2020, AT 10:00 AM WITH MAGISTRATE BRIAN GOZELANCZYK. PLAINTIFF IS TO INITIATE THE CALL AND HAVE ALL RELEVANT PARTIES ON THE LINE PRIOR TO CALLING THE MAGISTRATE'S DEPARTMENT. ALL PARTIES ARE TO BE AVAILABLE BY PHONE. NOTICE ISSUED | 📄 |
| 02/20/2020 N/A | JE | DEFENDANT'S MOTION FOR OBJECTION TO MAGISTRAT'S [SIC] DEFAULT JUDGMENT DECISION AGAINST DEFENDANT IS DENIED. THE MAGISTRATE'S DECISION IN THIS CASE WAS ISSUED DECEMBER 11, 2019. UNDER CIV.R.53(D)(3)(B) ANY OBJECTION TO THE MAGISTRATE'S DECISION WERE REQUIRED TO BE FILED WITHIN FOURTEEN DAYS, OR DECEMBER 25, 2019. GIVEN THAT DECEMBER 25, 2019, WAS A COURT HOLIDAY, ANY OBJECTION WOULD HAVE BEEN TIMELY FILED BY DECEMBER 26, 2019. THE RELEVANT MOTION TO OBJECT WAS NOT FILED UNTIL JANUARY 28, 2020. THUS, THE OBJECTION IS UNTIMELY AND THE REQUEST TO FILE THE SAME IS DENIED. NOTICE ISSUED | 📄 |
| 02/17/2020 P1 | MO | MOTION FILED FOR P1 WELLS FARGO BANK N.A. PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE JUDGMENT AND LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM 02/25/2020 - GRANTED | 📄 |
| 02/10/2020 P1 | NT | NOTICE FILED BY P1 WELLS FARGO BANK N.A. NOTICE OF SALE | 📄 |
| 02/03/2020 N/A | JE | NOTICE OF SALE AND APPROVAL OF APPRAISERS' FEES. THE SALE IS SCHEDULED FOR 03/02/2020 AT 9:00 A.M. AT THE CUYAHOGA COUNTY JUSTICE CENTER AUDITORIUM, 1215 WEST 3RD STREET, CLEVELAND, OHIO 44113. IF NOT SOLD ON 03/02/2020 IT WILL BE RE-OFFERED ON 03/16/2020 PURSUANT TO LOCAL RULE 27 IT | 📄 |

| | | | |
|---|---|---|---|
| | | IS HEREBY ORDERED THAT EACH APPRAISER NAMED BE COMPENSATED BY THE CLERK OF COURTS, FROM THE FUNDS ON DEPOSIT AS FOLLOWS: BRENT T. BAILEY, APPRAISAL COST: $51.67 REGULAR FEE AND MILEAGE. MARK BUTLER, APPRAISAL COST: $50 REGULAR FEE. JOHN KOZ, APPRAISAL COST: $50 REGULAR FEE. FEES TO BE TAXED AS COSTS IN CASE NO. CV-18-904354 DATED THIS 28th DAY OF JANUARY, 2020 NOTICE ISSUE NOTICE ISSUED | |
| 02/02/2020 D1 | MO | MOTION FOR RELIEF FROM JUDGMENT $30 FILED BY JOANNE BROWN (0050039) COMBINED MOTION RELIEF FROM JUDGMENT AND LEAVE TO FILE 02/25/2020 - DENIED | 📄 |
| 02/02/2020 D1 | SF | DEPOSIT AMOUNT PAID JOANNE BROWN | |
| 01/30/2020 N/A | OT | OOS LAND APPRAISAL FILED | 📄 |
| 01/28/2020 D1 | MO | D1 VIRGIL H COLLINS MOTION FOR OBJECTION TO MAGISTRATE'S DEFAULT JUDGMENT DECISION AGAINST DEFENDANT FILED 02/20/2020 - DENIED | 📄 |
| 01/17/2020 D6 | SR | REGULAR MAIL SERVICE RECEIPT NO. 40766983 RETURNED 01/17/2020 FAILURE OF SERVICE ON DEFENDANT NEW CENTURY LIQUIDATING TRUST INSUFFICIENT ADDRESS NOTICE MAILED TO PLTFS ATTORNEY. $0.00 | |
| 01/17/2020 N/A | OS | ORDER OF SALE ISSUED TO SHERIFF TO APPRAISE | |
| 01/16/2020 P1 | SF | DEPOSIT AMOUNT PAID EDWARD BOHNERT | |
| 01/16/2020 P1 | OS | PRAECIPE FOR ORDER OF SALE $600 ORDER OF SALE | 📄 |
| 01/14/2020 D1 | MO | MOTION FILED FOR D1 VIRGIL H COLLINS MOTION FOR SETTLEMENT CONFERENCE 02/20/2020 - GRANTED | 📄 |
| 01/09/2020 D6 | SR | JUDGMENT ENTRY(40766983) SENT BY REGULAR MAIL SERVICE. TO: NEW CENTURY LIQUIDATING TRUST 575 ANTON BOULEVARD COSTA MESA, CA 92626 | |
| 01/09/2020 D4 | SR | JUDGMENT ENTRY(40766981) SENT BY REGULAR MAIL SERVICE. TO: UNK. SPOUSE IF ANY OF RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |
| 01/09/2020 D3 | SR | JUDGMENT ENTRY(40766980) SENT BY REGULAR MAIL SERVICE. TO: RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |
| 01/09/2020 D5 | SR | JUDGMENT ENTRY(40766982) SENT BY REGULAR MAIL SERVICE. TO: NEW CENTURY MORTGAGE CORPORATION 18400 VON KARMAN SUITE 1000 IRVINE, CA 92612 | |
| 01/09/2020 D2 | SR | JUDGMENT ENTRY(40766979) SENT BY REGULAR MAIL SERVICE. TO: UNK. SPOUSE IF ANY OF VIRGIL COLLINS 4932 NAN LINN DRIVE RICHMOND HEIGHTS, OH 44143 | |
| 01/07/2020 P1 | SR | JUDGMENT ENTRY(40766978) SENT BY EMAIL. TO: DOUGLAS A. HAESSIG CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 01/07/2020 P1 | SR | JUDGMENT ENTRY(40766977) SENT BY EMAIL. TO: DOUGLAS A. HAESSIG CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 01/07/2020 D1 | SR | JUDGMENT ENTRY(40766976) SENT BY EMAIL. TO: JOANNE BROWN COURTFILE@YAHOO.COM | |
| 01/07/2020 P1 | SR | JUDGMENT ENTRY(40766975) SENT BY EMAIL. TO: RONALD J CHERNEK CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 01/07/2020 P1 | SR | JUDGMENT ENTRY(40766974) SENT BY EMAIL. TO: RONALD J CHERNEK CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 01/07/2020 P1 | SR | JUDGMENT ENTRY(40766973) SENT BY EMAIL. TO: EDWARD BOHNERT CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 01/07/2020 P1 | SR | JUDGMENT ENTRY(40766972) SENT BY EMAIL. TO: EDWARD BOHNERT CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 01/07/2020 N/A | JE | ORDER ADOPTING MAGISTRATE'S DECISION AND DECREE OF FORECLOSURE. ORDER SEE JOURNAL. PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER PRESCRIBED BY CIV.R. 5(B). THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE. NOTICE ISSUED | 📄 |
| 12/30/2019 N/A | MG | MOTION FILED FOR D1 VIRGIL H COLLINS MOTION FOR STAY TO SEEK RESOLUTION WITH PLAINTIFF, FILED 12/20/2019, IS DENIED. NOTICE ISSUED | 📄 |
| 12/23/2019 P1 | OB | OBJECTION FILED BY P1 WELLS FARGO BANK N.A. OBJECTION TO MOTION FOR STAY | 📄 |
| 12/20/2019 D1 | MO | MOTION FILED FOR D1 VIRGIL H COLLINS MOTION FOR STAY TO SEEK RESOLUTION WITH PLAINTIFF 12/30/2019 - DENIED | 📄 |
| 12/12/2019 D4 | SR | MAGISTRATE'S DECISION(40571412) SENT BY REGULAR MAIL SERVICE. TO: UNK. SPOUSE IF ANY OF RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |

Civil Case Docket Page

| 12/12/2019 D3 | SR | MAGISTRATE'S DECISION(40571411) SENT BY REGULAR MAIL SERVICE. TO: RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 | |
|---|---|---|---|
| 12/12/2019 D2 | SR | MAGISTRATE'S DECISION(40571410) SENT BY REGULAR MAIL SERVICE. TO: UNK. SPOUSE IF ANY OF VIRGIL COLLINS 4932 NAN LINN DRIVE RICHMOND HEIGHTS, OH 44143 | |
| 12/11/2019 P1 | SR | MAGISTRATE'S DECISION(40571409) SENT BY EMAIL. TO: DOUGLAS A. HAESSIG CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 12/11/2019 P1 | SR | MAGISTRATE'S DECISION(40571408) SENT BY EMAIL. TO: DOUGLAS A. HAESSIG CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 12/11/2019 P1 | SR | MAGISTRATE'S DECISION(40571407) SENT BY EMAIL. TO: RONALD J CHERNEK CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 12/11/2019 P1 | SR | MAGISTRATE'S DECISION(40571406) SENT BY EMAIL. TO: RONALD J CHERNEK CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 12/11/2019 P1 | SR | MAGISTRATE'S DECISION(40571405) SENT BY EMAIL. TO: EDWARD BOHNERT CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 12/11/2019 P1 | SR | MAGISTRATE'S DECISION(40571404) SENT BY EMAIL. TO: EDWARD BOHNERT CUYAHOGA.NOTICES@REIMERLAW.COM | |
| 12/11/2019 D1 | SR | MAGISTRATE'S DECISION(40571403) SENT BY EMAIL. TO: JOANNE BROWN COURTFILE@YAHOO.COM | |
| 12/11/2019 N/A | OT | MAGISTRATE'S DECISION WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW FILED AND SENT TO ALL PARTIES ON SERVICE PAGE. | 📄 |
| 11/26/2019 P1 | AF | AFFIDAVIT FILED BY P1 WELLS FARGO BANK N.A. AFFIDAVIT AS TO MILITARY STATUS | 📄 |
| 11/25/2019 N/A | MG | A REVIEW OF THE DOCKET AND THE VARIOUS FILINGS IN THIS MATTER REVEALS THAT PLAINTIFF HAS FAILED TO DEMONSTRATE THAT DEFENDANT VIRGIL H. COLLINS IS NOT ENTITLED TO THE PROTECTIONS OF 50 U.S.C. 3931, THE SERVICEMEMBERS CIVIL RELIEF ACT. PLAINTIFF IS GRANTED LEAVE UNTIL AND INCLUDING DECEMBER 31, 2019, TO PROVIDE EVIDENCE AS TO WHETHER OR NOT DEFENDANT VIRGIL H. COLLINS IS ENTITLED TO PROTECTION UNDER 50 USC 3931. NOTICE ISSUED | 📄 |
| 11/25/2019 N/A | MG | REASONABLE MINDS COULD CONCLUDE FROM THE EVIDENCE SUBMITTED THAT THE PLAINTIFF IS ENTITLED TO JUDGMENT AND A DECREE OF FORECLOSURE. ACCORDINGLY, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED. A SEPERATE MAGISTRATE'S DECISION TO FOLLOW. NOTICE ISSUED | 📄 |
| 08/22/2019 P1 | OT | GENERAL PLEADING FILED BY P1 WELLS FARGO BANK N.A. SUPPLEMENTAL FINAL JUDICIAL REPORT | |
| 08/15/2019 N/A | JE | DEFENDANT'S MOTION FOR EXTENSION OF TIME TO FILE AN AMENDED ANSWER AND COUNTERCLAIM IS GRANTED. THE AMENDED ANSWER AND COUNTERCLAIM MAY BE FILED ON OR BEFORE SEPTEMBER 13, 2019. NO FURTHER EXTENSIONS. NOTICE ISSUED | 📄 |
| 06/21/2019 D1 | MO | MOTION FOR EXTENSION OF TIME 08/15/2019 - GRANTED | 📄 |
| 05/24/2019 N/A | MG | CASE CALLED FOR SETTLEMENT CONFERENCE. DEFENDANT'S ORAL MOTION FOR LEAVE TO FILE AN AMENDED ANSWER IS GRANTED OVER PLAINTIFF'S OBJECTION. DEFENDANT MAY FILE THE AMENDED ANSWER ON OR BEFORE JUNE 21, 2019. NOTICE ISSUED | 📄 |
| 03/26/2019 N/A | MG | SETTLEMENT CONFERENCE SET FOR 05/24/2019 AT 10:30 AM. NOTICE ISSUED | 📄 |
| 03/26/2019 N/A | MG | CASE CALLED FOR HEARING ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT. THE MOTION FOR DEFAULT JUDGMENT IS GRANTED AS TO THE NON-ANSWERING PARTIES. A RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS HELD IN ABEYANCE. DEFENDANT IS NOT REQUIRED TO RESPOND TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNTIL AFTER A SETTLEMENT CONFERENCE HAS BEEN CONDUCTED. THE SETTLEMENT CONFERENCE IS SET FOR MAY 24, 2019, AT 10:30A.M., AT 310 WEST LAKESIDE, SIXTH FLOOR, CLEVELAND, OHIO. NOTICE ISSUED | 📄 |
| 03/05/2019 P1 | NT | NOTICE FILED BY P1 WELLS FARGO BANK N.A. NOTICE OF HEARING | 📄 |
| 02/28/2019 N/A | MG | MOTION FOR DEFAULT JUDGMENT IS SET FOR HEARING ON 03/20/2019 AT 09:30AM BEFORE MAGISTRATE KEVIN HIPPLEY, 310 W. LAKESIDE, 6TH FL. LOCATED ACROSS THE STREET FROM THE JUSTICE CENTER ON THE NORTH WEST CORNER OF LAKESIDE AVENUE AND WEST 3RD STREET. THE MOVING PARTY MUST SEND NOTICE OF THE DATE AND TIME OF THIS HEARING AND A COPY OF THE MOTION TO ALL PARTIES, INCLUDING THOSE WHO HAVE YET TO ENTER AN APPEARANCE, AT | 📄 |

| | | LEAST 14 DAYS IN ADVANCE OF THE HEARING. FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CLAIMS OR AN ENTRY OF JUDGMENT. NOTICE ISSUED | |
|---|---|---|---|
| 02/19/2019 D1 | MO | MOTION FOR EXTENSION OF TIME MOTION FOR MEDIATION AND EXTENSION OF TIME TO RESPONSE TO MSJ 03/26/2019 - GRANTED | 📄 |
| 01/15/2019 P1 | AF | AFFIDAVIT FILED BY P1 WELLS FARGO BANK N.A. AFFIDAVIT AS TO MILITARY STATUS | 📄 |
| 01/15/2019 P1 | AF | AFFIDAVIT FILED BY P1 WELLS FARGO BANK N.A. ATTORNEY AFFIDAVIT | 📄 |
| 01/15/2019 P1 | NT | NOTICE FILED BY P1 WELLS FARGO BANK N.A. NOTICE OF FILING POWER OF ATTORNEY | 📄 |
| 01/15/2019 P1 | OT | GENERAL PLEADING FILED BY P1 WELLS FARGO BANK N.A. AMENDED PRELIMINARY JUDICIAL REPORT | |
| 01/15/2019 P1 | OT | GENERAL PLEADING FILED BY P1 WELLS FARGO BANK N.A. FINAL JUDICIAL REPORT | |
| 01/15/2019 P1 | MO | MOTION FOR DEFAULT JUDGMENT MOTION FOR DEFAULT JUDGMENT 03/26/2019 - GRANTED | 📄 |
| 01/15/2019 P1 | MO | MOTION FOR SUMMARY JUDGMENT FILED MOTION FOR SUMMARY JUDGMENT INCLUDING AFFIDAVIT IN SUPPORT 07/30/2019 - HELD IN ABEYANCE | 📄 |
| 12/24/2018 P1 | CS | LEGAL NEWS ABSTRACT | |
| 12/24/2018 P1 | CS | PROOF OF PUBLICATION FILED ($544.50) - LEGAL NEWS FEE $250.00 | 📄 |
| 12/24/2018 P1 | PP | PRE-PAID PORTION OF SERVICE PUBLICATION FEE $294.50 | |
| 12/22/2018 N/A | JE | THE MOTION OF DEFENDANT VIRGIL COLLINS FOR LEAVE TO FILE ANSWER INSTANTER IS GRANTED. DEFENDANT'S ANSWER IS DEEMED FILED AS OF THE DATE OF THIS ORDER. NOTICE ISSUED | 📄 |
| 11/20/2018 P1 | SF | DEPOSIT AMOUNT PAID EDWARD BOHNERT | |
| 11/20/2018 P1 | AF | AFFIDAVIT SERVICE BY PUBLICATION, FORECLOSURE $250 AFFIDAVIT FOR SERVICE BY PUBLICATION | 📄 |
| 11/07/2018 D1 | MO | MOTION FOR LEAVE TO FILE ANSWER INSTANTER LEAVE TO FILE ANSWER INSTANTER 12/22/2018 - GRANTED | 📄 |
| 11/01/2018 N/A | SR | CERTIFIED MAIL RECEIPT NO. 36831291 RETURNED 10/31/2018 FAILURE OF SERVICE ON DEFENDANT NEW CENTURY LIQUIDATING TRUST - ATTEMPTED NOT KNOWN NOTICE MAILED TO PLAINTIFF(S) ATTORNEY | |
| 10/30/2018 N/A | SR | CERTIFIED MAIL RECEIPT NO. 36831290 RETURNED 10/29/2018 FAILURE OF SERVICE ON DEFENDANT NEW CENTURY MORTGAGE CORPORATION - UNABLE TO FORWARD NOTICE MAILED TO PLAINTIFF(S) ATTORNEY | |
| 10/24/2018 N/A | SR | SUMMONS E-FILE COPY COST | |
| 10/24/2018 N/A | SR | SUMMONS E-FILE COPY COST | |
| 10/24/2018 D6 | CS | WRIT FEE | |
| 10/24/2018 D6 | SR | SUMS COMPLAINT(36831291) SENT BY CERTIFIED MAIL. TO: NEW CENTURY LIQUIDATING TRUST 575 ANTON BOULEVARD COSTA MESA, CA 92626 | 📄 |
| 10/24/2018 D5 | CS | WRIT FEE | |
| 10/24/2018 D5 | SR | SUMS COMPLAINT(36831290) SENT BY CERTIFIED MAIL. TO: NEW CENTURY MORTGAGE CORPORATION 18400 VON KARMAN SUITE 1000 IRVINE, CA 92612 | 📄 |
| 10/18/2018 P1 | SR | REQUEST FOR SERVICE FILED REQUEST FOR SERVICE | 📄 |
| 10/11/2018 N/A | SR | FX RECEIPT NO. 36570099 RETURNED 10/2/2018 FAILURE OF SERVICE ON PARTY NEW CENTURY LIQUIDATING TRUST - BAD ADDRESS AFTER 8 DAYS | |
| 10/10/2018 N/A | SR | FX RECEIPT NO. 36570097 RETURNED 10/1/2018 FAILURE OF SERVICE ON PARTY UNK. SPOUSE IF ANY OF RUTH J COLLINS - UNCLAIMED AFTER 8 DAYS | |
| 10/07/2018 N/A | SR | FX RECEIPT NO. 36570098 RETURNED 9/28/2018 FAILURE OF SERVICE ON PARTY NEW CENTURY MORTGAGE CORPORATION - BAD ADDRESS AFTER 8 DAYS | |
| 10/03/2018 N/A | SR | FEDEX RECEIPT NO. 36570096 DELIVERED BY FEDEX 10/01/2018 UNK. SPOUSE IF ANY OF RUTH J COLLINS PROCESSED BY COC 10/03/2018 | |
| 10/03/2018 N/A | SR | FEDEX RECEIPT NO. 36570095 DELIVERED BY FEDEX 10/01/2018 COLLINS/RUTH/J PROCESSED BY COC 10/03/2018. | |
| 10/03/2018 N/A | SR | FEDEX RECEIPT NO. 36570094 DELIVERED BY FEDEX 10/02/2018 UNK. SPOUSE IF ANY OF VIRGIL COLLINS PROCESSED BY COC 10/03/2018. | |
| 10/03/2018 N/A | SR | FEDEX RECEIPT NO. 36570093 DELIVERED BY FEDEX 10/02/2018 COLLINS/VIRGIL/H PROCESSED BY COC 10/03/2018. | |
| 09/26/2018 D6 | CS | WRIT FEE | |
| 09/26/2018 N/A | SR | SUMMONS E-FILE COPY COST | |
| 09/26/2018 N/A | SR | SUMMONS E-FILE COPY COST | |

| | | |
|---|---|---|
| 09/26/2018 N/A | SR | SUMMONS E-FILE COPY COST |
| 09/26/2018 N/A | SR | SUMMONS E-FILE COPY COST |
| 09/26/2018 N/A | SR | SUMMONS E-FILE COPY COST |
| 09/26/2018 N/A | SR | SUMMONS E-FILE COPY COST |
| 09/26/2018 D6 | SR | SUMS COMPLAINT(36570099) SENT BY FEDERAL EXPRESS. TO: NEW CENTURY LIQUIDATING TRUST 575 ANTON BOULEVARD COSTA MESA, CA 92626 |
| 09/26/2018 D5 | CS | WRIT FEE |
| 09/26/2018 D5 | SR | SUMS COMPLAINT(36570098) SENT BY FEDERAL EXPRESS. TO: NEW CENTURY MORTGAGE CORPORATION 18400 VON KARMAN SUITE 1000 IRVINE, CA 92612 |
| 09/26/2018 D4 | CS | WRIT FEE |
| 09/26/2018 D4 | SR | SUMS COMPLAINT(36570097) SENT BY FEDERAL EXPRESS. TO: UNK. SPOUSE IF ANY OF RUTH J COLLINS 35253 MAPLE GROVE ROAD APARTMENT 208 WILLOUGHBY, OH 44094-0000 |
| 09/26/2018 D4 | CS | WRIT FEE |
| 09/26/2018 D4 | SR | SUMS COMPLAINT(36570096) SENT BY FEDERAL EXPRESS. TO: UNK. SPOUSE IF ANY OF RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 |
| 09/26/2018 D3 | CS | WRIT FEE |
| 09/26/2018 D3 | SR | SUMS COMPLAINT(36570095) SENT BY FEDERAL EXPRESS. TO: RUTH J COLLINS 3939 IOWA STREET APT 222 SAN DIEGO, CA 92104 |
| 09/26/2018 D2 | CS | WRIT FEE |
| 09/26/2018 N/A | SR | SUMMONS E-FILE COPY COST |
| 09/26/2018 D2 | SR | SUMS COMPLAINT(36570094) SENT BY FEDERAL EXPRESS. TO: UNK. SPOUSE IF ANY OF VIRGIL COLLINS 4932 NAN LINN DRIVE RICHMOND HEIGHTS, OH 44143 |
| 09/26/2018 D1 | CS | WRIT FEE |
| 09/26/2018 D1 | SR | SUMS COMPLAINT(36570093) SENT BY FEDERAL EXPRESS. TO: VIRGIL H COLLINS 4932 NAN LINN DRIVE RICHMOND HEIGHTS, OH 44143 |
| 09/26/2018 D1 | SR | FORECLOSURE MEDIATION. NOTICE GENERATED FOR 36570092 POST CARD VIRGIL H COLLINS 4932 NAN LINN DRIVE RICHMOND HEIGHTS, OH 44143 |
| 09/26/2018 N/A | JE | ALL NON-MILITARY CLIENT AFFIDAVITS FILED IN RESIDENTIAL MORTGAGE FORECLOSURE CASES MUST INDICATE THAT THE AFFIANT HAS ACTUAL PERSONAL KNOWLEDGE OF THE FILE AND LOAN HISTORY IN QUESTION AND HAS PERSONALLY REVIEWED THE DOCUMENTS, RECORDS, OR OTHER DATA RELIED UPON TO MAKE THE STATEMENTS CONTAINED IN THE AFFIDAVIT. ALL CLIENT EXECUTED MILITARY AFFIDAVITS FILED IN RESIDENTIAL MORTGAGE FORECLOSURE CASES MUST INDICATE THAT THE AFFIANT HAS ACTUAL PERSONAL KNOWLEDGE OF THE APPROPRIATE DEFENDANTS' MILITARY STATUS. FAILURE TO PROVIDE APPROPRIATE AFFIDAVITS MAY RESULT IN MANDATORY PERSONAL ATTENDANCE OF AN AFFIANT FOR A HEARING, THE IMPOSITION OF SANCTIONS AND PENALTIES FOR PERJURY OR CONTEMPT, AND DISMISSAL OF THE CASE. BEFORE JUDGMENT IS ENTERED ON ANY CLAIM FOR FORECLOSURE AND/OR MONEY JUDGMENT IN A RESIDENTIAL MORTGAGE FORECLOSURE CASE, COUNSEL FOR PLAINTIFF AND ANY OTHER PARTY THAT ASSERTS A CLAIM FOR FORECLOSURE OR MONEY JUDGMENT MUST FILE AN AFFIDAVIT OR AFFIDAVITS. IN REGARD TO NON-MILITARY CLIENT AFFIDAVITS, THIS AFFIDAVIT MUST: 1) IDENTIFY THE COUNSEL OF RECORD AND HIS OR HER LAW FIRM. 2) PROVIDE THAT THE COUNSEL OF RECORD HAS REVIEWED THE FILE. 3) PROVIDE THAT THE COUNSEL OF RECORD HAS COMMUNICATED WITH A REPRESENTATIVE OF THE PARTY SEEKING FORECLOSURE AND/OR MONEY JUDGMENT OR ITS SERVICER AND THAT THIS REPRESENTATIVE: HAS AFFIRMED THAT HE OR SHE HAS PERSONALLY REVIEWED THE DOCUMENTS, RECORDS, OR OTHER DATA RELATED TO THE CASE; HAS REVIEWED THE PLEADINGS AND OTHER COURT FILINGS IN THE CASE; AND HAS CONFIRMED BOTH THE FACTUAL ACCURACY OF THE PLEADINGS AND COURT FILINGS AND THE ACCURACY OF THE NOTARIZATIONS CONTAINED THEREIN. 4) PROVIDE THE FULL NAME OF THE REPRESENTATIVE DESCRIBED IN ITEM 3 AND THE DATE OR DATES OF THE COMMUNICATION. 5) CERTIFY THAT, TO THE BEST OF THE COUNSEL OF RECORD'S KNOWLEDGE, THE PLEADINGS AND OTHER COURT FILINGS IN SUPPORT OF THE CLAIMS FOR FORECLOSURE ARE COMPLETE AND ACCURATE IN ALL RELEVANT RESPECTS. 6) ACKNOWLEDGE THAT COUNSEL OF RECORD HAS A CONTINUING OBLIGATION TO AMEND AND SUPPLEMENT THE AFFIDAVIT IN LIGHT OF NEWLY DISCOVERED FACTS FOLLOWING ITS FILING. 7) BE SIGNED AND DATED BY COUNSEL OF RECORD. IN REGARD TO CLIENT EXECUTED MILITARY AFFIDAVITS, THIS AFFIDAVIT MUST: 1) IDENTIFY THE COUNSEL OF RECORD AND HIS OR HER LAW FIRM. 2) PROVIDE THAT THE COUNSEL OF RECORD |

HAS COMMUNICATED WITH THE AFFIANT OF THE MILITARY AFFIDAVIT AND THAT THE AFFIANT HAS AFFIRMED THAT HE OR SHE HAS PERSONALLY REVIEWED NECESSARY WEBSITE AND/OR DATABASE TO DETERMINE THE MILITARY STATUS OF THE APPROPRIATE DEFENDANTS. 3) PROVIDE THE FULL NAME OF THE AFFIANT DESCRIBED IN ITEM 2 AND THE DATE OR DATES OF THE COMMUNICATION. 4) CERTIFY THAT, TO THE BEST OF THE COUNSEL OF RECORD'S KNOWLEDGE, THE INFORMATION CONTAINED IN THE MILITARY AFFIDAVIT IS ACCURATE IN ALL RELEVANT RESPECTS. 5) ACKNOWLEDGE THAT COUNSEL OF RECORD HAS A CONTINUING OBLIGATION TO AMEND AND SUPPLEMENT THE AFFIDAVIT IN LIGHT OF NEWLY DISCOVERED FACTS FOLLOWING ITS FILING. 6) BE SIGNED AND DATED BY COUNSEL OF RECORD. FAILURE TO SUBMIT AN APPROPRIATE AFFIDAVIT ON OR BEFORE THE DATE OF TRIAL, THE DATE THAT A MOTION FOR SUMMARY JUDGMENT IS RIPE FOR RULING, OR THE DATE OF DEFAULT HEARING, WHICHEVER IS APPLICABLE, WILL RESULT IN DISMISSAL OF THE CASE AND MAY RESULT IN FURTHER SANCTIONS. STANDARDIZED AFFIDAVIT FORMS ARE POSTED ON THE CUYAHOGA COUNTY COURT OF COMMONPLEAS WEBSITE HTTP://CP.CUYAHOGACOUNTY.US/INTERNET/COURTDOCS/MAGISTRATES/AFFIDAVIT (REV5).PDF. ALL AFFIDAVITS SUBMITTED PURSUANT TO THIS ORDER MUST BE IN THE FORMAT OF THESE STANDARDIZED AFFIDAVIT FORMS. IN LIEU OF THIS AFFIDAVIT: 1) IN CASES WHERE CLIENT AFFIDAVITS HAVE BEEN FILED, THE AFFIANT OR AFFIANTS MUST APPEAR AT THE HEARING OF THE MATTER AND TESTIFY REGARDING THOSE AFFIDAVITS. THE REPRESENTATIVE MUST APPEAR IN PERSON AND TELEPHONIC APPEARANCE WILL NOT BE PERMITTED. IF MULTIPLE CLIENT AFFIDAVITS ARE FILED IN THE CASE AND ARE EXECUTED BY MORE THAN ONE AFFIANT, EACH AFFIANT MUST APPEAR AT THE HEARING OF THE MATTER. 2) IN CASES WHERE NO CLIENT AFFIDAVITS HAVE BEEN FILED, AN OFFICER OF THE PARTY SEEKING FORECLOSURE OR AN OFFICER OF ITS SERVICER MUST APPEAR AT THE HEARING OF THE MATTER AND TESTIFY IN SUPPORT OF THE ALLEGATIONS OF THE COMPLAINT AND CONTENTS OF OTHER DOCUMENTS OR COURT FILINGS. THE OFFICER MUST APPEAR IN PERSON AND TELEPHONIC APPEARANCE WILL NOT BE PERMITTED. 3) IN CASES WHERE NO HEARING IS SCHEDULED BEFORE THE ENTRY OF JUDGMENT (SUCH AS SOME SUMMARY JUDGMENT CASES), THE OFFICER OF THE PARTY SEEKING FORECLOSURE MUST, CONTEMPORANEOUSLY WITH THE MOTION FOR SUMMARY JUDGMENT, MOVE TO SCHEDULE A HEARING AT WHICH THE AFFIANT MAY APPEAR. 4) WITH THE EXCEPTION OF AFFIANTS OF MILITARY AFFIDAVITS, THE AFFIANT OR AN OFFICER OF THE PARTY SEEKING FORECLOSURE OR OFFICER OF ITS SERVICER WHO APPEARS IN COURT IN LIEU OF THE FILING OF A FORECLOSURE COUNSEL AFFIDAVIT MUST APPEAR WITH THE ORIGINAL PROMISSORY NOTE, INCLUDING ALL ENDORSEMENTS AND ALLONGES AND A CURRENT PAYMENT HISTORY FOR THE MORTGAGE LOAN AT ISSUE. THE AFFIANT OR AN OFFICER OF THE PARTY SEEKING FORECLOSURE OR OFFICER OF ITS SERVICER MUST BE PREPARED TO TESTIFY THAT HE OR SHE HAS PERSONALLY REVIEWED THE DOCUMENTS, RECORDS OR OTHER DATA RELATED TO THE CASE, HAS REVIEWED THE PLEADINGS AND OTHER COURT FILINGS IN THE CASE AND HAS CONFIRMED BOTH THE FACTUAL ACCURACY OF THE FILINGS AND THE ACCURACY OF THE NOTARIZATIONS CONTAINED THEREIN, IF ANY. THE AFFIANT OR AN OFFICER OF THE PARTY SEEKING FORECLOSURE OR OFFICER OF ITS SERVICER MUST BE PREPARED TO RESPOND TO THE QUESTIONING OF THE MAGISTRATE OR JUDGE PRESIDING OVER THE HEARING AND THE QUESTIONING OF ANY OTHER PARTY ATTENDING THE HEARING. 5) IF THE AFFIANT OR OFFICER OF THE PARTY SEEKING FORECLOSURE OR AN OFFICER OF ITS SERVICER HAS BEEN PREVIOUSLY DEPOSED AND HAS TESTIFIED UNDER OATH REGARDING THE ABOVE REQUIRED INFORMATION, THE FILING OF THE TRANSCRIPT OF THAT DEPOSITION WILL SATISFY THE REQUIREMENTS OF THIS POLICY. FAILURE TO FILE AN ATTORNEY AFFIDAVIT OR DO ANY OF THE ALTERNATIVES TO FILING AN ATTORNEY AFFIDAVIT BEFORE THE CASE IS RIPE FOR THE ENTRY OF JUDGMENT WILL RESULT IN DISMISSAL OF THE CASE. NOTICE ISSUED

| | | |
|---|---|---|
| 09/26/2018 N/A | SF | MAGISTRATE KEVIN HIPPLEY ASSIGNED (MANUALLY) |
| 09/26/2018 N/A | JE | IT IS ORDERED BY THE COURT THAT THIS CAUSE BE REFERRED TO THE COURT MAGISTRATE TO TRY THE ISSUES OF LAW AND FACT ARISING THEREIN AND REPORT WITHOUT UNNECESSARY DELAY. A PARTY SEEKING A DEFAULT JUDGMENT MUST FILE A MOTION FOR DEFAULT JUDGMENT. ONCE A CASE IS SET FOR DEFAULT JUDGMENT, THE MOTION FOR DEFAULT JUDGMENT MAY BE WITHDRAWN ONLY BY SEPARATE MOTION WITH GOOD CAUSE SHOWN. NOTICE ISSUED |



| 09/25/2018 | N/A | SF | JUDGE STUART A FRIEDMAN ASSIGNED (RANDOM) | |
| 09/25/2018 | P1 | SF | SPECIAL PROJECTS FUND FEE | |
| 09/25/2018 | P1 | SF | LEGAL RESEARCH | |
| 09/25/2018 | P1 | SF | LEGAL NEWS | |
| 09/25/2018 | P1 | SF | LEGAL AID | |
| 09/25/2018 | P1 | SF | COMPUTER FEE | |
| 09/25/2018 | P1 | SF | CLERK'S FEE | |
| 09/25/2018 | P1 | SF | DEPOSIT AMOUNT PAID DOUGLAS A. HAESSIG | |
| 09/25/2018 | P1 | SF | DEPOSIT AMOUNT PAID DOUGLAS A. HAESSIG | |
| 09/25/2018 | N/A | SF | CASE FILED: COMPLAINT, SERVICE REQUEST, PRELIMINARY JUDICIAL REPORT, PRELIMINARY JUDICIAL REPORT |  |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.

Website Questions or Comments.
Copyright © 2022 PROWARE. All Rights Reserved. 1.1.262



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**September 25, 2018 15:48**

By: DOUGLAS A. HAESSIG 0079200

Confirmation Nbr. 1504316

WELLS FARGO BANK N.A.                         CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL                  **Judge:** STUART A. FRIEDMAN

**Pages Filed:** 33

F18-24197 EGB/fs:aab September 20, 2018

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates c/o Carrington Mortgage Services 1600 Douglass Road Anaheim, California 92806 | ) CASE NO.<br>)<br>) PPN: 661-15-060<br>)<br>) JUDGE<br>)<br>)<br>) |
| Plaintiff | ) **COMPLAINT FOR FORECLOSURE**<br>) |
| -vs- | )<br>) |
| Virgil H. Collins<br>4932 Nan Linn Drive<br>Richmond Heights, OH 44143; | )<br>)<br>)<br>) |
| Unknown Spouse, if any,<br>of Virgil H. Collins<br>4932 Nan Linn Drive<br>Richmond Heights, OH 44143; | )<br>)<br>)<br>)<br>) |
| Ruth J. Collins<br>3939 Iowa Street, Apt. 222<br>San Diego, CA 92104; | )<br>)<br>)<br>) |
| Unknown Spouse, if any,<br>of Ruth J. Collins<br>3939 Iowa Street, Apt. 222<br>San Diego, CA 92104; | )<br>)<br>)<br>)<br>) |
| New Century Mortgage Corporation<br>18400 Von Karman, Suite 1000<br>Irvine, CA 92612 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

```
-and-                              )
                                   )
New Century Liquidating Trust,     )
successor-in-interest to New       )
Century Mortgage Corporation       )
575 Anton Boulevard                )
Costa Mesa, CA 92626               )
                                   )
                                   )
                                   )
                Defendants         )
```

## FIRST COUNT

1.   Plaintiff  says  that  it  is  the  holder  of  and/or entitled  to  enforce  the  promissory  note,  a  copy  of  which  is hereto  attached,  marked  EXHIBIT  "A"  and  made  a  part  hereof;  that by  reason  of  default  in  payment  of  the  said  note  and  mortgage securing  same,  it  has  declared  said  debt  due;  that  there  is  due and  unpaid  thereon  the  sum  of  $126,719.39  plus  interest  at  the rate  of  7.5%  per  annum  from  October  1,  2017  and  subject  to adjustment  as  set  forth  in  the  note  attached  hereto.  Plaintiff further  says  that  it  has  complied  with  all  conditions  precedent as  set  forth  in  the  note  and  mortgage.

2.   Plaintiff  further  says  that  it  is  in  possession  of  the note,  and  by  reason  of  a  blank  endorsement  thereon,  the  note  has become  payable  to  the  Plaintiff  as  the  bearer  of  the  note pursuant  to  Revised  Code  1303.25(B);  and  that  Plaintiff accordingly  has  the  legal  right  to  enforce  the  note  pursuant  to Revised  Code  1303.22(A).

SECOND COUNT

3.   Plaintiff incorporates herein by reference all of the allegations contained in its first count, and further says that it is the holder of a certain mortgage deed, securing the payment of said promissory note, a copy of which is attached hereto, marked EXHIBIT "B", and being Permanent Parcel #661-15-060, and made a part hereof; and has been assigned to Plaintiff as evidenced by the assignment of mortgage, a copy of which is attached hereto and marked as EXHIBIT "C"; that said mortgage is a valid and first lien upon said premises.

4.   Plaintiff says that the conditions of said mortgage have been broken by reason of default in payment, and the same has become absolute; that the Defendants named in the Complaint, have or claim to have an interest in the premises described in EXHIBIT "B".

5.   Plaintiff says that pursuant to the covenants and conditions of said mortgage deed it may, from time to time during the pendency of this action, advance sums to pay real estate taxes, hazard insurance premiums and property protection and maintenance.

6.   Plaintiff says that the Defendants, Virgil H. Collins, Unknown Spouse, if any, of Virgil H. Collins, Ruth J. Collins, Unknown Spouse, if any, of Ruth J. Collins, New Century Mortgage Corporation, and New Century Liquidating Trust, successor-in-

interest to New Century Mortgage Corporation, have or claim to have an interest in the premises.

W H E R E F O R E Plaintiff demands judgment against the Defendants Virgil H. Collins and Ruth J. Collins in the sum of $126,719.39 plus interest at the rate of 7.5% per annum from October 1, 2017 and subject to adjustment as set forth in the note attached hereto; that the Defendants named herein be required to answer and set up any claim that they may have in said premises or be forever barred; that the Plaintiff be found to have a valid and first lien on said premises for this amount so owing together with its advances made pursuant to the terms of the mortgage for real estate taxes, hazard insurance premiums, and the premises be ordered appraised, advertised,

and sold according to law, and that from the proceeds the Plaintiff be paid the amount found due it, and for such other and further relief as equity entitled it to receive.


/s/ Douglas A. Haessig

REIMER LAW CO.
Edward G. Bohnert (0004920)
Ronald J. Chernek (0041431)
Douglas A. Haessig (0079200)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500 Ext. 110
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com


This is an attempt to collect a debt and any information obtained will be used for that purpose.



Exhibit A

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| June 2, 2006 | Richmond Heights | Ohio |
|---|---|---|
| [Date] | [City] | [State] |

4932 Nan Linn Drive, Richmond Heights, OH 44143
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received. I promise to pay U.S. $ 152,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **New Century Mortgage Corporation**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.975 %**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **July 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **06/01/2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612**

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,008.71 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP-838N (0210)                Form 3520 1/01
VMP MORTGAGE FORMS - (800)621-7291

Page 1 of 4          Initials VHC

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of June, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s) percentage points ( 6.050 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.475 % or less than 6.975%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.975%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.


-838N (0216)

Page 2 of 4

Form 3520 1/01

Initials:

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Electronically Filed 09/25/2018 15:48 / / CV 18 904354 / Confirmation Nbr. 1504316 / CLJSZ

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
VIRGIL H. COLLINS                -Borrower

_____ (Seal)
RUTH J. COLLINS                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

Electronically Filed 09/25/2018 15:48 / / CV 18 904354 / Confirmation Nbr. 1504316 / CLJSZ

Pay to the order of, without recourse
New Century Mortgage Corporation
By: _____
Szilvia Nagy
V.P. Records Management

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Exhibit B 

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY – 21
MORT 06/05/2006 12:09:11 PM
**200606050479**

---------------------------|Space Above This Line For Recording Data|---------------------------

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   June 2, 2006
together with all Riders to this document.
(B) "Borrower" is VIRGIL H. COLLINS and RUTH J. COLLINS , HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated   June 2, 2006
The Note states that Borrower owes Lender ONE HUNDRED FIFTY-TWO THOUSAND AND 00/100
                                                                                    Dollars
(U.S. $ 152,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 06/01/2036

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3036 1/ 01

-6(OH) (0405)
Page 1 of 15                            Initials:
VMP Mortgage Solutions, Inc. (800)521-7291

TOWER CITY TITLE AGENCY, LLC.
6161 Wilson Mills Rd.
HIGHLAND HEIGHTS, OH 44143
06-01905

Electronically Filed 09/25/2018 15:48 / / CV 18 904354 / Confirmation Nbr. 1504316 / CLJSZ

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| | | **Prepayment Rider** |
| | | **ARM Rider Addendum** |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _____

-6(OH) (0405)            Page 2 of 15            Form 3036  1/01

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the
County       of       Cuyahoga       :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: 661-15-060                    which currently has the address of
4932 Nan Linn Drive                                                              [Street]
Richmond Heights                          [City], Ohio 44143              [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

VMP®  -6(OH) (0405)                    Page 3 of 15        Initials: JMC KJC        Form 3038  1/01

Situated in the City of Richmond Heights, County of Cuyahoga and State of Ohio:

And being part of Original Euclid Township Tract No. 13, further known as being Sublot 72 in Frank Mavec's Lancaster Estates as shown on the plat recorded in Volume 154 of Maps, Page 16 of Cuyahoga County Records, said Sublot having a frontage of 75 feet on the Southerly side of Nan Linn Drive, extending back between parallel lines a distance of 150 feet, and having a rear line of 75 feet, as appears on said recorded plat, be the same more or less, but subject to all legal highways.

Parcel No: 661-15-060

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

-6(OH) (0405)          Page 4 of 15          Initials: VAC KJC          Form 3036   1/01

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Electronically Filed 09/25/2018 15:48 / / CV 18 904354 / Confirmation Nbr. 1504316 / CLJSZ

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in

exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: VHQ
RJC

-6(OH) (0405)          Page 9 of 15          Form 3036  1/01

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a

prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in

Electronically Filed 09/25/2018 15:48 / / CV 18 904354 / Confirmation Nbr. 1504316 / CLJSZ

this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, Cuyahoga County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

-8(OH) (0405)

Page 13 of 15

Initials: _VHC_ _KJC_

Form 3036  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
VIRGIL N. COLLINS                          -Borrower

_____

_____ (Seal)
RUTH J. COLLINS                            -Borrower

_____ (Seal)        _____ (Seal)
                                       -Borrower                                               -Borrower

_____ (Seal)        _____ (Seal)
                                       -Borrower                                               -Borrower

_____ (Seal)        _____ (Seal)
                                       -Borrower                                               -Borrower

VMP -6(OH) (0405)                    Page 14 of 15                    Form 3036  1/01

STATE OF OHIO,                  CUYAHOGA   County ss:

      This instrument was acknowledged before me this 2ND    day of     JUNE, 2006           , by
VIRGIL H. COLLINS AND RUTH J. COLLINS, HUSBAND AND WIFE

My Commission Expires:

Notary Public

MICHAEL A. SOBE, Notary Public
State of Ohio - Lake County
My Commission Expires Sept. 27, 2010

This instrument was prepared by
New Century Mortgage Corporation

-6(OH) (0405)                     Page 15 of 15          Initials: VHC         Form 3036   1/01
RJC

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 2nd        day of June,  2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**New Century Mortgage Corporation**

("Lender") of the same date and covering the property described in the Security Instrument
and located at: **4932 Nan Linn Drive, Richmond Heights, OH  44143**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows :
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of                6.975 %. The Note provides
for changes in the interest rate and the monthly payments, as follows :
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The interest rate I will pay may change on the first day of June,  2008                ,
and on that day every 6th            month thereafter. Each date on which my interest rate
could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most
recent Index figure available as of the first business day of the month immediately preceding
the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based
upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Six And Five Hundredth(s)**                                    percentage points
(                6.050 %) to the Current Index. The Note Holder will then round the result of

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN
THE WALL STREET JOURNAL)** - Single Family - Fannie Mae Uniform Instrument
VMP-83 8R (040 2) Form 3138  1/01
Page 1 of 3        Initials: *VHC*
VMP Mortgage Solutions, Inc. *RJC*
(80 0)521 -7291

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 8.475 % or less than             6.975 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half                                                                  percentage points ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than             13.975 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows :

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

-838R (0402)                     Page 2 of 3                 Initials: _____                Form 3138  1/01

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
VIRGIL H. COLLINS           -Borrower    RUTH J. COLLINS          -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                             -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                             -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                             -Borrower

VMP-83 8R (040 2)          Page 3 of 3          Form 3138  1/01

# ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index - Rate Caps)

This Adjustable Rate Rider Addendum is made this **2nd** day of **June** **2006** , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the "Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

**4932 Nan Linn Drive, Richmond Heights, OH  44143**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and Lender further covenant and agree as follows:

**4.    (D) LIMITS ON INTEREST RATE CHANGES**
The interest rate I am required to pay at the first change date will not be greater than **8.475** % or less than **6.975** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) ( **1.500** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.975** % or less than **6.975** %.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider Addendum.

**VIRGIL H. COLLINS**

**RUTH J. COLLINS**

NCMC
Adjustable Rate Rider Addendum
RE-102    (082296)                                   Page 1 of 1

# PREPAYMENT RIDER
## ADJUSTABLE RATE LOAN

This prepayment Rider is made this **2nd** day of **June** **2006** , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrrower and Lender further covenant and agree as follows:

### 5.  BORROWER RIGHT TO PREPAY

I have the right to make payments of principal any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".

Except as provided below, I may make a full or partial prepayment at any time. If I make a partial prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other partial prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a full prepayment at any time. However, if within the first **2** years after the execution of the Security Instrument, I make any prepayment(s) within any 12-month period the total amount of which exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to

**One** percent ( **1%**) of the original principal amount of the loan which is in excess of TWENTY PERCENT (20%) of the original principal amount.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____
**VIRGIL H. COLLINS**

_____
**RUTH J. COLLINS**

_____          _____

_____          _____

_____          _____

NCMC
Prepay Rider - ARM (OH)
RE-105 (082606)                    Page 1 of 1

Exhibit C

CUYAHOGA COUNTY
FISCAL OFFICE - 2
09/11/2018 10:11:31 AM
**201809110246**

| F18-24197 | SPACE ABOVE THIS LINE FOR RECORDER'S USE |
|---|---|

**ASSIGNMENT OF MORTGAGE**

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged,

New Century Mortgage Corporation, c/o Carrington Mortgage Services, LLC 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806

("Assignor")

does hereby transfer, and set over, without recourse, unto

Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates, c/o Carrington Mortgage Services, LLC 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806

("Assignee")

| | |
|---|---|
| Executed and delivered by: | Virgil H. Collins and Ruth J. Collins, husband and wife |
| Mortgage Deed dated: | June 2, 2006 |
| to and in favor of: | New Century Mortgage Corporation |
| filed for record on (date): | June 5, 2006 |
| as Official Record: | Instrument Number 200606050479 |
| in the Recorder's Office of: | Cuyahoga |
| Property address: | 4932 Nan Linn Drive, Richmond Heights, OH 44143 |
| Legal description: | Situated in the City of Richmond Heights, County of Cuyahoga and State of Ohio: |
| | And being part of original Euclid Township Tract No. 13, further known as being Sublot 72 in Frank Mavec's Lancaster Estates as shown on the Plat Recorded in Volume 154 of Maps, Page 16 of Cuyahoga County Records, said Sublot having a frontage of 75 feet in the Southerly side of Nan Linn Drive, extending back between parallel lines a distance of 150 feet, and having a rear line of 75 feet, as appears on said Recorded Plat, be the same more or less, but subject to all legal highways. |

IN WITNESS WHEREOF  New Century Mortgage Corporation , has caused this Assignment

to be executed, for and on its behalf by  Elizabeth A. Ostermann

Vice President this  6 day of  September 2018.

New Century Liquidating Trust successor-in-interest to New Century Mortgage Corporation by Carrington Mortgage Services, LLC as attorney-in-fact

By:

In the presence of:

(Sign)  (Sign)  Elizabeth A. Ostermann

Delann Vaughn  Its:  Vice President, Carrington Mortgage Services, LLC
(Type or print name)  (Title)

(Sign)

Norma Palomar
(Type or print name)

A notary public or other officer completing this Certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California  }
County of Orange  }

On SEP 06 2018 , before me, Judit Saucedo  Notary Public , personally

appeared Elizabeth A. Ostermann , who proved to me on the

basic of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within

instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized

capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity

upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the forgoing

paragraph is true and correct

WITNESS my Hand and Official Seal

JUDIT SAUCEDO
Notary Public - California
Orange County
Commission # 2188156
My Comm. Expires Mar 27, 2021

Notary Signature  (Seal)

MAR 2 7 2021
My Commission Expires

PREPARED BY:
Reimer Law Co.
By: Peter L. Mehler, Esq.


105625454

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: STUART A FRIEDMAN

VIRGIL H. COLLINS, ET AL
    Defendant

## **JOURNAL ENTRY**

20 MAGISTRATE

IT IS ORDERED BY THE COURT THAT THIS CAUSE BE REFERRED TO THE COURT MAGISTRATE TO TRY THE
ISSUES OF LAW AND FACT ARISING THEREIN AND REPORT WITHOUT UNNECESSARY DELAY.

A PARTY SEEKING A DEFAULT JUDGMENT MUST FILE A MOTION FOR DEFAULT JUDGMENT.

ONCE A CASE IS SET FOR DEFAULT JUDGMENT, THE MOTION FOR DEFAULT JUDGMENT MAY BE WITHDRAWN
ONLY BY SEPARATE MOTION WITH GOOD CAUSE SHOWN.

_____
Judge Signature           09/26/2018

- 20
09/25/2018



105625457

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
Plaintiff

Case No: CV-18-904354

Judge: STUART A FRIEDMAN

VIRGIL H. COLLINS, ET AL
Defendant

# JOURNAL ENTRY

ALL NON-MILITARY CLIENT AFFIDAVITS FILED IN RESIDENTIAL MORTGAGE FORECLOSURE CASES MUST INDICATE THAT THE AFFIANT HAS ACTUAL PERSONAL KNOWLEDGE OF THE FILE AND LOAN HISTORY IN QUESTION AND HAS PERSONALLY REVIEWED THE DOCUMENTS, RECORDS, OR OTHER DATA RELIED UPON TO MAKE THE STATEMENTS CONTAINED IN THE AFFIDAVIT. ALL CLIENT EXECUTED MILITARY AFFIDAVITS FILED IN RESIDENTIAL MORTGAGE FORECLOSURE CASES MUST INDICATE THAT THE AFFIANT HAS ACTUAL PERSONAL KNOWLEDGE OF THE APPROPRIATE DEFENDANTS' MILITARY STATUS. FAILURE TO PROVIDE APPROPRIATE AFFIDAVITS MAY RESULT IN MANDATORY PERSONAL ATTENDANCE OF AN AFFIANT FOR A HEARING, THE IMPOSITION OF SANCTIONS AND PENALTIES FOR PERJURY OR CONTEMPT, AND DISMISSAL OF THE CASE.

BEFORE JUDGMENT IS ENTERED ON ANY CLAIM FOR FORECLOSURE AND/OR MONEY JUDGMENT IN A RESIDENTIAL MORTGAGE FORECLOSURE CASE, COUNSEL FOR PLAINTIFF AND ANY OTHER PARTY THAT ASSERTS A CLAIM FOR FORECLOSURE OR MONEY JUDGMENT MUST FILE AN AFFIDAVIT OR AFFIDAVITS.

IN REGARD TO NON-MILITARY CLIENT AFFIDAVITS, THIS AFFIDAVIT MUST:

1) IDENTIFY THE COUNSEL OF RECORD AND HIS OR HER LAW FIRM.
2) PROVIDE THAT THE COUNSEL OF RECORD HAS REVIEWED THE FILE.
3) PROVIDE THAT THE COUNSEL OF RECORD HAS COMMUNICATED WITH A REPRESENTATIVE OF THE PARTY SEEKING FORECLOSURE AND/OR MONEY JUDGMENT OR ITS SERVICER AND THAT THIS REPRESENTATIVE: HAS AFFIRMED THAT HE OR SHE HAS PERSONALLY REVIEWED THE DOCUMENTS, RECORDS, OR OTHER DATA RELATED TO THE CASE; HAS REVIEWED THE PLEADINGS AND OTHER COURT FILINGS IN THE CASE; AND HAS CONFIRMED BOTH THE FACTUAL ACCURACY OF THE PLEADINGS AND COURT FILINGS AND THE ACCURACY OF THE NOTARIZATIONS CONTAINED THEREIN.

4) PROVIDE THE FULL NAME OF THE REPRESENTATIVE DESCRIBED IN ITEM 3 AND THE DATE OR DATES OF THE COMMUNICATION.

5) CERTIFY THAT, TO THE BEST OF THE COUNSEL OF RECORD'S KNOWLEDGE, THE PLEADINGS AND OTHER COURT FILINGS IN SUPPORT OF THE CLAIMS FOR FORECLOSURE ARE COMPLETE AND ACCURATE IN ALL RELEVANT RESPECTS.

6) ACKNOWLEDGE THAT COUNSEL OF RECORD HAS A CONTINUING OBLIGATION TO AMEND AND SUPPLEMENT THE AFFIDAVIT IN LIGHT OF NEWLY DISCOVERED FACTS FOLLOWING ITS FILING.

7) BE SIGNED AND DATED BY COUNSEL OF RECORD.

IN REGARD TO CLIENT EXECUTED MILITARY AFFIDAVITS, THIS AFFIDAVIT MUST:

09/25/2018



105625457

1) IDENTIFY THE COUNSEL OF RECORD AND HIS OR HER LAW FIRM.

2) PROVIDE THAT THE COUNSEL OF RECORD HAS COMMUNICATED WITH THE AFFIANT OF THE MILITARY
   AFFIDAVIT AND THAT THE AFFIANT HAS AFFIRMED THAT HE OR SHE HAS PERSONALLY REVIEWED
   NECESSARY WEBSITE AND/OR DATABASE TO DETERMINE THE MILITARY
   STATUS OF THE APPROPRIATE DEFENDANTS.

3) PROVIDE THE FULL NAME OF THE AFFIANT DESCRIBED IN ITEM 2 AND THE DATE OR DATES OF
   THE COMMUNICATION.

4) CERTIFY THAT, TO THE BEST OF THE COUNSEL OF RECORD'S KNOWLEDGE, THE INFORMATION CONTAINED
   IN THE MILITARY AFFIDAVIT IS ACCURATE IN ALL RELEVANT RESPECTS.

5) ACKNOWLEDGE THAT COUNSEL OF RECORD HAS A CONTINUING OBLIGATION TO AMEND AND SUPPLEMENT
   THE AFFIDAVIT IN LIGHT OF NEWLY DISCOVERED FACTS FOLLOWING ITS FILING.

6) BE SIGNED AND DATED BY COUNSEL OF RECORD.

FAILURE TO SUBMIT AN APPROPRIATE AFFIDAVIT ON OR BEFORE THE DATE OF TRIAL, THE DATE THAT A
MOTION FOR SUMMARY JUDGMENT IS RIPE FOR RULING, OR THE DATE OF DEFAULT HEARING, WHICHEVER IS
APPLICABLE, WILL RESULT IN DISMISSAL OF THE CASE AND MAY RESULT IN FURTHER SANCTIONS.
STANDARDIZED AFFIDAVIT FORMS ARE POSTED ON THE CUYAHOGA COUNTY COURT OF COMMONPLEAS
WEBSITE HTTP://CP.CUYAHOGACOUNTY.US/INTERNET/COURTDOCS/MAGISTRATES/AFFIDAVIT (REV5).PDF. ALL
AFFIDAVITS SUBMITTED PURSUANT TO THIS ORDER MUST BE IN THE FORMAT OF THESE STANDARDIZED
AFFIDAVIT FORMS.

IN LIEU OF THIS AFFIDAVIT:
1) IN CASES WHERE CLIENT AFFIDAVITS HAVE BEEN FILED, THE AFFIANT OR AFFIANTS MUST APPEAR AT THE
   HEARING OF THE MATTER AND TESTIFY REGARDING THOSE AFFIDAVITS. THE REPRESENTATIVE MUST
   APPEAR IN PERSON AND TELEPHONIC APPEARANCE WILL NOT BE PERMITTED. IF MULTIPLE CLIENT
   AFFIDAVITS ARE FILED IN THE CASE AND ARE EXECUTED BY MORE THAN ONE AFFIANT, EACH AFFIANT
   MUST APPEAR AT THE HEARING OF THE MATTER.

2) IN CASES WHERE NO CLIENT AFFIDAVITS HAVE BEEN FILED, AN OFFICER OF THE PARTY SEEKING
   FORECLOSURE OR AN OFFICER OF ITS SERVICER MUST APPEAR AT THE HEARING OF THE MATTER AND
   TESTIFY IN SUPPORT OF THE ALLEGATIONS OF THE COMPLAINT AND CONTENTS OF OTHER DOCUMENTS
   OR COURT FILINGS. THE OFFICER MUST APPEAR IN PERSON AND TELEPHONIC APPEARANCE WILL
   NOT BE PERMITTED.

3) IN CASES WHERE NO HEARING IS SCHEDULED BEFORE THE ENTRY OF JUDGMENT (SUCH AS SOME SUMMARY
   JUDGMENT CASES), THE OFFICER OF THE PARTY SEEKING FORECLOSURE MUST, CONTEMPORANEOUSLY WITH
   THE MOTION FOR SUMMARY JUDGMENT, MOVE TO SCHEDULE A HEARING AT WHICH THE AFFIANT MAY
   APPEAR.

4) WITH THE EXCEPTION OF AFFIANTS OF MILITARY AFFIDAVITS, THE AFFIANT OR AN OFFICER OF THE PARTY
   SEEKING FORECLOSURE OR OFFICER OF ITS SERVICER WHO APPEARS IN COURT IN LIEU OF THE FILING OF A
   FORECLOSURE COUNSEL AFFIDAVIT MUST APPEAR WITH THE ORIGINAL PROMISSORY NOTE, INCLUDING
   ALL ENDORSEMENTS AND ALLONGES AND A CURRENT PAYMENT HISTORY FOR THE MORTGAGE LOAN AT
   ISSUE. THE AFFIANT OR AN OFFICER OF THE PARTY SEEKING FORECLOSURE OR OFFICER OF ITS SERVICER
   MUST BE PREPARED TO TESTIFY THAT HE OR SHE HAS PERSONALLY REVIEWED THE DOCUMENTS, RECORDS
   OR OTHER DATA RELATED TO THE CASE, HAS REVIEWED THE PLEADINGS AND OTHER COURT FILINGS IN
   THE CASE AND HAS CONFIRMED BOTH THE FACTUAL ACCURACY OF THE FILINGS AND THE
   ACCURACY OF THE NOTARIZATIONS CONTAINED THEREIN, IF ANY. THE AFFIANT OR AN OFFICER OF THE
   PARTY SEEKING FORECLOSURE OR OFFICER OF ITS SERVICER MUST BE PREPARED TO RESPOND TO THE

09/25/2018



105625457

QUESTIONING OF THE MAGISTRATE OR JUDGE PRESIDING OVER THE HEARING AND THE QUESTIONING OF ANY OTHER PARTY ATTENDING THE HEARING.

5) IF THE AFFIANT OR OFFICER OF THE PARTY SEEKING FORECLOSURE OR AN OFFICER OF ITS SERVICER HAS BEEN PREVIOUSLY DEPOSED AND HAS TESTIFIED UNDER OATH REGARDING THE ABOVE REQUIRED INFORMATION, THE FILING OF THE TRANSCRIPT OF THAT DEPOSITION WILL SATISFY THE REQUIREMENTS OF THIS POLICY.

FAILURE TO FILE AN ATTORNEY AFFIDAVIT OR DO ANY OF THE ALTERNATIVES TO FILING AN ATTORNEY AFFIDAVIT BEFORE THE CASE IS RIPE FOR THE ENTRY OF JUDGMENT WILL RESULT IN DISMISSAL OF THE CASE.

*Stewart A Friedman*
_____
Judge Signature                    09/26/2018

09/25/2018

CLEVELAND, OHIO 44113

Rule 4 (B) Ohio

Rules of Civil
Procedure

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV18904354 | D1 FX | 36570093 |

WELLS FARGO BANK N.A.    **PLAINTIFF**
              **VS**
VIRGIL H. COLLINS, ET AL    **DEFENDANT**

## SUMMONS

VIRGIL H COLLINS
4932 NAN LINN DRIVE
RICHMOND HEIGHTS OH 44143

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

EDWARD BOHNERT
P.O. BOX 39696

30455 SOLON ROAD
SOLON, OH 44139-0000

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

STUART A FRIEDMAN
Do not contact judge. Judge's name is given for
attorney's reference only.

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas





| DATE SENT |
|---|
| Sep 26, 2018 |

By _____
                Deputy

COMPLAINT FILED    09/25/2018

SN130

CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV18904354 | D2 FX | 36570094 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

WELLS FARGO BANK N.A.
**VS**
VIRGIL H. COLLINS, ET AL

**PLAINTIFF**

**DEFENDANT**

## SUMMONS

UNK. SPOUSE IF ANY OF VIRGIL COLLINS
4932 NAN LINN DRIVE
RICHMOND HEIGHTS OH 44143

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

EDWARD BOHNERT
P.O. BOX 39696

30455 SOLON ROAD
SOLON, OH 44139-0000

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

**Case has been assigned to Judge:**

STUART A FRIEDMAN
**Do not contact judge. Judge's name is given for
attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas





| DATE SENT |
|---|
| Sep 26, 2018 |

By_____
Deputy

COMPLAINT FILED   09/25/2018

CLEVELAND, OHIO 44113

Rule 4 (B) Ohio

Rules of Civil
Procedure

| CASE NO. CV18904354 | D3 FX | SUMMONS NO. 36570095 |
|---|---|---|

## SUMMONS

|  |  |
|---|---|
| WELLS FARGO BANK N.A. **VS** VIRGIL H. COLLINS, ET AL | **PLAINTIFF** **DEFENDANT** |

RUTH J COLLINS
3939 IOWA STREET APT 222
SAN DIEGO CA 92104

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Plaintiff's Attorney**

EDWARD BOHNERT
P.O. BOX 39696

30455 SOLON ROAD
SOLON, OH 44139-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

STUART A FRIEDMAN
Do not contact Judge. Judge's name is given for attorney's reference only.



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT Sep 26, 2018 | By_____ Deputy |
|---|---|

COMPLAINT FILED   09/25/2018

SN130

| CASE NO. CV18904354 | D4 FX | SUMMONS NO. 36570096 |
|---|---|---|

CLEVELAND, Ohio 44113

Rule 4 (B) Ohio

Rules of Civil Procedure

## SUMMONS

| WELLS FARGO BANK N.A. VS VIRGIL H. COLLINS, ET AL | PLAINTIFF DEFENDANT |
|---|---|

UNK. SPOUSE IF ANY OF RUTH J COLLINS
3939 IOWA STREET APT 222
SAN DIEGO CA 92104

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plantiff's Attorney

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

EDWARD BOHNERT
P.O. BOX 39696

30455 SOLON ROAD
SOLON, OH 44139-0000

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

STUART A FRIEDMAN
**Do not contact judge. Judge's name is given for attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT Sep 26, 2018 | By _____ Deputy |
|---|---|

COMPLAINT FILED    09/25/2018

SN130

CLEVELAND, OHIO 44113

| CASE NO.<br>CV18904354 | D5 FX | SUMMONS NO.<br>36570098 |
|---|---|---|

Rule 4 (B) Ohio

Rules of Civil
Procedure

|  |  |
|---|---|
| WELLS FARGO BANK N.A.<br>VS<br>VIRGIL H. COLLINS, ET AL | **PLAINTIFF**<br><br>**DEFENDANT** |

## SUMMONS

NEW CENTURY MORTGAGE CORPORATION
18400 VON KARMAN
SUITE 1000
IRVINE CA 92612

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Plaintiff's Attorney**

EDWARD BOHNERT
P.O. BOX 39696

30455 SOLON ROAD
SOLON, OH 44139-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

STUART A FRIEDMAN
**Do not contact judge. Judge's name is given for attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| **DATE SENT**<br>Sep 26, 2018 |
|---|

By_____
                    Deputy

COMPLAINT FILED    09/25/2018

SN130

CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV18904354 | D6 FX | 36570099 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

---

WELLS FARGO BANK N.A.            **PLAINTIFF**
                    VS
    VIRGIL H. COLLINS, ET AL      **DEFENDANT**

# SUMMONS

---

NEW CENTURY LIQUIDATING TRUST
SUCCESSOR-IN-INTEREST TO NEW
CENTURY MORTGAGE CORPORATION
575 ANTON BOULEVARD
COSTA MESA CA 92626

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

#### Said answer is required to be served on:



**Plaintiff's Attorney**

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

EDWARD BOHNERT
P.O. BOX 39696

30455 SOLON ROAD
SOLON, OH 44139-0000

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

#### Case has been assigned to Judge:

STUART A FRIEDMAN
**Do not contact judge. Judge's name is given for
attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT |
|---|
| Sep 26, 2018 |

By_____
Deputy



COMPLAINT FILED    09/25/2018

SN130



## NAILAH K. BYRD
## CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**September 25, 2018 15:48**

By: DOUGLAS A. HAESSIG 0079200

Confirmation Nbr. 1504316

WELLS FARGO BANK N.A.                           CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL                        Judge:  STUART A. FRIEDMAN

Pages Filed:  33

F18-24197　　　　　　　　EGB/fs:aab　　　　　September 20, 2018

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Wells Fargo Bank N.A., as Trustee, | ) CASE NO. |
| for Carrington Mortgage Loan | ) |
| Trust, Series 2006-NC3 Asset- | ) PPN: 661-15-060 |
| Backed Pass-Through Certificates | ) |
| c/o Carrington Mortgage Services | ) JUDGE |
| 1600 Douglass Road | ) |
| Anaheim, California 92806 | ) |
| | ) |
| | ) **COMPLAINT FOR FORECLOSURE** |
| Plaintiff | ) |
| -vs- | ) |
| | ) |
| Virgil H. Collins | ) |
| 4932 Nan Linn Drive | ) |
| Richmond Heights, OH 44143; | ) |
| | ) |
| Unknown Spouse, if any, | ) |
| of Virgil H. Collins | ) |
| 4932 Nan Linn Drive | ) |
| Richmond Heights, OH 44143; | ) |
| | ) |
| Ruth J. Collins | ) |
| 3939 Iowa Street, Apt. 222 | ) |
| San Diego, CA 92104; | ) |
| | ) |
| Unknown Spouse, if any, | ) |
| of Ruth J. Collins | ) |
| 3939 Iowa Street, Apt. 222 | ) |
| San Diego, CA 92104; | ) |
| | ) |
| New Century Mortgage Corporation | ) |
| 18400 Von Karman, Suite 1000 | ) |
| Irvine, CA 92612 | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

```
-and-                               )
                                    )
New Century Liquidating Trust,      )
successor-in-interest to New        )
Century Mortgage Corporation        )
575 Anton Boulevard                 )
Costa Mesa, CA 92626                )
                                    )
                                    )
                                    )
            Defendants              )
```

## FIRST COUNT

1.   Plaintiff   says   that   it   is   the   holder   of   and/or
entitled  to  enforce  the  promissory  note,  a  copy  of  which  is
hereto  attached,  marked  EXHIBIT  "A"  and  made  a  part  hereof;  that
by  reason  of  default  in  payment  of  the  said  note  and  mortgage
securing  same,  it  has  declared  said  debt  due;  that  there  is  due
and  unpaid  thereon  the  sum  of  $126,719.39  plus  interest  at  the
rate  of  7.5%  per  annum  from  October  1,  2017  and  subject  to
adjustment  as  set  forth  in  the  note  attached  hereto.  Plaintiff
further  says  that  it  has  complied  with  all  conditions  precedent
as  set  forth  in  the  note  and  mortgage.

2.   Plaintiff  further  says  that  it  is  in  possession  of  the
note,  and  by  reason  of  a  blank  endorsement  thereon,  the  note  has
become  payable  to  the  Plaintiff  as  the  bearer  of  the  note
pursuant  to  Revised  Code  1303.25(B);  and  that  Plaintiff
accordingly  has  the  legal  right  to  enforce  the  note  pursuant  to
Revised  Code  1303.22(A).

SECOND COUNT

3.    Plaintiff incorporates herein by reference all of the allegations contained in its first count, and further says that it is the holder of a certain mortgage deed, securing the payment of said promissory note, a copy of which is attached hereto, marked EXHIBIT "B", and being Permanent Parcel #661-15-060, and made a part hereof; and has been assigned to Plaintiff as evidenced by the assignment of mortgage, a copy of which is attached hereto and marked as EXHIBIT "C"; that said mortgage is a valid and first lien upon said premises.

4.    Plaintiff says that the conditions of said mortgage have been broken by reason of default in payment, and the same has become absolute; that the Defendants named in the Complaint, have or claim to have an interest in the premises described in EXHIBIT "B".

5.    Plaintiff says that pursuant to the covenants and conditions of said mortgage deed it may, from time to time during the pendency of this action, advance sums to pay real estate taxes, hazard insurance premiums and property protection and maintenance.

6.    Plaintiff says that the Defendants, Virgil H. Collins, Unknown Spouse, if any, of Virgil H. Collins, Ruth J. Collins, Unknown Spouse, if any, of Ruth J. Collins, New Century Mortgage Corporation, and New Century Liquidating Trust, successor-in-

interest to New Century Mortgage Corporation, have or claim to have an interest in the premises.

W H E R E F O R E Plaintiff demands judgment against the Defendants Virgil H. Collins and Ruth J. Collins in the sum of $126,719.39 plus interest at the rate of 7.5% per annum from October 1, 2017 and subject to adjustment as set forth in the note attached hereto; that the Defendants named herein be required to answer and set up any claim that they may have in said premises or be forever barred; that the Plaintiff be found to have a valid and first lien on said premises for this amount so owing together with its advances made pursuant to the terms of the mortgage for real estate taxes, hazard insurance premiums, and the premises be ordered appraised, advertised,

and sold according to law, and that from the proceeds the
Plaintiff be paid the amount found due it, and for such other
and further relief as equity entitled it to receive.


/s/ Douglas A. Haessig
REIMER LAW CO.
Edward G. Bohnert (0004920)
Ronald J. Chernek (0041431)
Douglas A. Haessig (0079200)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500 Ext. 110
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com


This is an attempt to collect a debt and any information obtained
will be used for that purpose.

 Exhibit A

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 2, 2006                    Richmond Heights                    Ohio
[Date]                                [City]                                  [State]

4932 Nan Linn Drive, Richmond Heights, OH  44143
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 152,000.00           (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of           6.975 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on July 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 06/01/2036                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,008.71                . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP-838N (0211)                    Form 3520 1/ 01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4                    Initials: _____

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of June, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s) percentage points ( 6.050 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.475 % or less than 6.975%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.975%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



Form 3520 1/01

Initials:


Electronically Filed 09/25/2019 15:14 / SERVICE / CV 18 904264 / Confirmation Nbr. 1826257 / CLSK1

 

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Form 3520 1/ 01

Initials: ___

 

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
VIRGIL H. COLLINS       -Borrower

_____ (Seal)
RUTH J. COLLINS         -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

[Sign Original Only]





Pay to the order of, without recourse

New Century Mortgage Corporation
By: _____
Steve Nagy
V.P. Records Management

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Exhibit B 

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY – 21
MORT 06/05/2006 12:09:11 PM
**200606050479**

────────────────────── [Space Above This Line For Recording Data] ──────────────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **June 2, 2006** together with all Riders to this document.
**(B) "Borrower"** is **VIRGIL H. COLLINS** and **RUTH J. COLLINS** , **HUSBAND AND WIFE**

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is **New Century Mortgage Corporation**

Lender is a **Corporation**
organized and existing under the laws of **California**
Lender's address is **18400 Von Karman, Suite 1000, Irvine, CA 92612**

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **June 2, 2006**
The Note states that Borrower owes Lender **ONE HUNDRED FIFTY-TWO THOUSAND AND 00/100**
                                                                                        Dollars
**(U.S. $ 152,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **06/01/2036**

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3036 1/01

VMP-6(OH) (0405)
Page 1 of 15                Initials: VHC RJC
VMP Mortgage Solutions, Inc. (800)521-7291

**TOWER CITY TITLE AGENCY, LLC.**
6151 Wilson Mills Rd.
HIGHLAND HEIGHTS, OH 44143
06-01905

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Prepayment Rider |
| | | ARM Rider Addendum |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials:

-6(OH) (0405)          Page 2 of 16          Form 3036    1/01

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the

County                    of                    Cuyahoga                    :
        [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: 661-15-060                    which currently has the address of
**4932 Nan Linn Drive**                                              [Street]
**Richmond Heights**                          [City], Ohio **44143**          [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

VMP® -6(OH) (0405)                    Page 3 of 15          Initials: JHP RJC          Form 3036  1/01

Situated in the City of Richmond Heights, County of Cuyahoga and State of Ohio:

And being part of Original Euclid Township Tract No. 13, further known as being Sublot 72 in Frank Mavec's Lancaster Estates as shown on the plat recorded in Volume 154 of Maps, Page 16 of Cuyahoga County Records, said Sublot having a frontage of 75 feet on the Southerly side of Nan Linn Drive, extending back between parallel lines a distance of 150 feet, and having a rear line of 75 feet, as appears on said recorded plat, be the same more or less, but subject to all legal highways.

Parcel No: 661-15-060

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: VW KJC

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(OH) (0405)                    Page 7 of 15                    Initials: _____    Form 3038    1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in

exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a

Initials: VHQ RJC

prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in

this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials: VHQ RJC

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, Cuyahoga

County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

VMP -6(OH) (0408)            Page 13 of 15            Initials: _____            Form 3036   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
VIRGIL H. COLLINS                        -Borrower

_____

_____ (Seal)
RUTH J. COLLINS                          -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                                       -Borrower

-6(OH) (0405)                      Page 14 of 15                      Form 3036   1/01

STATE OF OHIO,                          CUYAHOGA  County ss:

This instrument was acknowledged before me this  2ND    day of     JUNE,  2006          , by
VIRGIL H. COLLINS AND RUTH J. COLLINS, HUSBAND AND WIFE

My Commission Expires:

Notary Public

MICHAEL A. SOBE, Notary Public
State of Ohio - Lake County
My Commission Expires Sept. 27, 2010

This instrument was prepared by
New Century Mortgage Corporation

-6(OH) (0405)                    Page 15 of 15                    Form 3038   1/01

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 2nd      day of June, 2006      .
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
New Century Mortgage Corporation

("Lender") of the same date and covering the property described in the Security Instrument
and located at: 4932 Nan Linn Drive, Richmond Heights, OH  44143

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of        6.975 %. The Note provides
for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of June, 2008      ,
and on that day every 6th        month thereafter. Each date on which my interest rate
could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most
recent Index figure available as of the first business day of the month immediately preceding
the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based
upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Six And Five Hundredth(s)                                    percentage points
(       6.050 %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN
THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument
VMP-838R (0402)  Form 3138  1/01
Page 1 of 3       Initials: ___
VMP Mortgage Solutions, Inc.
(800)521-7291

this addition to the nearest one-eighth of one percentage point (0.12 5%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than

8.475 % or less than                    6.975 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One And

One-half                                                                  percentage points

(                    1.500 %) from the rate of interest I have been paying for the preceding

6          months. My interest rate will never be greater than                  13.975 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows :

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

-83 6R (040 2)                    Page 2 of 3                    Initials: ___    Form 3138 1/01

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)                    _____ (Seal)
VIRGIL M. COLLINS              -Borrower    RUTH J. COLLINS              -Borrower

_____ (Seal)                    _____ (Seal)
                              -Borrower                                   -Borrower

_____ (Seal)                    _____ (Seal)
                              -Borrower                                   -Borrower

_____ (Seal)                    _____ (Seal)
                              -Borrower                                   -Borrower

-838R (0402)                        Page 3 of 3                        Form 3138 1/01

# ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index – Rate Caps)

This Adjustable Rate Rider Addendum is made this **2nd** day of **June** **2006** , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the "Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

**4932 Nan Linn Drive, Richmond Heights, OH 44143**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and Lender further covenant and agree as follows:

**4. (D) LIMITS ON INTEREST RATE CHANGES**

The interest rate I am required to pay at the first change date will not be greater than **8.475 %** or less than **8.975 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) ( **1.500 %**) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.975 %** or less than **6.975 %**.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider Addendum.

_____          _____
**VIRGIL H. COLLINS**                              **RUTH J. COLLINS**

_____          _____

_____          _____

_____          _____

NCMC
Adjustable Rate Rider Addendum
RE-102    (082296)                     Page 1 of 1



# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This prepayment Rider is made this 2nd day of June 2006 , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5. BORROWER RIGHT TO PREPAY**

I have the right to make payments of principal any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".

Except as provided below, I may make a full or partial prepayment at any time. If I make a partial prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other partial prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a full prepayment at any time. However, if within the first 2 years after the execution of the Security Instrument, I make any prepayment(s) within any 12-month period the total amount of which exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to

**One** percent ( **1 %**) of the original principal amount of the loan which is in excess of TWENTY PERCENT (20%) of the original principal amount.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____          _____
**VIRGIL H. COLLINS**                **RUTH J. COLLINS**

_____          _____

_____          _____

_____          _____

NCMC
Prepay Rider - ARM (OH)
RE-105 (082606)                    Page 1 of 1

Exhibit C

CUYAHOGA COUNTY
FISCAL OFFICE - 2
09/11/2018 10:11:31 AM
**201809110246**

| F18-24197 | SPACE ABOVE THIS LINE FOR RECORDER'S USE |
|---|---|

**ASSIGNMENT OF MORTGAGE**

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged,

New Century Mortgage Corporation, c/o Carrington Mortgage Services, LLC 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806

("Assignor")

does hereby transfer, and set over, without recourse, unto

Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates, c/o Carrington Mortgage Services, LLC 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806

("Assignee")

| | |
|---|---|
| Executed and delivered by: | Virgil H. Collins and Ruth J. Collins, husband and wife |
| Mortgage Deed dated: | June 2, 2006 |
| to and in favor of: | New Century Mortgage Corporation |
| filed for record on (date): | June 5, 2006 |
| as Official Record: | Instrument Number 200606050479 |
| In the Recorder's Office of: | Cuyahoga |
| Property address: | 4932 Nan Linn Drive, Richmond Heights, OH 44143 |
| Legal description: | Situated in the City of Richmond Heights, County of Cuyahoga and State of Ohio: |
| | And being part of original Euclid Township Tract No. 13, further known as being Sublot 72 in Frank Mavec's Lancaster Estates as shown on the Plat Recorded in Volume 154 of Maps, Page 16 of Cuyahoga County Records, said Sublot having a frontage of 75 feet in the Southerly side of Nan Linn Drive, extending back between parallel lines a distance of 150 feet, and having a rear line of 75 feet, as appears on said Recorded Plat, be the same more or less, but subject to all legal highways. |

IN WITNESS WHEREOF New Century Mortgage Corporation , has caused this Assignment

to be executed, for and on its behalf by Elizabeth A. Ostermann

Vice President this 6 day of September 20 18 .

New Century Liquidating Trust successor-in-interest to New Century Mortgage Corporation by Carrington Mortgage Services, LLC as attorney-in-fact

By: _____ (Sign)

In the presence of:

(Sign)
Delann Vaughn
(Type or print name)

Its: _____ Elizabeth A. Ostermann
(Title) Vice President, Carrington Mortgage Services, LLC

(Sign)
Norma Palomar
(Type or print name)

A notary public or other officer completing this Certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California }
County of Orange }

On SEP 06 2018 , before me, Judit Saucedo Notary Public , personally

appeared Elizabeth A. Ostermann , who proved to me on the

basic of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within

instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized

capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity

upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the forgoing

paragraph is true and correct

WITNESS my Hand and Official Seal

JUDIT SAUCEDO
Notary Public · California
Orange County
Commission # 2188156
My Comm. Expires Mar 27, 2021

Notary Signature (Seal)

MAR 2 7 2021
My Commission Expires

PREPARED BY:
Reimer Law Co.
By: Peter L. Mehler, Esq.

| CASE NO.<br>CV18904354 | D5 CM | SUMMONS NO.<br>36831290 |
| --- | --- | --- |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| WELLS FARGO BANK N.A.<br>VS<br>VIRGIL H. COLLINS, ET AL | **PLAINTIFF**<br><br>**DEFENDANT** |
| --- | --- |

## SUMMONS

NEW CENTURY MORTGAGE CORPORATION
18400 VON KARMAN
SUITE 1000
IRVINE CA 92612

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

**Plaintiff's Attorney**

EDWARD BOHNERT
P.O. BOX 39696

30455 SOLON ROAD
SOLON, OH 44139-0000

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

**Case has been assigned to Judge:**

STUART A FRIEDMAN
Do not contact judge. Judge's name is given for
attorney's reference only.



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT<br>Oct 24, 2018 |
| --- |

By _____
Deputy

COMPLAINT FILED    09/25/2018

SN130

| CASE NO.<br>CV18904354 | D6 CM | SUMMONS NO.<br>36831291 |
|---|---|---|

CLEVELAND, OHIO 44113

Rule 4 (B) Ohio

Rules of Civil
Procedure

| WELLS FARGO BANK N.A.<br>VS<br>VIRGIL H. COLLINS, ET AL | **PLAINTIFF**<br><br>**DEFENDANT** |
|---|---|

# SUMMONS

NEW CENTURY LIQUIDATING TRUST
SUCCESSOR-IN-INTEREST TO NEW
CENTURY MORTGAGE CORPORATION
575 ANTON BOULEVARD
COSTA MESA CA 92626

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

EDWARD BOHNERT
P.O. BOX 39696

30455 SOLON ROAD
SOLON, OH 44139-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

STUART A FRIEDMAN
Do not contact judge. Judge's name is given for attorney's reference only.

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT<br>Oct. 24, 2018 | By _____<br>Deputy |
|---|---|

COMPLAINT FILED 09/25/2018



Motion No. <u>4730665</u>



## NAILAH K. BYRD
## CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### MOTION FOR LEAVE TO FILE ANSWER INSTANTER
November 7, 2018 14:49

By: JOANNE BROWN 0050039

Confirmation Nbr. 1544636

| | |
|---|---|
| WELLS FARGO BANK N.A. | CV 18 904354 |
| vs. | |
| VIRGIL H. COLLINS, ET AL | **Judge:** STUART A. FRIEDMAN |

Pages Filed: 4

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY
STATE OF OHIO

| | |
|---|---|
| Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates c/c Carrington Mortgage Services<br>Plaintiff<br><br>-v-<br><br>Virgil H. Collins et. al.<br>Defendants | Case No. 18-904354<br><br>Judge Stuart A. Friedman<br><br>DEFENDANTS' MOTION FOR LEAVE TO INSTANTER ANSWER TO PLAINTIFF'S COMPLAINT OUTSIDE OF TIME |

Defendant Virgil H. Collins request the Court grant him leave to instanter file the attached answer to Plaintiff's complaint.

**WHEREFORE,** Defendant request the Court issue an order permitting them to file instanter an answer, to Plaintiff's complaint.

Respectfully submitted,

_/s/ Joanne Brown_
Joanne Brown (0050039)
Attorney for Defendant Virgil H. Collins
4070 Mayfield Road
Cleveland, Ohio 44121
216-851-3304 (Phone)
216-851-2900 (Fax)
Email: courtfile@yahoo.com

CERTIFICATE OF SERVICE

A copy of the foregoing Answer was served by regular U. S. Mail postage prepaid or email November 7, 2018 2018 upon

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw


/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY
STATE OF OHIO

| | |
|---|---|
| Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates c/c Carrington Mortgage Services<br><br>            Plaintiff<br><br>-v-<br><br>Virgil H. Collins et. al.<br>            Defendants | Case No. 18-904354<br><br>Judge Stuart A. Friedman<br><br>DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT |

Defendant Virgil Collins state the following answer to Plaintiff's complaint:

1. Defendants lack information or knowledge to form a belief as to the allegations stated and contained in averments 1 and 2 of the complaint and therefore deny the allegations.

2. Defendants restate their responses to the allegations alleged in averments 1 through 2 of Plaintiff's complaint and further Defendant lacks information or knowledge to form a belief as to the balance of allegations stated and contained in averments 3 of the complaint and therefore deny the allegations..

3. Deny averments 4 and 5 contained in complaint.

4. Defendants lack information or knowledge to form a belief as to the allegations stated and contained in averment 6 of the complaint and therefore deny the allegations.

5. Admit the claim contained in paragraph 2 of plaintiff's complaint.

6. Defendants restate their responses to the allegations alleged in averments 4 through 14 of Plaintiff's complaint.

AFFIRMATIVE DEFENSES

1. To the extent discovery in this action reveals facts sufficient to support the following, Defendants assert that Plaintiff's claims are barred in whole or in part by these affirmative defenses.

2. Plaintiff's complaint fails to state a claim upon which relief can be granted.

3. Plaintiff's Complaint is barred by estoppel, waiver, laches, unclear hands, and/or release.

4. Plaintiff's Complaint fails to join a party under Rule 19.

5. Plaintiff's Complaint lack jurisdiction over the person.

6. Plaintiff's complaint fails to comply with Rule 9(B)

**WHEREFORE,** Defendants, pray that Plaintiff's complaint be dismissed with prejudice at Plaintiff's cost as to Defendants, for court cost and reasonable attorney's fees in defending this action, and for such other costs as the Court deems equitable and proper.

Respectfully submitted,


  /s/ Joanne Brown
Joanne Brown (0050039)
Attorney for defendant
Virgil H. Collins
4070 Mayfield Road
Cleveland, Ohio 44112
216-851-3304 Phone
216-851-2900 Fax
Email: courtfile@yahoo.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Answer was served by regular U. S. Mail postage prepaid or email November 7, 2018, 2018 upon

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw


/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### AFFIDAVIT SERVICE BY PUBLICATION, FORECLOSURE $250
### November 20, 2018 09:26

By: EDWARD BOHNERT 0004920

Confirmation Nbr. 1555239

WELLS FARGO BANK N.A.

CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL

**Judge:** STUART A. FRIEDMAN

**Pages Filed:** 37

F18-24197                    EGB/mjh              November 12, 2018

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

Wells Fargo Bank N.A., as      )  CASE NO. CV 18 904354
Trustee, for Carrington        )
Mortgage Loan Trust, Series    )
2006-NC3 Asset-Backed Pass-    )  Judge STUART A. FRIEDMAN
Through Certificates           )
                               )
            Plaintiff          )  AFFIDAVIT FOR SERVICE
                               )  BY PUBLICATION
      -vs-                     )
                               )
Virgil H. Collins, et al.      )
                               )
            Defendants         )

THE STATE OF OHIO   :
                        SS.
CUYAHOGA COUNTY     :

        Edward G. Bohnert, being first duly sworn, deposes and says

that he is the attorney for Wells Fargo Bank N.A., as Trustee,

for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed

Pass-Through Certificates in the above entitled action for

foreclosure, money relief and judgment, that service of summons

cannot be made upon the defendants: New Century Mortgage

Corporation, whose last place of business is 18400 Von Karman,

Suite 1000, Irvine, CA 92612; and New Century Liquidating Trust, successor-in-interest to New Century Mortgage Corporation, whose last place of business is 575 Anton Boulevard, Costa Mesa, CA 92626.

That the present address of said defendants are unknown and cannot with reasonable diligence be ascertained; that the following efforts were made to ascertain the address of the defendants:

Search of court documents including, marriage records, Probate Court, and publicly available databases.

That this case is one of those mentioned in Section 2703.141 of the Revised Code of Ohio.


Edward G. Bohnert, #0004920

SWORN TO BEFORE ME, and subscribed in my presence this 15th day of November, 2018.


Notary Public for the State of Ohio



TERRI M BENNICI
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
02-16-2022
Recorded in
Summit County

Case # CV18904354
Complaint Filed September 25, 2018

Permanent Parcel Number: 661-15-060; Property Address: 4932 Nan
Linn Drive, Richmond Heights, OH 44143. The legal description
may be obtained from the Cuyahoga County Auditor at 2079 East
9th Street, Cleveland, Ohio 44113, 216-443-7010.



### NAILAH K. BYRD
## CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

### Court of Common Pleas

**New Case Electronically Filed:**
**September 25, 2018 15:48**

By: DOUGLAS A. HAESSIG 0079200

Confirmation Nbr. 1504316

WELLS FARGO BANK N.A.

vs.

VIRGIL H. COLLINS, ET AL

CV 18 904354

**Judge:** STUART A. FRIEDMAN

Pages Filed: 33

F18-24197 EGB/fs:aab September 20, 2018

<div align="center">

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

</div>

| | |
|---|---|
| Wells Fargo Bank N.A., as Trustee, ) | CASE NO. |
| for Carrington Mortgage Loan ) | |
| Trust, Series 2006-NC3 Asset- ) | PPN: 661-15-060 |
| Backed Pass-Through Certificates ) | |
| c/o Carrington Mortgage Services ) | JUDGE |
| 1600 Douglass Road ) | |
| Anaheim, California 92806 ) | |
| ) | COMPLAINT FOR FORECLOSURE |
| Plaintiff ) | |
| ) | |
| -vs- ) | |
| ) | |
| Virgil H. Collins ) | |
| 4932 Nan Linn Drive ) | |
| Richmond Heights, OH 44143; ) | |
| ) | |
| Unknown Spouse, if any, ) | |
| of Virgil H. Collins ) | |
| 4932 Nan Linn Drive ) | |
| Richmond Heights, OH 44143; ) | |
| ) | |
| Ruth J. Collins ) | |
| 3939 Iowa Street, Apt. 222 ) | |
| San Diego, CA 92104; ) | |
| ) | |
| Unknown Spouse, if any, ) | |
| of Ruth J. Collins ) | |
| 3939 Iowa Street, Apt. 222 ) | |
| San Diego, CA 92104; ) | |
| ) | |
| New Century Mortgage Corporation ) | |
| 18400 Von Karman, Suite 1000 ) | |
| Irvine, CA 92612 ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

~and~                                    )
                                         )
New Century Liquidating Trust,           )
successor-in-interest to New             )
Century Mortgage Corporation             )
575 Anton Boulevard                      )
Costa Mesa, CA 92626                     )
                                         )
                                         )
                                         )
                 Defendants              )

## FIRST COUNT

1.    Plaintiff  says  that  it  is  the  holder  of  and/or
entitled  to  enforce  the  promissory  note,  a  copy  of  which  is
hereto attached, marked EXHIBIT "A" and made a part hereof; that
by  reason  of  default  in  payment  of  the  said  note  and  mortgage
securing  same,  it  has  declared  said  debt  due;  that  there  is  due
and  unpaid  thereon  the  sum  of  $126,719.39  plus  interest  at  the
rate  of  7.5%  per  annum  from  October  1,  2017  and  subject  to
adjustment  as  set  forth  in  the  note  attached  hereto.  Plaintiff
further  says  that  it  has  complied  with  all  conditions  precedent
as  set  forth  in  the  note  and  mortgage.

2.    Plaintiff  further  says  that  it  is  in  possession  of  the
note,  and  by  reason  of  a  blank  endorsement  thereon,  the  note  has
become  payable  to  the  Plaintiff  as  the  bearer  of  the  note
pursuant  to  Revised  Code  1303.25(B);  and  that  Plaintiff
accordingly  has  the  legal  right  to  enforce  the  note  pursuant  to
Revised Code 1303.22(A).

## SECOND COUNT

3.   Plaintiff incorporates herein by reference all of the allegations contained in its first count, and further says that it is the holder of a certain mortgage deed, securing the payment of said promissory note, a copy of which is attached hereto, marked EXHIBIT "B", and being Permanent Parcel #661-15-060, and made a part hereof; and has been assigned to Plaintiff as evidenced by the assignment of mortgage, a copy of which is attached hereto and marked as EXHIBIT "C"; that said mortgage is a valid and first lien upon said premises.

4.   Plaintiff says that the conditions of said mortgage have been broken by reason of default in payment, and the same has become absolute; that the Defendants named in the Complaint, have or claim to have an interest in the premises described in EXHIBIT "B".

5.   Plaintiff says that pursuant to the covenants and conditions of said mortgage deed it may, from time to time during the pendency of this action, advance sums to pay real estate taxes, hazard insurance premiums and property protection and maintenance.

6.   Plaintiff says that the Defendants, Virgil H. Collins, Unknown Spouse, if any, of Virgil H. Collins, Ruth J. Collins, Unknown Spouse, if any, of Ruth J. Collins, New Century Mortgage Corporation, and New Century Liquidating Trust, successor-in-

interest to New Century Mortgage Corporation, have or claim to have an interest in the premises.

W H E R E F O R E Plaintiff demands judgment against the Defendants Virgil H. Collins and Ruth J. Collins in the sum of $126,719.39 plus interest at the rate of 7.5% per annum from October 1, 2017 and subject to adjustment as set forth in the note attached hereto; that the Defendants named herein be required to answer and set up any claim that they may have in said premises or be forever barred; that the Plaintiff be found to have a valid and first lien on said premises for this amount so owing together with its advances made pursuant to the terms of the mortgage for real estate taxes, hazard insurance premiums, and the premises be ordered appraised, advertised,

and sold according to law, and that from the proceeds the
Plaintiff be paid the amount found due it, and for such other
and further relief as equity entitled it to receive.


/s/ Douglas A. Haessig
REIMER LAW CO.
Edward G. Bohnert (0004920)
Ronald J. Chernek (0041431)
Douglas A. Haessig (0079200)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500 Ext. 110
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com


This is an attempt to collect a debt and any information obtained
will be used for that purpose.



Exhibit A

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| June 2, 2006 | Richmond Heights | Ohio |
|---|---|---|
| [Date] | [City] | [State] |

4932 Nan Linn Drive, Richmond Heights, OH  44143
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $152,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.975 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on July 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 06/01/2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,008.71 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP-838N (0211)        Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4        Initials: _____

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of June, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s) percentage points ( 6.050 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the new amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.475 % or less than 6.975%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.975%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



 

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Form 3520 1/01

Initials

 

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
VIRGIL H. COLLINS                -Borrower

_____ (Seal)
RUTH J. COLLINS                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*



Pay to the order of, without recourse

New Century Mortgage Corporation
By: _____
Sohv Magy
V.P. Records Management

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Exhibit B 

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY – 21
MORT 06/05/2006 12:09:11 PM
**200606050479**

---

[Space Above This Line For Recording Data]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   June 2, 2006
together with all Riders to this document.
(B) "Borrower" is VIRGIL H. COLLINS and RUTH J. COLLINS , HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated   June 2, 2006
The Note states that Borrower owes Lender ONE HUNDRED FIFTY-TWO THOUSAND AND 00/100
Dollars
(U.S. $ 152,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 06/01/2036

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3036  1/01

VMP 6(OH) (0405)
Page 1 of 15                          Initials: VHC
VMP Mortgage Solutions, Inc. (800)521-7291

TOWER CITY TITLE AGENCY, LLC.
6151 Wilson Mills Rd.
HIGHLAND HEIGHTS, OH 44143
06-01905

Electronically Filed 09/26/2018 09:26 / AFFIDAVIT / CV 18 904355 / Confirmation Nbr. 1538239 / CLJSZ

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Prepayment Rider |
| | | ARM Rider Addendum |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

-6(OH) (0405)                    Page 2 of 16                    Initials: [initials]                    Form 3036   1/01

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the _____ County _____ of _____ Cuyahoga _____ ;

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: 661-15-060                     which currently has the address of

4932 Nan Linn Drive                                                       [Street]

Richmond Heights                              [City], Ohio 44143          [Zip Code]

("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(OH) (0409)                    Page 3 of 15        Initials: _____      Form 3036  1/01

Situated in the City of Richmond Heights, County of Cuyahoga and State of Ohio:

And being part of Original Euclid Township Tract No. 13, further known as being Sublot 72 in Frank Mavec's Lancaster Estates as shown on the plat recorded in Volume 154 of Maps, Page 16 of Cuyahoga County Records, said Sublot having a frontage of 75 feet on the Southerly side of Nan Linn Drive, extending back between parallel lines a distance of 150 feet, and having a rear line of 75 feet, as appears on said recorded plat, be the same more or less, but subject to all legal highways.

Parcel No: 661-15-060

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Electronically Filed 09/29/2018 09:28 / AFFIDAVIT / CV 18 903356 / Confirmation Nbr. 1555239 / CLJSZ

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Electronically Filed 09/26/2018 09:26 / AFFIDAVIT / CV 18 901354 / Confirmation Nbr. 1555239 / CLJSZ

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in

exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

-8(OH) (0405)          Page 9 of 15          Initials: JHQ RJC          Form 3036   1/01

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a

prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in

this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

VMP®-8(OH) (0406)          Page 12 of 15          Initials: VHC RJC          Form 3036  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, Cuyahoga County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

-6(OH) (0405)                    Page 13 of 15                    Initials: _____    Form 3036    1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____  (Seal)
VIRGIL N. COLLINS                              -Borrower

_____

_____  (Seal)
RUTH J. COLLINS                                 -Borrower

_____  (Seal)        _____  (Seal)
                                    -Borrower                                        -Borrower

_____  (Seal)        _____  (Seal)
                                    -Borrower                                        -Borrower

_____  (Seal)        _____  (Seal)
                                    -Borrower                                        -Borrower

VMP® -6(OH) (0405)                 Page 14 of 15                      Form 3036   1/01

STATE OF OHIO,                                    CUYAHOGA County ss:

This instrument was acknowledged before me this 2ND    day of    JUNE, 2006         , by
VIRGIL N. COLLINS AND RUTH J. COLLINS, HUSBAND AND WIFE

My Commission Expires:

Notary Public

MICHAEL A. SOBE, Notary Public
State of Ohio - Lake County
My Commission Expires Sept. 27, 2010

This instrument was prepared by
New Century Mortgage Corporation

-6(OH) (0405)                    Page 15 of 15          Initials: VNC
                                                                  RJC           Form 3038    1/01

# ADJUSTABLE RATE RIDER

(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 2nd          day of June,  2006          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to New Century Mortgage Corporation

("Lender") of the same date and covering the property described in the Security Instrument and located at: 4932 Nan Linn Drive, Richmond Heights, OH  44143

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of          6.975 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of June,  2008          , and on that day every 6th          month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s)                              percentage points
(          6.050 %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument

VMP-838R (0402)  Form 3138  1/01
Page 1 of 3           Initials: *VMP*
VMP Mortgage Solutions, Inc.
(800)521-7291

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than

8.475 % or less than                          6.975 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One And

One-half                                                                      percentage points

(                                  1.500 %) from the rate of interest I have been paying for the preceding

6                          months. My interest rate will never be greater than                          13.975 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows :

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
VIRGIL H. COLLINS           -Borrower     RUTH J. COLLINS           -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                               -Borrower

-838R (0402)                    Page 3 of 3                    Form 3138  1/01

# ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index – Rate Caps)

This Adjustable Rate Rider Addendum is made this **2nd**      day of **June**      **2006** ,
and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the
"Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's
Note to

**New Century Mortgage Corporation**                                        (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

**4932 Nan Linn Drive, Richmond Heights, OH  44143**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the
provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall
prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or
Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and
Lender further covenant and agree as follows:

**4.    (D) LIMITS ON INTEREST RATE CHANGES**
    The interest rate I am required to pay at the first change date will not be greater than
     **8.475 %** or less than      **6.975 %**. Thereafter, my interest rate
will never be increased or decreased on any single Change Date by more than
**One And One-half**      percentage point(s) (      **1.500 %**) from
the rate of interest I have been paying for the preceding  **6**  months. My interest rate will never be
greater than      **13.975 %** or less than      **6.975 %**.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider Addendum.

_____          _____
**VIRGIL H. COLLINS**                          **RUTH J. COLLINS**


_____          _____


_____          _____


NCMC
Adjustable Rate Rider Addendum
RE-102   (082296)                    Page 1 of 1                    

# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This prepayment Rider is made this 2nd      day of June       2006      , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation**                                                 (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5.  BORROWER RIGHT TO PREPAY**

I have the right to make payments of principal any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".

Except as provided below, I may make a full or partial prepayment at any time. If I make a partial prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other partial prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a full prepayment at any time. However, if within the first  2  years after the execution of the Security Instrument, I make any prepayment(s) within any 12-month period the total amount of which exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to

**One**                                                    percent (              1%) of the original principal amount of the loan which is in excess of TWENTY PERCENT (20%) of the original principal amount.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

**VIRGIL H. COLLINS**                              **RUTH J. COLLINS**

NCMC
Prepay Rider - ARM (OH)
RE-105 (082606)                          Page 1 of 1

[black redaction bar]

Exhibit C

CUYAHOGA COUNTY
FISCAL OFFICE - 2
09/11/2018 10:11:31 AM
**201809110246**

| F18-24197 | SPACE ABOVE THIS LINE FOR RECORDER'S USE |
|---|---|

**ASSIGNMENT OF MORTGAGE**

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged,

New Century Mortgage Corporation, c/o Carrington Mortgage Services, LLC 1600 South Douglas Road, Suite 200-A, Anaheim, CA 92806

("Assignor")

does hereby transfer, and set over, without recourse, unto

Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates, c/o Carrington Mortgage Services, LLC 1600 South Douglas Road, Suite 200-A, Anaheim, CA 92806

("Assignee")

| | |
|---|---|
| Executed and delivered by: | Virgil H. Collins and Ruth J. Collins, husband and wife |
| Mortgage Deed dated: | June 2, 2006 |
| to and in favor of: | New Century Mortgage Corporation |
| filed for record on (date): | June 5, 2006 |
| as Official Record: | Instrument Number 200606050479 |
| in the Recorder's Office of: | Cuyahoga |
| Property address: | 4932 Nan Linn Drive, Richmond Heights, OH 44143 |
| Legal description: | Situated in the City of Richmond Heights, County of Cuyahoga and State of Ohio: |

And being part of original Euclid Township Tract No. 13, further known as being Sublot 72 in Frank Mavec's Lancaster Estates as shown on the Plat Recorded in Volume 154 of Maps, Page 16 of Cuyahoga County Records, said Sublot having a frontage of 75 feet in the Southerly side of Nan Linn Drive, extending back between parallel lines a distance of 150 feet, and having a rear line of 75 feet, as appears on said Recorded Plat, be the same more or less, but subject to all legal highways.

IN WITNESS WHEREOF New Century Mortgage Corporation , has caused this Assignment

to be executed, for and on its behalf by Elizabeth A. Ostermann

Vice President this 6 day of September 20 18.

New Century Liquidating Trust successor-in-interest to New Century Mortgage Corporation by Carrington Mortgage Services, LLC as attorney-in-fact

In the presence of: By: (Sign)

(Sign)

Delann Vaughn

(Type or print name)

Its: Elizabeth A. Ostermann
Vice President, Carrington Mortgage Services, LLC
(Title)

(Sign)

Nimna Palmer

(Type or print name)

A notary public or other officer completing this Certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California }
County of Orange }

On SEP 06 2018 , before me, Judit Saucedo Notary Public , personally

appeared Elizabeth A. Ostermann , who proved to me on the

basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within

instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized

capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity

upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing

paragraph is true and correct

WITNESS my Hand and Official Seal

JUDIT SAUCEDO
Notary Public • California
Orange County
Commission # 2169156
My Comm. Expires Mar 27, 2021

Notary Signature (Seal)

MAR 27 2021

My Commission Expires

PREPARED BY:
Reimer Law Co.
By: Peter L. Mehler, Esq.



106797727

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

VIRGIL H. COLLINS, ET AL
    Defendant

Case No: CV-18-904354

Judge: STUART A FRIEDMAN

## JOURNAL ENTRY

THE MOTION OF DEFENDANT VIRGIL COLLINS FOR LEAVE TO FILE ANSWER INSTANTER IS GRANTED.
DEFENDANT'S ANSWER IS DEEMED FILED AS OF THE DATE OF THIS ORDER.

_____
Judge Signature        12/22/2018
                 CPKRH

12/21/2018

STATE OF OHIO
COUNTY OF CUYAHOGA, } ss.

**Case No.** 904354

**Publication Fee:** $544.50

**Caption:** Wells Fargo Bank, N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates vs. Virgil H. Collins, et al.

CV18904354    106813163

I, Lisa A. Cech, being duly sworn upon my oath, depose and say that I am the agent of the DAILY LEGAL NEWS, and that the advertisement attached hereto was published in the DAILY LEGAL NEWS, a daily newspaper of general circulation, printed in the City of Cleveland, County of Cuyahoga, Ohio for a period of three consecutive weeks and on the same day of each week, on and after the 29th day of November A.D. 2018.

*Lisa A. Cech*

Sworn to and subscribed in my presence this 13th day of December A.D. 2018.

*Cynthia E Condol*

NOTARY PUBLIC

CYNTHIA E. CONDOL, Notary Public
STATE OF OHIO (Cuyahoga County)
My Commission Expires December 22, 2018

**Legal Notice**

904354—Wells Fargo Bank, N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates vs. Virgil H. Collins, et al.

New Century Mortgage Corporation, whose last known address is 18400 Von Karman, Suite 1000, Irvine, CA 92612, otherwise whose address is unknown; and New Century Liquidating Trust, successor-in-interest to New Century Mortgage Corporation, whose last known address is 575 Anton Boulevard, Costa Mesa, CA 92626, otherwise whose address is unknown, will take notice that on September 25, 2018, the undersigned, Wells Fargo Bank, N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates c/o Carrington Mortgage Services, filed its complaint in the Court of Common Pleas, 1200 Ontario Street, Cleveland, Ohio 44113, of Cuyahoga County, Ohio, alleging that the defendants named above have or may claim to have an interest in the following described real estate to wit:

Permanent Parcel No. 661-15-060 Address: 4932 Nan Linn Drive, Richmond Heights, OH 44143.

A copy of the full legal description may be obtained from the County Auditor's Office, 2079 East Ninth Street, Cleveland, OH 44115. (216) 443-7010.

Plaintiff further alleges that by reason of the default of the defendant obligors in the payment of a promissory note according to its tenor, the conditions of a concurrent mortgage deed given to secure the payment of said note and conveying the above described premises, have been broken and the same has become a deed absolute.

Plaintiff prays that the defendants named above be required to answer and set up their interest in said real estate, or be forever barred from asserting the same, for foreclosure of said mortgage, the marshaling of liens, and the sale of said real estate, and the proceeds of said sale applied to the payment of Plaintiff's claim in the proper order of its priority and for such other and further relief as is just and equitable.

The defendants named above are required to answer on or before the 10th day of January, 2019.

WELLS FARGO BANK, N.A., AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC3 ASSET-BACKED PASS-THROUGH CERTIFICATES C/O CARRINGTON MORTGAGE SERVICES.

By Edward G. Bohnert, Ronald J. Chernek and Douglas A. Haessig, Attorneys for Plaintiff.

Nov29Dec6-13, 2018.

2018 DEC 24 P 4: 05
CLERK OF COURTS
CUYAHOGA COUNTY

Daily Legal News
2935 Prospect Avenue
Cleveland, Ohio 44115
(216) 696-3322
**PROOF OF PUBLICATION**

Motion No.  <u>4746496</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**January 15, 2019 15:17**

By: EDWARD BOHNERT 0004920

Confirmation Nbr. 1599651

WELLS FARGO BANK N.A.                            CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL                     **Judge:  ASHLEY KILBANE**

**Pages Filed:**  75

F18-24197                    EGB/rev.                    January 14, 2019

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates | ) Case No. CV 18 904354 <br> ) <br> ) Judge Ashley Kilbane <br> ) <br> ) <br> ) **MOTION FOR SUMMARY JUDGMENT** <br> ) **INCLUDING AFFIDAVIT IN** <br> ) **SUPPORT** |
| Plaintiff | |
| vs. | ) <br> ) |
| Virgil H. Collins, et al. | ) <br> ) |
| Defendants | ) |

Plaintiff, pursuant to Civil Rule 56, moves the Court for an order granting summary judgment in its favor against Defendant Virgil H. Collins, on the grounds that there is no genuine issue of material fact, and Plaintiff is entitled to judgment as a matter of law. In support of this Motion, in addition to the pleading already filed in this case, Plaintiff relies on the attached Affidavit and accompanying evidentiary material, and the attached Memorandum.

/s/ Edward G. Bohnert
**REIMER LAW CO.**
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I. STATEMENT OF FACTS

Plaintiff initiated this action by filing a Complaint seeking judgment on a mortgage note (the "Note") and foreclosure of the mortgage held by Plaintiff (the "Mortgage"). Defendant Virgil H. Collins has filed an Answer herein essentially containing a general denial.

Plaintiff's Affidavit, which is attached as Exhibit 1, establishes that: (1) the Note, Mortgage, assignment of mortgage, notice of default and acceleration letter and payment history and payoff record are true copies of those items as contained in Plaintiff's business records; (2) Defendants Virgil H. Collins and Ruth J. Collins are in default of payment of the Note, and there is due thereon the amount of $126,719.39 plus interest at the rate of 7.5% per annum from October 1, 2017 and (3) Plaintiff has exercised its option to accelerate the balance due on the Note. (Pl.'s Aff. ¶¶ 1 – 8.)

Plaintiff is the holder of the Note by virtue of its possession of the original blank endorsed Note; and Plaintiff is the holder of the Mortgage by virtue of an assignment from New Century Mortgage Corporation to Wells Fargo Bank N.A., as

Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates, recorded in Instrument No. 201809110246, Cuyahoga County Records; as more set forth in Plaintiff's Affidavit and Exhibits.

## II. LAW AND ARGUMENT

As provided in the Note and Mortgage, Plaintiff has an absolute legal right, upon default, to accelerate and call due the balance due thereon. The filing of the Complaint is sufficient declaration of the exercise of this option. Nixon vs. Buckeye Building & Loan Co., 18 Ohio L. Abs. 261 (Ohio Ct. App. 10th Dist. 1934).

In light of the default under the Note and Mortgage established by Plaintiff's Affidavit, it is apparent that the Answer is without merit. Under the terms of the Note and Mortgage, the whole of the unpaid principal of the Note and all accrued interest are presently due and payable. The Mortgage is also in default, and pursuant to the provisions of the defeasance clause, Plaintiff is entitled to have the Mortgage foreclosed, and the property covered by the Mortgage sold in the manner prescribed by law.

It is well established under Ohio law that once a default occurs under the terms of a mortgage note, the mortgagee is entitled to a judgment in foreclosure. Union Central Life Ins. Co. v. Curtis, 35 Ohio St. 357 (1880); Bradfield v. Hale, 67

Ohio St. 316 (1902); Evilsozor v. Speckbaugh, 55 Ohio L. Abs. 353, 86 N.E.2d 296 (Ct. App. Miami County 1949).

Pursuant to Civil Rule 56(C), summary judgment is proper if the court determines that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc., 50 Ohio St. 2d 317, 327 (1977).

Once summary judgment is requested and supported as provided in Rule 56(C), the responding party may not rest upon the mere allegations or denials of its pleadings, but it must set forth specific facts showing that there is a genuine issue for trial. Ohio R. Civ. P. 56(E); Jackson v. Alert Fire and Safety Equip., Inc., 58 Ohio St. 3d. 48 (1991). Further, the issue to be tried must be genuine, allowing reasonable minds to return a verdict for the nonmoving party. The existence of a mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 – 253 (1986).

**III. CONCLUSION**

Based on the pleadings, and the facts set forth in the Affidavit in support of this Motion, Plaintiff submits that there are no issues of material fact left for determination by this Court, and that Plaintiff is entitled to judgment as a matter of law. Accordingly, the Motion for Summary Judgment should be granted.

/s/ Edward G. Bohnert
**REIMER LAW CO.**
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Email: ebohnert@reimerlaw.com

**NOTICE**

The Defendants will take notice that the within Motion will be on for hearing at the convenience of the Court.

/s/ Edward G. Bohnert
**REIMER LAW CO.**
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Email: ebohnert@reimerlaw.com

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent by electronic e-service notification or regular U.S. Mail to the following on _____

January 15, 2019

_____ :

Joanne Brown
4070 Mayfield Road
Cleveland, OH  44112

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH  44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

New Century Mortgage Corporation
Service by Publication

New Century Liquidating Trust,
successor-in-interest to
New Century Mortgage Corporation
Service by Publication


    /s/ Edward G. Bohnert
_____
**REIMER LAW CO.**
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com

F18-24197                        eng


IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

Wells Fargo Bank N.A., as     ) CASE NO. CV18904354
Trustee, for Carrington Mortgage )
Loan Trust, Series 2006-NC3   ) JUDGE STUART A. FRIEDMAN
Asset-Backed Pass-Through     )
Certificates                  )
                              )          **AFFIDAVIT**
                    Plaintiff)
                              )
   -vs-                       )
                              )
Virgil H. Collins, et al.

_____  Defendant

STATE OF _____ )
              ~~California~~        ) ss
              Orange
COUNTY OF_____ )


_____Laura Hovis_____ , being first duly sworn on oath, deposes and

states as follows:

    1.    I am authorized to execute this affidavit on behalf of

Carrington Mortgage Services, LLC as Attorney in Fact for Wells Fargo

Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series

2006-NC3 Asset-Backed Pass-Through Certificates. The statements made

in this Affidavit are based on my personal knowledge.

    2.    I am over the age of 18 and competent to testify as to the

matters contained herein.

    3.    For convenience, the following party or parties listed on

the Note are referred herein as "Borrower": Virgil H. Collins and Ruth

J. Collins.

4.   In the regular performance of my job functions, I am familiar with business records maintained by Carrington Mortgage Services LLC for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Carrington Mortgage Services LLC.   It is the regular practice of Carrington Mortgage Services LLC's mortgage servicing business to make these records.

5.   Carrington Mortgage Services LLC's business records that relate to the Borrower's loan that I reviewed and relied upon for the statements made in this Affidavit include but are not limited to the Note, Mortgage, Assignment of Mortgage and Carrington Mortgage Services LLC's electronic servicing system. True and exact copies of the Note, Mortgage and Assignment of Mortgage are attached hereto marked Exhibits A, B and C. Also Attached hereto as Exhibit "D" is a true and accurate copy from the business records of Carrington Mortgage Services, LLC of notice of default/acceleration letters mailed to the borrowers Virgil H. Collins and Ruth J. Collins on December 7, 2017.

6.   Carrington Mortgage Services LLC's records contain a Note executed by Virgil H. Collins and Ruth J. Collins secured by a Mortgage in the amount of $152,000.00 for a property located at 4932 Nan Linn Drive, Richmond Heights, OH 44143. Carrington Mortgage Services LLC is the servicer of the loan and is authorized to act on behalf of the holder of the Note Wells Fargo Bank N.A., as Trustee,

for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates.

7.    The Borrower has failed to pay under the terms of the Note and Mortgage the payment due November 1, 2017.  The Borrower's default in payment on the Note and Mortgage has not been cured, and Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates has accelerated the Note payments making the entire balance due and owing in accordance with the terms of the Note, along with accrued interest. Attached hereto as Exhibit F, is a true and accurate copy from the business records of Carrington Mortgage Services, LLC of a loan/payment history and payoff statement on the subject mortgage loan.

8.    As a result of the Borrower's default on the Note, the Borrower owes the principal sum of $126,719.39 plus interest at 7.5% per annum from October 1, 2017 plus advances for taxes, insurance, and otherwise to protect the property, if any.

DEC 1 8 2018

_____
(Sign)  Carrington Mortgage Services, LLC as Attorney in Fact for Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates

Laura Hovis
_____
(Type or Print Name)

SWORN TO BEFORE ME and subscribed in my presence this _____ day of _____ 2018.

See Attached

_____
NOTARY PUBLIC

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

# CALIFORNIA JURAT

State of California

County of Orange

Subscribed and sworn to (or affirmed) before me on this ___18___ day of ___December___ 2018 by

_____Laura Hovis_____ proved to me on the basis of satisfactory

evidence to be the person who appeared before me.

0

_____
Signature    Wheny Wulandari

WHENY WULANDARI
Notary Public – California
Orange County
Commission # 2214915
My Comm. Expires Oct 17, 2021

(Notary Seal)

# OPTIONAL INFORMATION

## DESCRIPTION OF THE ATTACHED DOCUMENT

**Affidavit**

(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### INSTRUCTIONS FOR COMPLETING THIS FORM

The wording of all Jurats completed in California after January 1, 2008 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one which does contain proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the jurat process is completed
- Print the name(s) of document signer(s) who personally appear at the time of notarization
- Signature of the notary public must match the signature on file with the office of the county clerk
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - ❖ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date
- Securely attach this document to the signed document

Exhibit A

# ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 2  2006          Richmond Heights          Ohio
[Date]                    [City]                    [State]

4932 Nan Linn Drive, Richmond Heights, OH  44143
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 152,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **New Century Mortgage Corporation**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.975 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on July 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 06/01/2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,008.71          This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N          Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4          Initials: JNC

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(A) Change Dates**

   The interest rate I will pay may change on the first day of **June, 2008** , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**

   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   **(C) Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And Five Hundredth(s)** percentage points ( **6.050** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

   **(D) Limits on Interest Rate Changes**

   The interest rate I am required to pay at the first Change Date will not be greater than **8.475** % or less than **6.975**%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) ( **1.500** %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **13.975%.**

   **(E) Effective Date of Changes**

   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   **(F) Notice of Changes**

   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

   I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3520 1/01

 **-838N** (0712)

Page 2 of 4

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:



Form 3520 1/01



Electronically Filed 09/25/2018 15:48 / / CV 18 904354 / Confirmation Nbr. 1504316 / CLJSZ

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
VIRGIL H. COLLINS                -Borrower

_____ (Seal)
RUTH J COLLINS                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

[Sign Original Only]

Pay to the order of, without recourse

New Century Mortgage Corporation
By: _____
S. Konagy
V.P. Records Management

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Exhibit B 

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY – 21
MORT 06/05/2006 12:09:11 PM
**200606050479**

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   June 2, 2006
together with all Riders to this document.
**(B) "Borrower"** is VIRGIL B. COLLINS and RUTH J. COLLINS , HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated   June 2, 2006
The Note states that Borrower owes Lender ONE HUNDRED FIFTY-TWO THOUSAND AND 00/100
                                                                                          Dollars
(U.S. $ 152,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 06/01/2036

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3036  1/ 01

-6(OH) (0409)
Page 1 of 15                      Initials
VMP Mortgage Solutions, Inc. (800)521-7291

TOWER CITY TITLE AGENCY, LLC.
6161 Wilson Mills Rd.
HIGHLAND HEIGHTS, OH 44143
06-01905

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| | | **Prepayment Rider** |
| | | **ARM Rider Addendum** |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

-6(OH) (0405)      Page 2 of 16      Initials: VMC KJC      Form 3036  1/01

Electronically Filed 09/25/2018 15:48 / / CV 18 904354 / Confirmation Nbr  1504316 / CLJSZ

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the

|  | County | of | Cuyahoga | : |
|---|---|---|---|---|
| [Type of Recording Jurisdiction] | | | [Name of Recording Jurisdiction] | |

**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: 661-15-060                                                         which currently has the address of

4932 Nan Linn Drive                                                                                                     [Street]

Richmond Heights                                                    [City], Ohio 44143                    [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(OH) (0405)                                        Page 3 of 15                      Initials: JKC                    Form 3036    1/01

Situated in the City of Richmond Heights, County of Cuyahoga and State of Ohio:

And being part of Original Euclid Township Tract No. 13, further known as being Sublot 72 in Frank Mavec's Lancaster Estates as shown on the plat recorded in Volume 154 of Maps, Page 16 of Cuyahoga County Records, said Sublot having a frontage of 75 feet on the Southerly side of Nan Linn Drive, extending back between parallel lines a distance of 150 feet, and having a rear line of 75 feet, as appears on said recorded plat, be the same more or less, but subject to all legal highways.

Parcel No: 661-15-060

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

-6(OH) (0405)                    Page 4 of 15                    Form 3036   1/01

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(OH) (0405)                    Page 6 of 16                   Initials: _____   Form 3036   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

    **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

    **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

    Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

    **8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

    **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(OH) (0405)          Page 7 of 15         Initials: _VHC_ / _RJC_         Form 3036   1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in

-6(OH) (0408)                                    Page 8 of 15                                    Form 3036    1/01

exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

-6(OH) (0405)    Page 8 of 15    Initials: JHB  RJC    Form 3036   1/01

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a

Initials: VHO
RJC

Form 3036    1/01

prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in

this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

UMP -6(OH) (0405)                    Page 12 of 15            Initials: ___            Form 3036  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, Cuyahoga
County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

-6(OH) (0406)                    Page 13 of 14                    Form 3036    1/01

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                            VIRGIL E. COLLINS        -Borrower

_____                    _____ (Seal)
                                            RUTH J. COLLINS          -Borrower

_____ (Seal)             _____ (Seal)
                    -Borrower                                  -Borrower

_____ (Seal)             _____ (Seal)
                    -Borrower                                  -Borrower

_____ (Seal)             _____ (Seal)
                    -Borrower                                  -Borrower

-6(OH) (0405)                  Page 14 of 15                  Form 3036   1/01

**STATE OF OHIO,**                                                  CUYAHOGA County ss:

This instrument was acknowledged before me this 2ND   day of    JUNE, 2006           , by
VIRGIL H. COLLINS AND RUTH J. COLLINS, HUSBAND AND WIFE

My Commission Expires:

Michael A. Sobe
Notary Public

MICHAEL A. SOBE, Notary Public
State of Ohio - Lake County
My Commission Expires Sept. 27, 2010

This instrument was prepared by
New Century Mortgage Corporation

-6(OH) (0403)                     Page 15 of 15           Initials: ___VHC___          Form 3036  1/01
                                                                   RJC

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 2nd     day of June,  2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**New Century Mortgage Corporation**

("Lender") of the same date and covering the property described in the Security Instrument
and located at: **4932 Nan Linn Drive, Richmond Heights, OH  44143**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of                    6.975 %. The Note provides
for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of June,  2008
and on that day every 6th          month thereafter. Each date on which my interest rate
could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most
recent Index figure available as of the first business day of the month immediately preceding
the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based
upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Six And Five Hundredth(s)**                                          percentage points
(          6.050 %) to the Current Index. The Note Holder will then round the result of

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN
THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument**

-838R (0402) Form 3138  1/01
Page 1 of 3      Initials: _VNQ_
VMP Mortgage Solutions, Inc.  _RJC_
(800)521-7291

Electronically Filed 09/25/2018 15.48 / / CV 18 904354 / Confirmation Nbr  1504316 / CLJSZ

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.475 % or less than 6.975 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and One-half percentage points ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.975 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials: _VHE_ _RJC_

CLT-838R (0402)   Page 2 of 3   Form 3138 1/01

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
VIRGIL H. COLLINS    -Borrower      RUTH J. COLLINS    -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                          -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                          -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                          -Borrower

-838R (0402)              Page 3 of 3              Form 3138  1/01

# ADJUSTABLE RATE RIDER ADDENDUM
(Libor Index - Rate Caps)

This Adjustable Rate Rider Addendum is made this **2nd** day of **June** **2006** and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the "Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

**4932 Nan Linn Drive, Richmond Heights, OH 44143**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and Lender further covenant and agree as follows:

**4. (D) LIMITS ON INTEREST RATE CHANGES**

The interest rate I am required to pay at the first change date will not be greater than **8.475 %** or less than **6.975 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) ( **1.500 %**) from the rate of interest I have been paying for the preceding **8** months. My interest rate will never be greater than **13.975 %** or less than **6.975 %**.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider Addendum.

_____
**VIRGIL H. COLLINS**

_____
**RUTH J. COLLINS**

NCMC
Adjustable Rate Rider Addendum
RE-102 (082296)                    Page 1 of 1

# PREPAYMENT RIDER
## ADJUSTABLE RATE LOAN

This prepayment Rider is made this **2nd**     day of **June**     **2006**     , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation**                                    (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5. BORROWER RIGHT TO PREPAY**

I have the right to make payments of principal any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".

Except as provided below, I may make a full or partial prepayment at any time. If I make a partial prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other partial prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a full prepayment at any time. However, if within the first **2** years after the execution of the Security Instrument, I make any prepayment(s) within any 12-month period the total amount of which exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to

**One**                                        percent (          **1%**)
of the original principal amount of the loan which is in excess of TWENTY PERCENT (20%) of the original principal amount.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider

_Virgil H Collins_                                   _Ruth J Collins_

**VIRGIL H. COLLINS**                                **RUTH J. COLLINS**

NCMC
Prepay Rider - ARM (OH)
RE-105 (082606)                     Page 1 of 1

Exhibit C

CUYAHOGA COUNTY
FISCAL OFFICE - 2
09/11/2018 10:11:31 AM
**201809110246**

| F18-24197 | SPACE ABOVE THIS LINE FOR RECORDER'S USE |
|---|---|

**ASSIGNMENT OF MORTGAGE**

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged,
New Century Mortgage Corporation, c/o Carrington Mortgage Services, LLC 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806

("Assignor")

does hereby transfer, and set over, without recourse, unto
Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates, c/o Carrington Mortgage Services, LLC 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806

("Assignee")

| | |
|---|---|
| Executed and delivered by: | Virgil H. Collins and Ruth J. Collins, husband and wife |
| Mortgage Deed dated: | June 2, 2006 |
| to and in favor of: | New Century Mortgage Corporation |
| filed for record on (date): | June 6, 2006 |
| as Official Record: | Instrument Number 200606050479 |
| in the Recorder's Office of: | Cuyahoga |
| Property address: | 4932 Nan Linn Drive, Richmond Heights, OH 44143 |
| Legal description: | Situated in the City of Richmond Heights, County of Cuyahoga and State of Ohio:<br><br>And being part of original Euclid Township Tract No. 13, further known as being Sublot 72 in Frank Mavec's Lancaster Estates as shown on the Plat Recorded in Volume 154 of Maps, Page 16 of Cuyahoga County Records, said Sublot having a frontage of 75 feet in the Southerly side of Nan Linn Drive, extending back between parallel lines a distance of 150 feet, and having a rear line of 75 feet, as appears on said Recorded Plat, be the same more or less, but subject to all legal highways. |

IN WITNESS WHEREOF    New Century Mortgage    , has caused this Assignment
Corporation

to be executed, for and on its behalf by    Elizabeth A. Ostermann

Vice President    this    6    day of    September    20 18.

In the presence of:    New Century Liquidating Trust successor-in-
interest to New Century Mortgage Corporation
by Carrington Mortgage Services, LLC as
attorney-in-fact

(Sign)    By: _____
(Sign)

Deiann Vaughn    Its: _____    Elizabeth A. Ostermann
(Type or print name)    (Title)    Vice President, Carrington Mortgage Services, LLC

(Sign)

Nithya Ramani
(Type or print name)

A notary public or other officer completing this
Certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California    }
County of    Orange    }

On    SEP 06 2018    , before me,    Judit Saucedo    Notary Public , personally

appeared    Elizabeth A. Ostermann    , who proved to me on the

basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the written

instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized

capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity

upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the forgoing

paragraph is true and correct

WITNESS my Hand and Official Seal

JUDIT SAUCEDO
Notary Public - California
Orange County
Commission # 2189136
My Comm. Expires Mar 27, 2021

Notary Signature    (Seal)    PREPARED BY:
Reimer Law Co.
MAR 2 7 2021    By: Peter L. Mehler, Esq.
My Commission Expires



**CARRINGTON**
MORTGAGE SERVICES, LLC
P.O. Box 5001
Westfield, IN 46074

0005308
VIRGIL H COLLINS
RUTH J COLLINS
35253 MAPLE GROVE ROAD APT 208
WILLOUGHBY OH 44094-9025

| Exhibit D |

**Property Address:**
4932 NAN LINN DRIVE
RICHMOND HEIGHTS, OH 44143-0000

Loan Number:

12/07/2017

### NOTICE OF INTENT TO FORECLOSE

Dear Mortgagor(s):

The above referenced loan is in default because the monthly payment(s) due on and after 11/01/2017 have not been received. The amount required to cure the delinquency, as of the date of this letter, is $2,158.09 less $0.00, monies held in Unapplied.

**SUBSEQUENT PAYMENTS, LATE CHARGES, AND OTHER FEES WILL BE ADDED TO THE ABOVE STATED REINSTATEMENT AMOUNT AS THEY ARE ASSESSED**

Please remit the total amount due in CERTIFIED FUNDS, utilizing one of the following payment resources:

| **Overnight Mail** | **Western Union** | **MoneyGram** |
| --- | --- | --- |
| **Carrington Mortgage Services, LLC** | Quick Collect (any location) | Receive Code - 7998 |
| Cashiering Dept. 2-270 | Code City - CARRINGTONMS | |
| 1600 South Douglass Road, Suites 110 & 200-A | Code State - CA | |
| Anaheim, CA 92806 | | |

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT. PLEASE CONTACT CARRINGTON MORTGAGE SERVICES, TO DISCUSS HOME RETENTION ALTERNATIVES TO AVOID FORECLOSURE AT (800) 561-4567 OR BY MAIL AT 1600 SOUTH DOUGLASS ROAD, SUITES 110 & 200-A. ANAHEIM. CA 92806. YOU MAY ALSO CONTACT THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) HOTLINE NUMBER AT (800) 569-4287 OR YOU CAN VISIT THEIR WEBSITE AT http://www.hud.gov/foreclosure/index.cfm  TO FIND OUT OTHER OPTIONS YOU MAY HAVE TO AVOID FORECLOSURE

Failure to cure the delinquency within 30 days of the date of this letter may result in acceleration of the sums secured by the Deed of Trust or Mortgage, foreclosure by judicial proceeding, and sale of the property.

You have the right to reinstate your loan after legal action has begun  You also have the right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure

Should you have any questions, please contact our office at (800) 561-4567 Monday through Friday 8:00 a.m. to 8:00 p.m. Eastern Time

Sincerely,

Loan Servicing Department
Carrington Mortgage Services



# IMPORTANT DISCLOSURES

**-VERBAL INQUIRIES & COMPLAINTS-**
For verbal inquiries and complaints about your mortgage loan, please contact the CUSTOMER SERVICE
DEPARTMENT for Carrington Mortgage Services, LLC, by calling 1-800-561-4567.  The CUSTOMER SERVICE
DEPARTMENT for Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8.00 p.m. Eastern
Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

**-IMPORTANT BANKRUPTCY NOTICE-**
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not
reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to
collect a debt from you but merely provides informational notice regarding the status of the loan.  If you are represented
by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING-**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults
on your account may be reflected in your credit report.  As required by law, you are hereby notified that a negative
credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms
of your credit obligations.

**-MINI MIRANDA-**
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained
will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and
does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy
laws of the United States.

**-HUD COUNSELOR INFORMATION-**
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or
counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or
toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the
CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis
of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a
binding contract); because all or part of the applicant's income derives from any public assistance program; or because
the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that
administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington,
DC 20580.

**-SCRA DISCLOSURE-**
**MILITARY PERSONNEL/SERVICEMEMBERS:**  If you or your spouse is a member of the military, please contact us
immediately.  The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and
benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief.  For
additional information and to determine eligibility please contact our Military Assistance Team toll free at
(888) 267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-**
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted
to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and
Attention: Customer Service, P.O. Box 5001, Westfield, IN  46074.  Please include your loan number on all pages of
the correspondence. You have the right to request documents we relied upon in reaching our determination. You may
request such documents or receive further assistance by contacting the CUSTOMER SERVICE DEPARTMENT for
Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern
Time. You may also visit our website at https://carringtonms.com/.

This page is intentionally left blank.





# CARRINGTON
### MORTGAGE SERVICES, LLC
P.O. Box 5001
Westfield, IN 46074

0005367
VIRGIL H COLLINS
RUTH J COLLINS
4932 NAN LINN DRIVE
RICHMOND HEIGHTS OH 44143-1470

**Property Address:**
4932 NAN LINN DRIVE
RICHMOND HEIGHTS, OH 44143-0000

Loan Number

12/07/2017

## NOTICE OF INTENT TO FORECLOSE

Dear Mortgagor(s):

The above referenced loan is in default because the monthly payment(s) due on and after 11/01/2017 have not been received. The amount required to cure the delinquency, as of the date of this letter, is $2,158.09 less $0.00, monies held in Unapplied.

SUBSEQUENT PAYMENTS, LATE CHARGES, AND OTHER FEES WILL BE ADDED TO THE ABOVE STATED REINSTATEMENT AMOUNT AS THEY ARE ASSESSED.

Please remit the total amount due in CERTIFIED FUNDS, utilizing one of the following payment resources:

| **Overnight Mail** | **Western Union** | **MoneyGram** |
| --- | --- | --- |
| **Carrington Mortgage Services, LLC** | Quick Collect (any location) | Receive Code - 7998 |
| **Cashiering Dept. 2-270** | Code City - CARRINGTONMS | |
| 1600 South Douglass Road, Suites 110 & 200-A | Code State - CA | |
| Anaheim, CA 92806 | | |

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, PLEASE CONTACT CARRINGTON MORTGAGE SERVICES, TO DISCUSS HOME RETENTION ALTERNATIVES TO AVOID FORECLOSURE AT (800) 561-4567 OR BY MAIL AT 1600 SOUTH DOUGLASS ROAD, SUITES 110 & 200-A, ANAHEIM, CA 92806 YOU MAY ALSO CONTACT THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) HOTLINE NUMBER AT (800) 569-4287 OR YOU CAN VISIT THEIR WEBSITE AT http://www.hud.gov/foreclosure/index.cfm TO FIND OUT OTHER OPTIONS YOU MAY HAVE TO AVOID FORECLOSURE.

Failure to cure the delinquency within 30 days of the date of this letter may result in acceleration of the sums secured by the Deed of Trust or Mortgage, foreclosure by judicial proceeding, and sale of the property.

You have the right to reinstate your loan after legal action has begun. You also have the right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure

Should you have any questions, please contact our office at (800) 561-4567 Monday through Friday 8:00 a.m. to 8:00 p.m. Eastern Time.

Sincerely,

Loan Servicing Department
Carrington Mortgage Services



## IMPORTANT DISCLOSURES

### -VERBAL INQUIRIES & COMPLAINTS-
For verbal inquiries and complaints about your mortgage loan, please contact the CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC, by calling 1-800-561-4567. The CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8:00 p.m. Eastern Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

### -IMPORTANT BANKRUPTCY NOTICE-
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan. If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

### -CREDIT REPORTING-
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

### -MINI MIRANDA-
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

### -HUD COUNSELOR INFORMATION-
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

### -EQUAL CREDIT OPPORTUNITY ACT NOTICE-
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580

### -SCRA DISCLOSURE-
**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at (888) 267-5474

### -NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074. Please include your loan number on all pages of the correspondence. You have the right to request documents we relied upon in reaching our determination. You may request such documents or receive further assistance by contacting the CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m Eastern Time. You may also visit our website at https://carringtonms.com/.

This page is intentionally left blank.



# CARRINGTON
### MORTGAGE SERVICES, LLC
P.O. Box 5001
Westfield, IN 46074

0007956
VIRGIL H COLLINS
RUTH J COLLINS
35253 MAPLE GROVE ROAD APT 208
WILLOUGHBY OH 44094-9025

**Property Address:**
4932 NAN LINN DRIVE
RICHMOND HEIGHTS, OH 44143-0000

Loan Number:

12/07/2017

## NOTICE OF INTENT TO FORECLOSE

Dear Mortgagor(s):

The above referenced loan is in default because the monthly payment(s) due on and after 11/01/2017 have not been received. The amount required to cure the delinquency, as of the date of this letter, is $2,158.09 less $0.00. monies held in Unapplied

SUBSEQUENT PAYMENTS, LATE CHARGES, AND OTHER FEES WILL BE ADDED TO THE ABOVE STATED REINSTATEMENT AMOUNT AS THEY ARE ASSESSED.

Please remit the total amount due in CERTIFIED FUNDS, utilizing one of the following payment resources:

| **Overnight Mail** | **Western Union** | **MoneyGram** |
|---|---|---|
| Carrington Mortgage Services, LLC | Quick Collect (any location) | Receive Code - 7998 |
| Cashiering Dept. 2-270 | Code City - CARRINGTONMS | |
| 1600 South Douglass Road. Suites 110 & 200-A | Code State - CA | |
| Anaheim, CA 92806 | | |

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, PLEASE CONTACT CARRINGTON MORTGAGE SERVICES. TO DISCUSS HOME RETENTION ALTERNATIVES TO AVOID FORECLOSURE AT (800) 561-4567 OR BY MAIL AT 1600 SOUTH DOUGLASS ROAD. SUITES 110 & 200-A. ANAHEIM, CA 92806. YOU MAY ALSO CONTACT THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) HOTLINE NUMBER AT (800) 569-4287 OR YOU CAN VISIT THEIR WEBSITE AT http://www.hud.gov/foreclosure/index.cfm TO FIND OUT OTHER OPTIONS YOU MAY HAVE TO AVOID FORECLOSURE.

Failure to cure the delinquency within 30 days of the date of this letter may result in acceleration of the sums secured by the Deed of Trust or Mortgage. foreclosure by judicial proceeding. and sale of the property.

You have the right to reinstate your loan after legal action has begun. You also have the right to assert in foreclosure. the non-existence of a default or any other defense to acceleration and foreclosure.

Should you have any questions. please contact our office at (800) 561-4567 Monday through Friday 8.00 a.m  to 8:00 p m. Eastern Time

Sincerely,

Loan Servicing Department
Carrington Mortgage Services



## IMPORTANT DISCLOSURES

### -VERBAL INQUIRIES & COMPLAINTS-
For verbal inquiries and complaints about your mortgage loan, please contact the CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC, by calling 1-800-561-4567. The CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8:00 p.m. Eastern Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

### -IMPORTANT BANKRUPTCY NOTICE-
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan. If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

### -CREDIT REPORTING-
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

### -MINI MIRANDA-
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

### -HUD COUNSELOR INFORMATION-
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

### -EQUAL CREDIT OPPORTUNITY ACT NOTICE-
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

### -SCRA DISCLOSURE-
**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately  The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at (888) 267-5474.

### -NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074. Please include your loan number on all pages of the correspondence. You have the right to request documents we relied upon in reaching our determination. You may request such documents or receive further assistance by contacting the CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Time. You may also visit our website at https://carringtonms.com/.

This page is intentionally left blank.



# CARRINGTON
### MORTGAGE SERVICES, LLC
P.O. Box 5001
Westfield, IN 46074

0008018  ███████████████████████
VIRGIL H COLLINS
RUTH J COLLINS
4932 NAN LINN DRIVE
RICHMOND HEIGHTS OH 44143-1470

**Property Address:**
4932 NAN LINN DRIVE
RICHMOND HEIGHTS, OH 44143-0000

Loan Number ███████████████

12/07/2017

## NOTICE OF INTENT TO FORECLOSE

Dear Mortgagor(s):

The above referenced loan is in default because the monthly payment(s) due on and after 11/01/2017 have not been received. The amount required to cure the delinquency, as of the date of this letter, is $2,158.09 less $0.00, monies held in Unapplied.

**SUBSEQUENT PAYMENTS, LATE CHARGES, AND OTHER FEES WILL BE ADDED TO THE ABOVE STATED REINSTATEMENT AMOUNT AS THEY ARE ASSESSED.**

Please remit the total amount due in **CERTIFIED FUNDS**, utilizing one of the following payment resources:

| **Overnight Mail** | **Western Union** | **MoneyGram** |
|---|---|---|
| **Carrington Mortgage Services, LLC** | Quick Collect (any location) | Receive Code - 7998 |
| **Cashiering Dept. 2-270** | Code City - CARRINGTONMS | |
| 1600 South Douglass Road, Suites 110 & 200-A | Code State - CA | |
| Anaheim, CA 92806 | | |

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, PLEASE CONTACT CARRINGTON MORTGAGE SERVICES, TO DISCUSS HOME RETENTION ALTERNATIVES TO AVOID FORECLOSURE AT (800) 561-4567 OR BY MAIL AT 1600 SOUTH DOUGLASS ROAD, SUITES 110 & 200-A, ANAHEIM, CA 92806  YOU MAY ALSO CONTACT THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) HOTLINE NUMBER AT (800) 569-4287 OR YOU CAN VISIT THEIR WEBSITE AT http://www.hud.gov/foreclosure/index.cfm  TO FIND OUT OTHER OPTIONS YOU MAY HAVE TO AVOID FORECLOSURE.

Failure to cure the delinquency within 30 days of the date of this letter may result in acceleration of the sums secured by the Deed of Trust or Mortgage, foreclosure by judicial proceeding, and sale of the property.

You have the right to reinstate your loan after legal action has begun. You also have the right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure

Should you have any questions, please contact our office at (800) 561-4567 Monday through Friday 8:00 a.m. to 8:00 p.m Eastern Time.

Sincerely,

Loan Servicing Department
Carrington Mortgage Services



## IMPORTANT DISCLOSURES

**-VERBAL INQUIRIES & COMPLAINTS-**
For verbal inquiries and complaints about your mortgage loan, please contact the CUSTOMER SERVICE
DEPARTMENT for Carrington Mortgage Services, LLC, by calling 1-800-561-4567.  The CUSTOMER SERVICE
DEPARTMENT for Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8:00 p.m. Eastern
Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

**-IMPORTANT BANKRUPTCY NOTICE-**
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not
reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to
collect a debt from you but merely provides informational notice regarding the status of the loan.  If you are represented
by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING-**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults
on your account may be reflected in your credit report.  As required by law, you are hereby notified that a negative
credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms
of your credit obligations.

**-MINI MIRANDA-**
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained
will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and
does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy
laws of the United States.

**-HUD COUNSELOR INFORMATION-**
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or
counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or
toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the
CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis
of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a
binding contract); because all or part of the applicant's income derives from any public assistance program; or because
the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that
administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington,
DC 20580.

**-SCRA DISCLOSURE-**
**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us
immediately.  The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and
benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief.  For
additional information and to determine eligibility please contact our Military Assistance Team toll free at
(888) 267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-**
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted
to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and
Attention: Customer Service, P.O. Box 5001, Westfield, IN  46074. Please include your loan number on all pages of
the correspondence. You have the right to request documents we relied upon in reaching our determination. You may
request such documents or receive further assistance by contacting the CUSTOMER SERVICE DEPARTMENT for
Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8 00 a.m. to 8:00 p.m. Eastern
Time. You may also visit our website at https://carringtonms.com/.

This page is intentionally left blank.





Exhibit F

| FHA Loan? Y/N | N |
|---|---|

***To Exclude Amount Place "X" to the right of the Amount***

| Account Number: | | |
|---|---|---|
| Good Through: | | 8/3/2018 |
| Principal: | $ | 126,719.39 |
| Interest: | $ | 8,269.42 |
| Interest From: | | 10/1/2017 |
| Interest To: | | 8/3/2018 |
| Last Interest Rate: | | 0.075 |
| Per Diem: | | 29.510 |
| Escrow Balance: | $ | 8,058.09 |
| FHA Premium Due HUD | | |
| Late Charges: | $ | 480.33 |
| Corporate Advance: | $ | 140.00 |
| Expense Advance: | $ | - |
| Deferred Amount: | $ | - |
| Unapplied/Suspense: | | 0 |
| Additional Escrow: "Tax/Haz" | | |
| Other: | | |
| Total: | $ | 143,667.23 |



| Loannumber | Transaction Date | Interest Paid-thru Date | Transaction Sequence | Transaction Time | Transaction Code |
|---|---|---|---|---|---|
| | 05/02/2008 | 05/01/2008 | 1 | 1607 | AP |
| | 06/02/2008 | 06/01/2008 | 1 | 1604 | AP |
| | 07/02/2008 | 07/01/2008 | 1 | 1602 | AP |
| | 08/04/2008 | 08/01/2008 | 1 | 1602 | AP |
| | 09/01/2008 | 09/01/2008 | 1 | 1601 | AP |
| | 10/02/2008 | 10/01/2008 | 1 | 2001 | AP |
| | 11/03/2008 | 11/01/2008 | 1 | 1603 | AP |
| | 12/01/2008 | 12/01/2008 | 1 | 2003 | AP |
| | 01/05/2009 | 01/01/2009 | 1 | 1605 | AP |
| | 02/04/2009 | 02/01/2009 | 1 | 2002 | AP |
| | 03/03/2009 | 03/01/2009 | 1 | 2003 | AP |
| | 04/03/2009 | 04/01/2009 | 1 | 1401 | AP |
| | 05/04/2009 | 05/01/2009 | 1 | 1404 | AP |
| | 06/02/2009 | 06/01/2009 | 1 | 1403 | AP |
| | 07/03/2009 | 07/01/2009 | 1 | 1401 | AP |
| | 08/03/2009 | 08/01/2009 | 1 | 1402 | AP |
| | 09/03/2009 | 09/01/2009 | 1 | 1402 | AP |
| | 10/02/2009 | 10/01/2009 | 1 | 2001 | AP |
| | 11/03/2009 | 11/01/2009 | 1 | 2201 | AP |
| | 12/02/2009 | 12/01/2009 | 1 | 1401 | CWA |
| | 12/02/2009 | 12/01/2009 | 3 | 1401 | AP |
| | 01/04/2010 | 01/01/2010 | 1 | 1404 | AP |
| | 02/01/2010 | 02/01/2010 | 1 | 2002 | AP |
| | 03/04/2010 | 03/01/2010 | 1 | 1402 | AP |
| | 04/01/2010 | 04/01/2010 | 1 | 1603 | AP |
| | 05/06/2010 | 05/01/2010 | 1 | 1401 | AP |
| | 05/31/2010 | 06/01/2010 | 1 | 6801 | AP |
| | 07/03/2010 | 07/01/2010 | 1 | 6400 | AP |
| | 08/02/2010 | 08/01/2010 | 1 | 6201 | AP |
| | 09/02/2010 | 09/01/2010 | 1 | 6402 | AP |
| | 10/04/2010 | 10/01/2010 | 1 | 6201 | AP |
| | 11/01/2010 | 11/01/2010 | 1 | 6801 | AP |
| | 12/03/2010 | 12/01/2010 | 1 | 6002 | AP |
| | 01/03/2011 | 01/01/2011 | 1 | 6602 | AP |
| | 02/04/2011 | 02/01/2011 | 1 | 6202 | AP |

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

# CARRINGTON
#### MORTGAGE SERVICES

| | | | | |
|---|---|---|---|---|
| 03/02/2011 | 03/01/2011 | 1 | 6801 | AP |
| 04/02/2011 | 04/01/2011 | 1 | 6200 | AP |
| 05/02/2011 | 05/01/2011 | 1 | 6401 | AP |
| 06/02/2011 | 06/01/2011 | 1 | 6801 | AP |
| 07/04/2011 | 07/01/2011 | 1 | 6200 | AP |
| 08/03/2011 | 08/01/2011 | 1 | 6801 | AP |
| 09/02/2011 | 09/01/2011 | 1 | 6201 | AP |
| 10/03/2011 | 10/01/2011 | 1 | 6201 | AP |
| 11/02/2011 | 11/01/2011 | 1 | 6201 | AP |
| 12/02/2011 | 12/01/2011 | 1 | 6200 | AP |
| 01/06/2012 | 01/01/2012 | 1 | 6801 | AP |
| 02/03/2012 | 02/01/2012 | 1 | 6801 | AP |
| 03/05/2012 | 03/01/2012 | 1 | 6801 | AP |
| 04/02/2012 | 04/01/2012 | 1 | 6801 | AP |
| 05/03/2012 | 05/01/2012 | 1 | 6801 | AP |
| 06/04/2012 | 06/01/2012 | 1 | 7000 | AP |
| 07/05/2012 | 07/01/2012 | 1 | 6801 | AP |
| 08/04/2012 | 08/01/2012 | 1 | 6400 | AP |
| 09/06/2012 | 09/01/2012 | 1 | 6801 | AP |
| 10/01/2012 | 10/01/2012 | 1 | 6202 | AP |
| 11/01/2012 | 11/01/2012 | 1 | 6801 | AP |
| 12/03/2012 | 12/01/2012 | 1 | 6801 | AP |
| 12/29/2012 | 01/01/2013 | 1 | 6200 | AP |
| 02/04/2013 | 02/01/2013 | 1 | 6200 | AP |
| 03/04/2013 | 03/01/2013 | 1 | 6601 | AP |
| 04/04/2013 | 04/01/2013 | 1 | 6801 | AP |
| 05/03/2013 | 05/01/2013 | 1 | 6201 | AP |
| 06/03/2013 | 06/01/2013 | 1 | 6201 | AP |
| 07/03/2013 | 07/01/2013 | 1 | 6201 | AP |
| 08/03/2013 | 08/01/2013 | 1 | 6400 | AP |
| 09/03/2013 | 09/01/2013 | 1 | 6201 | AP |
| 10/04/2013 | 10/01/2013 | 1 | 6801 | AP |
| 11/02/2013 | 11/01/2013 | 1 | 6400 | AP |
| 12/02/2013 | 12/01/2013 | 1 | 6200 | AP |
| 12/30/2013 | 01/01/2014 | 1 | 6200 | AP |
| 02/06/2014 | 02/01/2014 | 1 | 6801 | AP |
| 03/05/2014 | 03/01/2014 | 1 | 6801 | AP |
| 03/31/2014 | 04/01/2014 | 1 | 6801 | AP |
| 05/02/2014 | 05/01/2014 | 1 | 6200 | AP |

# CARRINGTON
MORTGAGE SERVICES

| | | | | |
|---|---|---|---|---|
| 06/03/2014 | 06/01/2014 | 1 | 6201 | AP |
| 07/01/2014 | 07/01/2014 | 1 | 6201 | AP |
| 08/04/2014 | 08/01/2014 | 1 | 6401 | AP |
| 09/05/2014 | 09/01/2014 | 1 | 6201 | AP |
| 10/02/2014 | 10/01/2014 | 1 | 6201 | AP |
| 11/04/2014 | 11/01/2014 | 1 | 6201 | AP |
| 12/01/2014 | 12/01/2014 | 1 | 6802 | AP |
| 01/05/2015 | 01/01/2015 | 1 | 6801 | AP |
| 02/06/2015 | 02/01/2015 | 1 | 6201 | AP |
| 03/03/2015 | 03/01/2015 | 1 | 6802 | AP |
| 04/06/2015 | 04/01/2015 | 1 | 6201 | AP |
| 05/04/2015 | 05/01/2015 | 1 | 6802 | AP |
| 06/03/2015 | 06/01/2015 | 1 | 6802 | AP |
| 07/06/2015 | 07/01/2015 | 1 | 6402 | AP |
| 08/03/2015 | 08/01/2015 | 1 | 6202 | AP |
| 09/02/2015 | 09/01/2015 | 1 | 6801 | AP |
| 10/05/2015 | 10/01/2015 | 1 | 7002 | AP |
| 11/05/2015 | 11/01/2015 | 1 | 6802 | AP |
| 12/09/2015 | 12/01/2015 | 1 | 6200 | AP |
| 01/05/2016 | 01/01/2016 | 1 | 6201 | AP |
| 02/06/2016 | 02/01/2016 | 1 | 6402 | AP |
| 03/05/2016 | 03/01/2016 | 1 | 6201 | AP |
| 03/08/2016 | 03/01/2016 | 1 | 6023 | M90 |
| 03/08/2016 | 03/01/2016 | 10 | 6024 | M90 |
| 04/05/2016 | 04/01/2016 | 3 | 6802 | AP |
| 05/06/2016 | 05/01/2016 | 1 | 6801 | AP |
| 06/06/2016 | 06/01/2016 | 1 | 6803 | AP |
| 07/12/2016 | 07/01/2016 | 1 | 7001 | AP |
| 08/06/2016 | 08/01/2016 | 1 | 6401 | AP |
| 09/06/2016 | 09/01/2016 | 1 | 7001 | AP |
| 10/15/2016 | 10/01/2016 | 1 | 6401 | AP |
| 11/15/2016 | 11/01/2016 | 1 | 6201 | AP |
| 11/30/2016 | 11/01/2016 | 1 | 5920 | M90 |
| 12/13/2016 | 12/01/2016 | 1 | 6201 | AP |
| 01/13/2017 | 01/01/2017 | 1 | 6000 | AP |
| 02/13/2017 | 02/01/2017 | 1 | 6202 | AP |
| 03/15/2017 | 03/01/2017 | 1 | 6601 | AP |
| 04/14/2017 | 04/01/2017 | 1 | 6003 | AP |
| 05/12/2017 | 05/01/2017 | 1 | 6202 | AP |



| | 06/15/2017 | 06/01/2017 | 1 | 6201 | AP |
|---|---|---|---|---|---|
| | 07/14/2017 | 07/01/2017 | 1 | 6201 | AP |
| | 08/14/2017 | 08/01/2017 | 1 | 6401 | AP |
| | 09/14/2017 | 09/01/2017 | 1 | 6404 | AP |
| | 10/13/2017 | 10/01/2017 | 1 | 6400 | AP |
| | 11/17/2017 | 10/01/2017 | 1 | 5113 | SLC |
| | 12/17/2017 | 10/01/2017 | 1 | 5314 | SLC |
| | 12/22/2017 | 10/01/2017 | 1 | 5639 | M90 |
| | 12/22/2017 | 10/01/2017 | 2 | 5639 | M90 |
| | 01/17/2018 | 10/01/2017 | 1 | 5042 | SLC |
| | 02/17/2018 | 10/01/2017 | 1 | 5030 | SLC |
| | 03/17/2018 | 10/01/2017 | 1 | 5053 | SLC |
| | 04/17/2018 | 10/01/2017 | 1 | 5120 | SLC |
| | 05/17/2018 | 10/01/2017 | 1 | 5145 | SLC |
| | 06/17/2018 | 10/01/2017 | 1 | 5350 | SLC |
| | 07/17/2018 | 10/01/2017 | 1 | 5142 | SLC |
| | 08/17/2018 | 10/01/2017 | 1 | 5143 | SLC |
| | 09/18/2018 | 10/01/2017 | 1 | 5152 | SLC |
| | 10/17/2018 | 10/01/2017 | 1 | 5141 | SLC |
| | 11/17/2018 | 10/01/2017 | 1 | 5056 | SLC |
| **Total:** | | | | **133 Transaction(s)** | |

# Pre-boarding Transaction History Details

| Prior Servicer Transaction Code | Transaction Code | Code Description | Principal Balance | Transaction Amount |
|---|---|---|---|---|
| | AP | Autopost - Regular Payment | $148,928.32 | $1,008.71 |
| | AP | Autopost - Regular Payment | $148,785.26 | $1,008.71 |
| | AP | Autopost - Regular Payment | $148,676.26 | $1,159.80 |
| | AP | Autopost - Regular Payment | $148,566.49 | $1,159.80 |
| | AP | Autopost - Regular Payment | $148,455.94 | $1,159.80 |
| | AP | Autopost - Regular Payment | $148,344.61 | $1,159.80 |
| | AP | Autopost - Regular Payment | $148,232.49 | $1,159.80 |
| | AP | Autopost - Regular Payment | $148,119.58 | $1,159.80 |
| | AP | Autopost - Regular Payment | $148,018.84 | $1,227.07 |
| | AP | Autopost - Regular Payment | $147,917.33 | $1,227.07 |
| | AP | Autopost - Regular Payment | $147,815.05 | $1,227.07 |
| | AP | Autopost - Regular Payment | $147,711.99 | $1,227.07 |
| | AP | Autopost - Regular Payment | $147,608.15 | $1,227.07 |
| | AP | Autopost - Regular Payment | $147,503.52 | $1,227.07 |
| | AP | Autopost - Regular Payment | $147,365.38 | $1,075.40 |
| | AP | Autopost - Regular Payment | $147,226.36 | $1,075.40 |
| | AP | Autopost - Regular Payment | $147,086.46 | $1,075.40 |
| | AP | Autopost - Regular Payment | $146,945.67 | $1,075.40 |
| | AP | Autopost - Regular Payment | $146,803.99 | $1,075.40 |
| | CWA | Curtailment posted with payment via Autopost | $146,577.01 | $84.40 |
| | AP | Autopost - Regular Payment | $146,661.41 | $1,075.40 |
| | AP | Autopost - Regular Payment | $146,416.14 | $1,012.85 |
| | AP | Autopost - Regular Payment | $146,254.33 | $1,012.85 |
| | AP | Autopost - Regular Payment | $146,091.58 | $1,012.85 |
| | AP | Autopost - Regular Payment | $145,927.89 | $1,012.85 |
| | AP | Autopost - Regular Payment | $145,763.25 | $1,012.85 |
| | AP | Autopost - Regular Payment | $145,597.65 | $1,012.85 |
| | AP | Autopost - Regular Payment | $145,431.70 | $1,012.24 |
| | AP | Autopost - Regular Payment | $145,264.78 | $1,012.24 |
| | AP | Autopost - Regular Payment | $145,096.89 | $1,012.24 |
| | AP | Autopost - Regular Payment | $144,928.03 | $1,012.24 |
| | AP | Autopost - Regular Payment | $144,758.18 | $1,012.24 |
| | AP | Autopost - Regular Payment | $144,587.35 | $1,012.24 |
| | AP | Autopost - Regular Payment | $144,415.52 | $1,012.24 |
| | AP | Autopost - Regular Payment | $144,242.70 | $1,012.24 |

# Pre-boarding Transaction History Details

| | | | |
|---|---|---|---|
| AP | Autopost - Regular Payment | $144,068.87 | $1,012.24 |
| AP | Autopost - Regular Payment | $143,894.03 | $1,012.24 |
| AP | Autopost - Regular Payment | $143,718.17 | $1,012.24 |
| AP | Autopost - Regular Payment | $143,541.29 | $1,012.24 |
| AP | Autopost - Regular Payment | $143,363.38 | $1,012.24 |
| AP | Autopost - Regular Payment | $143,184.44 | $1,012.24 |
| AP | Autopost - Regular Payment | $143,004.46 | $1,012.24 |
| AP | Autopost - Regular Payment | $142,823.43 | $1,012.24 |
| AP | Autopost - Regular Payment | $142,641.35 | $1,012.24 |
| AP | Autopost - Regular Payment | $142,458.21 | $1,012.24 |
| AP | Autopost - Regular Payment | $142,274.01 | $1,012.24 |
| AP | Autopost - Regular Payment | $142,088.74 | $1,012.24 |
| AP | Autopost - Regular Payment | $141,902.39 | $1,012.24 |
| AP | Autopost - Regular Payment | $141,714.96 | $1,012.24 |
| AP | Autopost - Regular Payment | $141,526.44 | $1,012.24 |
| AP | Autopost - Regular Payment | $141,336.82 | $1,012.24 |
| AP | Autopost - Regular Payment | $141,146.10 | $1,012.24 |
| AP | Autopost - Regular Payment | $140,954.27 | $1,012.24 |
| AP | Autopost - Regular Payment | $140,761.33 | $1,012.24 |
| AP | Autopost - Regular Payment | $140,567.27 | $1,012.24 |
| AP | Autopost - Regular Payment | $140,372.08 | $1,012.24 |
| AP | Autopost - Regular Payment | $140,175.75 | $1,012.24 |
| AP | Autopost - Regular Payment | $139,978.28 | $1,012.24 |
| AP | Autopost - Regular Payment | $139,779.66 | $1,012.24 |
| AP | Autopost - Regular Payment | $139,579.89 | $1,012.24 |
| AP | Autopost - Regular Payment | $139,378.96 | $1,012.24 |
| AP | Autopost - Regular Payment | $139,176.86 | $1,012.24 |
| AP | Autopost - Regular Payment | $138,973.59 | $1,012.24 |
| AP | Autopost - Regular Payment | $138,769.13 | $1,012 24 |
| AP | Autopost - Regular Payment | $138,563.49 | $1,012.24 |
| ΛP | Autopost - Regular Payment | $138,356.65 | $1,012.24 |
| AP | Autopost - Regular Payment | $138,148.61 | $1,012 24 |
| AP | Autopost - Regular Payment | $137,939.36 | $1,012.24 |
| AP | Autopost - Regular Payment | $137,728.89 | $1,012.24 |
| AP | Autopost - Regular Payment | $137,517.21 | $1,012.23 |
| AP | Autopost - Regular Payment | $137,304.30 | $1,012 23 |
| AP | Autopost - Regular Payment | $137,090.15 | $1,012.23 |
| AP | Autopost - Regular Payment | $136,874.76 | $1,012.23 |
| AP | Autopost - Regular Payment | $136,658.11 | $1,012 23 |

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

# Pre-boarding Transaction History Details

| | | | |
|---|---|---|---|
| AP | Autopost - Regular Payment | $136,440.21 | $1,012 23 |
| AP | Autopost - Regular Payment | $136,221.04 | $1,012.23 |
| AP | Autopost - Regular Payment | $136,000.59 | $1,012.23 |
| AP | Autopost - Regular Payment | $135,778.86 | $1,012.23 |
| AP | Autopost - Regular Payment | $135,555.84 | $1,012.23 |
| AP | Autopost - Regular Payment | $135,331.53 | $1,012.23 |
| AP | Autopost - Regular Payment | $135,105.91 | $1,012.23 |
| AP | Autopost - Regular Payment | $134,878.98 | $1,012.23 |
| AP | Autopost - Regular Payment | $134,650.73 | $1,012.23 |
| AP | Autopost - Regular Payment | $134,421.16 | $1,012.23 |
| AP | Autopost - Regular Payment | $134,190.25 | $1,012.23 |
| AP | Autopost - Regular Payment | $133,958.00 | $1,012.23 |
| AP | Autopost - Regular Payment | $133,724.40 | $1,012.23 |
| AP | Autopost - Regular Payment | $133,489.44 | $1,012.23 |
| AP | Autopost - Regular Payment | $133,253.12 | $1,012.23 |
| AP | Autopost - Regular Payment | $133,015.42 | $1,012.23 |
| AP | Autopost - Regular Payment | $132,776.34 | $1,012.23 |
| AP | Autopost - Regular Payment | $132,535.87 | $1,012.23 |
| AP | Autopost - Regular Payment | $132,294.00 | $1,012.23 |
| AP | Autopost - Regular Payment | $132,050.73 | $1,012.23 |
| AP | Autopost - Regular Payment | $131,806.04 | $1,012.23 |
| AP | Autopost - Regular Payment | $131,559.93 | $1,012.23 |
| M90 | County Tax | $131,559.93 | ($2,390.91) |
| M90 | County Tax | $131,559.93 | ($5,110.30) |
| AP | Autopost - Regular Payment | $131,312.39 | $1,012.23 |
| AP | Autopost - Regular Payment | $131,063.41 | $1,012.23 |
| AP | Autopost - Regular Payment | $130,812.99 | $1,012.23 |
| AP | Autopost - Regular Payment | $130,561.87 | $1,014.20 |
| AP | Autopost - Regular Payment | $130,309.28 | $1,639.30 |
| AP | Autopost - Regular Payment | $130,055.22 | $1,639 30 |
| AP | Autopost - Regular Payment | $129,799.68 | $1,639.30 |
| AP | Autopost - Regular Payment | $129,542.64 | $1,639.30 |
| M90 | County Tax | $129,542.64 | ($2,582.16) |
| AP | Autopost - Regular Payment | $129,284.11 | $1,639.30 |
| AP | Autopost - Regular Payment | $129,031.64 | $1,658.66 |
| AP | Autopost - Regular Payment | $128,777.65 | $1,658 66 |
| AP | Autopost · Regular Payment | $128,522.12 | $1,658.66 |
| AP | Autopost - Regular Payment | $128,265.05 | $1,658.66 |
| AP | Autopost - Regular Payment | $128,006.42 | $1,658.66 |

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

# Pre-boarding Transaction History Details

| | | | |
|---|---|---|---|
| AP | Autopost - Regular Payment | $127,746.23 | $1,658.66 |
| AP | Autopost - Regular Payment | $127,491.91 | $1,677.83 |
| AP | Autopost - Regular Payment | $127,236.00 | $1,052.73 |
| AP | Autopost - Regular Payment | $126,978.50 | $1,052.73 |
| AP | Autopost - Regular Payment | $126,719.39 | $1,052.73 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| M90 | County Tax | $126,719.39 | ($2,441.30) |
| M90 | County Tax | $126,719.39 | ($3,034.62) |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| SLC | When the account is selected for Report 83.02, and the Report Flag does not equal 'L' | $0.00 | $0.00 |
| | | | $110,272.91 |

5

| Principal Amount | Interest Amount | Escrow  Amount | Escrow Variance Amount | Late Charge Amount | Escrow Balance |
|---|---|---|---|---|---|
| $142.24 | $866.47 | $0.00 | $0.00 | $0.00 | $0.00 |
| $143.06 | $865.65 | $0.00 | $0.00 | $0.00 | $0.00 |
| $109.00 | $1,050.80 | $0.00 | $0.00 | $0.00 | $0.00 |
| $109.77 | $1,050.03 | $0.00 | $0.00 | $0.00 | $0.00 |
| $110.55 | $1,049.25 | $0.00 | $0.00 | $0.00 | $0.00 |
| $111.33 | $1,048.47 | $0.00 | $0.00 | $0.00 | $0.00 |
| $112.12 | $1,047.68 | $0.00 | $0.00 | $0.00 | $0.00 |
| $112.91 | $1,046.89 | $0.00 | $0.00 | $0.00 | $0.00 |
| $100.74 | $1,126.33 | $0.00 | $0.00 | $0.00 | $0.00 |
| $101.51 | $1,125.56 | $0.00 | $0.00 | $0.00 | $0.00 |
| $102.28 | $1,124.79 | $0.00 | $0.00 | $0.00 | $0.00 |
| $103.06 | $1,124.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| $103.84 | $1,123.23 | $0.00 | $0.00 | $0.00 | $0.00 |
| $104.63 | $1,122.44 | $0.00 | $0.00 | $0.00 | $0.00 |
| $138.14 | $937.26 | $0.00 | $0.00 | $0.00 | $0.00 |
| $139.02 | $936.38 | $0.00 | $0.00 | $0.00 | $0.00 |
| $139 90 | $935.50 | $0.00 | $0.00 | $0.00 | $0.00 |
| $140.79 | $934.61 | $0.00 | $0.00 | $0.00 | $0.00 |
| $141.68 | $933.72 | $0.00 | $0.00 | $0.00 | $0.00 |
| $84.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $142.58 | $932.82 | $0.00 | $0.00 | $0.00 | $0.00 |
| $160 87 | $851.98 | $0.00 | $0.00 | $0.00 | $0.00 |
| $161.81 | $851.04 | $0.00 | $0.00 | $0.00 | $0.00 |
| $162.75 | $850.10 | $0.00 | $0.00 | $0.00 | $0.00 |
| $163.69 | $849.16 | $0.00 | $0.00 | $0.00 | $0.00 |
| $164.64 | $848.21 | $0.00 | $0.00 | $0.00 | $0.00 |
| $165 60 | $847.25 | $0.00 | $0.00 | $0.00 | $0.00 |
| $165.95 | $846.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| $166 92 | $845.32 | $0.00 | $0.00 | $0.00 | $0.00 |
| $167 89 | $844.35 | $0.00 | $0.00 | $0.00 | $0.00 |
| $168.86 | $843.38 | $0.00 | $0.00 | $0.00 | $0.00 |
| $169 85 | $842.39 | $0.00 | $0.00 | $0.00 | $0.00 |
| $170 83 | $841.41 | $0.00 | $0.00 | $0.00 | $0.00 |
| $171 83 | $840.41 | $0 00 | $0.00 | $0 00 | $0.00 |
| $172.82 | $839.42 | $0.00 | $0.00 | $0.00 | $0.00 |

$

| | | | | | |
|---|---|---|---|---|---|
| $173.83 | $838.41 | $0.00 | $0.00 | $0.00 | $0.00 |
| $174.84 | $837.40 | $0.00 | $0.00 | $0.00 | $0.00 |
| $175.86 | $836.38 | $0.00 | $0.00 | $0.00 | $0.00 |
| $176.88 | $835.36 | $0.00 | $0.00 | $0.00 | $0.00 |
| $177.91 | $834.33 | $0.00 | $0.00 | $0.00 | $0.00 |
| $178.94 | $833.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| $179.98 | $832.26 | $0.00 | $0.00 | $0.00 | $0.00 |
| $181.03 | $831.21 | $0.00 | $0.00 | $0.00 | $0.00 |
| $182.08 | $830.16 | $0.00 | $0.00 | $0.00 | $0.00 |
| $183.14 | $829.10 | $0.00 | $0.00 | $0.00 | $0.00 |
| $184.20 | $828.04 | $0.00 | $0.00 | $0.00 | $0.00 |
| $185.27 | $826.97 | $0.00 | $0.00 | $0.00 | $0.00 |
| $186.35 | $825.89 | $0.00 | $0.00 | $0.00 | $0.00 |
| $187.43 | $824.81 | $0.00 | $0.00 | $0.00 | $0.00 |
| $188.52 | $823.72 | $0.00 | $0.00 | $0.00 | $0.00 |
| $189.62 | $822.62 | $0.00 | $0.00 | $0.00 | $0.00 |
| $190.72 | $821.52 | $0.00 | $0.00 | $0.00 | $0.00 |
| $191.83 | $820.41 | $0.00 | $0.00 | $0.00 | $0.00 |
| $192.94 | $819.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| $194.06 | $818.18 | $0.00 | $0.00 | $0.00 | $0.00 |
| $195.19 | $817.05 | $0.00 | $0.00 | $0.00 | $0.00 |
| $196.33 | $815.91 | $0.00 | $0.00 | $0.00 | $0.00 |
| $197.47 | $814.77 | $0.00 | $0.00 | $0.00 | $0.00 |
| $198.62 | $813.62 | $0.00 | $0.00 | $0.00 | $0.00 |
| $199.77 | $812.47 | $0.00 | $0.00 | $0.00 | $0.00 |
| $200.93 | $811.31 | $0.00 | $0.00 | $0.00 | $0.00 |
| $202.10 | $810.14 | $0.00 | $0.00 | $0.00 | $0.00 |
| $203 27 | $808.97 | $0.00 | $0.00 | $0.00 | $0.00 |
| $204 46 | $807.78 | $0.00 | $0.00 | $0.00 | $0.00 |
| $205.64 | $806.60 | $0.00 | $0.00 | $0.00 | $0.00 |
| $206.84 | $805.40 | $0.00 | $0.00 | $0.00 | $0.00 |
| $208.04 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| $209.25 | $802.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| $210.47 | $801.77 | $0.00 | $0.00 | $0.00 | $0.00 |
| $211 68 | $800.55 | $0.00 | $0.00 | $0 00 | $0.00 |
| $212.91 | $799.32 | $0.00 | $0.00 | $0.00 | $0.00 |
| $214.15 | $798.08 | $0.00 | $0.00 | $0.00 | $0.00 |
| $215 39 | $796.84 | $0 00 | $0.00 | $0.00 | $0.00 |
| $216 65 | $795 58 | $0 00 | $0.00 | $0.00 | $0.00 |

5

| | | | | | |
|---|---|---|---|---|---|
| $217.90 | $794.33 | $0.00 | $0.00 | $0.00 | $0.00 |
| $219.17 | $793.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| $220.45 | $791.78 | $0.00 | $0.00 | $0.00 | $0.00 |
| $221.73 | $790.50 | $0.00 | $0.00 | $0.00 | $0.00 |
| $223.02 | $789.21 | $0.00 | $0.00 | $0.00 | $0.00 |
| $224.31 | $787.92 | $0.00 | $0.00 | $0.00 | $0.00 |
| $225.62 | $786.61 | $0.00 | $0.00 | $0.00 | $0.00 |
| $226.93 | $785.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| $228.25 | $783.98 | $0.00 | $0.00 | $0.00 | $0.00 |
| $229.57 | $782.66 | $0.00 | $0.00 | $0.00 | $0.00 |
| $230.91 | $781.32 | $0.00 | $0.00 | $0.00 | $0.00 |
| $232.25 | $779.98 | $0.00 | $0.00 | $0.00 | $0.00 |
| $233.60 | $778.63 | $0.00 | $0.00 | $0.00 | $0.00 |
| $234.96 | $777.27 | $0.00 | $0.00 | $0.00 | $0.00 |
| $236.32 | $775.91 | $0.00 | $0.00 | $0.00 | $0.00 |
| $237.70 | $774.53 | $0.00 | $0.00 | $0.00 | $0.00 |
| $239.08 | $773.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| $240.47 | $771.76 | $0.00 | $0.00 | $0.00 | $0.00 |
| $241.87 | $770.36 | $0.00 | $0.00 | $0.00 | $0.00 |
| $243.27 | $768.96 | $0.00 | $0.00 | $0.00 | $0.00 |
| $244.69 | $767.54 | $0.00 | $0.00 | $0.00 | $0.00 |
| $246.11 | $766.12 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | ($2,390.91) | $0.00 | $0.00 | ($2,390.91) |
| $0.00 | $0.00 | ($5,110.30) | $0.00 | $0.00 | ($7,501.21) |
| $247.54 | $764.69 | $0.00 | $0.00 | $0.00 | ($7,501.21) |
| $248.98 | $763.25 | $0.00 | $0.00 | $0.00 | ($7,501.21) |
| $250.42 | $761.81 | $0.00 | $0.00 | $0.00 | ($7,501.21) |
| $251.12 | $763.08 | $0.00 | $0.00 | $0.00 | ($7,501.21) |
| $252.59 | $761.61 | $625.10 | $0.00 | $0.00 | ($6,876.11) |
| $254.06 | $760.14 | $625.10 | $0.00 | $0.00 | ($6,251.01) |
| $255.54 | $758.66 | $625.10 | $0.00 | $0.00 | ($5,625.91) |
| $257.04 | $757.16 | $625.10 | $0.00 | $0.00 | ($5,000.81) |
| $0.00 | $0.00 | ($2,582.16) | $0.00 | $0.00 | ($7,582.97) |
| $258.53 | $755.67 | $625.10 | $0.00 | $0.00 | ($6,957.87) |
| $252.47 | $781.09 | $625.10 | $0.00 | $0.00 | ($6,332.77) |
| $253.99 | $779.57 | $625.10 | $0.00 | $0.00 | ($5,707.67) |
| $255.53 | $778.03 | $625.10 | $0.00 | $0.00 | ($5,082.57) |
| $257.07 | $776.49 | $625.10 | $0.00 | $0.00 | ($4,457.47) |
| $258.63 | $774.93 | $625.10 | $0.00 | $0.00 | ($3,832.37) |

ऽ

| | | | | | |
|---|---|---|---|---|---|
| $260.19 | $773.37 | $625.10 | $0 00 | $0.00 | ($3,207.27) |
| $254.32 | $798.41 | $625.10 | $0.00 | $0.00 | ($2,582.17) |
| $255.91 | $796.82 | $0.00 | $0.00 | $0.00 | ($2,582.17) |
| $257.50 | $795.23 | $0.00 | $0.00 | $0.00 | ($2,582.17) |
| $259.11 | $793.62 | $0.00 | $0.00 | $0.00 | ($2,582.17) |
| $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | ($2,441.30) | $0.00 | $0.00 | ($8,058.09) |
| $0.00 | $0.00 | ($3,034.62) | $0.00 | $0.00 | ($5,616.79) |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 |
| **$22,351.17** | **$95,979.83** | **($8,058.09)** | **$0.00** | **$0.00** | |

| Calculated Escrow Balance | Late Charge Balance | Preboarding Flag |
|---|---|---|
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

| | | |
|---|---|---|
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

| | | |
|---|---|---|
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |

| | | |
|---|---|---|
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |
| $0.00 | $0.00 | No |

Electronically Filed 01/15/2019 15:17 / MOTION / CV 18 904354 / Confirmation Nbr. 1599651 / CLJK1

**LIMITED POWER OF ATTORNEY**

1.  Wells Fargo Bank, National Association, not in its individual or banking capacity, but solely in its capacity as trustee (the "Trustee") of those certain trusts (each, a "Trust", and collectively, the "Trusts") under the respective Pooling and Servicing Agreements set forth on the attached **Exhibit A** and any related governing transactional and servicing agreement(s) (collectively, the "Agreements") hereby constitutes and appoints:

**CARRINGTON MORTGAGE SERVICES, LLC**

successor in interest to the following entities: a) New Century Mortgage Corporation, b) Homecomings Financial Network, c) Residential Funding Co., LLC, and d) Freemont Investment & Loan, solely in its capacity as the Servicer under the Agreements, as its true and lawful attorney-in-fact, acting by and through its duly authorized officers, with full authority and power to execute and deliver on behalf of the Trustee any and all of the following instruments to the extent consistent with the terms and conditions of the Agreements:

> (i) all documents with respect to residential mortgage loans serviced for the Trust by the Servicer which are customarily and reasonably necessary and appropriate for the satisfaction, cancellation, or partial or full release of any mortgages, deeds of trust, or deeds to secure debt upon payment and discharge of all sums secured thereby;
> (ii) all documents and instruments necessary to conduct any (a) foreclosure, or (b) the taking of any deed in lieu of foreclosure, or (c) any judicial or non-judicial foreclosure or termination, cancellation, or rescission of any such foreclosure, or (d) any similar procedure (collectively, as applicable, a "Foreclosure");
> (iii) instruments appointing one or more substitute trustees or special purpose entities ("SPEs") to act in place of the corresponding entity named in any deed of trust;
> (iv) affidavits of debt, notice of default, declaration of default, notices of foreclosure, and all such contracts, agreements, deeds, and instruments as are appropriate to (a) maintain any real property acquired through Foreclosure, or (b) effect any sale, transfer, or disposition of real property acquired through Foreclosure;
> (v) all documents and instruments necessary to effect any assignment of mortgage or assignment of deed of trust; and
> (iv) all other comparable instruments.

2.  This Limited Power of Attorney shall apply only to the foregoing enumerated transactions and shall be limited to the above-mentioned exercise of power.  This instrument is to be construed and interpreted only as a limited power of attorney.  The enumeration of specific items, rights, acts, or powers herein is not intended to, nor does it give rise to, and it should not be construed as, a general power of attorney.

3.  Third parties without actual notice may rely upon the power granted to said attorney-in-fact under this Limited Power of Attorney and may assume that, upon the exercise of such power, all conditions precedent to such exercise of power have been satisfied and this Limited Power of Attorney has not been revoked.  This Limited Power of Attorney shall supersede and replace any other limited power of attorney executed by the Trustee in connection with the Agreements in favor of the Servicer and any such other limited power of attorney shall be deemed revoked by this writing.

4.  This Limited Power of Attorney is effective as of the date below and shall remain in full force and effect until (a) revoked in writing by the Trustee, or (b) the termination, resignation or removal of the Trustee as trustee of the Trust, or (c) the termination, resignation or removal of the Servicer as servicer of

the Trust, or (d) as to any specific Trust, the termination of the Agreement related to such Trust, whichever occurs earlier..

5. Nothing contained in this Limited Power of Attorney shall (i) limit in any manner any indemnification obligation provided by the Servicer to the Trustee or Trust under the Agreements or any document related thereto, or (ii) be construed to grant the Servicer the power to initiate or defend any suit, litigation, or proceeding in the name of the Trustee or Trust except as specifically provided for herein or under the Agreements.

Dated: February 16, 2012

Wells Fargo Bank, National Association,
not in its individual or banking capacity, but
solely as Trustee on behalf of the Trust(s)

Attest:

By: Cynthia C. Day
Its: Assistant Secretary

By: Barry Silvermetz
Its: Vice President

Unofficial Witnesses:

Matthew Shaw

Daniel Williamson

STATE OF MARYLAND
COUNTY OF HOWARD                    ss:

On the 16th day of February 2012 before me, Kathleen A. Dean, a Notary in and for said State, personally appeared [name of officer], known to me to be Vice President of Wells Fargo Bank, National Association, and also known to me to be the person who executed this Limited Power of Attorney on behalf of Wells Fargo Bank, N.A., as Trustee, and acknowledged to me that Wells Fargo Bank, N.A., as Trustee, executed this Limited Power of Attorney.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my office seal the day and year written above,

Notary Public: Kathleen A. Dean
My commission expires date 2-6-2013

## Exhibit A

| | Trust Name | Pooling and Servicing Agreement |
|---|---|---|
| 1 | CARRINGTON MORTGAGE LOAN TRUST 2006-NC1 | Pooling and Servicing Agreement, dated and effective as of February 1, 2006, among Stanwich Asset Acceptance Company, LLC. as Depositor; New Century Mortgage Corporation, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer; and Wells Fargo Bank, N.A as Trustee. |
| 2 | CARRINGTON MORTGAGE LOAN TRUST 2006-NC2 | Pooling and Servicing Agreement, dated and effective as of June 1, 2006, among Stanwich Asset Acceptance Company, LLC. as Depositor; New Century Mortgage Corporation, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer; and Wells Fargo Bank, N.A as Trustee. |
| ③ | CARRINGTON MORTGAGE LOAN TRUST 2006-NC3 | Pooling and Servicing Agreement, dated and effective as of August 1, 2006, among Stanwich Asset Acceptance Company, LLC. as Depositor; New Century Mortgage Corporation, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer; and Wells Fargo Bank, N.A as Trustee. |
| 4 | CARRINGTON MORTGAGE LOAN TRUST 2006-NC4 | Pooling and Servicing Agreement, dated and effective as of September 1, 2006, among Stanwich Asset Acceptance Company, LLC. as Depositor; New Century Mortgage Corporation, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer; and Wells Fargo Bank, N.A as Trustee. |
| 5 | CARRINGTON MORTGAGE LOAN TRUST 2006-NC5 | Pooling and Servicing Agreement, dated and effective as of December 1, 2006, among Stanwich Asset Acceptance Company, LLC. as Depositor; New Century Mortgage Corporation, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer; and Wells Fargo Bank, N.A as Trustee. |
| 6 | CARRINGTON MORTGAGE LOAN TRUST 2006-RFC1 | Pooling and Servicing Agreement, dated as of May 1, 2006, among Stanwich Asset Acceptance Company, LLC, a Delaware limited liability company, as Depositor, Homecomings Financial Network, Inc, a Delaware corporation, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer;, and Wells Fargo Bank, N.A, a national banking association, as Trustee. |
| 7 | CARRINGTON MORTGAGE LOAN TRUST 2007-RFC1 | Pooling and Servicing Agreement, dated as of January 1, 2007, among Stanwich Asset Acceptance Company, LLC, as Depositor, Residential Funding Company, LLC, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer; and Wells Fargo Bank, N.A. as Trustee. |
| 8 | CARRINGTON MORTGAGE LOAN TRUST 2006-FRE1 | Pooling and Servicing Agreement, dated as of June 1, 2006, among Stanwich Asset Acceptance Company, LLC, as Depositor, Fremont Investment & Loan, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer;, and Wells Fargo Bank, N.A, as Trustee. |
| 9 | CARRINGTON MORTGAGE LOAN TRUST 2006-FRE 2 | Pooling and Servicing Agreement, dated as of October 1, 2006, among Stanwich Asset Acceptance Company, LLC, as Depositor, Fremont Investment & Loan, predecessor in interest to Carrington Mortgage Services, LLC, as Servicer; and Wells Fargo Bank, N.A, as Trustee. |
| 10 | STANWICH MORTGAGE LOAN | Amended and Restated Pooling and Servicing Agreement, dated as of February 26, 2010, among Stanwich Mortgage Acquisition Company, |

| | TRUST, SERIES 2009-2 | LLC, as Depositor; Carrington Capital Management LLC, as Mortgage Administrator; Carrington Mortgage Services, LLC as Servicer; and Wells Fargo Bank, N.A., as Trustee and Custodian. |
|----|---|---|
| 11 | STANWICH MORTGAGE LOAN TRUST, SERIES 2010-1 | Pooling and Servicing Agreement, dated as of April 23, 2010, among Stanwich Mortgage Acquisition Company, as Depositor; Carrington Capital Management LLC, as Mortgage Administrator; Carrington Mortgage Services, LLC as Servicer; and Wells Fargo Bank, N.A., as Trustee and Custodian. |
| 12 | STANWICH MORTGAGE LOAN TRUST, SERIES 2010-2 | Pooling and Servicing Agreement, dated as of May 21, 2010, among Stanwich Mortgage Acquisition Company, LLC, as Depositor; Carrington Capital Management LLC, as Mortgage Administrator; Carrington Mortgage Services, LLC as Servicer; and Wells Fargo Bank, N.A., as Trustee and Custodian. |
| 13 | STANWICH MORTGAGE LOAN TRUST, SERIES 2010-3 | Pooling and Servicing Agreement, dated as of June 2, 2010, among Stanwich Mortgage Acquisition Company, LLC, as Depositor; Carrington Capital Management LLC, as Mortgage Administrator; Carrington Mortgage Services, LLC as Servicer; and Wells Fargo Bank, N.A., as Trustee and Custodian. |
| 14 | STANWICH MORTGAGE LOAN TRUST, SERIES 2010-4 | Pooling and Servicing Agreement, dated as of August 5, 2010, among Stanwich Mortgage Acquisition Company, LLC, as Depositor; Carrington Capital Management LLC, as Mortgage Administrator; Carrington Mortgage Services, LLC as Servicer, and Wells Fargo Bank, N.A., as Trustee and Custodian. |
| 15 | STANWICH MORTGAGE LOAN TRUST, SERIES 2011-1, ASSET-BACKED PASS-THROUGH CERTIFICATES | Pooling and Servicing Agreement, dated and effective as of May 11, 2011, among Stanwich Mortgage Acquisition Company, LLC, as Depositor, Carrington Capital Management, LLC, as Mortgage Administrator, Carrington Mortgage Services, LLC, as Servicer, and Wells Fargo Bank, N.A. as Trustee and Custodian |
| 16 | STANWICH MORTGAGE LOAN TRUST, SERIES 2011-2, ASSET-BACKED PASS-THROUGH CERTIFICATES | Pooling and Servicing Agreement, dated and effective as of June 10, 2011, among Stanwich Mortgage Acquisition Company, LLC, as Depositor, Carrington Capital Management, LLC, as Mortgage Administrator, Carrington Mortgage Services, LLC, as Servicer, and Wells Fargo Bank, N.A. as Trustee and Custodian |
| 17 | STANWICH MORTGAGE LOAN TRUST, SERIES 2011-3, ASSET-BACKED PASS-THROUGH CERTIFICATES | Pooling and Servicing Agreement, dated and effective as of June 15, 2011, among Stanwich Mortgage Acquisition Company, LLC, as Depositor, Carrington Capital Management, LLC, as Mortgage Administrator, Carrington Mortgage Services, LLC, as Servicer, and Wells Fargo Bank, N.A. as Trustee and Custodian |

Motion No. <u>4746497</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION FOR DEFAULT JUDGMENT**
**January 15, 2019 15:18**

By: EDWARD BOHNERT 0004920

Confirmation Nbr. 1599656

WELLS FARGO BANK N.A.                              CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL          **Judge:**  ASHLEY KILBANE

**Pages Filed:**  2

F18-24197                    EGB/kll                    January 14, 2019

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

Wells Fargo Bank N.A., as    ) CASE NO. CV 18 904354
Trustee, for Carrington      )
Mortgage Loan Trust, Series  ) JUDGE Ashley Kilbane
2006-NC3 Asset-Backed Pass-  )
Through Certificates         )
                             )
            Plaintiff        )
                             ) **MOTION FOR DEFAULT JUDGMENT**
      -vs-                   )
                             )
Virgil H. Collins, et al.    )
                             )
            Defendants       )

     Now comes the Plaintiff and says that the Defendants,
Unknown Spouse, if any, of Virgil H. Collins, Ruth J. Collins,
Unknown Spouse, if any, of Ruth J. Collins, New Century Mortgage
Corporation, and New Century Liquidating Trust, successor-in-
interest to New Century Mortgage Corporation, are in default of
Answer or other pleading although duly served according to law.
     WHEREFORE, Plaintiff respectfully makes an application to
this Court for a judgment by default, pursuant to Rule 55 of the
Ohio Rules of Civil Procedure.

                         Respectfully Submitted,


                         /s/ Edward G. Bohnert
                         **REIMER LAW CO.**
                         Edward G. Bohnert (0004920)
                         P.O. Box 39696
                         30455 Solon Road
                         Solon, OH 44139
                         Phone: (440) 600-5500
                         Fax: 440-600-5586
                         Email: ebohnert@reimerlaw.com

## PROOF OF SERVICE

A copy of the foregoing was sent by e-service notification or regular U.S. Mail on <u>January 15, 2019</u>, to the following:

Joanne Brown
4070 Mayfield Road
Cleveland, OH  44112

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH  44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

New Century Mortgage Corporation
Service by Publication

New Century Liquidating Trust,
successor-in-interest to
New Century Mortgage Corporation
Service by Publication

/s/ Edward G. Bohnert
**REIMER LAW CO.**
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com

**Motion No.** <u>4756075</u>



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION FOR EXTENSION OF TIME**
**February 19, 2019 14:05**

By: JOANNE BROWN 0050039

Confirmation Nbr. 1629539

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL          **Judge:** ASHLEY KILBANE

**Pages Filed:** 2

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services
               Plaintiff

-v-



Virgil H. Collins et. al.
             Defendants

Case No. 18-904354

Judge Ashley Kilbane

Magistrate: Kevin Hippley


DEFENDANTS' MOTION FOR
FORCLOSURE MEDIATION AND
EXTENDTION OF THE TIME TO
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

Defendant Virgil H. Collins request the Court allow him to attempt to resolve this

matter through foreclosure mediation, and grant him leave until after this matter is

evaluated for foreclosure mediation, to respond to Plaintiff's  motion for summary

judgment.


**WHEREFORE,** Defendant request the Court issue an order first permitting him

participate in the courts foreclosure mediation program, and second delay the time to

file a response, to Plaintiff's motion for summary judgment until after foreclosure

mediation.


Respectfully submitted,

_/s/ Joanne Brown_
Joanne Brown (0050039)
Attorney for Defendant Virgil H. Collins
4070 Mayfield Road
Cleveland, Ohio 44121
216-851-3304 (Phone)
216-851-2900 (Fax)
Email: courtfile@yahoo.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served by regular U. S. Mail postage prepaid or
email February 19, 2019 upon

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw


/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant
Attorney for Defendant



107519858

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
   Plaintiff

| | Case No: CV-18-904354 |

VIRGIL H. COLLINS, ET AL
   Defendant

Judge: ASHLEY KILBANE
Magistrate: KEVIN HIPPLEY

## __MAGISTRATE'S ORDER__

MOTION FOR DEFAULT JUDGMENT IS SET FOR HEARING ON 03/20/2019 AT 09:30AM BEFORE MAGISTRATE  KEVIN HIPPLEY, 310 W. LAKESIDE, 6TH FL. LOCATED ACROSS THE STREET FROM THE JUSTICE CENTER ON THE NORTH WEST CORNER OF LAKESIDE AVENUE AND WEST 3RD STREET.  THE MOVING PARTY MUST SEND NOTICE OF THE DATE AND TIME OF THIS HEARING AND A COPY OF THE MOTION TO ALL PARTIES, INCLUDING THOSE WHO HAVE YET TO ENTER AN APPEARANCE, AT LEAST 14 DAYS IN ADVANCE OF THE HEARING.  FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CLAIMS OR AN ENTRY OF JUDGMENT.

| Magistrate Signature | Date |

CPKXB

STEPHEN M. BUCHA III
CHIEF MAGISTRATE
ASSIGNED MAGISTRATE UNAVAILABLE

FILED
2019 FEB 28 P 2: 34
CLERK OF COURTS
CUYAHOGA COUNTY

02/20/2019

Page 1 of 1



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### NOTICE OF HEARING
March 5, 2019 11:16

By: EDWARD BOHNERT 0004920

Confirmation Nbr. 1642474

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL                 **Judge:**  ASHLEY KILBANE

Pages Filed:  2

F18-24197                         DAH/amm                    March 4, 2019

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Wells Fargo Bank N.A., as ) | CASE NO. CV 18 904354 |
| Trustee, for Carrington ) | |
| Mortgage Loan Trust, Series ) | JUDGE  Ashley Kilbane, |
| 2006-NC3 Asset-Backed Pass- ) | |
| Through Certificates ) | |
|      Plaintiff ) | **NOTICE OF HEARING** |
| ) | |
|    -vs- ) | |
| ) | |
| Virgil H. Collins, et al. ) | |
| | |
|     Defendants | |

A MOTION FOR DEFAULT JUDGMENT IS SET FOR HEARING ON <u>March 20, 2019</u> AT <u>9:30</u> <u>A.M.</u> BEFORE MAGISTRATE <u>Kevin Hippley</u>, 6TH FLOOR, 310 WEST LAKESIDE AVE., CLEVELAND, OHIO.   FAILURE TO APPEAR MAY RESULT IN AN ENTRY OF JUDGMENT.


Respectfully Submitted,

/s/ Douglas A. Haessig
**REIMER LAW CO.**
Douglas A. Haessig (0079200)
Edward G Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: 440-600-5582
Email: dhaessig@reimerlaw.com

PROOF OF SERVICE

Plaintiff served a copy of the foregoing Notice of Hearing on:

Joanne Brown
4070 Mayfield Road
Cleveland, OH  44112

Unknown Spouse, if any,
of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH  44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

Unknown Spouse, if any,
of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

New Century Mortgage Corporation
Service by Publication

New Century Liquidating Trust,
successor-in-interest to
New Century Mortgage Corporation
Service by Publication

by electronic e-service notification or Ordinary U.S. Mail, this
5Th day of March,2019

/s/ Douglas A. Haessig
REIMER LAW CO.
Douglas A. Haessig (0079200)
Edward G Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: 440-600-5582
Email: dhaessig@reimerlaw.com



108006517

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: KEVIN HIPPLEY

VIRGIL H. COLLINS, ET AL
    Defendant

## **MAGISTRATE'S ORDER**

CASE CALLED FOR HEARING ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT.  THE MOTION FOR DEFAULT JUDGMENT IS GRANTED AS TO THE NON-ANSWERING PARTIES.  A RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS HELD IN ABEYANCE.  DEFENDANT IS NOT REQUIRED TO RESPOND TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNTIL AFTER A SETTLEMENT CONFERENCE HAS BEEN CONDUCTED.  THE SETTLEMENT CONFERENCE IS SET FOR MAY 24, 2019, AT 10:30A.M., AT 310 WEST LAKESIDE, SIXTH FLOOR, CLEVELAND, OHIO.

_____
Magistrate Signature                03/26/2019
                                        CPKRH

03/26/2019



108006772

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

VIRGIL H. COLLINS, ET AL
    Defendant

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: KEVIN HIPPLEY

## **MAGISTRATE'S ORDER**

SETTLEMENT CONFERENCE SET FOR 05/24/2019 AT 10:30 AM.

_____
Magistrate Signature          03/26/2019
                            CPKRH

03/26/2019



108878833

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: KEVIN HIPPLEY

VIRGIL H. COLLINS, ET AL
    Defendant

## **MAGISTRATE'S ORDER**

CASE CALLED FOR SETTLEMENT CONFERENCE. DEFENDANT'S ORAL MOTION FOR LEAVE TO FILE AN AMENDED ANSWER IS GRANTED OVER PLAINTIFF'S OBJECTION. DEFENDANT MAY FILE THE AMENDED ANSWER ON OR BEFORE JUNE 21, 2019.

_Kevin R. Hippley_

Magistrate Signature            05/24/2019
                                     CPKRH

05/24/2019

**Motion No.**  <u>4790739</u>



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### MOTION FOR EXTENSION OF TIME
### June 21, 2019 14:37

By: JOANNE BROWN 0050039

Confirmation Nbr. 1744274

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL          **Judge:**  ASHLEY KILBANE

**Pages Filed:**  2

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services

                Plaintiff

-v-



Virgil H. Collins et. al.
                Defendants

Case No. 18-904354

Judge Ashley Kilbane

Magistrate: Kevin Hippley


DEFENDANTS' MOTION ENLARGE TIME
TO FILE AMENDED ANSWER AND
COUNTERCLAIM.


Defendants request the court enlarge the time to file their amended answer and counterclaim by 14 days from June 21, 2019 to July 5, 2019.  In support of its motion, Defendants state the following:

1. Defendants' counsel, has and had some unexpected briefs and filing which prevented her from being able to meet the June 21, 2019 date for response.

2. This request is not made to delay or hinder the proceedings.

3. There is no trial date set on this matter so the delay will not impose any harm on opposing counsel.

*Wherefore,* Defendants having given good reason for the motion, request the court issue an order enlarging the time for filing a response from June 21, 2019 to July 5, 2019.


Respectfully submitted,

_/s/ Joanne Brown
Joanne Brown (0050039)
Attorney for Defendant Virgil H. Collins
4070 Mayfield Road
Cleveland, Ohio 44121
216-851-3304 (Phone)
216-851-2900 (Fax)
Email: courtfile@yahoo.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served by regular U. S. Mail postage prepaid or email June 21, 2019 upon

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw


/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant
Attorney for Defendant



109978029

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
    Defendant

## JOURNAL ENTRY

DEFENDANT'S MOTION FOR EXTENSION OF TIME TO FILE AN AMENDED ANSWER AND COUNTERCLAIM IS
GRANTED.  THE AMENDED ANSWER AND COUNTERCLAIM MAY BE FILED ON OR BEFORE SEPTEMBER 13, 2019.
NO FURTHER EXTENSIONS.

_____
Judge Signature           08/15/2019
                     CPKRH

08/15/2019



111358566

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
 Plaintiff

VIRGIL H. COLLINS, ET AL
 Defendant

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: BRIAN S GOZELANCZYK

## __MAGISTRATE'S ORDER__

REASONABLE MINDS COULD CONCLUDE FROM THE EVIDENCE SUBMITTED THAT THE PLAINTIFF IS ENTITLED TO JUDGMENT AND A DECREE OF FORECLOSURE.  ACCORDINGLY, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED. A SEPERATE MAGISTRATE'S DECISION TO FOLLOW.

_____
Magistrate Signature    11/25/2019
          CPBSG

11/25/2019



111369568

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

VIRGIL H. COLLINS, ET AL
    Defendant

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: BRIAN S GOZELANCZYK

## **MAGISTRATE'S ORDER**

A REVIEW OF THE DOCKET AND THE VARIOUS FILINGS IN THIS MATTER REVEALS THAT PLAINTIFF HAS FAILED TO DEMONSTRATE THAT DEFENDANT VIRGIL H. COLLINS IS NOT ENTITLED TO THE PROTECTIONS OF 50 U.S.C. 3931, THE SERVICEMEMBERS CIVIL RELIEF ACT.  PLAINTIFF IS GRANTED LEAVE UNTIL AND INCLUDING DECEMBER 31, 2019, TO PROVIDE EVIDENCE AS TO WHETHER OR NOT DEFENDANT VIRGIL H. COLLINS IS ENTITLED TO PROTECTION UNDER 50 USC 3931.

_____
Magistrate Signature            11/25/2019
                                     CPBSG

11/25/2019



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**AFFIDAVIT OF/FOR...**
November 26, 2019 14:03

By: EDWARD BOHNERT 0004920

Confirmation Nbr. 1879846

WELLS FARGO BANK N.A.                          CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL              **Judge:** ASHLEY KILBANE

Pages Filed:  4

F18-24197                     EGB/EGB

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY, OHIO

Wells Fargo Bank N.A., as          ) CASE NO. CV 18 904354
Trustee, for Carrington            )
Mortgage Loan Trust, Series        ) JUDGE  ASHLEY KILBANE
2006-NC3 Asset-Backed Pass-        )
Through Certificates               )
                                   )        **AFFIDAVIT AS TO**
            Plaintiff              )        **MILITARY STATUS**
                                   )
    -vs-                           )
                                   )
Virgil H. Collins, et al.

            Defendants

STATE OF ___Ohio_____        )
                                   ) ss:
COUNTY OF ___Cuyahoga_____      )

        Edward G. Bohnert, being first duly sworn, deposes and
says:

        1.    I am an attorney at law affiliated with the law firm
Reimer Law Co., duly authorized to make this Affidavit, I have
personal knowledge of all of the facts stated herein, and I am
competent to testify to the matters stated herein. I am making
this affidavit pursuant to the Servicemembers Civil Relief Act,
50 U.S.C. §3931.

        2.    I have caused an investigation to be made to ascertain
whether Virgil H. Collins, the above-named Defendant, is in the
military service of the United States, in that I have reviewed

my case file, including the loan documents delivered to me by Plaintiff, and I have caused a search to be made of the information available online from the Department of Defense Manpower Data Center.

3.     Based on the facts as above set forth, Virgil H. Collins is not in the military service of the United States.

4.     Based on the facts as above set forth, the obligation sought to be enforced in this action is not an obligation against a surety, guarantor, endorser, or other person liable primarily or secondarily for a party in the military service.

FURTHER AFFIANT SAYETH NAUGHT.

_Edward Bohnert_
Edward G. Bohnert

An oath or affirmation was administered to the signer in regards to the notarial act.

Sworn To Before Me and subscribed in my presence this __26__ day of __November__ , 2019.

NOTARIAL SEAL
STATE OF OHIO
AMANDA M ORLOSKY
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
05-03-2023
Recorded in
Cuyahoga County

NOTARY PUBLIC

REV040820

Department of Defense Manpower Data Center

Results as of : Nov-26-2019 09:48:55 AM

SCRA 6.2



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:              XXX-XX-
Birth Date:
Last Name:        COLLINS
First Name:       VIRGIL
Middle Name:
Status As Of:     Nov-26-2019
Certificate ID:   NDVFG6NZ2ZX5GHM

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.



CV18904354          111556797

F18-24197                    EGB/rev.                    FILED

2019 DEC 11 P 1:26

CLERK OF COURTS
CUYAHOGA COUNTY

**IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO**

Wells Fargo Bank N.A., as          )  CASE NO. CV 18 904354
Trustee, for Carrington            )
Mortgage Loan Trust, Series        )  JUDGE Ashley Kilbane
2006-NC3 Asset-Backed Pass-        )
Through Certificates               )
                                   )
              Plaintiff            )
                                   )  **MAGISTRATE'S DECISION**
    -vs-                           )
                                   )
Virgil H. Collins, et al.          )
                                   )
              Defendants           )
                                   )

THIS CAUSE was submitted to the Magistrate and heard upon
the Complaint of the Plaintiff, the Answer of Defendant Virgil
H. Collins, the Motion for Summary Judgment of the Plaintiff and
the Affidavit and Exhibits in support thereof, Plaintiff's
Motion for Default Judgment, and the evidence.

The Magistrate hereby finds that there is no genuine issue
as to any material fact, and that reasonable minds can come to
but one conclusion which is adverse to the Defendant, Virgil H.
Collins, and that Plaintiff is entitled to judgment as a matter
of law, and therefore Plaintiff's Motion for Summary Judgment is
granted.

The Magistrate finds that all necessary parties have been served with summons according to law and are properly before the Court; that the Defendants, Unknown Spouse, if any, of Virgil H. Collins, Ruth J. Collins, Unknown Spouse, if any, of Ruth J. Collins, New Century Mortgage Corporation, and New Century Liquidating Trust, successor-in-interest to New Century Mortgage Corporation, are in default of Answer or other pleading and thereby confess the allegations of the Complaint to be true.

The Magistrate finds that there is due the Cuyahoga County Treasurer, taxes, accrued taxes, assessments, and penalties on the premises described herein including: (1) taxes, assessments, interest, and penalties, the lien for which attaches before the date of sale but that are not yet determined, assessed and levied for the year that includes the date of judicial sale, apportioned pro rata to the part of that year that precedes the date of sale; and (2) all other taxes, assessments, penalties and interest which attached for a prior tax year but have not been paid on or before the date of the judicial sale. The exact amount of said taxes, accrued taxes, assessments, and penalties are unascertainable at this time, but will be determined at the time of the sale of said premises, for which amount the Cuyahoga County Treasurer has a good and valid lien.

The Magistrate finds on the evidence adduced that there is due the Plaintiff on the promissory note set forth in the First

Count of the Complaint, the sum of $126,719.39, plus interest at 7.5% per annum from October 1, 2017, for which sum, judgment is hereby rendered in favor of the Plaintiff against the Defendants, Virgil H. Collins and Ruth J. Collins, jointly and severally.

The Magistrate further finds that in order to secure the payment of the promissory note aforesaid, the Defendants, Virgil H. Collins and Ruth J. Collins, husband and wife, executed and delivered to New Century Mortgage Corporation, the certain mortgage deed as in the Second Count of said Complaint described, thereby conveying to it the following described premises:

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A".

Said premises also known as: 4932 Nan Linn Drive, Richmond Heights, Ohio

PP# 661-15-060

That said mortgage was duly filed with the Recorder of Cuyahoga County on June 5, 2006, and was by him thereafter recorded as Instrument No. 200606050479 of the Mortgage Records of said County, and thereby became and is a valid first mortgage lien upon said premises, subject only to the lien of the Treasurer for taxes; that said mortgage deed was assigned by New Century Mortgage Corporation to Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3

Asset-Backed Pass-Through Certificates, recorded in Instrument No. 201809110246, Cuyahoga County Records; that said conditions in the mortgage deed have been broken, and the same has become absolute and the Plaintiff is entitled to have the equity of redemption and dower of all the Defendants in and to the said premises foreclosed.

The Magistrate further finds that Plaintiff may have advanced or may advance during the pendency of this action sums for the payment of taxes, hazard insurance premiums and protection of the property described herein, the total amount of which is undetermined at the present time, but which amount will be ascertainable at the time of the judicial sale, which amount may be added to the first mortgage lien of Plaintiff. The Magistrate reserves for further order a determination of the exact, if any, amount due Plaintiff for said advances.

Pursuant to Civil Rule 54(B) there is no just reason for delay in entering judgment for the Plaintiff.

It is therefore ORDERED, ADJUDGED, AND DECREED that unless the sums hereinabove found due, together with the costs of this action, be fully paid within three (3) days from the date of the entry of the Court's adoption of this Magistrate's Decision, the equity of redemption and dower of all the Defendants, in and to said premises shall be foreclosed, and said premises sold; and that an order of sale shall issue directed to the Sheriff of

Cuyahoga County, ordering him to appraise, advertise in a paper of general circulation within the County, and sell said premises as upon execution and according to law, free and clear of the interest of all parties to this action. If the Court authorizes a private selling officer to sell the real estate, then the sale must proceed in accordance with R.C. §2329.152.

If this is a residential property and the property remains unsold after the first auction, then a second auction shall be held and the property shall be sold to the highest bidder without regard to the minimum bid requirement in §2329.20 of the Revised Code. This auction shall be held no earlier than seven days and not later than thirty days after the first auction.

If there is a bidder at the second or subsequent sales, the judgment creditor and the first lien holder have the right to redeem the property within fourteen days of the sale, by paying the purchase price to the Clerk of Court. Upon timely payment, the Court will proceed as described in R.C. §2329.31 with the redeeming party considered the successful purchaser at sale.

In the event an order of sale is returned by the selling officer unexecuted, subsequent orders of sale shall issue in accord with appraisal instructions as requested in a Praecipe for those sales.

It is further ordered that the Sheriff or private selling officer out of the funds in his hands pay:

FIRST:    The costs herein, including the sum of $300.00 payable to Reimer Law Co. for the Judicial Report filed herein, and the sum of $381.00 for the premium, which are hereby taxed as costs.

SECOND:   To the Cuyahoga County Treasurer, taxes, assessments, interest, and penalties, the lien for which attaches before the date of sale but that are not yet determined, assessed and levied for the year that includes the date of sale, apportioned pro rata to the part of that year that precedes the date of sale, and all other taxes, assessments, penalties, and interest which attached for a prior tax year but have not been paid on or before the date of sale.

THIRD:    To the Plaintiff, the sum of $126,719.39 plus interest thereon at the rate of 7.5% per annum from October 1, 2017.

FOURTH:   The balance, if any, to be held by the Clerk of Courts pending further order.

In the event Plaintiff is the successful bidder at the Sale, the amount of the deposits made herein by the Plaintiff and the cost of the Preliminary Judicial Report in the sum of $681.00 shall be deducted from the amount of court costs otherwise due and payable herein.

It is further ORDERED, ADJUDGED AND DECREED that there may be due to Plaintiff additional sums advanced by it under the terms of the Note and Mortgage to pay real estate taxes, hazard insurance premiums, and property protection, which sums are to be determined by further Order.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, upon the confirmation of sale made herein, a minute of these proceedings be entered upon the Cuyahoga County Records involved in this action to reflect that they are released as liens against the subject premises.

It is further ORDERED, ADJUDGED AND DECREED that after said sale has been completed, a deed will be conveyed to the purchaser, and a Writ of Possession of said property be issued.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, if a successful sale occurs, the parties are ordered to file any motions for reimbursement of advances pursuant to R.C. § 5301.233 within 21 days from the sale. A party may move the Court to extend this deadline for good cause shown. No party will be granted reimbursement for advances if such a motion is not filed before this deadline. Within 7 days from the filing of a motion for reimbursement, a party may file a brief in opposition. The Court will then make a careful examination of the sale pursuant to the applicable statutes. If, however, this case does not involve advances or no mortgagee intends to seek advances, a party may file a notice to this effect within seven days of the sale. Where such notice is filed, no party filing such notice will be granted reimbursement for advances and the Court will make a careful examination of the sale pursuant to the applicable statutes upon the return of the order of sale. A

party may redeem before confirmation of the sale. Nothing in this order prevents the Court from staying the confirmation of sale to permit a property owner additional time to redeem.

_____
Magistrate Brian Gozelanczyk

APPROVED BY:


/s/ Edward G. Bohnert
_____
**REIMER LAW CO.**
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com


A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ. R. 53(D)(3)(b).

EXHIBIT A

SITUATED IN THE CITY OF RICHMOND HEIGHTS, COUNTY OF CUYAHOGA
AND STATE OF OHIO:

AND BEING PART OF ORIGINAL EUCLID TOWNSHIP TRACT NO. 13, FURTHER
KNOWN AS BEING SUBLOT 72 IN FRANK MAVEC'S LANCASTER ESTATES AS
SHOWN ON THE PLAT RECORDED IN VOLUME 154 OF MAPS, PAGE 16 OF
CUYAHOGA COUNTY RECORDS, SAID SUBLOT HAVING A FRONTAGE OF 75
FEET ON THE SOUTHERLY SIDE OF NAN LINN DRIVE, EXTENDING BACK
BETWEEN PARALLEL LINES A DISTANCE OF 150 FEET, AND HAVING A
REAR LINE OF 75 FEET, AS APPEARS ON SAID RECORDED PLAT, BE THE
SAME MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS.

## CERTIFICATE OF SERVICE

Copies of the foregoing Magistrate's Decision have been sent via U.S. Mail, or via e-mail if an e-mail address is available in the Court's case management system, by the Clerk of Courts to the following parties:

Edward Bohnert
Reimer Law Co.
30455 Solon Road
Solon, OH 44139

Joanne Brown
4070 Mayfield Road
Cleveland, OH  44112

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH  44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

New Century Mortgage Corporation
Service by Publication

New Century Liquidating Trust,
successor-in-interest to
New Century Mortgage Corporation
Service by Publication

Copies mailed by the Clerk of Courts on ___12.12___, 2019.

**Motion No.**  <u>4834530</u>



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

### Court of Common Pleas

### MOTION FOR...
### December 20, 2019 18:10

By: JOANNE BROWN 0050039

Confirmation Nbr. 1899734

WELLS FARGO BANK N.A.                          CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL              **Judge:**  ASHLEY KILBANE

**Pages Filed:**  2

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY
## STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services

                  Plaintiff

-v-

Virgil H. Collins et. al.
                Defendants

Case No. 18-904354

Judge Ashley Kilbane

Magistrate: Kevin Hippley

MOTION TO STAY FOR THE PURPOSE OF
SEEKING A RESOLUTION WITH
PLAINTIFF

Now comes defendant Virgil H. Collins et. al. and moves this Court to stay this case to

permit the defendant to: apply for a loan modification or otherwise resolve the case.

This case is suitable for a stay because:

Mr. Collins has a regular income and is able to make payments if he is allowed to enter

into a reasonable repayment plan.

Respectfully submitted,

_/s/ Joanne Brown_
Joanne Brown (0050039)
Attorney for Defendant Virgil H. Collins
4070 Mayfield Road
Cleveland, Ohio 44121

216-851-3304 (Phone)
216-851-2900 (Fax)
Email: courtfile@yahoo.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served by regular U. S. Mail postage prepaid or email December 20, 2019 upon

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw


/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant
**Attorney for Defendant**



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**OBJECTION ...**
**December 23, 2019 12:16**

By: EDWARD BOHNERT 0004920

Confirmation Nbr. 1900343

WELLS FARGO BANK N.A.                     CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL          **Judge:**  ASHLEY KILBANE

**Pages Filed:**  2

F18-24197                    EGB/              December 23, 2019

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

|  |  |  |
|---|---|---|
| Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates | ) ) ) ) ) ) | Case No. CV 18 904354<br><br>Judge Ashley Kilbane<br><br>**OBJECTION TO MOTION FOR STAY** |
| Plaintiff | ) ) |  |
| vs. | ) ) |  |
| Virgil H. Collins, et al. | ) |  |
| Defendants | | |

Plaintiff hereby objects to the Motion to Stay for the Purpose of Seeking a Resolution with Plaintiff filed by Defendant Virgil H. Collins, as follows.  The Motion to Stay should be presently denied as premature because Defendant Virgil H. Collins has not submitted a loss mitigation application to Plaintiff.


/s/ Edward G. Bohnert

REIMER LAW CO.
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: (440) 600-5520
Email: ebohnert@reimerlaw.com

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent by electronic e-service notification or regular U.S. Mail on <u>December 23, 2019</u>, to the following:

Joanne Brown
4070 Mayfield Road
Cleveland, OH  44112

Unknown Spouse, if any,
of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH  44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

Unknown Spouse, if any,
of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104


/s/ Edward G. Bohnert
REIMER LAW CO.
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: (440) 600-5520
Email: ebohnert@reimerlaw.com



111832621

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
  Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: BRIAN S GOZELANCZYK

VIRGIL H. COLLINS, ET AL
  Defendant

## __MAGISTRATE'S ORDER__

MOTION FILED FOR D1 VIRGIL H COLLINS MOTION FOR STAY TO SEEK RESOLUTION WITH PLAINTIFF, FILED 12/20/2019, IS DENIED.


_Magistrate Signature_                    12/30/2019
                                          CPBSG



111833793

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

VIRGIL H. COLLINS, ET AL
    Defendant

Case No: CV-18-904354

Judge: ASHLEY KILBANE

## JOURNAL ENTRY

96 DISP.OTHER - FINAL

ORDER ADOPTING MAGISTRATE'S DECISION AND DECREE OF FORECLOSURE. ORDER SEE JOURNAL.
PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER
PRESCRIBED BY CIV.R. 5(B). THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL
PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE.

Judge Signature         Date

CPBSG ) 5 C

FILED
2020 JAN -7 A 10: 22
CLERK OF COURTS
CUYAHOGA COUNTY

- 96
12/30/2019

F18-24197                  EGB/kll                  January 14, 2019

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

Wells Fargo Bank N.A., as          )  Case No. CV 18 904354
Trustee, for Carrington            )
Mortgage Loan Trust, Series        )  Judge Ashley Kilbane
2006-NC3 Asset-Backed Pass-        )
Through Certificates               )
                                   )  **JUDGMENT ENTRY ADOPTING**
            Plaintiff              )  **MAGISTRATE'S DECISION**
                                   )
            vs.                    )
                                   )
Virgil H. Collins, et al.          )
                                   )
            Defendants             )

THIS CAUSE is before the Court on the Decision of the Magistrate, the evidence admitted at the hearing, and the motions and pleadings in the Court file.

Summary judgment is granted in favor of Plaintiff against the following Defendant: Virgil H. Collins.

Default judgment is granted in favor of Plaintiff against the following Defendants: Unknown Spouse, if any, of Virgil H. Collins, Ruth J. Collins, Unknown Spouse, if any, of Ruth J. Collins, New Century Mortgage Corporation, and New Century Liquidating Trust, successor-in-interest to New Century Mortgage Corporation.

The Court adopts the Magistrate's Decision dated December 11, 2019, granting a foreclosure on the premises.

**(SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF)**

**PREMISES COMMONLY KNOWN AS:**
**4932 Nan Linn Drive, Richmond Heights, Ohio**
**PERMANENT PARCEL NO.:  661-15-060**

The parties who have asserted an interest in the premises will be paid according to their priority. The claims of all parties who have asserted an interest in premises and whose claims are not paid in the order of distribution herein are transferred to the proceeds of sale and will be determined at a later date.

Judgment is rendered in favor of Plaintiff Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates against Defendants Virgil H. Collins and Ruth J. Collins in the sum of $126,719.39 plus interest at the rate of 7.5% per annum from October 1, 2017.

The Court finds that Plaintiff has standing to bring this case.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that, unless the sums hereinabove found due, together with the costs of this action, be fully paid within three days of the date of the Court's adoption of the Magistrate's Decision, the equity of

redemption and dower of all the Defendants in and to said premises will be foreclosed, and said premises sold; and that an order of sale shall issue to the Sheriff of Cuyahoga County, directing him to appraise, advertise in a paper of general circulation within the county, and sell said premises as upon execution and according to law, free and clear of the interest of all parties to this action. If the Court authorizes a private selling officer to sell the real estate, then the sale must proceed in accordance with R.C. §2329.152.

If this is a residential property and the property remains unsold after the first auction, then a second auction shall be held and the property shall be sold to the highest bidder without regard to the minimum bid requirement in §2329.20 of the Revised Code. This auction shall be held no earlier than seven days and not later than thirty days after the first auction.

If there is a bidder at the second or subsequent sales, the judgment creditor and the first lien holder have the right to redeem the property within fourteen days of the sale, by paying the purchase price to the Clerk of Court. Upon timely payment, the Court will proceed as described in R.C. §2329.31 with the redeeming party considered the successful purchaser at sale.

In the event an order of sale is returned by the selling officer unexecuted, subsequent orders of sale shall issue in

accord with appraisal instructions contained in the Praecipe for those sales.

And coming now to distribute the proceeds of said sale, it is ordered that the Sheriff or private selling officer out of the funds in his hands pay:

First:     The costs herein, including the sum of $300.00 payable to Reimer Law Co. for the Judicial Report filed herein, and the sum of $381.00 for the premium, which are hereby taxed as costs.

Second:    To the Cuyahoga County Treasurer, taxes, assessments, interest, and penalties, the lien for which attaches before the date of sale but that are not yet determined, assessed and levied for the year that includes the date of sale, apportioned pro rata to the part of that year that precedes the date of sale, and all other taxes, assessments, penalties, and interest which attached for a prior tax year but have not been paid on or before the date of sale.

Third:     To the Plaintiff, the sum of $126,719.39 plus interest thereon at the rate of 7.5% per annum from October 1, 2017.

Fourth:    The balance, if any, to be held by the Clerk of Courts pending further order.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there may be due Plaintiff, additional sums advanced by it under the terms of the note and mortgage to pay real estate taxes, hazard insurance premiums, and property protection, which sums are to be determined by further Order.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, upon the confirmation of sale made herein, a minute of these proceedings be entered upon the Cuyahoga County Records involved in this action to reflect that they are released as liens against the subject premises.

It is further ORDERED, ADJUDGED AND DECREED that after said sale has been completed, a deed will be conveyed to the purchaser and a Writ of Possession of said property be issued.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, if a successful sale occurs, the parties are ordered to file any motions for reimbursement of advances pursuant to R.C. § 5301.233 within 21 days from the sale. A party may move the Court to extend this deadline for good cause shown. No party will be granted reimbursement for advances if such a motion is not filed before this deadline. Within 7 days from the filing of a motion for reimbursement, a party may file a brief in opposition. The Court will then make a careful examination of the sale pursuant to the applicable statutes. If, however, this case does not involve advances or no mortgagee intends to seek advances, a party may file a notice to this effect within seven days of the sale. Where such notice is filed, no party filing such notice will be granted reimbursement for advances and the Court will make a careful examination of the sale pursuant to the applicable statutes upon the return of the order of sale. A

party may redeem before confirmation of the sale.  Nothing in this order prevents the Court from staying the confirmation of sale to permit a property owner additional time to redeem.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that pursuant to Civ.R. 54(B), there is no just reason for delay.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, pursuant to Civ.R. 58(B), the Clerk of Courts must serve, in a manner prescribed by Civ.R. 5(B), all parties not in default for failure to appear notice of this judgment and its date of entry upon the journal and must note the service on the appearance docket.

IT IS SO ORDERED.

Judge Ashley Kilbane

EXHIBIT A

SITUATED IN THE CITY OF RICHMOND HEIGHTS, COUNTY OF CUYAHOGA
AND STATE OF OHIO:

AND BEING PART OF ORIGINAL EUCLID TOWNSHIP TRACT NO. 13, FURTHER
KNOWN AS BEING SUBLOT 72 IN FRANK MAVEC'S LANCASTER ESTATES AS
SHOWN ON THE PLAT RECORDED IN VOLUME 154 OF MAPS, PAGE 16 OF
CUYAHOGA COUNTY RECORDS, SAID SUBLOT HAVING A FRONTAGE OF 75
FEET ON THE SOUTHERLY SIDE OF NAN LINN DRIVE, EXTENDING BACK
BETWEEN PARALLEL LINES A DISTANCE OF 150 FEET, AND HAVING A
REAR LINE OF 75 FEET, AS APPEARS ON SAID RECORDED PLAT, BE THE
SAME MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS.



CV18904354   111556797

F18-24197      EGB/rev.     FILED

2019 DEC 11  P 1: 26

CLERK OF COURTS
CUYAHOGA COUNTY

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| Wells Fargo Bank N.A., as ) | CASE NO. CV 18 904354 |
| Trustee, for Carrington ) | |
| Mortgage Loan Trust, Series ) | JUDGE Ashley Kilbane |
| 2006-NC3 Asset-Backed Pass- ) | |
| Through Certificates ) | |
| ) | |
| Plaintiff ) | **MAGISTRATE'S DECISION** |
| ) | |
| -vs- ) | |
| ) | |
| Virgil H. Collins, et al. ) | |
| ) | |
| Defendants ) | |
| ) | |

THIS CAUSE was submitted to the Magistrate and heard upon the Complaint of the Plaintiff, the Answer of Defendant Virgil H. Collins, the Motion for Summary Judgment of the Plaintiff and the Affidavit and Exhibits in support thereof, Plaintiff's Motion for Default Judgment, and the evidence.

The Magistrate hereby finds that there is no genuine issue as to any material fact, and that reasonable minds can come to but one conclusion which is adverse to the Defendant, Virgil H. Collins, and that Plaintiff is entitled to judgment as a matter of law, and therefore Plaintiff's Motion for Summary Judgment is granted.

The Magistrate finds that all necessary parties have been served with summons according to law and are properly before the Court; that the Defendants, Unknown Spouse, if any, of Virgil H. Collins, Ruth J. Collins, Unknown Spouse, if any, of Ruth J. Collins, New Century Mortgage Corporation, and New Century Liquidating Trust, successor-in-interest to New Century Mortgage Corporation, are in default of Answer or other pleading and thereby confess the allegations of the Complaint to be true.

The Magistrate finds that there is due the Cuyahoga County Treasurer, taxes, accrued taxes, assessments, and penalties on the premises described herein including: (1) taxes, assessments, interest, and penalties, the lien for which attaches before the date of sale but that are not yet determined, assessed and levied for the year that includes the date of judicial sale, apportioned pro rata to the part of that year that precedes the date of sale; and (2) all other taxes, assessments, penalties and interest which attached for a prior tax year but have not been paid on or before the date of the judicial sale. The exact amount of said taxes, accrued taxes, assessments, and penalties are unascertainable at this time, but will be determined at the time of the sale of said premises, for which amount the Cuyahoga County Treasurer has a good and valid lien.

The Magistrate finds on the evidence adduced that there is due the Plaintiff on the promissory note set forth in the First

Count of the Complaint, the sum of $126,719.39, plus interest at 7.5% per annum from October 1, 2017, for which sum, judgment is hereby rendered in favor of the Plaintiff against the Defendants, Virgil H. Collins and Ruth J. Collins, jointly and severally.

The Magistrate further finds that in order to secure the payment of the promissory note aforesaid, the Defendants, Virgil H. Collins and Ruth J. Collins, husband and wife, executed and delivered to New Century Mortgage Corporation, the certain mortgage deed as in the Second Count of said Complaint described, thereby conveying to it the following described premises:

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A".

Said premises also known as: 4932 Nan Linn Drive, Richmond Heights, Ohio

PP# 661-15-060

That said mortgage was duly filed with the Recorder of Cuyahoga County on June 5, 2006, and was by him thereafter recorded as Instrument No. 200606050479 of the Mortgage Records of said County, and thereby became and is a valid first mortgage lien upon said premises, subject only to the lien of the Treasurer for taxes; that said mortgage deed was assigned by New Century Mortgage Corporation to Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3

Asset-Backed Pass-Through Certificates, recorded in Instrument No. 201809110246, Cuyahoga County Records; that said conditions in the mortgage deed have been broken, and the same has become absolute and the Plaintiff is entitled to have the equity of redemption and dower of all the Defendants in and to the said premises foreclosed.

The Magistrate further finds that Plaintiff may have advanced or may advance during the pendency of this action sums for the payment of taxes, hazard insurance premiums and protection of the property described herein, the total amount of which is undetermined at the present time, but which amount will be ascertainable at the time of the judicial sale, which amount may be added to the first mortgage lien of Plaintiff. The Magistrate reserves for further order a determination of the exact, if any, amount due Plaintiff for said advances.

Pursuant to Civil Rule 54(B) there is no just reason for delay in entering judgment for the Plaintiff.

It is therefore ORDERED, ADJUDGED, AND DECREED that unless the sums hereinabove found due, together with the costs of this action, be fully paid within three (3) days from the date of the entry of the Court's adoption of this Magistrate's Decision, the equity of redemption and dower of all the Defendants, in and to said premises shall be foreclosed, and said premises sold; and that an order of sale shall issue directed to the Sheriff of

Cuyahoga County, ordering him to appraise, advertise in a paper of general circulation within the County, and sell said premises as upon execution and according to law, free and clear of the interest of all parties to this action. If the Court authorizes a private selling officer to sell the real estate, then the sale must proceed in accordance with R.C. §2329.152.

If this is a residential property and the property remains unsold after the first auction, then a second auction shall be held and the property shall be sold to the highest bidder without regard to the minimum bid requirement in §2329.20 of the Revised Code. This auction shall be held no earlier than seven days and not later than thirty days after the first auction.

If there is a bidder at the second or subsequent sales, the judgment creditor and the first lien holder have the right to redeem the property within fourteen days of the sale, by paying the purchase price to the Clerk of Court. Upon timely payment, the Court will proceed as described in R.C. §2329.31 with the redeeming party considered the successful purchaser at sale.

In the event an order of sale is returned by the selling officer unexecuted, subsequent orders of sale shall issue in accord with appraisal instructions as requested in a Praecipe for those sales.

It is further ordered that the Sheriff or private selling officer out of the funds in his hands pay:

FIRST:    The costs herein, including the sum of $300.00 payable to Reimer Law Co. for the Judicial Report filed herein, and the sum of $381.00 for the premium, which are hereby taxed as costs.

SECOND:   To the Cuyahoga County Treasurer, taxes, assessments, interest, and penalties, the lien for which attaches before the date of sale but that are not yet determined, assessed and levied for the year that includes the date of sale, apportioned pro rata to the part of that year that precedes the date of sale, and all other taxes, assessments, penalties, and interest which attached for a prior tax year but have not been paid on or before the date of sale.

THIRD:    To the Plaintiff, the sum of $126,719.39 plus interest thereon at the rate of 7.5% per annum from October 1, 2017.

FOURTH:   The balance, if any, to be held by the Clerk of Courts pending further order.

In the event Plaintiff is the successful bidder at the Sale, the amount of the deposits made herein by the Plaintiff and the cost of the Preliminary Judicial Report in the sum of $681.00 shall be deducted from the amount of court costs otherwise due and payable herein.

It is further ORDERED, ADJUDGED AND DECREED that there may be due to Plaintiff additional sums advanced by it under the terms of the Note and Mortgage to pay real estate taxes, hazard insurance premiums, and property protection, which sums are to be determined by further Order.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, upon the confirmation of sale made herein, a minute of these proceedings be entered upon the Cuyahoga County Records involved in this action to reflect that they are released as liens against the subject premises.

It is further ORDERED, ADJUDGED AND DECREED that after said sale has been completed, a deed will be conveyed to the purchaser, and a Writ of Possession of said property be issued.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, if a successful sale occurs, the parties are ordered to file any motions for reimbursement of advances pursuant to R.C. § 5301.233 within 21 days from the sale. A party may move the Court to extend this deadline for good cause shown. No party will be granted reimbursement for advances if such a motion is not filed before this deadline. Within 7 days from the filing of a motion for reimbursement, a party may file a brief in opposition. The Court will then make a careful examination of the sale pursuant to the applicable statutes. If, however, this case does not involve advances or no mortgagee intends to seek advances, a party may file a notice to this effect within seven days of the sale. Where such notice is filed, no party filing such notice will be granted reimbursement for advances and the Court will make a careful examination of the sale pursuant to the applicable statutes upon the return of the order of sale. A

party may redeem before confirmation of the sale. Nothing in this order prevents the Court from staying the confirmation of sale to permit a property owner additional time to redeem.

Magistrate Brian Gozelanczyk

APPROVED BY:

/s/ Edward G. Bohnert
**REIMER LAW CO.**
Edward G. Bohnert (0004920)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com


A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ. R. 53(D)(3)(b).

EXHIBIT A

SITUATED IN THE CITY OF RICHMOND HEIGHTS, COUNTY OF CUYAHOGA
AND STATE OF OHIO:

AND BEING PART OF ORIGINAL EUCLID TOWNSHIP TRACT NO. 13, FURTHER
KNOWN AS BEING SUBLOT 72 IN FRANK MAVEC'S LANCASTER ESTATES AS
SHOWN ON THE PLAT RECORDED IN VOLUME 154 OF MAPS, PAGE 16 OF
CUYAHOGA COUNTY RECORDS, SAID SUBLOT HAVING A FRONTAGE OF 75
FEET ON THE SOUTHERLY SIDE OF NAN LINN DRIVE, EXTENDING BACK
BETWEEN PARALLEL LINES A DISTANCE OF 150 FEET, AND HAVING A
REAR LINE OF 75 FEET, AS APPEARS ON SAID RECORDED PLAT, BE THE
SAME MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS.

## CERTIFICATE OF SERVICE

Copies of the foregoing Magistrate's Decision have been sent via U.S. Mail, or via e-mail if an e-mail address is available in the Court's case management system, by the Clerk of Courts to the following parties:

Edward Bohnert
Reimer Law Co.
30455 Solon Road
Solon, OH 44139

Joanne Brown
4070 Mayfield Road
Cleveland, OH  44112

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH  44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

New Century Mortgage Corporation
Service by Publication

New Century Liquidating Trust,
successor-in-interest to
New Century Mortgage Corporation
Service by Publication

Copies mailed by the Clerk of Courts on_____, 2019.

Motion No.  <u>4839746</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION FOR...**
**January 14, 2020 15:10**

By: JOANNE BROWN 0050039

Confirmation Nbr. 1915920

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL                **Judge:**  ASHLEY KILBANE

**Pages Filed:**  2

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY
## STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services
                Plaintiff

-v-


Virgil H. Collins et. al.
                Defendants

Case No. 18-904354

Judge Ashley Kilbane

Magistrate: Kevin Hippley

MOTION FOR SETTLEMENT
CONFERENCE THE PURPOSE OF
SEEKING A RESOLUTION WITH
PLAINTIFF

Now comes defendant Virgil H. Collins et. al. and moves this Court to set a settlement

conference to bring the parties before the court to resolve the matter and allow the client

to submit an application for a loan modification.

Defendant has the ability to pay a loan modification. Defendant's has a guarantee

$2,400 monthly income from social security and now has an additional $1,600 per

month. Mr. Collins regular income means he is able to make payments if he is allowed

to enter into a reasonable repayment plan.

Defendant's pass efforts to communication with the lender prior to foreclosure resulted in his continuing to sending the same documents repeatedly over and over. The court involvement with allow for a consistency in the process.

Respectfully submitted,

  /s/ Joanne Brown
Joanne Brown (0050039)
Attorney for Defendant Virgil H. Collins
4070 Mayfield Road
Cleveland, Ohio 44121
216-851-3304 (Phone)
216-851-2900 (Fax)
Email: courtfile@yahoo.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served by regular U. S. Mail postage prepaid or email January 14, 2020 upon

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw

/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**PRAECIPE FOR ORDER OF SALE $600.00**
**January 16, 2020 11:21**

By: EDWARD BOHNERT 0004920

Confirmation Nbr. 1917915

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL            **Judge:** ASHLEY KILBANE

**Pages Filed:** 1

F18-24197 EGB/pss January 16, 2020

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

Wells Fargo Bank N.A., as Trustee, for
Carrington Mortgage Loan Trust,
Series 2006-NC3 Asset-Backed Pass-
Through Certificates
_____
Plaintiff

Case No.   CV18904354
_____

VS
Virgil H. Collins, et al.
_____
Defendant

Judge   Ashley Kilbane,
_____

Praecipe for Order of Sale

To the Clerk of Courts:

Please issue an Original Order of Sale to the Cuyahoga County Sheriff directing him to appraise, advertise, and then sell the property located at:

PREMISES COMMONLY KNOWN AS:

4932 Nan Linn Drive
_____
Richmond Heights, OH 44143
_____

PERMANENT PARCEL NUMBER:   661-15-060
_____
/s/ Edward G. Bohnert 1-16-20

Edward G. Bohnert        0004920
_____
Attorney               Bar No.

30455 Solon Road
_____
Address

Solon, Ohio 44139
_____
City, State  Zip

(440) 600-5500
_____
Telephone



# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

FILED

2020 JAN 28 P 12: 28

CLERK OF COURTS
CUYAHOGA COUNTY

| | |
|---|---|
| Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates c/c Carrington Mortgage Services<br><br>        Plaintiff<br><br>-v-<br><br><br>Virgil H. Collins et. Al,<br>        Defendants | Case No. 18-904354<br><br>Judge Ashley Kilbane<br><br>Magistrate: Kevin Hippley<br><br><br>MOTION FOR OBJECTION TO MAGISTRAT'S DEFAULT JUDGMENT DECISION AGAINST DEFENDANT |

Now comes defendant Virgil H. Collins et. Al. and moves this Court to

accept his objection to Magistrate's decision per Civ. R. 53(D)(3)(b).

Defendant is aware that this request is not timely per Civ. R. 53(D), but

contends that he only recently became aware of the Magistrate's

decision of Default Judgment.

Defendant further contends that an error was made in determining that

default judgment was warranted because no plea was offered on behalf of the Defendant.

Defendant contends that he submitted a complaint and counterclaim to his counsel on good faith that it would be entered on his behalf, and was not aware until recently that his counsel had not submitted his complaint to the court.  Despite his continual request to his counsel to keep him abreast of the status of his case, his counsel failed to do so. It was not until his recent contact with the Clerk of the Court and the Court Resource center that he was given access to the court's Docket Database that he became aware of the status of his case and its history.

The Cuyahoga County Court Docket revealed the following:

1. On June 21, 2019 the Defendant's counsel file a Motion for Extension of Time to file a Complaint and Counterclaim.
   a. Reasons given by counsel was for "unexpected briefs and filings".
2. On August 15, 2019 the Judge granted the request for the extension.
3. There is no record that the Defendant's counsel ever filed his complaint and counterclaim.
4. On November 25, 2019 the Judge entered a motion for Summary Judgment.

5. The Defendant received the decision in the mail on
   January 10, 2020.

The Defendant contends that, despite frequent contact with his

counsel, she never informed his that there were any issues with his

case.

Therefore, the Defendant respectfully submit this objection to the

Magistrate's decision on grounds that it was due to circumstances

beyond his control that his complaint and counterclaims were not

submitted to this court.

Therefore, the Defendant Virgil H. Collins, a senior citizen and Vietnam

Veteran has not been allowed due process and a fair and impartial

hearing on his foreclosure case in the State of Ohio.


Respectfully submitted,

   /s/  Virgil H. Collins
Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
(2160 410-4872
Email: virgilc@netlink.net

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served by regular U.S. Mail postage or email January 28, 2020 upon

Douglas A. Haessig
Reimer LAW
PO. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw

/S/   Virgil H. Collins
Virgil H. Collins
Defendant

36



CV18904354      112296966

**Cuyahoga County Sheriff**

# LAND APPRAISAL

CV-18-904354   OOS

We, the undersigned disinterested freeholders and residents of the County of Cuyahoga, Ohio, having been duly summoned and sworn by The Sheriff of Cuyahoga County, impartially to appraise upon actual view, the following described lands and tenements, to wit:

FILED

2020 JAN 30 P 12: 26

CLERK OF COURTS
CUYAHOGA COUNTY

To be sold on an Order of Sale issued from the Court of Common Pleas of said Cuyahoga County, in the action of

WELLS FARGO BANK N.A. AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC3 ASSET-BACKED PASS-THROUGH CERTIFICATES plaintiff, vs.
VIRGIL H COLLINS, ET AL defendant

Do forthwith, after actual view of said premises, make return and say that the same are of the real value in money of
ONE HUNDRED FIFTY THOUSAND DOLLARS AND 00/100 ($150,000.00)........
**Given under our hand and seals, this 28th day of January A.D. 2020**

BRENT T BAILEY

JOHN KOZ

MARK BUTLER

# The State of Ohio }

Cuyahoga County

ss. I hereby certify that the within named appraisers

**BRENT T BAILEY, JOHN KOZ and MARK BUTLER**
are freeholders and residents of said County, and were duly summoned and sworn by me to appraise the within described premises, this **28th day of January A.D. 2020**

**Cuyahoga County Sheriff**

by _____

SCSMH

# CUYAHOGA COUNTY SHERIFF'S OFFICE

## SHERIFF'S INSPECTION & OPINION OF VALUE REPORT

*This property inspection and opinion of value report is solely intended for use by the Cuyahoga County Sheriff's Office for compliance with O.R.C. 2323.07 et al.*

**CASE INFO**

CASE #: _904,354_

OWNER: _Virgil + Ruth Collins_

CITY: _Richmond Heights_

TOTAL OPINION OF VALUE: $ _150,000_

ADDRESS: _4932 Nan Linn Drive_

VALUE METHOD: ☑ SALES ☐ INCOME ☐ COST

**PROPERTY**

| PARCEL ID | ADDRESS | VALUE |
|---|---|---|
| 661-15-060 | | 150000 |
| | | |
| | | |
| | | |

**INSPECTION**

INSPECTION DATE / TIME _1/28/20 - AM_  PERSON INTERVIEWED ____

INSPECTION TYPE ☑ EXTERIOR ONLY ☐ INTERIOR AND EXTERIOR

INTERIOR COMMENTS AND CONDITION NOTES _Fenced yard  Difficult to view rear  pool in rear_

**SITE**

PARCEL SIZE _11,250_ S.F. _.26_ ACRES    EFF. FRONTAGE _75_    EFF. DEPTH _150_

APPARENT USE ☑ SINGLE FAMILY ☐ TWO FAMILY ☐ THREE FAMILY ☐ FOUR FAMILY ☐ LAND ONLY ☐ OTHER ____

ZONING _Assumed to be legal and conforming_

NEIGHBORHOOD DESCRIPTION _Residential_

**IMPROVEMENTS**

NUMBER OF UNITS ☑ SINGLE FAMILY ☐ TWO-FAMILY ☐ THREE-FAMILY ☐ OTHER ____

BUILDING STYLE ☐ RANCH ☐ BUNGALOW ☐ CAPE COD ☑ COLONIAL ☐ SPLIT-LEVEL ☐ BI-LEVEL ☐ DUPLEX ☐ CONTEMPORARY ☐ WALK-UP ☐ TOWNHOME ☐ 3 FAMILY ☐ OTHER ____

CONDITION ☐ EXCELLENT ☐ VERY GOOD ☐ GOOD ☐ AVERAGE ☑ FAIR ☐ POOR ☐ VERY POOR ☐ UNSOUND ☐ VANDALIZED

EXTERIOR WALLS ☐ FRAME ☐ BRICK ☑ ALUM/VINYL ☐ FRAME/BRICK ☐ BRICK/STUCCO ☐ STONE ☐ CONCRETE BLOCK ☐ OTHER ____

EXT. COMMENTS ☑ PEELING PAINT ☐ MISSING SIDING ☐ ROTTEN WOOD ☐ FIRE DAMAGE ☐ VANDALIZED / UNSECURED ☐ BOARDED ☐ OTHER ____

ROOF TYPE ☑ GABLE ☐ HIP ☐ MANSARD ☐ GAMBREL ☐ FLAT ☐ SINGLE-PITCH ☐ OTHER ____

FOUNDATION ☑ FULL BASEMENT ☐ PARTIAL BASEMENT ☐ SLAB ☐ CRAWL ☐ WALKOUT ☐ UNKNOWN

STORY HEIGHT ☐ ONE-STORY ☐ STORY AND A HALF ☑ TWO-STORY ☐ TWO AND A HALF STORY ☐ OTHER ____

ATTIC TYPE ☐ FINISHED ☐ UNFINISHED ☑ UNKNOWN

HEATING ☑ FORCED AIR ☐ HOT WATER ☐ HEAT PUMP ☐ RADIANT ☐ UNIT HEAT ☐ GRAVITY ☐ NONE

AIR-CONDITIONING ☑ CENTRAL ☐ WINDOW UNITS ☐ NONE

GARAGE CAPACITY ☐ ONE CAR ☑ TWO CAR ☐ THREE CAR ☐ OTHER ____

**RECONCILIATION**

INDICATED VALUE BY SALES COMPARISON APPROACH:    $ _150000_

INDICATED VALUE BY COST APPROACH:    $ _N/A_

INDICATED VALUE BY INCOME APPROACH:    $ _N/A_

## CUYAHOGA COUNTY SHERIFF'S OFFICE — SHERIFF'S INSPECTION & OPINION OF VALUE REPORT

### COMPARABLE SALES CONSIDERED

| COMP | PARCEL ID | ADDRESS | CITY | SALE DATE | SALE AMOUNT |
|------|-----------|---------|------|-----------|-------------|
| 1 | | 4957 Swetland | Richmond Hts | 8-19 | 140,000 |
| 2 | | 1959 Sunset | Richmond Hts | 8-19 | 205,000 |
| 3 | | 24834 Roadledge | Richmond Hts | 10-19 | 167,000 |

NOTE: Additional sales may have been considered in comparable sales analysis.

COMMENTS: _____

### COST APPROACH

IS THE COST APPROACH APPLICABLE TO THIS PARCEL ?  ☐ YES  ☑ NO

IF NO, WHY?  Age of improvements and excessive depreciation

YEAR BUILT _____  EFFECTIVE AGE _____  CONDITION _____  TOTAL LIVING AREA _____

ESTIMATED REPLACEMENT COST OF BUILDING (RCN)  $ _____

PHYS. % GOOD _____  FUNCT. % GOOD _____  ECONOMIC % GOOD _____  TOTAL % GOOD _____ %

COMMENTS: _____

ESTIMATED VALUE OF BUILDING (RCNLD)  $ _____

ESTIMATED VALUE OF LAND  $ _____

COST ESTIMATE  $ _____

### INCOME APPROACH

IS THE INCOME APPROACH APPLICABLE TO THIS PARCEL ?  ☐ YES  ☑ NO

IF NO, WHY?  Properties in this market are predominantly owner occupied and/or verifiable rent/GRM data is unavailable

COMMENTS: _____

ESTIMATED MARKET RENT  $ _____

GROSS RENT MULTIPLIER  $ _____

INDICATED VALUE BY INCOME APPROACH  $ _____

### PUBLIC SAFETY

IS SUBJECT PROPERTY CURRENTLY OCCUPIED?  ☑ YES  ☐ NO  ☐ UNKNOWN

DOES PROPERTY PRESENT A DANGER TO PUBLIC HEALTH & SAFETY?  ☐ YES  ☑ NO

SHERIFF'S OFFICE SHOULD CONTACT LOCAL BUILDING DEPARTMENT REGARDING THE CONDITION OF SUBJECT PROPERTY?  ☐ YES  ☑ NO

### ACKNOWLEDGEMENT

The undersigned have viewed the property pursuant to O.R.C. 2329.17 and certify that the above information is true and to the best of our knowledge. Public records were relied upon to determine certain property characteristics, including, but not limited to, the above grade living area and room count of the subject and comparable properties. Additional disclosures and disclaimers are on retained on file at the Cuyahoga County Sheriffs Department and made part of this report by reference.

Appraiser (Driver) _____  Date: 1-28-20

Appraiser _____  Date: 1-28-20

Appraiser _____  Date: 1-28-20

Motion No.  <u>4844216</u>



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### MOTION FOR RELIEF FROM JUDGMENT  $30
### February 2, 2020 22:17

By: JOANNE BROWN 0050039

Confirmation Nbr. 1932612

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL          **Judge:**  ASHLEY KILBANE

**Pages Filed:**  8

904354

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services
                Plaintiff

-v-


Virgil H. Collins et. al.
                Defendants

Case No. 18-904354

Judge Ashley Kilbane

Magistrate: Kevin Hippley

COMBINED MOTION TO VACATE
JUDGMENT, FOR RELIEF FROM
JUDGMENT, LEAVE TO AMEND
ANSWER AND TO SUBMIT
COUNTERCLAIM.

Counsel for Defendant Virgil Collins moves the Court to vacate its judgment in foreclosure or in the

alternative for relief from the judgment or for a stay of further proceedings in aid of execution thereon

pending resolution of this motion for relief and for an order granting counsel leave to amend Defendant's

answer and to submit a counterclaim. These motions are made in accordance with Civil Rules 60(B) (1),

62(A) and 6(B)(2) and for reasons more fully described in the supporting Memorandum and Affidavit of

Attorney Joanne Brown attached thereto all which are incorporated as if rewritten herein.

Respectfully submitted,

/s/Joanne Brown
Joanne Brown (0050039)
Attorney for Defendant
4070 Mayfield Road
Cleveland, Ohio 44121
Phone 216-851-3304

904354

Fax: 216-851-2900
Email: courtfile@yahoo.com

## MEMORANDUM

## FACTS

Counsel filed two separate requests for extension of time to amend Defendant's answer and to submit a counter claim to Plaintiff complaint for foreclosure.

Plaintiff failed to request an additional extension which resulted in the court issuing a summary judgment in favor of Plaintiff and the court not rendering a decision on counterclaim.

Counsel's failure to timely request the extension was the result of four things all happening at once:

1. Counsel had used Time Matters™ case, client document management software from LexisNexis® for several years. Time Matters™ by way of a computerized system encased the entire law firm business process: centralized client data, calendars, emails, documents, meetings, task, and appointment. Counsel changed from Time Matter ™ case management system to Clio ™ case management system.   When counsel discontinued Time Matters™, she was locked out the ability unable to access her data.

2. Where counsel's electronic system would have alerted the need to file for the extension, the inability to have access to the office's electronic data,  require the office to employ a less efficient manual system for all office activity while making the transition from Time Matters™ to Clio™.

3. Next, counsel was out of the office for six weeks due to an onset of what was determined to be non-traumatic radial nerve palsy in her left arm.  The palsy occurs due to injury to the radial nerve in the radial groove of the humerus.

904354

4. The pain associated with the injury incapacitated counsel for six weeks. The pain rendered counsel incompetent to perform any tack. Due to the severity of the pain counsel was not able to move and literally remained in the bed.

5. Counsel was totally incapable of filing for a time extension.

6. Finally, to add to the comedy of errors, the assistance who would have ordinarily caught the request for extension not being filed, was also out.

7. The combination of all these factors resulted in a failure to request an extension.

8. When counsel returned to her office, needless to say, there was a mountain of items needing attention.

9. Counsel became aware something had gone wrong in this case when she received the notice granting of the motion for summary judgment.

10. Counsel's first response was to file a motion to stay followed by a motion for a settlement conference.

11. Counsel subsequently was able to piece together what had happen in this case.

~~12.~~ Counsel seeks relief in accordance with Rules 60(B)(1), 62(A) and 6(B)(2)

13. Civil Rule 60(B) "is a remedial rule to be liberally construed so that the ends of justice may be served." [1]

14. To prevail on a Civil Rule 60(B) motion, counsel must show that defendant has a meritorious defense; that he is entitled to relief under one of the grounds set forth in the rule; and that the motion was filed within a reasonable time.[2]

---

[1] *Kay v. Marc Glassman, Inc.* (1996), 75 Ohio St.3d 18, 20.

[2] *Moore v. Emmanuel Family Training Center* (1985), 18 Ohio St.3d 64, 67.

904354

15. On a Civil Rule 60(B) motion, the counsel need only allege a meritorious defense—Mr. Collins need not prevail on the merits.[3]

16. For the purpose of affirmative defense requirement among other things:

    a.  Mr. Collins asserts the contract in this case was induce by fraud. Mr. Collins is a veteran. According to him, because he was aware of the benefits associated with a VA loan, he specially requested a VA loan. He was told his loan was a VA loan and he relied on that representation to enter into the agreement.

    b.  The representation was false, the mortgage associated with this transaction is not a VA home loan.

    c.  Mr. Collins did not become aware his loan was not a VA loan, until he sought financial assistance from VA and was denied because his loan was not a VA loan.

    d.  For the purchase of this home instead of one loan, the purchase was funded by multiple loan. On information and belief this was done to conceal the loan being a high interest loan.

    e.  Mr. Collins income was fraudulently inflated on his loan application for the purchase.

17. All the above issues are raised in support of this motion to vacate judgment.

18. In addition, counsel raises the defense of equity.

19. Courts of Common Pleas have plenary equity powers in deciding whether to order foreclosure.[4] Courts of equity are not bound by any formula or limitation that tends to trammel free and just exercise of their discretion.[5] Courts sitting at equity select the most dominant and determinative

---

[3] *Moore*, 18 Ohio St.3d at 67.

[4] *Equitable Federal Savings and Loan Assn. v. Hopton* (5th Dist. Ct. App., October 28, 1985), No. CA-664, quoting *Dawes v. Murphy* (1963), 119 Ohio App.201, 197 N.E.2d 818..

[5] *Keystone Driller Co., v. General Excavator Co.* (1933), 290 U.S. 240, 246, 54 S.Ct. 146, 78 L.Ed. 293.

904354

maxims from many derived through centuries of adjudication and apply them to the peculiar facts and equitable considerations of each case.[6]

20. Rule 62 of the Ohio Rules of Civil Procedure provides that a court may stay execution of judgment pending disposition of a Civil Rule 60(B) motion in its discretion and on such conditions for security of the adverse party the court deems proper. The Counsel request a stay of any further proceedings in aid of execution on the judgment for foreclosure, pending disposition of this combined motions to vacate judgment and for relief from judgment.

21. Defendant will suffer an irreparable loss if his home is sold while he is denied any meaningful opportunity to defend this action.  Under the circumstances, it would be manifestly unjust to divest Mr. Collins of all rights, title and interest in his home.

***Request for leave to amend pleadings and file a counterclaim in this proceeding***

22. Further the court under Civil Rule 6(B) (2) has ruled, a request for leave to file pleading outside of time  may be granted "even if a party has not provided an explicit reason for delay unless the other party is prejudiced by the delay" Howland v Lyons  Ohio App 8th Dist 2002 WL 36369 which states in part:

> When determining whether to permit a tardy filing, judges must consider all surrounding facts and circumstances, while remaining mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds.

---

[6] 41 Ohio Jurisprudence 3d (2008), Equity, Section 42; *City of Tiffin v. Shawhan* (1885), 43 Ohio St. 178, 183, 13 W.L.B. 641, 1 N.E. 581.

904354

23. This court is urged to grant Defendant's motion for leave to file requested pleadings outside of time recognizing that there is a preference for allowing matters to be decided on the merits.

**Wherefore**, counsel showing good cause for it motion, prays the court issue an order to:

a. Vacate its judgment in foreclosure, and/or
b. In the alternative for relief from the judgment, and/or
c. A stay of further proceedings in aid of execution thereon pending resolution of this motion for relief and
d. For an order granting counsel leave to amend answer and to submit a counterclaim.

Respectfully Submitted

/s/ Joanne Brown
Joanne Brown (0050039)
4070 Mayfield Road
Cleveland, Ohio 44121
216-851-3304 Phone
216-851-2900 Fax
Email: courtfile@yahoo.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served by regular U. S. Mail postage prepaid or email or Via the Court's Electronic Case Filing System on these entities February 2, 2020 upon

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw.com

/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY
## STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services
                Plaintiff

-v-

Virgil H. Collins et. al.
                Defendants

Case No. 18-904354

Judge Ashley Kilbane

Magistrate: Kevin Hippley

## AFFIDAVIT

Cuyahoga County, Ohio

I, Joanne Brown, first being duly sworn according to law depose and say that the facts stated are true do hereby state the following.

1. I am an attorney representing the defendant Virgil Collins in the above reference case.
2. After many years of using Time Matters™ automated case management system we switched to Clio™ automated case management system, another supplier.
3. During the transition period from Time Matters ™ to Clio™ counsel did not have access to the data formerly maintained by Time Matters™.
4. I was out of my office for approximately six weeks, due to non-traumatic radial nerve palsy in her left arm.
5. The effects of this injury rendered me incapable of performing or directing the performance of any task.

This I swear under threat of perjury February 2, 2020

Witness my signature, further affiant sayent naught

_____ Joanne Brown

904354

**State of Ohio**
**Cuyahoga County**

**Before me** a Notary Public in and for the State of Ohio Personally appeared the above named Affiant Joanne Brown who acknowledged that she did sign the foregoing affidavit and that the same is her voluntary free act and deed.

**In Testimony Whereof,** I have hereunto subscribed my name and official seal, at Cleveland, Ohio this February 2, 2020.

NOTARY PUBLIC
Virgil Brown
Attorney at Law
Notary for the State of Ohio
My commission does not expire



112296413

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

VIRGIL H. COLLINS, ET AL
    Defendant

Case No: CV-18-904354

Judge: ASHLEY KILBANE

## JOURNAL ENTRY

NOTICE OF SALE AND APPROVAL OF APPRAISERS' FEES.
THE SALE IS SCHEDULED FOR 03/02/2020 AT 9:00 A.M. AT THE CUYAHOGA COUNTY JUSTICE CENTER
AUDITORIUM, 1215 WEST 3RD STREET, CLEVELAND, OHIO 44113. IF NOT SOLD ON 03/02/2020 IT WILL BE RE-
OFFERED ON 03/16/2020  PURSUANT TO LOCAL RULE 27 IT IS HEREBY ORDERED THAT EACH APPRAISER NAMED
BE COMPENSATED BY THE CLERK OF COURTS, FROM THE FUNDS ON DEPOSIT AS FOLLOWS:

BRENT T. BAILEY, APPRAISAL COST: $51.67 REGULAR FEE AND MILEAGE.
MARK BUTLER, APPRAISAL COST: $50 REGULAR FEE.
JOHN KOZ, APPRAISAL COST: $50 REGULAR FEE.
FEES TO BE TAXED AS COSTS IN CASE NO. CV-18-904354  DATED THIS 28th DAY OF JANUARY, 2020
NOTICE ISSUED

*Ashley Kilbane*

_____
Judge Signature          02/03/2020

01/31/2020



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**NOTICE OF**
**February 10, 2020 13:40**

By: EDWARD BOHNERT 0004920

Confirmation Nbr. 1939232

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL              **Judge:**  ASHLEY KILBANE

**Pages Filed:**  2

F18-24197                        EGB/pss                   February 10, 2020

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Wells Fargo Bank N.A., as | ) Case No. CV18904354 |
| Trustee, for Carrington Mortgage | ) |
| Loan Trust, Series 2006-NC3 | ) JUDGE Ashley Kilbane, |
| Asset-Backed Pass-Through | ) |
| Certificates | ) |
| | ) **NOTICE OF SALE** |
| Plaintiff | ) |
| -vs-. | ) |
| | ) |
| Virgil H. Collins, et al. | ) |
| | ) |
| Defendants | ) |

All parties are hereby advised that the property involved in the
above-captioned matter has been set for sale on March 2, 2020 at 9:00
a.m. Cuyahoga County Justice Center Auditorium, Cleveland, Ohio.
Sheriff's appraisal is $150,000.00, and by statute, the property must
be sold for not less than two-thirds of that amount.

All parties are hereby further advised that if the property
involved in this matter is not sold at the March 2, 2020 sale, then a
second sale shall be held on March 16, 2020 at 9:00 a.m. Cuyahoga
County Justice Center Auditorium, Cleveland, Ohio, and the property
herein shall be sold to the highest bidder with no minimum bid
required.

/s/ Edward G. Bohnert 2-10-20

**REIMER LAW CO.**
By:    Edward G. Bohnert (Reg. #0004920)
F. Peter Costello (Reg. #0076112)
Attorneys for the Plaintiff
P.O. Box 39696, 30455 Solon Road
Solon, OH 44139

Phone: (440) 600-5500, Ext. 110
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com

- 2 -

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent by electronic e-service notification or regular U.S. mail on ___2-10___, 2020, to the following:

Joanne Brown
Attorney at Law
4070 Mayfield Road
Cleveland, OH  44112

Unknown Spouse, if any,
of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH  44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

Unknown Spouse, if any,
of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

/s/ Edward G. Bohnert 2-10-20
**REIMER LAW CO.**
By:     Edward G. Bohnert (Reg. #0004920)
F. Peter Costello (Reg. #0076112)
Attorneys for the Plaintiff
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500, Ext. 110
Fax: 440-600-5586
Email: ebohnert@reimerlaw.com

**Motion No.** 4847943



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION TO...**
**February 17, 2020 13:23**

By: MICHAEL L. WIERY 0068898

Confirmation Nbr. 1944795

WELLS FARGO BANK N.A.

CV 18 904354

vs.

**Judge:** ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL

**Pages Filed:** 12

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Wells Fargo Bank N.A., as Trustee, for ) | Case No. CV 18 904354 |
| Carrington Mortgage Loan Trust, Series ) | |
| 2006-NC3 Asset-Backed Pass-Through ) | Judge Ashley Kilbane |
| Certificates ) | |
| ) | **PLAINTIFF'S BRIEF IN OPPOSITION** |
| Plaintiff ) | **TO DEFENDANT'S MOTION TO** |
| ) | **VACATE JUDGMENT AND LEAVE TO** |
| vs. ) | **FILE ANSWER AND SUBMIT** |
| ) | **COUNTERCLAIM** |
| Virgil H. Collins, et al. ) | |

Defendants

Now comes Plaintiff, Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates, by and through undersigned counsel, and hereby submits its Brief in Opposition to Defendant Virgil H. Collins' Motion to Vacate Judgment and Leave to File Answer and Submit Counterclaim ("Motion") filed on February 2, 2020.

As more fully stated herein, Plaintiff bases its Brief in Opposition on the grounds that Defendant's Motion does not comply with the requirements set forth in Civ. R. 60(B). Plaintiff further bases its Brief in Opposition on the grounds that Defendant's allegations in the Motion for Leave do not satisfy the pleading requirements set forth in the Ohio Rules of Civil Procedure. Therefore, for the reasons set forth below, Plaintiff requests this honorable court deny Defendant's Motion to Vacate Judgment and Leave to File Answer and Submit Counterclaim.

## I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff initially filed its Complaint for foreclosure on September 25, 2018 against Defendant Virgil H. Collins for failure to cure the default on Defendant's Mortgage loan. Defendant filed a Motion for Leave to file an Answer on November 7, 2018, which was granted by the court on December 22, 2018. Plaintiff attempted to file a Motion for Summary Judgment on January 15, 2019, but the Motion was held in abeyance pursuant to a Judgment Entry dated March 26, 2019 in order to allow for settlement procedures. During a hearing set for May 24, 2019, Defendant made an Oral Motion for Leave to file an Answer, which the court granted and set the deadline for filing for June 21, 2019. On June 21, 2019, Defendant again filed a Motion for Extension, which the court granted and extended the filing deadline to August 15, 2019. On August 15, 2019, Defendant once again filed a Motion for Extension, which the granted by the court with the following stipulation: "Defendant's Motion for Extension of Time to File an Amended Answer and Counterclaim is granted. The Amended Answer and Counterclaim may be filed on or before September 13, 2019. **No further extensions**." (emphasis added). Defendant failed to file an Amended Answer and Counterclaim by the September 13, 2019 deadline.

On November 25, 2019, the court granted Plaintiff's previously submitted Motion for Summary Judgment in Plaintiff's favor. A Magistrate's Decision was filed December 11, 2019, and the Judgement Entry adopting the Magistrate's Decision was filed January 7, 2020. Defendant attempted to file a Motion for Stay to seek Resolution with Plaintiff on December 20, 2019, but was denied by the court on December 30, 2019. Plaintiff filed a Praecipe for Order of Sale on January 16, 2020 for the foreclosed property, and a sale date was set for March 2, 2020. Thereafter, Defendant filed the Motion to Vacate and Leave to file Answer and Counterclaim presently before the court.

Plaintiff files its Brief in Opposition to Defendant's Motion on the grounds that it does not comply with any of the requirements necessary to prevail under a Rule 60(B) motion, and fails to satisfy the requirements set forth in Civ. R. 6(B)(2).

## II. STANDARD OF REVIEW

### A. Law and Argument

Defendant first seeks relief under Civ. R. 60, which provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

Civ. R. 60(B)(1)-(5) (Emphasis added). In order to prevail on a motion pursuant to Rule 60(B), the moving party must demonstrate the following: "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1)-(5); and (3) the motion is made within a reasonable time." *GTE Automatic Elec., Inc. v ARC Industries Inc.,* 47 Ohio St.2d 146, 351 N.E.2d 113, 1 O.O.3d 86 (1976). In order to prevail on a motion pursuant to Civ. R. 60(B), **the moving party must prevail on all three prongs of the test articulated in *GTE Automatic.* As more fully discussed herein, Defendant fails to satisfy any of the three requirements under *GTE Automatic.*

### B. Defendant fails to allege a meritorious defense to justify granting the Motion to Vacate Judgment

Defendant alleges that it has a meritorious defense to satisfy the first requirement as stated by the Supreme Court of Ohio in *GTE Automatic.* Specifically, Defendant's Motion to

Vacate Judgment alleges that the loan contract in the present matter was induced by Plaintiff's fraud, because Plaintiff allegedly misrepresented to Defendant that the loan was a VA loan despite knowing it was, in fact, not a VA loan (Defendant's Motion to Vacate Judgment, ¶ 16(a)). Defendant also alleges that he did not become aware that the loan was not a VA loan until he sought financial assistance from the VA. Id. These arguments, however, fail to establish a meritorious defense as required to prevail under Civ. R. 60(B).

A meritorious defense requires a movant to allege a meritorious claim or defense, not to prove that she will prevail on such claim or defense. *Portfolio Recovery Assoc., LLC v Thacker,* Not Reported in N.E.2d, 2009 WL 2675665, 2009-Ohio-4406 (Ohio Ct. App. 2nd Dist. Clark County), citing *State v Yount,* 175 Ohio App.3d 733, 889 N.E.2d 162, 2008-Ohio-1155, at ¶ 10. Pursuant to the Ohio Revised Code, in alleging matters of fraud as in the case at bar, the action must be brought within four years after the cause thereof accrued. See O.R.C. § 2305.09(C). In interpreting when the statute of limitations for a tort pursuant to O.R.C. § 2305.09 begins to run, the "discovery rule" generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, **in the exercise of reasonable care, should have discovered the complained of injury.** *Investor REIT One v Jacobs,* 46 Ohio St.3d 176, 546 N.E.2d 206, 58 USLW 2341 (1989). In the present matter, Defendant does not sufficiently allege a meritorious defense.

The subject loan's inception dates back to June 2006, almost <u>fourteen years</u> from the date of this present motion. The court may determine that, given the contents of the Note and the fact that nowhere in the four corners of the document does it mention anything about a VA loan, that Defendant reasonably should have known the Note was not a VA loan on the date of signing. In that case, the statute of limitations to raise claims of fraud would expire in June 2010. Even if the

court marks the date of accrual to this cause of action the date Defendant discovered the Note was not a VA Loan instead of the date of the loan's inception, Defendant's Motion to Vacate Judgment nevertheless fails to adequately raise a meritorious defense. Defendant does not state the date Defendant discovered the Note was not a VA Loan, or even generally mention that the date of discovery falls within the statute of limitations for fraud. Given that this Note was created nearly fourteen years ago, and the fraud alleged relates to actions at the time of the loan's inception, Defendant did not sufficiently allege a plausible meritorious defense to satisfy the requirements to prevail under Rule 60(B).

### C. Defendant fails to properly allege it is entitled to relief under Rule 60(B)(1)-(5)

Because Defendant did not raise a meritorious defense in the Motion to Vacate Judgment, Defendant cannot prevail under Civ. R. 60(B). Nevertheless, even if the court holds Defendant has sufficiently pled a meritorious defense, Defendant's Motion to Vacate Judgment fails to adequately allege it is entitled to relief under any of Civ. R. 60(B)'s subsections.

There is no bright-line test to determine whether excusable neglect exists, or whether a party's neglect is inexcusable. *Cannell v Bates*, 2001 WL 224532 (Ohio Ct. App. 10th Dist. Franklin County 2001); *Keaton v Purchase Plus Buyers Group, Inc.*, 145 Ohio App.3d 796, 2001-Ohio-2569, 764 N.E.2d 1043 (4th Dist. Pike County 2001). Rather, a court must determine excusable neglect by looking to the facts and circumstances of each case. *Rose Chevrolet, Inc. v Adams*, 36 Ohio St.3d 17, 520 N.E.2d 564 (1988); Griffey v Rajan, 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987). Neglect is not "excusable neglect" if the conduct falls substantially below what is reasonable under the circumstances. *Mid-America Acceptance Co. v Lightle*, 63 Ohio App.3d 590, 579 N.E.2d 721 (10th Dist. Franklin County 1989). Additionally, negligence is not "excusable" when it constitutes a complete disregard for the judicial system and the rights of the

appellee. *Amzee Corp. v Comerica Bank-Midwest*, 2002-Ohio-3084, 48 U.C.C. Rep. Serv.2d 833 (Ohio Ct. App. 10th Dist. Franklin County 2002).

Defendant's Motion to Vacate Judgment alleges various events that rendered Defense Counsel unable to file a motion for extension with this Court, all of which taken together fail to rise to the level of excusable neglect. Defendant was granted a third extension on August 15, 2019 granting until September 13, 2019 for Defendant to file an amended answer and counterclaim. This Court granted summary judgment in Plaintiff's favor on November 25, 2019, and a Magistrate's Decision was filed on December 11, 2019. Defense Counsel alleges she was unexpectedly incapacitated for about six weeks, but does not plead when during this time period this occurred. Just because Defense Counsel experienced medical complications for a portion of these four months does not automatically qualify as excusable neglect. If Defense Counsel encountered these medical issues prior to the September 13, 2019 deadline, the six weeks would have left plenty of time to contact the court or Plaintiff's counsel, but Defense Counsel made no such contact. If the medical complications occurred after the September 13, 2019 deadline, Defendant would have once again failed to file the amended answer and counterclaim within the specified deadline after this Court specifically instructed that no further extensions would be granted. Regardless of when these medical complications occurred, Defense Counsel's medical condition does not constitute excusable neglect because the Motion to Vacate Judgment does not allege specific facts to establish excusable neglect.

Nor does Defense Counsel's apparent computer difficulties and office personnel issues constitute excusable neglect. Defense Counsel alleges she switched to a different case management system, and in the process was unable to access her case information. Again, the Motion to Vacate Judgment does not indicate when along the case timeline this supposedly

occurred, or that it even impacted Defendant's failure to file a timely answer and counterclaim. Moreover, Defense Counsel voluntarily chose to switch programs, fully aware that she must account for presumably numerous cases and clients. Defendant's failure to keep a separate list of her case information prior to switching case management software does not constitute excusable neglect. Excusable neglect warranting relief from judgment is not present if the party seeking relief could have prevented the circumstances from occurring. Ohio Civ. R. 60(B)(1); *M.R. Durant Electric, LLC v Awesome87, LLC*, 2017-Ohio-4331, 92 N.E.3d 346 (Ohio Ct. App. 5th Dist. Muskingum County 2017). In the present matter, Defense Counsel knew that she represented various clients and cases upon willfully switching her case management software, and could have kept alternative copies or records of such cases to continue with representing her clients.

Additionally, Defense Counsel's employee's absence from the office is insufficient to justify not contacting or filing anything with the court for four months following Defendant's August 15, 2019 time extension. See *Woodson v Carlson* (2001), Summit App. No. 20206 (Failure to Comply with an extended answer deadline due to change in attorney's key office personnel was a complete disregard of the judicial system and the granting of defendant's motion for relief from judgment was, thus, an abuse of the trial court's discretion.) Taken together, none of the reasons to which Defendant points indicate sufficient grounds to satisfy a finding of excusable neglect. Therefore, Defendant fails to satisfy the second requirement to prevail under Civ. R. 60(B).

### D. Defendant's Motion to Vacate Judgment was not filed within a reasonable time.

Defendant failed to demonstrate that (1) if relief is granted, Defendant has a meritorious defense or claim, and (2) Defendant is entitled to relief under any subsection of Civ. R. 60(B).

Because Defendant must demonstrate all three of the requirements sent forth in *GTE Automatic*, Defendant is not entitled to recover. Nevertheless, even if the court determines Defendant sufficiently satisfied the first two requirements set forth by the Supreme Court of Ohio, Defendant is still not entitled to relief because it did not file the present Motion to Vacate Judgment within a reasonable time.

Under the Ohio Rules of Civil Procedure, a motion for relief from a final judgment, order, or proceeding must be made within a reasonable time. Civ. R. 60(B). Additionally, under any of the reasons set forth in sections 60(B)(1), 60(B)(2), or 60(B)(3), the motion must be made not more than one year after the judgment, order or proceeding. Id. However, the one year provision for sections 60(B)(1)-(3) is not to be considered an acceptable maximum time limit because the court must determine if the time the delay in requesting such relief is reasonable under the circumstances. *Martinko v Strongsville High School*, 2002-Ohio-1404, 2002 WL 472307 (Ohio Ct. App. 8th Dist. Cuyahoga County 2002); see also *Bankers Trust Co. of California, N.A. v Munoz*, 142 Ohio App.3d 103, 754 N.E.2d 265 (8th Dist. Cuyahoga County 2001). What constitutes a reasonable time must be determined under the facts and circumstances of each case. *Estate of Orth v Inman*, 2002-Ohio-3728, 2002 WL 1626149 (Ohio Ct. App. 10th Dist. Franklin County 2002); *Martinko*, 2002-Ohio-1404, 2002 WL 472307. It should be determined by the trial court in weighing all the facts and circumstances, including the knowledge and opportunities available to the appellants **and the prejudice, if any, to the appellee that would resnlt from vacating the final order in his or her favor**. *Whitt v Bennett*, 82 Ohio App.3d 792, 613 N.E.2d 667 (2d Dist. Montgomery County 1992) (Emphasis added). In the present matter, Defendant did not properly demonstrate the Motion to Vacate Judgment was filed within a reasonable time.

Nowhere in Defendant's Motion to Vacate Judgment does it allege that Defendant made said Motion within a reasonable time. Defendant only mentions the reasonable time requirement as one of three that Defendant must demonstrate to prevail under Civ. R. 60(B), but it is never mentioned in the remainder of the Motion. Defendant speaks at great length as to why he failed to file a timely amended answer and counterclaim, **but says nothing about why the Motion to Vacate Judgment itself was timely**. In the absence of any explanation or justification for the delay in filing a Civ. R. 60(B) motion, the motion to vacate should be denied. *CitMortgage, Inc. v Fishel,* Not Reported in N.E.2d, 2012 WL 3900384, 2012-Ohio-4117 (Ohio Ct. App. 7th Dist. Mahoning County 2012), citing *Dunn v Marthers,* 9th Dist. No. 05CA008838 2006-Ohio-4923. Here, Defendant did nothing more than merely mention that the reasonable timeliness was a requirement under Civ. R. 60(B), and wholly failed to explain in the Motion to Vacate Judgment and the attached Affidavit why the Motion was filed within a reasonable time.

Taken together, Defendant failed to satisfy any of the three requirements to prevail under Civ. R. 60(B)(1). Therefore, Defendant's Motion to Vacate Judgment should be dismissed.

### E. Defendant's Motion to Vacate Judgment and Leave to file Amended Answer and Counterclaim should be dismissed.

Defendant also includes within its Motion to Vacate Judgment a request that this court grant Defendant leave to file an amended answer and counterclaim. This argument, however, is entirely without merit.

Civ. R. 6(B) states in pertinent part that "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion […] (2) upon motion made after **the expiration of the specified period** permit the act to be done where the failure to act was the result of **excusable neglect** […]" Civ. R. 6(B)(2) (Emphasis added). The Eighth District Court of

Appeals in Cuyahoga County previously held that "A request for leave to file pleadings outside of time may be granted even if a party has not provided an explicit reason for delay **unless the other party is prejudiced by the delay.**" *Howland v Lyons,* Not Reported in N.E.2d, 2002 WL 363629, 2002-Ohio-982 (Ohio Ct. App. 8th Dist. Cuyahoga County 2002).

In the present matter, Defendant has already requested numerous extensions from this court to file an amended answer and counterclaim, all of which have been granted. The court specifically noted in its August 15, 2019 journal entry granting an extension until September 13, 2019, that no further extensions will be granted. Defendant nevertheless requests additional time to file an amended answer and counterclaim with the court after Plaintiff obtained judgment in its favor and a sale date was set. It would be a substantial injustice to Plaintiff to allow Defendant to file the same amended answer and counterclaim for which they requested leave several months ago on May 24, 2019. Moreover, as previously stated, Defendant did not demonstrate excusable neglect required to justify an additional extension. Given the fact that Defendant has been granted numerous extensions, none of which have produced an amended answer and counterclaim, and the fact that Plaintiff would be severely prejudiced if leave was granted, Defendant's request pursuant to Civ. R. 6(B) is without merit.

### III. CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Vacate Judgment and Request Leave to file Amended Answer and Counterclaim must fail. Defendant does not establish any of the three requirements necessary to prevail under a Civ. R. 60(B) motion, nor does it provide any justification to grant leave to file an amended answer and counterclaim. Defendant has requested leave as far back as May 24, 2019 to file the same amended answer and counterclaim, and at all points throughout this litigation has failed to do so. It would substantially prejudice Plaintiff if,

after the court grants summary judgment in its favor and has sale ordered for the foreclosure property, the court vacates judgment.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this honorable court deny Defendant's Motion to Vacate Judgment and Request for Leave to File Amended Answer and Counterclaim.

Respectfully submitted,

**Reimer Law Co.**

/s/ Mike L. Wiery

Mike L. Wiery (0068898)
P.O. Box 96696
30455 Solon Road
Solon, Oh 44139
Phone: (440) 600-5500/Fax: (440) 600-5520
mwiery@reimerlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent via regular U.S. Mail on <u>February 17, 2020</u> to the following:

Joanne Brown
4070 Mayfield Road
Cleveland, OH 44112

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

New Century Liquidating Trust
Successor-in-interest to
New Century Mortgage Corporation
575 Anton Blvd., Costa Mesa, CA 92626

New Century Mortgage Corporation
18400 Von Karman
Suite 1000
Irvine, CA 92612


_____/s/ Mike L. Wiery_____
Mike L. Wiery (0068898)
Reimer Law Co.
*Attorney for Plaintiff*



112562828

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
    Defendant

## JOURNAL ENTRY

DEFENDANT'S MOTION FOR OBJECTION TO MAGISTRAT'S [SIC] DEFAULT JUDGMENT DECISION AGAINST DEFENDANT IS DENIED.  THE MAGISTRATE'S DECISION IN THIS CASE WAS ISSUED DECEMBER 11, 2019.  UNDER CIV.R.53(D)(3)(B) ANY OBJECTION TO THE MAGISTRATE'S DECISION WERE REQUIRED TO BE FILED WITHIN FOURTEEN DAYS, OR DECEMBER 25, 2019.  GIVEN THAT DECEMBER 25, 2019, WAS A COURT HOLIDAY, ANY OBJECTION WOULD HAVE BEEN TIMELY FILED BY DECEMBER 26, 2019. THE RELEVANT MOTION TO OBJECT WAS NOT FILED UNTIL JANUARY 28, 2020. THUS, THE OBJECTION IS UNTIMELY AND THE REQUEST TO FILE THE SAME IS DENIED.

*Ashley Kilbane*

_____

Judge Signature          02/20/2020
                                       CPBSG

02/20/2020



112562406

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: BRIAN S GOZELANCZYK

VIRGIL H. COLLINS, ET AL
    Defendant

## **MAGISTRATE'S ORDER**

DEFENDANT'S MOTION FOR SETTLEMENT CONFERENCE IS UNOPPOSED AND GRANTED. A PHONE SETTLEMENT CONFERENCE IS SCHEDULED FOR FEBRUARY 27, 2020, AT 10:00 AM WITH MAGISTRATE BRIAN GOZELANCZYK. PLAINTIFF IS TO INITIATE THE CALL AND HAVE ALL RELEVANT PARTIES ON THE LINE PRIOR TO CALLING THE MAGISTRATE'S DEPARTMENT. ALL PARTIES ARE TO BE AVAILABLE BY PHONE.

_____

Magistrate Signature        02/20/2020
                                     CPBSG

02/20/2020



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**REPLY BRIEF**
**February 23, 2020 22:57**

By: JOANNE BROWN 0050039

Confirmation Nbr. 1950386

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL          **Judge:**  ASHLEY KILBANE

**Pages Filed:**  6

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services

                Plaintiff

-v-

Virgil H. Collins et. al.

                Defendants

Case No. 18-904354

Judge Ashley Kilbane

Magistrate: Kevin Hippley

RESPONSE TO PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S MOTION
TO VACATE JUDGMENT, AND LEAVE TO
AMEND ANSWER AND TO SUBMIT
COUNTERCLAIM.

Counsel for defendant, Virgil Collins filed a Motion to Vacate Judgment along with request for

Leave to Amend defendant's Answer and submit a counterclaim. Plaintiff filed a brief in

opposition to defendant's motion.

In light of Plaintiff's opposition, the Court must determine the following:

1. Does Defendant have a meritorious defense to Plaintiff's claim?

2. Is there a claim for excusable neglect?

3. Was Defendant's Motion to Vacate filed within a reasonable time.

4. Should Defendant be granted leave to file amended answer and counterclaim?

## I.    Does Defendant have a meritorious defense to Plaintiff's claim?

Yes. Defendant states he was fraudulently induced to enter into the agreement, Plaintiff does not

object or argue fraud in the inducement fails as a meritorious defense *GTE Automatic Elec., Inc.*

*v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 146, 351 N.E.2d 113 (1976) requiring. "To prevail on

his motion under Ohio R. Civ. P. 60(B), the movant must demonstrate that: the party has a

meritorious defense or claim to present if relief is granted"


Instead, plaintiff instead maintains the defense is barred because, "all matters of fraud must be

brought within 4 years." And that for purposes of governing statute of limitation, it began at the

time when [Defendant Collins] discovers or in the exercise of reasonable care, should have

discovered the complained of injury. Plaintiff rationalized, in this case the statute of limitation

would have expired in June 2010.

Defendant Collins does not concede, taking into account when defendant discovered or

reasonable should have discovered the fraud. the statute expired in June 2010. But even if the

court finds the statute expired in June 2010. That does not bar Mr. Collins fraud defense.

Mr. Collins may assert his claim for damages as a results of Plaintiff's assignor fraud by way of

recoupment. [A] claim of a defendant that would be barred by the statute of limitations, if

brought in an action for affirmative relief, is available as a defense or under the common-law

theory of recoupment when the claim arises out of the same transaction as the plaintiff's claim

for relief *Riley v. Montgomery,* 11 Ohio St. 3d 75, 463 N.E.2d 1246 (1984), A claim

in recoupment is essentially a defensive counterclaim arising out of the transaction that gave rise to the instrument. R.C. 1303.35(A)(3); U.C.C. § 3-305(a)(3).

[Mr. Collins] right to plead recoupment, a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded, survives the expiration of the limitations period that would otherwise bar the claim as an independent cause of action *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998); *Riley v. Montgomery*, 11 Ohio St. 3d 75, 463 N.E.2d 1246 (1984), *Johnson v. Brown*, 2003-Ohio-1257, 2003 WL 1193795 (Ohio Ct. App. 2d Dist. Clark County 2003 .*Smith v. Unified Capital Solutions, Inc.*, C.P. No. A-1102562, 2012 Ohio Misc. LEXIS 71, at *2-3 (May 9, 2012) *Akron Nat'l Bank & Trust Co. v. Roundtree* (1978), 395 N.E.2d 525, 60 Ohio App. 2d 13, 18. *Haddad v. English* (2001), 145 Ohio App.3d 598, 602, 763 N.E.2d 1199.

Also on a Civil Rule 60(B) motion, the counsel need only allege a meritorious defense—Mr. Collins need not prevail on the merits. *Moore v. Emmanuel Family Training Center* (1985), 18 Ohio St.3d 64, 67. Mr. Collins having alleged a meritorious defense the motion should be granted

Second, Plaintiff states "the contents of the Note does not mention anything about a VA loan." That is the point of Defendant Collins' fraud allegation, his loan is not a VA loan. Collins, states he was told he was getting a VA loan. The fact that the loan documents don't reflect a VA loan proves his point. Mr. Collins is/was a veteran; Mr. Collins is/was eligible for a government backed loan. Mr. Collins requested a VA loan. Mr. Collins was told his loan was a VA loan. Mr. Collins was induced into entering into the agreement due to the misrepresentation that he was getting a government backed loan. Plaintiff argues Defendant reasonably should have known the Note was not a VA loan. Mr. Collins requested a VA loan but did not get a VA loan. It is not reasonable for him to assume the lender was defrauding him. Mr. Collins was reasonable in

assuming the lender was acting in good faith. Who benefited from Mr. Collins not getting a VA loan as promised? Certainly not Mr. Collins.

### II.    Does Defendant make a claim for excusable neglect?

Yes. Next, Plaintiff argues Defendant's motion lacks excusable neglect and goes the facts one by one. Looking at the occurrences as one occurrence might lead to a barely plausible argument. However, in the case many things happened, taken together what happened in this case are matters different from the simple lapses and technical failures contemplated in Civ. R. 60. They are matters of an extraordinary nature, which is the purview of *Civ.R. 60(B)(5)*. *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 68 O.O.2d 251, 316 N.E.2d 469;

Counsel demonstrated through her affidavits that the facts and circumstances, constitute one of those "other factors" that may take the motion out of Civ.R. 60(B)(1) and entitle the defendant to relief under another section of *Civ.R. 60(B)*, *GTE Automatic Elec. v. ARC Industries, supra*, in this case, under section (5).

### III.    Was Defendant's Motion to Vacate filed within a reasonable time.

Yes. *Civ.R.60* directs a motion for relief from judgment shall be made within a reasonable time, …. not more than one year after the judgment, order or proceeding was entered or taken. *Civ. R. 60*

The Court issued the judgment on January 7, 2020, Defendant filed its motion on February 2, 2020.

Plaintiff contention the motion was not timely lack merit. Defendant filed the Motion to Vacate less 2 months of the judgment.

## IV.  Defendant's Motion to Vacate Judgement and Leave to file Amended answer and Counterclaim

Plaintiff cites Howland v Lyons, Not Reported in N.E.2d, 2002 WL 363629, 2002-Ohio-982 (Ohio Ct. App. 8th Dist. Cuyahoga County 2002). Which is also cited in Defendant's brief. Plaintiff emphasis in bold face type "unless the other party is prejudiced by the delay.  Plaintiff asserts no claim granting Defendant leave to file pleadings will prejudice Plaintiff in any way.

## CONCLUSION

Based on the foregoing Defendant's Motion to Vacate Judgment and Request Leave to File amended answer and counterclaim should be granted.

*Wherefore*, Defendant respectfully request the Court **GRANT**, Defendant's motion to Vacate Judgment and **GRANT** leave to file amended answer and counterclaim.

Respectfully Submitted

/s/ Joanne Brown
Joanne Brown (0050039)
4070 Mayfield Road
Cleveland, Ohio 44121
216-851-3304 Phone
216-851-2900 Fax
Email: courtfile@yahoo.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served by regular U. S. Mail postage prepaid or email or
Via the Court's Electronic Case Filing System on these entities February 23, 2020 upon

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw.com

/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant

**Motion No.** <u>4850368</u>



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### MOTION TO...
### February 24, 2020 21:40

By: JOANNE BROWN 0050039

Confirmation Nbr. 1951709

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL          **Judge:**  ASHLEY KILBANE

**Pages Filed:**  2

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services

              Plaintiff

-v-



Virgil H. Collins et. al.
              Defendants

Case No. 18-904354

Judge Ashley Kilbane

Magistrate: Kevin Hippley

EXPEDITED MOTION TO STAY
PROCEEDINGS

## DEFENDANTS' EXPEDITED MOTION TO STAY SHERIFF SALE OF DEFENDANTS' PROPERTY AND OR STAY CONFRIMATION OF SALE

Counsel request the court stay the March 2, 2020 sale of Defendants property and for her reason states the following:

1. February 2, 2020 counsel filed a timely motion to vacate the judgment associated with the March 2, 2020 sale date for Defendant's home.

2. February 17, 2020 Plaintiff filed an opposition brief to Defendant's motion.

3. February 23, 2020 Defendant file a response to Plaintiff's opposition brief and the matter is now before the Court.

4. Therefore, Defendants hereby moves the court for an order staying pending March 2, 2020 sheriff sale of Defendant's' home and or confirmation of the sale in the event the court issues its order after the scheduled sale date.

5. Rule 62 of the Ohio Rules of Civil Procedure provides that a court may stay execution of judgment pending disposition of a Civil Rule 60(B) motion in its discretion. The Counsel request a stay of any further proceedings in aid of execution on the judgment for foreclosure, pending disposition of the combined motions to vacate judgment and for relief from judgment.

6. Defendant Collins will suffer an irreparable loss if his home is sold while he is denied any meaningful opportunity to defend this action.  Under the circumstances, it would be manifestly unjust to divest Mr. Collins of all rights, title and interest in his home.

**Wherefore**, Defendant prays the court grant the motion and issue an order staying the current March 2, 2020 sale date for Defendant's property.

Respectfully Submitted

/s/ Joanne Brown
Joanne Brown (0050039)
4070 Mayfield Road
Cleveland, Ohio 44121
216-851-3304 Phone
216-851-2900 Fax
Email: courtfile@yahoo.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served February 24, 2020 by regular U. S. Mail postage prepaid or email or Via the Court's Electronic Case Filing System upon:

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw.com

/s/ Joanne Brown
Joanne Brown, Esq.
Attorney for Defendant



112617335

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
    Defendant

## __JOURNAL ENTRY__

MOTION FOR RELIEF FROM JUDGMENT $30 FILED BY JOANNE BROWN (0050039) COMBINED MOTION RELIEF
FROM JUDGMENT AND LEAVE TO FILE, FILED 02/02/2020, IS DENIED.

*Ashley Kilbane*
_____
Judge Signature        02/25/2020
                    CPBSG



112617340

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
    Defendant

## __JOURNAL ENTRY__

MOTION FILED FOR P1 WELLS FARGO BANK N.A. PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE JUDGMENT AND LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM, FILED 02/17/2020, IS GRANTED.

_Ashley Kilbane_

_____
Judge Signature                    02/25/2020
                                   CPBSG

02/25/2020

CV18904354    112694318


# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services

    Plaintiff

-v-

Virgil H. Collins et. Al,
    Defendants

Judge:

CA 20 109555

) Case No. 18-904354
)
)
) NOTICE OF APPEAL
)
)    **FILED**
)    COURT OF APPEALS
)    FEB 28 2020
)    Clerk of Courts
)    Cuyahoga County, Ohio

The appellant, Virgil H. Collins, hereby gives notice of appeal to the Eight

District Court of Appeals from the final judgement entry of the Cuyahoga

County Common Pleas Court entered on 02/25/20.

4932 Nan Linn Drive
Richmond Heights, Ohio 44143
virgilc@netlink.net

## CERTIFICATE OF SERVICE

A copy of the foregoing Notice of Appeal was served by regular U.S. Mail postage prepaid on February 28, 2020 upon:


Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw


/s/ Virgil H. Collins
Virgil H. Collins
 Defendant



112617335

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
Defendant

## JOURNAL ENTRY

MOTION FOR RELIEF FROM JUDGMENT $30 FILED BY JOANNE BROWN (0050039) COMBINED MOTION RELIEF
FROM JUDGMENT AND LEAVE TO FILE, FILED 02/02/2020, IS DENIED.

*Ashley Kilbane*

Judge Signature      02/25/2020
CPBSG

02/25/2020

APPENDIX A

# EIGHTH DISTRICT COURT OF APPEALS
## LOCAL APPELLATE RULE 9
### Praecipe and Docketing Statement

FILED

2020 FEB 28 P 12: 53

CLERK OF COURTS
MEDINA COUNTY

Name of Trial Court: COMMON PLEAS COURT

Case Caption: WELLS FARGO N.A.

             Plaintiff,

             vs.

VIRGIL H. COLLINS

             Defendant

Trial Court Case Number: 904354

Trial Court Judge: ASHELY KILBANE

Date of judgment appealed: 02/25/20
The notice of appeal was filed in
compliance with:
■ App.R. 4(A) (within 30 days); or
□ App.R. 4(B) (time extended); or
□ App.R. 5 (delayed appeal)

## A. PRAECIPE: REQUESTING THE RECORD

TO THE CLERK OF THE TRIAL COURT:

1.  ■ By checking this box, appellant requests that the clerk of the trial court immediately prepare and assemble the original papers and exhibits filed in the trial court and a certified copy of docket and journal entries under App.R. 9(A). **(If appellant only selects this box, appellant acknowledges that no transcript is required to be prepared.)**

2.  □ Check this box if you seek the record in this appeal to include one of the following listed below that is necessary for the resolution of the appeal. (**Please select only one of the following below.**)

    a. □ Complete transcript under App.R. 9(B). (Note: the appellant must instruct the court reporter to prepare the transcript.)

    b. □ Partial transcript under App.R. 9(B). (Note: the appellant must instruct the court reporter to prepare the transcript.)

    c. □ Statement of evidence or proceedings under App.R. 9(C).

    d. □ Agreed statement under App.R. 9(D).

## B. CALENDAR

Choose the appropriate calendar designation for this case. **Check only one of the following:**

■ **Regular Calendar**
This is the appropriate selection if **any** of the following apply:
- Transcript and all other evidentiary materials are more than one hundred pages;
- A brief in excess of 15 pages is necessary to argue the issues adequately;
- Appeal concerns unique issues of law that will be of substantial precedential value in determining similar cases;
- Appeal concerns multiple or complex issues; or
- Do not want accelerated calendar.

□ **Accelerated Calendar**  (*See* <u>LocApp.R. 11.1</u>)
An appeal may be assigned to the accelerated calendar if (1) no transcript is required, or (2) the transcript and all other evidentiary materials consist of 100 or fewer pages.  If any of the criteria listed above for regular calendar applies, the appeal will not be assigned to the accelerated calendar.

□ **Expedited Calendar** (*See* <u>App.R. 11.2</u>)
This is the appropriate selection if any of the following apply.  Please designate the specific category below:

   □ Abortion-related appeal from juvenile court
   □ Adoption or parental rights appeal (includes award of temporary custody to the agency)
   □ Dependent, abused, neglected, unruly or delinquent child appeal
   □ Prosecutorial appeal from suppression order
   □ Denial of a bail bond as provided in R.C. 2937.222(D)
   □ Election contests as provided in R.C. 3515.08

## C. GENERAL INFORMATION

1. Was a stay requested in the trial court?  ■ Yes  □ No (*See* App.R. 7 and App.R. 8)

    If a stay was requested, how did the trial court rule?

    □ Granted  ■ Denied  □ Pending

2. If this case has previously been before this Court, list prior appellate case number(s):

    N/A

3. List case names and numbers of cases pending in this court that involve the same transaction or controversy involved in this appeal: _____

    N/A

4. Probable issues for appeal (if known): RELIEF FROM DEFAULT JUDGEMENT AND LEAVE TO FILE COMPLAINT AND COUNTER CLAIM.

5. Have you attached a time-stamped copy of the final judgment being appealed as required under Loc.App.R. 3(B)?  ■ Yes

6. Have you been declared a vexatious litigator?  □ Yes  ■ No

    If yes, did you comply with R.C. 2323.52(F)(2) and seek leave to file?  □ Yes  □ No

## D. CRIMINAL CASE

**(If this is an appeal from a civil case, skip ahead to SECTION E.** If a criminal case, complete this section and then skip to the signature block.)

1. Does the sentencing order contain the following **four requirements**:
    - fact of conviction for **each** count;
    - separate sentence for **each** convicted count;
    - signature of trial court judge; and
    - file stamp of the clerk of court?

        □ Yes  □ No

2. If a co-defendant(s) was indicted and convicted under the same complaint, list the name(s) of co-defendant(s):

_____

_____

3. Type of Appeal (**Select only one of the following**):
    ☐ Defendant's Appeal as of Right    ☐ State's Appeal as of Right
    ☐ Defendant's Delayed Appeal by Leave of Court (*See* App.R. 5(A))
    ☐ State's Appeal by Leave of Court (*See* App.R. 5(B))

## E. CIVIL CASE

1. Specify the type of action in the trial court (e.g. administrative appeal; contract; declaratory judgment; domestic relations; juvenile; medical malpractice; personal injury; probate; etc.):
contract
_____

2. Is the order appealed from a final appealable order:
   a. Did the judgment dispose of all claims by and against all parties?
      ■ Yes      ☐ No

   b. If not, is there a determination that there is "no just reason for delay" per Civ.R. 54(B)?
      ☐ Yes      ☐ No

   c. If you are appealing an interlocutory order, specify what authority (e.g. specific provision under R.C. 2505.02, other statute, or case law) that gives this court jurisdiction to hear the appeal: _____
_____

_____

3. Settlement discussions:
   a. How would you characterize the extent of your settlement discussions before judgment?

   ■ None        □ Minimal

   □ Moderate    □ Extensive

   b. Have settlement discussions taken place since the judgment or order appealed from was entered?  □ Yes   ■ No

   c. Would a mediation conference assist in the resolution of this matter?

   □ Yes         ■ No

   □ Maybe

---

I certify that the above information is accurate to the best of my knowledge.  I also acknowledge that I must file the Notice of Appeal along with this Praecipe and Docketing Statement in the trial court.

/s/ Virgil H. Collins
_____
Appellant or Attorney for Appellant

---

**CERTIFICATE OF SERVICE**

I certify that a copy of this Praecipe and Docketing Statement was served upon Douglas A. Haessig Reimer Law _____ on 02 / 28 / 20 20 ___ in the following manner: regular U.S. mail postage paid .

/s/ Virgil H. Collins
_____
(Signature)

CV18904354                          112694318



# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services

        Plaintiff

-v-

Virgil H. Collins et. Al,
        Defendants

Judge:

    CA 20 109555

)
) Case No. 18-904354
)
)
) NOTICE OF APPEAL
)
) **FILED**
) COURT OF APPEALS
)
) FEB 28 2020
)
) Clerk of Courts
) Cuyahoga County, Ohio
)

The appellant, Virgil H. Collins, hereby gives notice of appeal to the Eight

District Court of Appeals from the final judgement entry of the Cuyahoga

County Common Pleas Court entered on 02/25/20.

4932 Nan Linn Drive
Richmond Heights, Ohio 44143
virgilc@netlink.net

# CERTIFICATE OF SERVICE

A copy of the foregoing Notice of Appeal was served by regular U.S. Mail postage prepaid on February 28, 2020 upon:

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw

/s/ Virgil H. Collins
Virgil H. Collins
 Defendant



112617335

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
    Defendant

## <u>JOURNAL ENTRY</u>

MOTION FOR RELIEF FROM JUDGMENT $30 FILED BY JOANNE BROWN (0050039) COMBINED MOTION RELIEF FROM JUDGMENT AND LEAVE TO FILE, FILED 02/02/2020, IS DENIED.

*Ashley Kilbane*

_____
Judge Signature           02/25/2020
                               CPBSG

02/25/2020

APPENDIX A

# EIGHTH DISTRICT COURT OF APPEALS
## LOCAL APPELLATE RULE 9
### Praecipe and Docketing Statement

FILED

2020 FEB 28 P 12: 53

CLERK OF COURTS
CUYAHOGA COUNTY

Name of Trial Court: COMMON PLEAS COURT

| | |
|---|---|
| Case Caption: WELLS FARGO N.A. | Trial Court Case Number: 904354 |
| Plaintiff, | Trial Court Judge: ASHELY KILBANE |
| vs. | Date of judgment appealed: 02/25/20 |
| VIRGIL H. COLLINS | The notice of appeal was filed in compliance with: |
| Defendant | ■ App.R. 4(A) (within 30 days); or |
| | □ App.R. 4(B) (time extended); or |
| | □ App.R. 5 (delayed appeal) |

## A. PRAECIPE: REQUESTING THE RECORD

TO THE CLERK OF THE TRIAL COURT:

1. ■ By checking this box, appellant requests that the clerk of the trial court immediately prepare and assemble the original papers and exhibits filed in the trial court and a certified copy of docket and journal entries under App.R. 9(A). **(If appellant only selects this box, appellant acknowledges that no transcript is required to be prepared.)**

2. □ Check this box if you seek the record in this appeal to include one of the following listed below that is necessary for the resolution of the appeal. **(Please select only one of the following below.)**

    a. □ Complete transcript under App.R. 9(B). (Note: the appellant must instruct the court reporter to prepare the transcript.)

    b. □ Partial transcript under App.R. 9(B). (Note: the appellant must instruct the court reporter to prepare the transcript.)

    c. □ Statement of evidence or proceedings under App.R. 9(C).

    d. □ Agreed statement under App.R. 9(D).

## B. CALENDAR

Choose the appropriate calendar designation for this case. **Check only one of the following:**

■ **Regular Calendar**

This is the appropriate selection if **any** of the following apply:
- Transcript and all other evidentiary materials are more than one hundred pages;
- A brief in excess of 15 pages is necessary to argue the issues adequately;
- Appeal concerns unique issues of law that will be of substantial precedential value in determining similar cases;
- Appeal concerns multiple or complex issues; or
- Do not want accelerated calendar.

☐ **Accelerated Calendar**  (*See* LocApp.R. 11.1)

An appeal may be assigned to the accelerated calendar if (1) no transcript is required, or (2) the transcript and all other evidentiary materials consist of 100 or fewer pages.  If any of the criteria listed above for regular calendar applies, the appeal will not be assigned to the accelerated calendar.

☐ **Expedited Calendar** (*See* App.R. 11.2)

This is the appropriate selection if any of the following apply.  Please designate the specific category below:

  ☐ Abortion-related appeal from juvenile court
  ☐ Adoption or parental rights appeal (includes award of temporary custody to the agency)
  ☐ Dependent, abused, neglected, unruly or delinquent child appeal
  ☐ Prosecutorial appeal from suppression order
  ☐ Denial of a bail bond as provided in R.C. 2937.222(D)
  ☐ Election contests as provided in R.C. 3515.08

## C. GENERAL INFORMATION

1. Was a stay requested in the trial court?  ■ Yes  ☐ No (*See* App.R. 7 and App.R. 8)
   If a stay was requested, how did the trial court rule?
   <div align="right">☐ Granted  ■ Denied  ☐ Pending</div>

2. If this case has previously been before this Court, list prior appellate case number(s):
   N/A

3. List case names and numbers of cases pending in this court that involve the same transaction or controversy involved in this appeal: _____
   N/A

4. Probable issues for appeal (if known): RELIEF FROM DEFAULT JUDGEMENT AND LEAVE TO FILE COMPLAINT AND COUNTER CLAIM.

5. Have you attached a time-stamped copy of the final judgment being appealed as required under Loc.App.R. 3(B)?  ■ Yes

6. Have you been declared a vexatious litigator?  ☐ Yes  ■ No
   If yes, did you comply with R.C. 2323.52(F)(2) and seek leave to file?
   ☐ Yes  ☐ No

## D. CRIMINAL CASE

**(If this is an appeal from a civil case, skip ahead to SECTION E.** If a criminal case, complete this section and then skip to the signature block.)

1. Does the sentencing order contain the following **four requirements**:
   - fact of conviction for **each** count;
   - separate sentence for **each** convicted count;
   - signature of trial court judge; and
   - file stamp of the clerk of court?
     ☐ Yes  ☐ No

3

2. If a co-defendant(s) was indicted and convicted under the same complaint, list the name(s) of co-defendant(s):

_____

_____

3. Type of Appeal (**Select only one of the following**):
   ☐ Defendant's Appeal as of Right   ☐ State's Appeal as of Right
   ☐ Defendant's Delayed Appeal by Leave of Court (*See* App.R. 5(A))
   ☐ State's Appeal by Leave of Court (*See* App.R. 5(B))

## E. CIVIL CASE

1. Specify the type of action in the trial court (e.g. administrative appeal; contract; declaratory judgment; domestic relations; juvenile; medical malpractice; personal injury; probate; etc.):

   contract
   _____

2. Is the order appealed from a final appealable order:
   a. Did the judgment dispose of all claims by and against all parties?
      ▪ Yes        ☐ No

   b. If not, is there a determination that there is "no just reason for delay" per Civ.R. 54(B)?
      ☐ Yes        ☐ No

   c. If you are appealing an interlocutory order, specify what authority (e.g. specific provision under R.C. 2505.02, other statute, or case law) that gives this court jurisdiction to hear the appeal: _____

   _____

   _____

4

3. Settlement discussions:
   a. How would you characterize the extent of your settlement discussions before judgment?

   ■ None  □ Minimal
   □ Moderate  □ Extensive

   b. Have settlement discussions taken place since the judgment or order appealed from was entered?  □ Yes  ■ No

   c. Would a mediation conference assist in the resolution of this matter?
   □ Yes  ■ No
   □ Maybe

---

I certify that the above information is accurate to the best of my knowledge.  I also acknowledge that I must file the Notice of Appeal along with this Praecipe and Docketing Statement in the trial court.

/s/ Virgil H. Collins
Appellant or Attorney for Appellant

---

## CERTIFICATE OF SERVICE

I certify that a copy of this Praecipe and Docketing Statement was served upon Douglas A. Haessig Reimer Law on 02 / 28 / 20 20 in the following manner: regular U.S. mail postage paid .

/s/ Virgil H. Collins
(Signature)

5



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**BRIEF IN OPPOSITION**
**March 2, 2020 13:49**

By: MICHAEL L. WIERY 0068898

Confirmation Nbr. 1957321

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL              **Judge:** ASHLEY KILBANE

**Pages Filed:**  3

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

|  |  |  |
|---|---|---|
| Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates | ) ) ) ) | Case No. CV 18 904354 |
|  | ) | Judge Ashley Kilbane |
|  | ) | Magistrate Kevin Hippley |
| Plaintiff | ) ) | **PLAINTIFF'S BRIEF IN OPPOSITION** |
| vs. | ) ) | **TO DEFENDANT'S EXPEDITED MOTION TO STAY PROCEEDINGS** |
| Virgil H. Collins, et al. | ) |  |
| Defendants | | |

NOW COMES Plaintiff, Wells Fargo Bank N.A., as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates, by and through undersigned counsel, and hereby submits its Brief in Opposition to Defendant Virgil H. Collins' Expedited Motion to Stay Proceedings ("Motion") filed on February 24, 2020.

Plaintiff bases its Brief in Opposition on the grounds that there are no more pending motions before this court, as Defendant's Motion to Vacate Judgment and Request for Leave to File Amended Answer and Counterclaim was denied by this court on February 25, 2020. Additionally, the property which is the subject of this foreclosure proceeded to Sheriff's Sale on March 2, 2020 wherein the property was purchased by the Plaintiff. Moreover, this court denied Defendant's Pro Se Objections to Magistrate's Decision on February 20, 2020 for its

untimeliness. Therefore, Defendant's Motion for Stay is moot, as  all pending motions have been resolved.

Plaintiff has also not received any loss mitigation applications from Defendant. In Defendant's Motion for Settlement Conference filed January 14, 2020, Defendant requested the opportunity to complete a loss mitigation application and alleges the financial qualifications to complete such an application. Plaintiff provided a loss mitigation packet to Defendant three days later on January 17, 2020. Defendant has had five weeks to submit a loss mitigation application to Plaintiff, and no such application has been submitted. Accordingly, none of the reasons presented in Defendant's Motion are valid reasons supporting a stay of the present case.

WHEREFORE, because (1) the court has already ruled on the pending motions before this court, and (2) a Sheriff's sale has already been completed in the present case, and (3) because Defendant has failed to timely submit a loss mitigation application to Plaintiff prior to sale, Plaintiff respectfully requests this honorable court deny Defendant's Expedited Motion to Stay Proceedings.

Respectfully submitted,

**Reimer Law Co.**

_/s/ Mike L. Wiery_
Mike L. Wiery (0068898)
P.O. Box 96696
30455 Solon Road
Solon, Oh 44139
Phone: (440) 600-5500/Fax: (440) 600-5520
mwiery@reimerlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing was served by U.S. Regular Mail on ___March 2, 2020___ to the following:

Joanne Brown
4070 Mayfield Road
Cleveland, OH 44112

Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

New Century Liquidating Trust
Successor-in-interest to
New Century Mortgage Corporation
575 Anton Blvd., Costa Mesa, CA 92626

New Century Mortgage Corporation
18400 Von Karman
Suite 1000
Irvine, CA 92612


  /s/  Mike L. Wiery_____
Mike L. Wiery (0068898)
Reimer Law Co.
*Attorney for Plaintiff*

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY
## STATE OF OHIO

FILED

2020 MAR -5  A 10: 03

CLERK OF COURTS
CUYAHOGA COUNTY

| | |
|---|---|
| Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates c/c Carrington Mortgage Services | ) ) ) ) ) Case No. 18-904354 |
| Plaintiff | ) |
| | ) |
| -v- | ) MOTION TO STAY |
| | ) CONFIRMATION |
| | ) OF PROPERTY SALE |
| Virgil H. Collins et. Al, | ) |
| Defendants | |

CV18904354                                112797403

NOW COMES Defendant, Virgil H. Collins pro-se, with motion to

Stay Confirmation of Sale of property at 4932 Nan Linn Drive, Richmond

Heights, Ohio 44143, which was scheduled and sold at sheriff sale on

Monday March 2, 2020.

In the week of February 28th, Defendant's counsel had a settlement

conference call with the Plaintiff and Magistrate.  After that call the

Defendant was told by counsel that his only option to stop the sale on his

property was to either file bankruptcy or file an appeal.

On February 28, Defendant filed a Notice of Appeal with the 8th

District Court of Appeals because he was told by his counsel that the Notice

of Appeal would stop the sale.  Defendant then attempted to deliver a time stamped copy of the Notice of Appeal to the sheriff's department, but that department told him that they could only accept the Notice of Appeal from the court to stop the sale.  However, the common pleas court never notified the sheriff's department of the Notice of Appeal, the property was sold on March 2nd, and on March 3, 2020, Defendant filed a Motion to Stay Confirmation/Execution of Property Sale also with the 8th District Court of Appeals.

On March 4, 2020, the 8th District Court of Appeals denied the Defendants request to stay the sale of property stating "Pursuant to App. R. 7(A), the stay must "ordinarily be made in the first instance in the trail court unless it is "not practicable" to do so".  The court further stating "We do not find it impracticable for the appellant to wait for the trail court to rule on a pending motion to stay before the trail court, also noting that the stay as to the sale is moot as the sale already occurred, therefore, that request was denied.

In regards to Appellant's request to Stay the Confirmation of the sale, the 8th District Court stated "per R.C. 2329.31, after the foreclosure sale, nothing in this section prevents the court of common pleas from staying the confirmation of the sale. We do not find it impracticable to wait for the trail

court to rule on the stay as to the confirmation of sale, therefore, request to the 8th District Court to stay the confirmation was also denied.

Therefore, the Defendant – Appellant submits this motion to the trail court to Stay the Confirmation of the sale of property located at 4932 Nan Linn Drive, Richmond Heights, Ohio 44143 pending appeal.

4932 Nan Linn Drive
Richmond Heights, Ohio 44143
(216) 410-4872
virgilc@netlink.net

## CERTIFICATE OF SERVICE

A copy of the foregoing motion to Stay Confirmation of Sale of property was served by regular U.S. Mail postage prepaid on March 5, 2020 upon:

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw

/s/ Virgil H. Collins
Virgil H. Collins
 Defendant



112803756

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: BRIAN S GOZELANCZYK

VIRGIL H. COLLINS, ET AL
    Defendant

## __MAGISTRATE'S ORDER__

MOTION FILED FOR D1 VIRGIL H COLLINS EXPEDITED MOTION TO STAY FORECLOSURE SALE DATE, FILED
02/24/2020, IS DENIED.

_Brian S. Gozelanczyk_
—————————————————————————————
Magistrate Signature           03/06/2020
                         CPBSG

03/06/2020



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### BRIEF IN OPPOSITION
### March 9, 2020 09:48

By: MICHAEL L. WIERY 0068898

Confirmation Nbr. 1963131

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL          **Judge:** ASHLEY KILBANE

**Pages Filed:** 4

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates | ) Case No. CV 18 904354 ) ) Judge Ashley Kilbane ) Magistrate Kevin Hippley |
| Plaintiff, | ) ) |
| v. | ) **PLAINTIFF'S OPPOSITION TO** ) **DEFENDANT VIRGIL H. COLLINS'** ) **MOTION TO STAY** |
| Virgil H. Collins, et al., | ) **CONFIRMATION OF SALE** ) |
| Defendants. | |

NOW COMES Plaintiff, Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates ("Carrington," or "Plaintiff"), by and through undersigned counsel, and hereby files it's opposition to Defendant Virgil H. Collins' ("Defendant") Motion to Stay Confirmation of Property Sale ("Motion to Stay").

Defendant's Motion is premised on the fact that an appeal has been filed. Defendant attempted to file a similar Motion to Stay Confirmation of Sale with the Eighth District Court of Appeals on February 28, 2020, but the Appellate Court denied Defendant's Motion as it would not be impracticable for Defendant to file the Motion to Stay Confirmation of Sale at the trial court level. Defendant thereafter filed a Motion to Stay Confirmation of Property Sale with the trial court, which is subject to Civ. R. 62(B).

In the event of an appeal, Civ. R. 62(B) provides that "the appellant may obtain a stay of execution of a judgment...by giving an adequate supersedeas bond. The bond may be given at

or after the time of filing the notice of appeal. The stay is effective when the supersedeas bond is approved by the court." January 7, 2020 Plaintiff obtained judgment in this matter in the amount of $126,719.39 plus interest at the rate of 7.50% per annum from October 1, 2017.

The rule is clear that a bond is required, and as of the date of this response, it does not appear that a bond has been posted by Defendant. As such, proceedings in this Court should not be stayed pending appeal without first requiring Defendant to post the bond required under Civ. R. 62(B). In his Motion to Stay, Defendant only states he filed the Motion now before the court because his attorney advised it was one of two ways to stay confirmation of sale. However, Defendant does not mention anywhere in the Motion to Stay that he posted the bond required under Civ. R. 62(B). Therefore, Defendant's Motion should be denied accordingly at this time.

Even if this Court does have discretion to grant Defendant a stay of execution without posting a bond, it should not do so, as the granting of Defendant's Motion to Stay or allowing Defendants a stay of execution without posting a bond would unfairly prejudice Plaintiff. Defendant has not made a payment on the Note in over two (2) years since Defendant failed to make the payment due October 1, 2017. Moreover, the amount owed on the account, including interest, deferred amounts, and escrow balance, is $173,984.98, well in excess of the $150,000.00 sheriff appraisal of the property. Defendant's Motion to Stay also fails to explain good cause as to why bond was not posted, or why Defendant should not have to post bond.

WHEREFORE, based on the plain language of Civ. R. 62(B), Defendant's Motion to Stay should be denied. Assuming *arguendo*, this Court does find Defendant's Motion for Stay to be well-taken, Defendant should first be required to post a bond required under Civ. R. 62(B). Plaintiff recommends a bond in the amount of the unpaid principal balance of the judgment in the sum of $126,719.39 to Plaintiff **prior** to any stay being effective.

Respectfully submitted,

**Reimer Law Co.**

___/s/ Mike L. Wiery_____

Mike L. Wiery (0068898)
P.O. Box 96696
30455 Solon Road
Solon, Oh 44139
Phone: (440) 600-5500/Fax: (440) 600-5520
mwiery@reimerlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent via U.S. Regular Mail on <u>March 9, 2020</u> to

the following:

Joanne Brown
4070 Mayfield Road
Cleveland, OH 44112

Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

New Century Liquidating Trust
Successor-in-interest to
New Century Mortgage Corporation
575 Anton Blvd., Costa Mesa, CA 92626

New Century Mortgage Corporation
18400 Von Karman
Suite 1000
Irvine, CA 92612


    /s/ Mike L. Wiery
Mike L. Wiery (0068898)
Reimer Law Co.
*Attorney for Plaintiff*

CV18904354                    112853316



# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY
# STATE OF OHIO

Wells Fargo Bank N.A., as Trustee,      )
For Carrington Mortgage Loan            )
Trust, Series 2006-NC3 Asset-           )
Backed Pass-Through Certificates        )
c/o Carrington Mortgage Services        )      CASE NO. CV 18 904354
1600 Douglass Road                      )
Anaheim, California 92806               )      JUDGE: Ashley Kilbane
                                        )
            Plaintiff                   )      Magistrate Kevin Hippley
                                        )
-vs-                                    )
                                        )      **DEFENDANT'S BRIEF IN**
Virgil H. Collins                       )      **REPLY TO PLAINTIFF'S**
4932 Nan Linn Drive                     )      **OPPOSITION TO**
Richmond Heights, OH 44143;             )      **CONFIRMATION STAY**
                                        )      **MOTION, AND LEAVE TO**
                                        )      **AMEND MOTION**
            Defendant                   )      **TO STAY SALE**
                                        )      **PURSUANT TO**
New Century Mortgage Corporation        )      **CIVIL R. 54(b) AND**
18400 Von Karman, Suite 1000            )      **CIVIL R. 62(h)**
Irvine, CA 92612;                       )
                                        )
New Century Liquidating Trust,          )
Successor-in-interest to New            )
Century Mortgage Corporation            )
575 Anton Boulevard                     )
Costa Mesa, CA 92626                    )
                                        )
            Co-Defendants               )
                                        )
                                        )
_____)

NOW COMES Defendant, Virgil H. Collins, Pro-Se Defendant, Vietnam

era Veteran and Former Federal Aviation Administration (FAA) Inspector and

Aviation Fraud Investigator, to hereby submit his Brief in Reply to Plaintiff's

opposition to his motion to stay confirmation of sale.  As an FAA

Inspector/Investigator for the federal government, the Defendant successfully

obtained over 20 indictment against corporate personnel for aviation fraud, and

now comes before this court with claims of mortgage contract fraud under the Ohio

Mortgage Brokers Act, *ORC 132201 et seq.*

The defendant filed a Notice of Appeal with 8th District Court of Appeals on

February 28, 2020, in an effort to stop the sale of his property schedule for sell on

March 2, 2020.  Defendant was unsuccessful in his attempt because the Plaintiff

purchased the property in their attempt to expedite these proceedings.

The Defendant is pursuing 3rd party complaints and counterclaims against

the Plaintiff, and Co-defendants New Century Mortgage Corporation, New

Century Liquidating Trust, and Co-Plaintiff Carrington Mortgage Services all

named in these proceedings.  Defendant contends that Plaintiff is attempting to

expedite these proceedings to prevent the fraudulent charges from being litigated

before this court.

The Plaintiff has filed an Opposition Brief opposing the Defendant's request

to stay the confirmation of sale siting *Civil Rule 62(B)*.  However, *Civ. R. 62(h)*

states that, "A court may stay enforcement of a final judgement entered under *Civil Rule 54(b)* until it enters a later judgement or judgments, and may prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered. *Civil Rule 54(b)* states that "a district court may direct entry of a final judgment as to fewer than all claims or parties, which would allow an immediate appeal, "only if the court expressly determines that there is no just reason for delay".

Defendant contends that he has not had the opportunity to present his multiple complaints and counter claims against multiple parties to this court that may reflect on fraudulent conveyance claims that would deny the Plaintiff equity rights to the property.

Therefore, Defendant contends that his Stay of Confirmation of Sale Motion for the property in question should be granted pending appeal due to the multiple parties, complaints, and counterclaims that will be litigated in this case. Defendant also contends that the Plaintiff's request for a security bond should be denied until it is established that the Plaintiff, Co-Plaintiff and Co-Defendants have equity rights to the property.

## *MEMORANDUM*

1. In June 2006, the Defendant purchased his home that was mortgage by Co-Defendant New Century Mortgage Corporation.

2. Though silent in these proceedings, Defendant contends that New Century Mortgage still has equity interest in Defendant's property.

3. In early March 2007, the State of Ohio Attorney and the Ohio Department of Commerce filed a "Complaint for Declaratory Judgement, Restitution, Injunctive Relief, and Civil Penalties" against Co-Defendant New Century Mortgage Corporation.

4. Plaintiff Attorney General sought relief by enjoining Defendant New Century Mortgage Corporation, and pursuant to *R.C. 1345.07, 1321.54(C), 1321.54(A)*, and *1322.11(B)(1)* from:

   a. Soliciting Ohio consumers for broker services or residential mortgage loans,

   b. Accepting fees from Ohio consumers in connection with residential mortgage loans except fees disbursed by a closing agent after a loan is closed and funded except fees disbursed by a closing agent after a loan is closed and funded by an entity other than New Century Mortgage,

   c. Accepting mortgage loan applications in Ohio,

   d. Arranging for appraisals in connection with mortgage loan applications where consumers will be obligated to pay, directly or indirectly, for such appraisal,

   e. Initiating new foreclosure actions, continuing to prosecute pending foreclosure actions, enforcing foreclosure sale notices, or evicting consumers from houses in foreclosure,

   f. Transferring, selling or assigning rights to any Ohio residential mortgage loans, and

g. Engaging in any acts or practices that violate the Ohio Consumer Sales practices Act, *R.C. 1345.01 et seq.*, the Ohio Mortgage Loan Act, *R.C. 1321.20 et seq.*, or the Ohio Mortgage Brokers Act, R.C. *1322.01 et seq.*

5. Defendant contend that in the Ohio attorney's complaint, in the above-mentioned para. 4(f), it states the New Century should be prevented from "Transferring, selling or assigning rights to any Ohio residential mortgage loans".

6. It appears that New Century Mortgage is attempting to circumvent issues possible court proceedings that prohibited them from "transferring, selling or assigning rights to any Ohio residential mortgage loan", by assigning the rights of the mortgage loan through possible fraudulent conveyance.

7. The Defendant contend that his Motion to Stay the Confirmation of Sale should be granted so that, based on the Defendant's mortgage fraud claims, the equity rights to the property can be determined.

8. In Plaintiff's February 17, 2020, Brief in Opposition to Defendant's Motion to Vacate Judgement and Leave to File Answer and Submit Counterclaim" it suggested that the Defendants claims are time barred because it has been "fourteen years" since the mortgage contract was signed. Therefore, Defendant is barred from filing his claims by the four Statue of Limitations Rule.

9. Defendant is filing his complaint alleging violations of the Ohio Mortgage Brokers Act (OMBA).

10. A claim under the Ohio Mortgage Brokers Act (OMBA) is not akin to a claim for a breach of fiduciary duty. Most simply, no fiduciary relationship need be alleged to state a claim for breach of the OMBA. *Walton v. Residential Finance Corporation, 151 Ohio Misc. 2d 28; 2009-Ohio-1872; 905 N.E.2d 1307; 2009 Ohio.* (HN5)

11. In the *Walton* case it states "A four-year statute should not be applied to claims brought under the Ohio Mortgage Brokers Act (OMBA) on the basis that a claim under the OMBA is equivalent to a claim for breach of the duty of good faith and fair dealing. The better view in Ohio is that outside of the insurance context, the breach of the duty of good faith does not exist as a separate cause of action from a breach of contract claim. Rather, the action arises from the duty of good faith and fair dealing inherent in every contract and cannot stand alone from the contract claim. To the extent such a claim exists, a plaintiff may proceed under the 15-year statute of limitations for contract claims". *Walton v. Residential Finance Corporation, 151 Ohio Misc. 2d 28; 2009-Ohio-1872; 905 N.E.2d 1307; 2009 Ohio.* (HN6)

12. The Defendant contends that the 15-year state of limitation applies to his case because it involves the mortgage fraud of "Reverse-Redlining" that the OMB statue provides a new cause of action for that kind of conduct that would not amount to fraud at common law.
   and

Therefore, the Defendant files this Reply Brief that would grant his request to Stay Confirmation Sale, and Deny Plaintiff's bond request objection to his Motion to Stay Confirmation of Sale for his property that was sold on March 2, 2020.  Wherefore, stay of confirmation would provide ample time to determine the equity rights of the multiple parties involved in this case.

Respectfully submitted,

   /s/  Virgil H. Collins
Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
(2160 410-4872
Email: virgilc@netlink.net

## CERTIFICATE OF SERVICE

A copy of the foregoing Replay Brief was served by regular U.S. Mail postage or email March 10, 2020 upon;

Douglas A. Haessig
Reimer LAW
PO. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw


/S/   Virgil H. Collins_____
Virgil H. Collins
Defendant



112839514

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

VIRGIL H. COLLINS, ET AL
    Defendant

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: BRIAN S GOZELANCZYK

## __MAGISTRATE'S ORDER__

MOTION TO STAY CONFIRMATION OF PROPERTY SALE PRO SE (9999999), FILED 03/05/2020, IS DENIED.

_____
Magistrate Signature        03/10/2020
                             CPBSG

03/10/2020

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

FEB 2 5 2021

WELLS FARGO BANK, N.A.,                    :

       Plaintiff-Appellee,            :

                        v.                    :        No. 109555

VIRGIL H. COLLINS, ET AL.,                  :

       Defendants-Appellants.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 25, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-904354

---

### *Appearances:*

Reimer Law Co. and Michael L. Wiery, *for appellee.*

Virgil H. Collins, *pro se.*

MARY EILEEN KILBANE, J.:

{¶ 1}  Pro se defendant-appellant, Virgil Collins ("Collins"), appeals from the trial court's denial of his Civ.R. 60(B) motion for relief from judgment in the foreclosure action instituted by plaintiff-appellee, Wells Fargo Bank, N.A. ("Wells Fargo"). For the reasons that follow, we affirm.

**Procedural History**

{¶ 2}   On September 25, 2018, Wells Fargo filed a complaint for foreclosure against Collins, any unknown spouse of Collins, his wife Ruth Collins ("Ruth"), any unknown spouse of Ruth, New Century Mortgage Corporation ("NCMC"), and New Century Liquidating Trust as successor-in-interest to NCMC. Wells Fargo alleged that it was the holder of and entitled to enforce a promissory note because defendants were in default of the note and mortgage. The complaint alleged that $126,719.39 plus interest was due and unpaid.

{¶ 3}   This case concerns a residential mortgage and corresponding note for a single-family home located at 4932 Nan Drive, Richmond Heights, Ohio. On June 2, 2006, Collins and Ruth executed an adjustable rate note in the amount of $152,000 and a corresponding mortgage as security for the note.

{¶ 4}   On November 7, 2018, Collins filed a motion for leave to file an answer instanter, which the trial court granted.[1]

{¶ 5}   On January 15, 2019, Wells Fargo filed a motion for summary judgment against Collins and a motion for default judgment against the other defendants. On March 26, 2019, the trial court granted the motion for default judgment against Ruth, any unknown spouses, NCMC, and New Century Liquidating Trust and held the motion for summary judgment in abeyance.

---

[1] Except where otherwise noted, Collins was represented by counsel during the lower court proceedings.

**{¶ 6}**  On May 24, 2019, the court held a settlement conference, during which Collins made an oral motion to file an amended answer.  The court granted this motion over Wells Fargo's objection and instructed Collins to file his amended answer on or before June 21, 2019.  On June 21, 2019, Collins filed a motion for an extension of time to file an amended answer and counterclaim, and the trial court granted this motion and imposed a new deadline of September 13, 2019.  Despite receiving multiple extensions, at no point in the proceedings did Collins ever file an amended answer or counterclaim.

**{¶ 7}**  On November 25, 2019, the trial court granted Wells Fargo's motion for summary judgment.  On December 11, 2019, the court issued a magistrate's decision with findings of fact and conclusions of law.  Collins did not file objections to the magistrate's decision, but on December 20, 2019, he filed a "motion for stay to seek resolution with plaintiff."  Wells Fargo filed an objection to this motion on December 23, 2019.  On December 30, 2019, the trial court denied Collins's motion for a stay.

**{¶ 8}**  On January 7, 2020, the trial court entered an order adopting the magistrate's decision and a decree of foreclosure.  Collins did not appeal from this order.  On January 14, 2020, Collins filed a motion for a settlement conference.  On January 16, 2020, a praecipe for an order of sale was issued, and on January 17, 2020, an order of sale was issued to the sheriff.

**{¶ 9}** On January 28, 2020, Collins filed a pro se "motion for objection to magistrate's default judgment decision against defendant." On February 20, 2020, the trial court denied this motion.

**{¶ 10}** On February 2, 2020, Collins filed a "combined motion to vacate judgment, for relief from judgment, leave to amend answer and to submit counterclaim" pursuant to Civ.R. 60(B). In this motion, Collins's counsel submitted that due to complications with her case management software and health problems resulting in a six-week absence from her office, she had failed to request an additional extension to file an amended answer and counterclaim. Further, the motion asserted that the underlying mortgage in this case was induced by fraud. On February 17, 2020, Wells Fargo filed a brief in opposition to Collins's Civ.R. 60(B) motion. On February 23, 2020, Collins filed a reply brief in support of his Civ.R. 60(B) motion.

**{¶ 11}** On February 20, 2020, the trial court granted Collins's motion for a settlement conference and scheduled a telephone settlement conference for February 27, 2020.

**{¶ 12}** On February 24, 2020, Collins filed an expedited motion to stay the foreclosure sale in the trial court. On February 25, 2020, the trial court denied Collins's Civ.R. 60(B) motion. It is from this journal entry that Collins filed a notice of appeal on February 28, 2020.

**{¶ 13}** On March 2, 2020, Wells Fargo filed a brief in opposition to Collins's expedited motion to stay. The same day, the order of sale was returned and the

property was sold. On March 3, 2020, Collins filed a pro se motion to this court to stay the confirmation and execution of the sale. On March 4, 2020, this court denied this motion, citing the pending motion to stay in the trial court filed on February 24, 2020. On March 5, 2020, Collins filed yet another pro se motion to stay confirmation of the sale in the trial court. On March 6, 2020, the trial court denied Collins's February 24, 2020 expedited motion to stay, and his pro se motion to stay was likewise denied on March 10, 2020.

{¶ 14} On March 11, 2020, Collins filed a second pro se motion to stay with this court. On March 12, 2020, this court granted the motion upon the condition that Collins post a supersedeas bond in the amount of $23,984, representing "the amount of the judgment, plus interest, minus the amount of the appraised value of the property ($150,000) as set forth by the appellee in its motion opposing the confirmation of sale filed in the trial court."

{¶ 15} On May 26, 2020, Collins filed a motion for a 60-day extension to post the supersedeas bond. On June 8, 2020, this court denied the motion as moot because the Cuyahoga County Court of Common Pleas issued an administrate order staying sheriff sales and confirmations of sale until July 31, 2020, in response to COVID-19. On July 28, 2020, Collins filed a second motion for a 60-day extension. This court granted the motion and imposed a new deadline of October 1, 2020.

{¶ 16} On September 28, 2020, Collins filed a "motion for an emergency injunction to prevent confirmation of sale and request for supersedeas bond." In this motion, Collins argued that the federal moratorium on foreclosures and

evictions in response to COVID-19 applied to his mortgage and should operate as a stay on the foreclosure in this case.  On September 29, 2020, this court issued a sua sponte order instructing Wells Fargo to respond to Collins's motion.  On September 30, 2020, Wells Fargo filed a brief in opposition, arguing that Collins had not met the standard for an injunction.  On October 2, 2020, Collins filed a reply brief and a request to withdraw his emergency injunction motion and amend his request to an extension pursuant to the national foreclosure moratorium.  On October 5, 2020, this court entered a second sua sponte order instructing Wells Fargo to respond and specifically address whether the federal moratorium applied to Collins's mortgage. On October 6, 2020, Wells Fargo filed a brief in opposition to Collins's October 2 filing.

{¶ 17}  On October 9, 2020, this court issued the following journal entry:

Motion by appellant, pro se, to withdraw emergency injunction motion, leave to amend request to an extension per the national foreclosure moratorium is granted in part.  The motion to withdraw the injunction that was filed on September 28, 2020 is granted.  The federal moratorium does not apply to the appellant's mortgage.  However, due to the financial difficulties caused by COVID-19, the time to file the supersedeas bond is extended to December 31, 2020.  The appeal has been fully briefed and is to be set at the earliest feasible date.  Notice issued.

On December 21, 2020, Collins filed an emergency motion for an extension or suspension of the supersedeas bond requirement.  On December 29, 2020, Wells Fargo filed a brief in opposition.  On December 30, 2020, this court granted Collins an extension until February 15, 2021, or the date upon which this opinion is released.  On February 11, 2021, Collins filed another emergency motion for an extension of

the supersedeas bond requirement. On February 12, 2021, this court granted the emergency motion in part, stating that Collins has until this decision is released to post the required bond.

{¶ 18} This appeal follows. Collins presents five assignments of error.

## Assignments of Error

I. The magistrate erred by naming all four of the defendants in the default judgment.

II. The magistrate erred by ignoring Collins's claims of mortgage fraud, high interest rates, multiple loan attachments, and that the original loan mortgagor was named as a co-defendant.

III. The magistrate abused its discretion by failing to consider Civ.R. 62(h) and Civ.R. 54(b).

IV. The magistrate erred and abused its discretion by not staying the foreclosure pursuant to Civ.R. 60(B).

V. The magistrate erred by failing to include Collins's name in the default judgment.

## Legal Analysis

{¶ 19} We reiterate that Collins appealed only from the trial court's denial of his Civ.R. 60(B) motion. To the extent that the above assignments of error attempt to challenge either the magistrate's default judgment or the foreclosure judgment, these arguments are not properly before us. Further, to the extent that Collins refers to claims he may have had against any party in this case, we again note that Collins never filed an amended answer or counterclaim raising any such claims before the trial court. For ease of discussion, we will address Collins's assignments of error out of order.

**Civ.R. 60(B) Motion for Relief**

{¶ 20} Collins's fourth assignment of error is the only one in which he directly challenges the trial court's denial of his Civ.R. 60(B) motion. Collins's fourth assignment of error states, verbatim:

> Magistrate [erred] and abused her discretion in her decision not to stay judgment per 60(B) due to the following complications suffered by Appellant's counsel: Appellant's counsel missed a deadline for submitting his complaints, and counterclaims due to a sudden illness, and complications in the office. Had the Magistrate properly [reviewed] the case, based on the multiple parties [involved], she would have detected some potential complexities in the case that might need further review to determine the equity and liabilities in the case before the court. It would have clearly [revealed] the issues concerning subject matter jurisdiction.

{¶ 21} A reviewing court will not disturb a trial court's decision regarding a Civ.R. 60(B) motion absent an abuse of discretion. *S. Park Manor Condominiums Unit Owners' Assn. v. Clarendon Group, Inc.*, 8th Dist. Cuyahoga No. 105672, 2017-Ohio-8491, ¶ 7. To prevail on a Civ.R. 60(B) motion for relief from judgment, the moving party must demonstrate (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (B)(5); and (3) the motion is made within a reasonable time, and where the grounds for relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment was entered. *Id.*, citing *GTE Automatic Elec. v. ARC Industries*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. If the moving party fails to establish any one of these requirements, the

motion is properly overruled. *Id.*, citing *Svoboda v. Brunswick*, 6 Ohio St.3d 348, 351, 453 N.E.2d 648 (1983).

**{¶ 22}** In support of this assignment of error, Collins argues that he was fraudulently induced to enter into the mortgage. Specifically, Collins asserts that NCMC, who originated the mortgage loan, falsely led him to believe that he was receiving a VA loan. Collins appears to be using this argument to satisfy the first element of his Civ.R. 60(B) claim, arguing that the fraud constitutes a meritorious defense to the foreclosure action. We disagree. Even if the record contained something to substantiate Collins's allegations of fraud, it is unclear how such allegations would operate as a meritorious defense to Wells Fargo's foreclosure action to satisfy the first requirement of a Civ.R. 60(B) claim.

**{¶ 23}** Further, Collins was required to demonstrate that he was entitled to one of the following grounds for relief under Civ.R. 60(B):

(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from judgment.

Because the Civ.R. 60(B) motion cites Collins's counsel's health problems and difficulties with her case management software as the reason she failed to timely request an additional extension to file an amended answer and counterclaim, it

appears the claimed ground for relief is mistake or excusable neglect pursuant to Civ.R. 60(B)(1). We disagree that there was a mistake or excusable neglect.

{¶ 24} Collins had asked for and received multiple extensions to file an amended answer and counterclaim. In its August 15, 2019 journal entry granting Collins's most recent request for an extension until September 13, 2019, the trial court noted that no further extensions would be granted. While Collins's Civ.R. 60(B) motion describes a "comedy of errors" leading to the failure to request yet another extension, it neither describes the timing of the events in question nor attempts to explain why an additional extension would have been granted after the trial court's declaration that it would not grant any further extensions. It is worth noting that the presumed basis of an amended answer and counterclaim related to Collins's unsupported assertions of fraud that was alleged to have occurred in 2006, when Collins executed the note and mortgage. At no point does Collins explain why he required such a significant period of time — more than a year from the date Wells Fargo filed the foreclosure complaint — to file an amended answer. Therefore, Collins's motion did not adequately establish that he was entitled to relief under Civ.R. 60(B)(1).

{¶ 25} Moreover, it is well established that Civ.R. 60(B) cannot be used as a substitute for an appeal. *Fannie Mae v. Nedbalski*, 8th Dist. Cuyahoga No. 102247, 2015-Ohio-2159, ¶ 14, citing *Doe v. Trumbull Cty. Children Serv. Bd.*, 28 Ohio St.3d 128, 502 N.E.2d 605 (1986), paragraph two of the syllabus. Because public policy favors the finality of judgments, a Civ.R. 60(B) motion may not be used as a

substitute for appeal to collaterally attack a final judgment. *Id.*, quoting *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 16, citing *Harris v. Anderson*, 109 Ohio St.3d 101, 2006-Ohio-1934, 846 N.E.2d 43, ¶ 8-9. Therefore, Collins's fourth assignment of error is overruled.

**Collins's Remaining Assignments of Error**

**{¶ 26}** In Collins's first assignment of error, he attempts to challenge the March 26, 2019 default judgment entered against Ruth, NCMC, and New Century Liquidating Trust. Specifically, Collins argues that this constituted error because it somehow precluded him from bringing counterclaims against NCMC. We reiterate that Collins did not appeal from the default judgment, and therefore arguments relating to that judgment are not properly before us. Even if this argument were properly before us, however, it has no merit.

**{¶ 27}** None of the defendants against whom the court granted Wells Fargo's motion for default judgment filed an answer in the underlying case. Therefore, default judgment was appropriate pursuant to Civ.R. 55. Further, Collins's argument that the trial court somehow precluded him from bringing counterclaims against NCMC is not grounded in law. Although Collins cites to Fed.R.Civ.P. 62(h), which provides:

> A court may stay the enforcement of a final judgment entered under Rule 54(b) until it enters a later judgment or judgments, and may prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered.

Collins also cites to Fed.R.Civ.P. 62.1(a), which deals with a motion for relief made while an appeal is pending.

{¶ 28} Fed.R.Civ.P. 1 provides that the federal rules of civil procedure govern the procedure in all civil actions and proceedings in the United States district courts. While they may provide guidance to state courts, they do not govern civil procedure in Ohio state courts and are not binding. *Cach v. Alderman*, 10th Dist. Franklin No. 15AP-980, 2017-Ohio-5597, ¶ 14, citing *Cooke v. Bowen*, 4th Dist. Scioto No. 12CA3497, 2013-Ohio-4771, ¶ 16; *In re Anisha N.*, 6th Dist. Lucas No. L-02-1370, 2003-Ohio-2356. Even if the rules cited by Collins did govern this case, they do not apply in the way he seems to believe they do. Collins argument appears to be grounded in a misunderstanding of the impact of both the default judgment and the denial of his Civ.R. 60(B) motion. Collins's assertion, both in his Civ.R. 60(B) motion and in his brief to this court, that he had counterclaims to raise against NCMC has no bearing on the default judgment. When the trial court granted default judgment against NCMC, there was no pending counterclaim against them. In fact, because of Collins's failure to file an amended answer and counterclaim, there was never a pending counterclaim against NCMC. Further, despite Collins's argument, the default judgment had no bearing on the court's denial of his Civ.R. 60(B) motion. Therefore, Collins's first assignment of error is overruled.

{¶ 29} Collins's second assignment of error argues that the magistrate erred by failing to address Collins's claims of mortgage fraud and failing to address the federal question of truth in lending practices. An appellant's brief must cite to the

"parts of the record on which appellant relies." Ohio App.R. 16(A)(7). Further, an appellate court "may disregard an assignment of error raised for review if the party raising it fails to identify in the record the error on which the assignment of error is based." App.R. 12(A)(2). Collins has failed to comply with these rules, and a review of the record shows that the issue of truth in lending practices was not raised before the trial court. Therefore, we decline to review Collins's second assignment of error.

**{¶ 30}** In Collins's third assignment of error, he argues that the trial court abused its discretion by failing to "consider the precautions suggested in Civil R. 62(h) and Civil R. 54(b)" concerning multiple parties when considering a stay request. Not only does Collins make misguided citations similar to those in his first assignment of error, he also fails to articulate exactly which decision of the trial court was an abuse of discretion. Collins filed numerous motions to stay in the trial court. We can only infer that he is attempting to challenge the trial court's denial of one of these. These denials are not the subject of this appeal, however, and therefore these arguments are not properly before us. We decline to address Collins's third assignment of error.

**{¶ 31}** Finally, Collins's fifth assignment of error states, verbatim:

The magistrate [erred] when she failed to include the Appellant's name in her Default Judgment. The magistrate issued her default judgment decision on December 11, 2019. On January 7, 2020, the Judgment Entry adopting the Magistrate's Decision was filed. On January 28, 2020, the Appellant, pro se, filed a Motion for Objection to Magistrate's Default Judgment Decision against Defendant. The Magistrate failed to include the Appellant's name in her default judgment which [led] the Appellant to assume that the trial court was not including him in the default judgment because of his efforts to present his claims and

> counterclaims to the court. By the time he realized that he also was
> included in the default judgment, and filed his objection to the decision,
> it was too late and his request was denied.

The statements in this assignment of error demonstrate a misunderstanding of the

events that occurred in the trial court. As we stated above, the court appropriately

entered default judgment against all defendants except Collins because no other

defendant filed an answer in this case.

{¶ 32} The December 11, 2019 decision Collins refers to was the magistrate's

foreclosure decision. Collins did not object to this decision. Collins filed a motion

for stay on December 30, 2019, which was denied. The trial court entered an order

adopting the magistrate's decision and decree of foreclosure on January 7, 2020.

Collins did not appeal this decision. Instead, he filed an untimely pro se motion to

object to the magistrate's decision. His counsel filed a Civ.R. 60(B) motion. As we

have explained above, neither motion can serve as a substitute for an appeal of the

January 7, 2020 decree of foreclosure. Therefore, Collins's fifth assignment of error

is overruled.

{¶ 33} To the extent that Collins has attempted to use this appeal to

collaterally attack the decree of foreclosure, the attempt was misguided. For the sake

of clarity, however, we note that even if Collins had properly appealed the decree of

foreclosure, we have found nothing in the record that would have supported such an

appeal.

{¶ 34} Finally, we note that although Collins has failed to appeal from the foreclosure judgment in this case, this does not necessarily preclude him from appealing the subsequent confirmation of sale.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


*Mary Eileen Kilbane*
_____
MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
LISA B. FORBES, J., CONCUR

FILED AND JOURNALIZED
(App.R. 22(C))

FEB 25 2021

CUYAHOGA COUNTY CLERK
OF THE COURT OF APPEALS
By Greg Heacix        Deputy



116248278

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

VIRGIL H. COLLINS, ET AL
    Defendant

Case No: CV-18-904354

Judge: ASHLEY KILBANE

## JOURNAL ENTRY

AS A RESULT OF THE ENTRY OF JUDGMENT BY THE 8TH DISTRICT COURT OF APPEALS DATED 02/25/2021, NO SUBSTANTIVE ACTION IS TO BE TAKEN IN THIS MATTER UNTIL THE TIME FOR FILING ANY REVIEWING MOTION TO THE 8TH DISTRICT AND/OR FOR FILING AN APPEAL TO THE OHIO SUPREME COURT HAS EXPIRED.  APP. R. 25 & 26; LOC. APP. R. 26; S. CT. PRAC. R. 7.01(A)(5) & (6).  IF APPROPRIATE AND SUBSEQUENT TO THE APPELLATE PERIOD EXPIRING, THE CASE MAY BE RETURNED AS NECESSARY FOR FURTHER PROCEEDINGS TO THE DOCKET OF THE ORIGINATING COURT BY THE ADMINISTRATIVE JUDGE.  UNLESS AS OTHERWISE AGREED UPON IN WRITING BY THE PARTIES, THE EARLIEST POSSIBLE DATE OF RE-INSTATEMENT IS 04/12/2021.
THIS ENTRY TAKEN BY JUDGE BRENDAN J SHEEHAN.

_____      _____
Judge Signature                    03/03/2021

03/03/2021



116946277

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
    Defendant

## JOURNAL ENTRY

DECREE OF CONFIRMATION (Parcel(s) #66115060)

THE SHERIFF HAVING SOLD THE PROPERTY DESCRIBED IN THE ORDER OF SALE ISSUED TO HIM, THE COURT BEING SATISFIED OF THE LEGALITY OF THE SALE AND THAT THE NOTICE OF THE SALE WAS IN ALL RESPECTS IN CONFORMITY TO LAW, APPROVES AND CONFIRMS THE SAME AND DIRECTS THE SHERIFF TO EXECUTE AND DELIVER TO WELLS FARGO BANK N.A., AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC3 ASSET-BACKED PASS-THROUGH CERTIFICATES A GOOD AND SUFFICIENT DEED THEREOF. UPON FULL PAYMENT OF THE PURCHASE PRICE, THE PURCHASER WILL BE ENTITLED TO A WRIT OF POSSESSION AGAINST ALL PARTY DEFENDANTS. ALL UNDISPUTED STATE LIENS ARE PROTECTED AS PROVIDED IN R.C. SEC. 2329.192.

PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS MUST SERVE, IN A MANNER PRESCRIBED BY CIV.R. 5(B), ALL PARTIES NOT IN DEFAULT FOR FAILURE TO APPEAR NOTICE OF THIS JUDGMENT AND ITS DATE OF ENTRY UPON THE JOURNAL AND MUST NOTE THE SERVICE ON THE APPEARANCE DOCKET.

_Ashley Kilbane_
_____
Judge Signature            05/03/2021
                                 CPBSG

04/30/2021



CV18904354      117029322

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY
### STATE OF OHIO

FILED

2021 MAY -6 A 9: 50

CLERK OF COURTS
CUYAHOGA COUNTY

| | |
|---|---|
| Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates c/c Carrington Mortgage Services | ) ) ) ) Case No: 18-904354 ) |
| Plaintiff | ) Judge: ASHLEY KILBANE ) |
| -v- | ) DEFENDANT VIRGIL H. COLLINS' ) EMERGENCY MOTION TO VACATE ) DECREE OF CONFIRMATION OF SALE |
| Virgil H. Collins et. Al, | ) PURSUANT TO CIVIL RULE 60(A) |
| Defendants | ) AND 60(B) ) ) |

Defendant Virgil H. Collins, pro se, comes with EMERGENCY MOTION TO VACATE

DECREE OF CONFIRMATION OF SALE PURSUANT TO CIVIL RULE 60(A) AND 60(B)

on the basis of a MISTAKE in court proceedings.

On April 3, 2021, the Trial Court made the following Journal Entry:

"As a result of the Entry of Judgement by the 8th District Court of Appeals Dated 02/25/2021, no substantive action is to be taken in this matter until the time for filing ant reviewing motion to the 8th District and/or for filing an Appeal to the Ohio Supreme Court has expired. App. R. 25 & 26; LOC. App. R. 26; S. CT. PRAC. R. 7.01(A)(5) & (6). If appropriate and subsequent to the Appellate period expiring, the case may be returned as necessary for further proceedings to the Docket of the originating court by the Administrative Judge. Unless as otherwise agreed upon in writing by the parties. The earliest possible date of re-instatement is 04/12/2021. This entry taken by Judge Brendan J. Sheehan".

On March 2, 2021, the Defendant filed an Emergency Motion for Reconsideration and

for En Banc Appeal Application to review conflicting decisions concerning Civil Rule 60(B)

Excusable Neglect. In Ohio S. Ct. Prac. R. 7.01(A)(6)(a) it states that: "When a party files an

application for en banc consideration in the court of appeals pursuant to App. R. 26(A)(2), the

time for filing a notice of appeal from the court of appeals' entry of judgement shall be tolled.

1 of 4

Ohio S. Ct. Prac. R. 7.01(A)(6)(b) states that: "if a timely application for en banc consideration
is filed in the court of appeals and the appellant seeks to appeal from the court of appeals' entry
of judgement, the appellant shall file a notice of appeal within forty-five days of the court of
appeals decision denying the application for en banc consideration, or if en banc consideration is
granted, the subsequent entry of judgement. Therefore, the Defendant contends that the En Banc
Appeal Application is still pending before the 8th District Court of Appeals, and the time to file
an appeal has not yet entered the tolling period established by the Ohio Supreme Court.

The Defendant further contends that the Decree of Confirmation of Sale by the Court of
Common Pleas was premature and contrary to the Order and Journal Entry on March 3, 2021, by
the Court of Common Pleas that stated that "no substantive action is to be taken in this matter
until the time for filing ant reviewing motion to the 8th District and/or for filing an appeal to the
Ohio Supreme Court has expired"

. The Defendant believes that the Trial Court errored in it's premature Decree of
Confirmation of Sale, and that error was possibly caused by a mistake which is covered in Civil
Rule 60(A) or Civil Rule 60 (B). Civ. R. 60(A) cites, in pertinent part, that:

> "Clerical mistakes in judgements, orders, or other parts of the record and errors therein
> arising from oversight or omission may be corrected by the court at any time on its own
> initiative or on the motion of any party and after such notice, if any, as the court orders.
> ***"

Civ. R. 60(A) permits a trial court to correct clerical mistakes that are apparent on the record.
The term "clerical mistake" refers to a mistake or omission that is apparent on the record but
does not involve a substantive legal decision or judgement. *State ex rel. litty v. Leskovyansky,* 77
Ohio St.3d 97, 100, 671 N.E.2d 236 (1996). Clerical mistakes are considered mechanical in
nature—the so-called 'blunders in execution' – as opposed to substantive mistakes that result
from an application of discretion or judgment by the court. *Hill v. Ross,* 2013-Ohio-1903 at ¶ 4,

citing *Pursel v. Pursel,* 8th Dist. No. 91837, 2009-Ohio-4708, ¶ 8, citing *State ex rel, Litty v.*

*Leskovyansky,* 77 Ohio St.3d 97, 100, 1996-Ohio-340, 671 N.E.2d 236; *Kuehn v. Kuehn,* 55

Ohio App.3d 245, 247, 564 N.E.2d 97 (12th Dist. 1988).

Pursuant to Civ. R. 60(B), on a motion and upon such terms as are just, the court may

relieve a party or his legal representative from a final judgement, order or proceeding for the

following reasons:

(1) Mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence
which by due diligence could not have been discovered in time to move for a new trial
under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic),
misrepresentation or other misconduct of an adverse party; (4) the judgement has been
satisfied, released or discharged, or a prior judgement upon which it is based has been
reversed or otherwise vacated, or it is no longer equitable that the judgement should have
prospective application; or (5) any other reason justifying relief from the judgement.

The Defendant, as pro se, does not have the knowledge to decipher whether the mistake

is considered mechanical in nature -- the so-called 'blunders in execution' covered in Civ. R.

60(A), or a substantive mistake that result from an application of discretion or judgment by the

court covered in Civ. R. 60(B).

*Wherefore*, the Defendant respectfully request the Court to **GRANT**, Defendant's

Emergency Motion to Vacate the Decree of Confirmation of Sale to allow the time for Appeal

according to the Ohio Supreme Courts' Rule of Practice pursuant to either Civ. R. 60(A) or Civ.

R. 60(B) as applicable.

Respectfully Submitted,

/s/ Virgil H. Collins
Virgil H. Collins'
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
216-410-4872
Email: virgilc@netlink.net
Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing was served by regular U.S. Mail postage prepaid on May 6, 2021 upon:

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Email: ebohnert@reimerlaw

/s/ Virgil H. Collins
Virgil H. Collins
 Defendant
(216) 410-4872
Email: virgilc@netlink.net



CV18904354    117306960

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY
## STATE OF OHIO

FILED

2021 MAY 28 A 11: 36

CLERK OF COURTS
CUYAHOGA COUNTY

Wells Fargo Bank N.A. as Trustee for )
Carrington Mortgage Loan Trust, Series )
2006-NC3 Asset-Backed Pass-Through )
Certificates c/c Carrington Mortgage ) Case No: 18-904354
Services )
    Plaintiff ) Judge: ASHLEY KILBANE
)
-v- ) DEFENDANT VIRGIL H. COLLINS'
) MOTION FOR LEAVE TO AMEND
) EMERGENCY MOTION TO VACATE
Virgil H. Collins et. Al, ) DECREE OF CONFIRMATION OF SALE
    Defendants ) PURSUANT TO CIVIL RULE 60(A)
) AND 60(B)
_____ )

Defendant Virgil H. Collins, pro se, comes with MOTION FOR LEAVE TO AMEND

EMERGENCY MOTION TO VACATE DECREE OF CONFIRMATION OF SALE

PURSUANT TO CIVIL RULE 60(A) AND 60(B) for the purpose of the addition of relevant

information pertaining to supersedeas bond requirement.

On February 11, 2021, Appellant Virgil H. Collins filed in the 8th District Court of

Appeals, EMERGENCY MOTION FOR FURTHER EXTENSION OF SUPERSEDEAS BOND

REQUIREMENT IN CURRENT FORECLOSURE PROCEEDINGS DUE TO NATIONAL

ECONOMIC CRISIS. On February 12, 2021, the 8th District Court of Appeals made the

following Journal Entry.

"Emergency motion by appellant, pro se, for further extension of supersedeas bond
requirement in current foreclosure proceedings due to national economic crisis is granted in part.
The appellant has until the court releases the decision to post the required supersedeas bond
unless an appeal is filed with the Ohio Supreme Court. Once the decision is released, this court
no longer has jurisdiction to grant a bond. See 1994-N1 Ohio Assoc. LP. V. Planet Earth Entmt.,
108 Ohio App.3d 383 (2d Dist. 1995). After this court issues its decision, a motion to stay can
be filed in the Supreme Court should an appeal be filed in the Ohio Supreme Court. See S. Ct.
R. 7.01(A)".

On March 2, 2021, Appellant Virgil H. Collins filed in the 8th District Court of Appeals

an EMERGENCY MOTION BY APPELLANT, PRO SE, FOR RECONSIDERATION AND

FOR EN BANC APPLICATION TO REVIEW CONFLICTING DECISIONS CONCERNING

CIVIL RULE 60(B) EXCUSABLE NEGLECT.

On March 17, 2021, the motion for reconsideration was denied, but the motion for en

banc application is still pending.  The Appeals court ruled that the Appellant could only request

an extension for the supersedeas bond with the Ohio Supreme Court after the has reached its

final decision.

***Wherefore,*** the Defendant contends that the stay for the requirement for the supersedeas bond

should remain in effect until a decision is made on the en banc application, and the

Defendant/Appellant is given the opportunity to file a Motion with the Ohio Supreme Court

for any further extensions.

Respectfully Submitted,

/s/ Virgil H. Collins
Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
216-410-4872
Email: virgilc@netlink.net
Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing was served by regular U.S. Mail postage prepaid on May 28, 2021 upon:

Douglas A. Haessig
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139 .
Email: ebohnert@reimerlaw

/s/ Virgil H. Collins
Virgil H. Collins
 Defendant
(216) 410-4872
Email: virgilc@netlink.net



117295721

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

VIRGIL H. COLLINS, ET AL
    Defendant

Case No: CV-18-904354

Judge: ASHLEY KILBANE

## JOURNAL ENTRY

MR. COLLINS HAS REQUESTED A STAY OF FURTHER EXECUTION WHILE THE COURT CONSIDERS HIS MOTION
FOR RELIEF FROM JUDGMENT. MR. COLLINS MAY FILE A SUPERSEDEAS BOND IN THE AMOUNT ESTABLISHED BY
THE COURT OF APPEALS, $23,984.00, ON OR BEFORE 6-15-21.   UPON THE FILING OF SAID BOND, ISSUANCE OF A
DEED AND ISSUANCE OF A WRIT OF POSSESSION FOR THE PURCHASER WILL BE STAYED PENDING THE
REMAINDER OF MR.  COLLINS'S APPEALS.

_Ashley Kilbane_

Judge Signature          05/28/2021
                           CPBSG

05/28/2021



117339936

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE
Magistrate: BRIAN S GOZELANCZYK

VIRGIL H. COLLINS, ET AL
    Defendant

# **MAGISTRATE'S ORDER**

DEFENDANT VIRGIL H. COLLINS' MOTION FOR LEAVE TO AMEND EMERGENCY MOTION TO VACATE DECREE OF CONFIRMATION OF SALE PURSUANT TO CIVIL RULE 60(A) AND 60(B)  MOTION, FILED 05/28/2021, IS GRANTED.

Brian S. Gozelanczyk

Magistrate Signature        06/03/2021
                                                      CPBSG

06/03/2021


117339971

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
    Defendant

## JOURNAL ENTRY

DEFENDANT VIRGIL H. COLLINS' EMERGENCY MOTION TO VACATE DECREE OF CONFIRMATION IS UNOPPOSED AND GRANTED. PENDING THE OUTCOME OF THE MOTION FOR EN BANC CONSIDERATION IN THE EIGHTH DISTRICT COURT OF APPEALS, CA-20-109555, THE COURT WILL RECONSIDER THE ISSUE OF CONFIRMATION OF SALE. THE CONFIRMATION OF SALE OF 3/03/2021 IS VACATED. THE SHERIFF IS ORDERED TO MARK VOID ANY DEED CREATED IN RELATION TO THIS SALE.

*Ashley Kilbane*

Judge Signature      06/04/2021
    CPBSG

06/03/2021



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### NOTICE OF
### January 24, 2022 14:41

By: JOSHUA J. EPLING 0079568

Confirmation Nbr. 2455967

WELLS FARGO BANK N.A.                                    CV 18 904354

    vs.

VIRGIL H. COLLINS, ET AL                        **Judge:**  ASHLEY KILBANE

**Pages Filed:**  3

F18-24197

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | | |
|---|---|---|
| Wells Fargo Bank N.A., as Trustee, for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates, | ) ) ) ) | Case No. CV18904354<br><br>Judge Ashley Kilbane, |
| | ) | **Plaintiff's Request for Confirmation of** |
| Plaintiff, | ) | **Sale** |
| | ) | |
| vs. | ) | |
| | ) | |
| Virgil H. Collins, et al, | ) | |
| Defendants | | |

Now comes Plaintiff, by and through counsel, and respectfully requests this court confirm

the sale of the subject property which originally took place on March 2, 2020.

For cause, Defendant Virgil Collins' ("Defendant") motion for reconsideration in the 8th

District Court of Appeals was denied on March 17, 2021. The Defendant's Motion for En Banc

Consideration was also denied by the 8th District Court of Appeals on September 20, 2021. The

Defendant's Appeal to the Supreme Court of Ohio was denied on December 28, 2021. Finally,

Defendant has failed to file a motion for reconsideration with the Supreme Court of Ohio within the time frame that he was permitted to do so.  Because of this, the Defendant's appeals to the State of Ohio have been exhausted.

Therefore, Plaintiff respectfully requests this court confirm the sale of the subject property.

Joshua J. Epling  #0079568
Reimer Law Co.
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: (440) 600-5520
jepling@reimerlaw.com

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent by regular U.S. Mail on **01/24/2022**_____, to

the following:

Joanne Brown
Attorney at Law
4070 Mayfield Road
Cleveland, OH  44112

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH  44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA  92104

New Century Mortgage Corporation
(Address Unknown)

New Century Liquidating Trust, successor-in-interest to New Century Mortgage Corporation

Joshua J. Epling  #0079568
Reimer Law Co.
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500
Fax: (440) 600-5520
jepling@reimerlaw.com



128637911

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

WELLS FARGO BANK N.A.
    Plaintiff

Case No: CV-18-904354

Judge: ASHLEY KILBANE

VIRGIL H. COLLINS, ET AL
    Defendant

## JOURNAL ENTRY

98 DISPOSED - FINAL

DECREE OF CONFIRMATION (PARCEL(S) #66115060)

THE SHERIFF HAVING SOLD THE PROPERTY DESCRIBED IN THE ORDER OF SALE ISSUED TO HIM, THE COURT BEING SATISFIED OF THE LEGALITY OF THE SALE AND THAT THE NOTICE OF THE SALE WAS IN ALL RESPECTS IN CONFORMITY TO LAW, APPROVES AND CONFIRMS THE SAME AND DIRECTS THE SHERIFF TO EXECUTE AND DELIVER TO WELLS FARGO BANK N.A., AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC3 ASSET-BACKED PASS-THROUGH CERTIFICATES A GOOD AND SUFFICIENT DEED THEREOF. UPON FULL PAYMENT OF THE PURCHASE PRICE, THE PURCHASER WILL BE ENTITLED TO A WRIT OF POSSESSION AGAINST ALL PARTY DEFENDANTS. ALL UNDISPUTED STATE LIENS ARE PROTECTED AS PROVIDED IN R.C. SEC. 2329.192. PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER PRESCRIBED BY CIV.R. 5(B). THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE.

*Ashley Kilbane*

Judge Signature            08/31/2022
                                   CPBSG

- 98
08/31/2022



# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY
## STATE OF OHIO

**FILED**

2022 SEP 12  A 11: 53

CLERK OF COURTS
CUYAHOGA COUNTY

Wells Fargo Bank N.A. as Trustee for
Carrington Mortgage Loan Trust, Series
2006-NC3 Asset-Backed Pass-Through
Certificates c/c Carrington Mortgage
Services

          Plaintiff

-v-

Virgil H. Collins et. Al,
          Defendants

) 
) 
) 
) Case No: 18-904354
) 
) Judge: ASHLEY KILBANE
) 
) DEFENDANT VIRGIL H. COLLINS'
) EMERGENCY MOTION TO EXTEND THE
) TIME TO RESPOND TO THE DECREE OF
) CONFIRMATION OF SALE PURSUANT
) TO CIVIL RULE 60(A), AND 60(B)
) 
) 

Defendant Virgil H. Collins, pro se, comes with EMERGENCY MOTION FOR AN

EXTENSION OF TIME TO RESPOND TO THE DECREE OF CONFIRMATION OF SALE

PURSUANT TO CIVIL RULE 60(A) AND 60(B) on the basis that the court failed to provide

him with proper notification of the Decree of Confirmation of Sale.

    The Defendant was never notified that the 8th District Court of Appeals had

returned his case to the Common Pleas Court, because his attorney of record did not notify him

of the status of his case.  All court notifications when to his attorney who failed to notify him that

a confirmation decree had been issued.

    On August 8, 2022, the Trial Court made the following Journal Entry:

    THE SHERIFF HAVING SOLD THE PROPERTY DESCRIBED IN THE ORDER OF
SALE ISSUED TO HIM. THE COURT BEING SATISFIED OF THE LEGALITY OF THE
SALE AND THAT THE NOTICE OF THE SALE WAS IN ALL RESPECTS IN
CONFORMITY TO LAW. APPROVES AND CONFIRMS THE SAME AND DIRECTS THE
SHERIFF TO EXECUTE AND DELIVER TO WELLS FARGO BANK N.A.. AS TRUSTEE.
FOR CARRINGTON MORTGAGE LOAN TRUST. SERIES 2006- NC3 ASSET-BACKED
PASS-THROUGH CERTIFICATES A GOOD AND SUFFICIENT DEED THEREOF. UPON
FULL PAYMENT OF THE PURCHASE PRICE. THE PURCHASER WILL BE ENTITLED
TO A WRIT OF POSSESSION AGAINST ALL PARTY DEFENDANTS. ALL UNDISPUTED

STATE LIENS ARE PROTECTED AS PROVIDED IN R.C. SEC. 2329.192. PURSUANT TO CIV.R. 58(B). THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER PRESCRIBED BY CIV.R. 5(B). THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL PARTIES. THE METHOD OF SERVICE. AND THE COSTS ASSOCIATED WITH THIS SERVICE.

However, all notifications went to his legal attorney of record. When the Defendant contacted the Magistrate's office, he was told that their records show that the case was still on going, because they had not received notification from the Appeals Court.

If that is the case, the Defendant further contends that the Decree of Confirmation of Sale by the Court of Common Pleas was premature and contrary to the Order and Journal Entry on March 3, 2021, by the Court of Common Pleas that stated that "no substantive action is to be taken in this matter until the time for filing and reviewing motion to the 8th District and/or for filing an appeal to the Ohio Supreme Court has expired"

. The Defendant believes that the Trial Court errored in it's premature Decree of Confirmation of Sale, and that error was possibly caused by a notification error which is covered in Civil Rule 60(A) or Civil Rule 60 (B).  Civ. R. 60(A) cites, in pertinent part, that:

> "Clerical mistakes in judgements, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. ***"

Civ. R. 60(A) permits a trial court to correct clerical mistakes that are apparent on the record. The term "clerical mistake" refers to a mistake or omission that is apparent on the record but does not involve a substantive legal decision or judgement. *State ex rel. litty v. Leskovyansky,* 77 Ohio St.3d 97, 100, 671 N.E.2d 236 (1996).  Clerical mistakes are considered mechanical in nature—the so-called 'blunders in execution' – as opposed to substantive mistakes that result from an application of discretion or judgment by the court. *Hill v. Ross,* 2013-Ohio-1903 at ¶ 4, citing *Pursel v. Pursel,* 8th Dist. No. 91837, 2009-Ohio-4708, ¶ 8, citing *State ex rel, Litty v.*

*Leskovyansky*, 77 Ohio St.3d 97, 100, 1996-Ohio-340, 671 N.E.2d 236; *Kuehn v. Kuehn,* 55

Ohio App.3d 245, 247, 564 N.E.2d 97 (12th Dist. 1988).

Pursuant to Civ. R. 60(B), on a motion and upon such terms as are just, the court may

relieve a party or his legal representative from a final judgement, order or proceeding for the

following reasons:

> (1) Mistake, inadvertence, surprise or excusable neglect;  (2) newly discovered evidence
> which by due diligence could not have been discovered in time to move for a new trial
> under Rule 59(B);  (3) fraud (whether heretofore denominated intrinsic or extrinsic),
> misrepresentation or other misconduct of an adverse party;  (4) the judgement has been
> satisfied, released or discharged, or a prior judgement upon which it is based has been
> reversed or otherwise vacated, or it is no longer equitable that the judgement should have
> prospective application;  or (5) any other reason justifying relief from the judgement.

The Defendant, contends that he was unaware that his legal representative in his Trial

Court case, had quit his case and failed to notify the Trial Court that she was no longer the

counsel for his case.  Therefore, all court correspondence was still going to his attorney, and his

attorney failed to notify him of the status of his case, which denied him notification in time to

seek new counsel to properly respond to the appealable order of Decree of Confirmation of Sale.

*Wherefore*, the Defendant respectfully request the Court to **GRANT**, Defendant's

Emergency Motion to extend the time for filing an appeal of the Decree of Confirmation of Sale

to allow the time for an Appeal according to pursuant to either Civ. R. 60(A) or Civ. R. 60(B) as

applicable.

Respectfully Submitted,

/s/ Virgil H. Collins
Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
216-410-4872
Email: virgilc@netlink.net
Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing was served by regular U.S. Mail postage prepaid on September 12, 2022 upon:

Joshua J. Epling #0079568
Reimer Law
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Phone: (440) 600-5500
Fax: (440) 600-5520
Email: jepling@reimerlaw.com

/s/ Virgil H. Collins
Virgil H. Collins
 Defendant
(216) 410-4872
Email: virgilc@netlink.net



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**AFFIDAVIT OF/FOR...**
September 14, 2022 16:07

By: DOUGLAS A. HAESSIG 0079200

Confirmation Nbr. 2652285

WELLS FARGO BANK N.A.                               CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL              **Judge:**  ASHLEY KILBANE

**Pages Filed:**  14

## COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| WELLS FARGO BANK N.A., AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC4 ASSET-BACKED PASS-THROUGH CERTIFICATES | Case No. CV 18 904354 |
| Plaintiff | Judge Ashley Kilbane |
| vs. | **AFFIDAVIT AS TO MILITARY STATUS** |
| Virgil H. Collins | |
| Defendant | |

STATE OF OHIO

COUNTY OF CUYAHOGA

___Douglas A. Haessig___ , being first duly sworn, deposes and says:

1. I am duly authorized to make this Affidavit, I have personal knowledge of all of the facts stated herein, and I am competent to testify to the matters stated herein. I am making this affidavit pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. §3931.

2. I have caused an investigation to be made to ascertain whether Virgil H. Collins, Ruth J. Collins, the above-named Defendants, are in the military service of the United States, in that I have reviewed my case file, including the loan documents delivered to me by Plaintiff, and I have caused a search to be made of the information available online from the Department of Defense Manpower Data Center.

3. The Plaintiff is unable to determine whether or not the Current Resident / Unknown Occupants or Tenants, Unknown Spouse, if any, of Ruth J. Collins, Unknown Spouse, if any, of Virgil H. Collins, serves in the Military Service.

4. Based on the facts as above set forth, Virgil H. Collins, Ruth J. Collins, are not in the

military service of the United States.

5.      From the facts as above set forth, the obligation sought to be enforced in this action is

not an obligation against a surety, guarantor, endorser, or other person liable primarily or secondarily

for a party in the military service.


FURTHER AFFIANT SAYETH NAUGHT.

_____
Douglas A. Haessig, (# 0079200)        9-14-22
RL# C2204593


An oath or affirmation was administered to the signer in regards to the notarial act.

Sworn to Me and subscribed in my presence this __14__ day of _September_, 2022.


_____
NOTARY PUBLIC

Enclosures:

AMBER MARIE DEMPSEY
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
04-18-2027



[50 USC Appx. §3901 et seq. as amended]

The services provided on this site are FREE

Welcome to the Official

Servicemembers Civil Relief Act (SCRA) Website

Home | Single Record Request | Multiple Record Requests | User's Guide | FAQs | News | Contact Us | My Account

# Single Record Request

Use this page to request a Certificate verifying Active Duty Status for an individual on a specified date.

*Indicates a required field. Please note for a single record request, an SSN OR Birthdate is required. You may also enter BOTH an SSN and Birthdate.

*SSN [redacted]

*Repeat SSN [redacted]

*Birth Date

MM/DD/YYYY(e.g. 09/16/2012)

*Last Name COLLINS

First Name RUTH

Middle Name J

Active Duty Status Date 09/14/2022

MM/DD/YYYY (The default will be set to today's date)

Clear Submit

## Tips & Notes

- Without a Social Security Number, DMDC cannot authoritatively assert that this is the same individual that your query refers to. Name and date of birth alone do not uniquely identify an individual.
- Check your data entry before submitting it.
- Response may take up to 15 seconds after clicking "Submit".

## Resources

- Download Adobe Reader
- Unexpected Results?

Privacy Notice No Fear Act Notice USA.Gov

SCRA 4.0

Electronically Filed 09/14/2022 16:07 / AFFIDAVIT / CV 18 904354 / Confirmation Nbr. 2652285 / CLSLP

*This document was created solely by Quandis, Inc. using information submitted to SCRA. The information contained herein is for the exclusive and authorized use of the intended recipient.*

/2BM78JGWMX5DD6 E CMS 00001

Department of Defense Manpower Data Center

Results as of : Sep-14-2022 03:17:05 PM

SCRA 5.15



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

| | |
|---|---|
| SSN: | XXX-XX■ |
| Birth Date: | |
| Last Name: | COLLINS |
| First Name: | RUTH |
| Middle Name: | J |
| Status As Of: | Sep-14-2022 |
| Certificate ID: | V2BM78JGWMX5DD6 |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.



[50 USC Appx. §3901 et seq. as amended]

The services provided on this site are FREE

Welcome to the Official
Servicemembers Civil
Relief Act (SCRA) Website

Home | Single Record Request | Multiple Record Requests | User's Guide | FAQs | News | Contact Us | My Account

## Single Record Request

Use this page to request a Certificate verifying Active Duty Status for an individual on a specified date.

*Indicates a required field. Please note for a single record request, an SSN OR Birthdate is required. You may also enter BOTH an SSN and Birthdate.

*SSN [redacted]

*Repeat SSN [redacted]

*Birth Date

MM/DD/YYYY(e.g. 09/16/2012)

*Last Name COLLINS

First Name VIRGIL

Middle Name H

Active Duty Status Date 09/14/2022

MM/DD/YYYY (The default will be set to today's date)

Clear | Submit

### Tips & Notes

- Without a Social Security Number, DMDC cannot authoritatively assert that this is the same individual that your query refers to. Name and date of birth alone do not uniquely identify an individual.
- Check your data entry before submitting it.
- Response may take up to 15 seconds after clicking "Submit".

### Resources

- Download Adobe Reader
- Unexpected Results?

Privacy Notice | No Fear Act Notice | USA.Gov

SCRA 4.0

Electronically Filed 09/14/2022 16:07 / AFFIDAVIT / CV 18 904354 / Confirmation Nbr. 2652285 / CLSLP

*This document was created solely by Quandis, Inc. using information submitted to SCRA. The information contained herein is for the exclusive and authorized use of the intended recipient.*

Department of Defense Manpower Data Center

Results as of : Sep-14-2022 03:17:05 PM

SCRA 5.15



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

| | |
|---|---|
| SSN: | XXX-XX████ |
| Birth Date: | |
| Last Name: | COLLINS |
| First Name: | VIRGIL |
| Middle Name: | H |
| Status As Of: | Sep-14-2022 |
| Certificate ID: | DWF26B2L8GPD0HP |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.



[50 USC Appx. §3901 et seq. as amended] The services provided on this site are FREE

Welcome to the Official
Servicemembers Civil
Relief Act (SCRA) Website

Home | Single Record Request | Multiple Record Requests | User's Guide | FAQs | News | Contact Us | My Account

## Single Record Request

Use this page to request a Certificate verifying Active Duty Status for an individual on a specified date.

*Indicates a required field. Please note for a single record request, an SSN OR Birthdate is required. You may also enter BOTH an SSN and Birthdate.

*SSN [redacted]

*Repeat SSN [redacted]

*Birth Date

MM/DD/YYYY(e.g. 09/16/2012)

*Last Name COLLINS

First Name VIRGIL

Middle Name

Active Duty Status Date 09/14/2022

MM/DD/YYYY (The default will be set to today's date)

Clear Submit

### Tips & Notes

- Without a Social Security Number, DMDC cannot authoritatively assert that this is the same individual that your query refers to. Name and date of birth alone do not uniquely identify an individual.
- Check your data entry before submitting it.
- Response may take up to 15 seconds after clicking "Submit".

### Resources

- Download Adobe Reader
- Unexpected Results?

Privacy Notice No Fear Act Notice USA.Gov SCRA 4.0

*This document was created solely by Quandis, Inc. using information submitted to SCRA. The information contained herein is for the exclusive and authorized use of the intended recipient.*

Department of Defense Manpower Data Center

Results as of : Sep-14-2022 03:17:05 PM

SCRA 5.15



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN: XXX-XX█████

Birth Date:

Last Name: COLLINS

First Name: VIRGIL

Middle Name:

Status As Of: Sep-14-2022

Certificate ID: CZFKJQMP73Z4LWR

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"
Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases
Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.



[50 USC Appx. §3901 et seq. as amended] The services provided on this site are FREE

Welcome to the Official
Servicemembers Civil Relief Act (SCRA) Website

Home | Single Record Request | Multiple Record Requests | User's Guide | FAQs | News | Contact Us | My Account

# Single Record Request

Use this page to request a Certificate verifying Active Duty Status for an individual on a specified date.

*Indicates a required field. Please note for a single record request, an SSN OR Birthdate is required. You may also enter BOTH an SSN and Birthdate.

*SSN [redacted]

*Repeat SSN [redacted]

*Birth Date

MM/DD/YYYY(e.g. 09/16/2012)

*Last Name COLLINS

First Name RUTH

Middle Name

Active Duty Status Date 09/14/2022

MM/DD/YYYY (The default will be set to today's date)

Clear Submit

## Tips & Notes

- Without a Social Security Number, DMDC cannot authoritatively assert that this is the same individual that your query refers to. Name and date of birth alone do not uniquely identify an individual.
- Check your data entry before submitting it.
- Response may take up to 15 seconds after clicking "Submit".

## Resources

- Download Adobe Reader
- Unexpected Results?

Privacy Notice No Fear Act Notice USA.Gov SCRA 4.0

*This document was created solely by Quandis, Inc. using information submitted to SCRA. The information contained herein is for the exclusive and authorized use of the intended recipient.*

Department of Defense Manpower Data Center

Results as of : Sep-14-2022 03:17:05 PM

SCRA 5.15



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:              XXX-XX-█████
Birth Date:
Last Name:       COLLINS
First Name:      RUTH
Middle Name:
Status As Of:    Sep-14-2022
Certificate ID:  RFNDSMPC5JF3KS5

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**BRIEF IN OPPOSITION**
**September 26, 2022 12:10**

By: MICHAEL L. WIERY 0068898

Confirmation Nbr. 2661305

WELLS FARGO BANK N.A.                    CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL                **Judge:** ASHLEY KILBANE

**Pages Filed:** 6

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates | ) Case No. CV 18 904354 <br> ) <br> ) Judge Ashley Kilbane <br> ) Magistrate Kevin Hippley |
| Plaintiff, | ) <br> ) **PLAINTIFF'S OPPOSITION TO** |
| v. | ) **DEFENDANT VIRGIL H. COLLINS'** <br> ) **EMERGENCY MOTION TO** |
| Virgil H. Collins, et al., | ) **EXTEND THE TIME TO RESPOND** <br> ) **TO THE DECREE OF** |
| Defendants. | ) **CONFIRMATION** |

NOW COMES Plaintiff, Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates ("Carrington," or "Plaintiff"), by and through undersigned counsel, and hereby files it's opposition to Defendant Virgil H. Collins' ("Defendant") Emergency Motion to Extend the Time to Respond to the Decree of Confirmation of Sale Pursuant to Civ.R. 60(A) and 60(B) ("Emergency Motion").

Defendant's Emergency Motion requests an unspecified amount of time to file an appeal, erroneously citing to Civ.R. 60 and to the Confirmation Entry which was actually filed on August 31, 2022.

Defendant raises two arguments: 1) he did not receive notice of the Confirmation Entry because his counsel of record did not withdraw from the case or otherwise advise him of the Confirmation Entry filing, and; 2) this matter was not returned from the Eighth District Court of Appeals. As both arguments fail for the reasons set forth below, Defendant's Emergency Motion should be denied.

## 1. Defendant's Choice of Counsel.

Defendant's first argument, that his counsel of record failed to notify him of either the January 24, 2022 Request for Confirmation or the August 31, 2022 Confirmation Entry, or otherwise failed to withdraw as counsel, suggests that Plaintiff to bear the burden of Defendant or Defendant's counsel's errors. In *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122, 1997-Ohio-401, 679 N.E.2d 1099, the Ohio Supreme Court has stated that:

> Parties in civil litigation choose their own counsel who, in turn, choose their theories of prosecuting and defending. The parties, through their attorneys, bear responsibility for framing the issues and for putting both the trial court and their opponents on notice of the issues they deem appropriate for jury resolution. See *Gallagher*, 74 Ohio St. 3d at 433 and 436, 659 N.E.2d at 1238 and 1239-1240. An unsuccessful civil litigant may not obtain a new trial based upon the bare assertion that his or her attorney was ineffective. To so hold would unfairly shift the loss caused by poor strategy decisions, miscalculations, or errors from the party responsible to the innocent opponent. See *Roth v. Roth* (1989), 65 Ohio App. 3d 768, 776, 585 N.E.2d 482, 487. See, also, *Deppe v. Tripp* (C.A.7, 1988), 863 F.2d 1356, 1361 (**"Requiring a nonerring party to bear the burden of his opponent's errors may not be reasonable in many circumstances and in fact may [itself] constitute a miscarriage of justice."**). **If an attorney's representation has fallen below professional standards, remedies are available in a malpractice action.** *Roth*, 65 Ohio App. 3d at 776, 585 N.E.2d at 487; *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St. 2d 146, 152, 1 Ohio Op. 3d 86, 89, 351 N.E.2d 113, 117.

(emphasis added). While all of Defendant's allegations provide a cause of action against his attorney of record, they should not be used to cause further delay in this case which has been pending for four (4) years. The bulk of the delays in this case are the result of Defendant's counsel and Defendant's allegations that his counsel's failings should provide him with various relief requested. These allegations do not provide cause to grant Defendants' Emergency Motion and therefore the Emergency Motion should be denied.

### 2.  Defendant's Appeals of Judgment Entry Exhausted.

Defendant's second argument is that the Confirmation Entry was issued prematurely. However, the record reflects otherwise. Despite the Eighth District Court of Appeals ordering Defendant to pay a supersedeas bond in the amount of $23,984.00 on March 12, 2020, and Defendants failure to ever post said bond, the Court stayed the Confirmation Entry by order dated March 3, 2021.

On May 3, 2021 the Court issued a Confirmation entry while Defendant's Motion for *En Banc* Motion before the Appellate Court was still pending. Defendant immediately moved to vacate the Confirmation Entry on May 6, 2021, and the Court granted the same on June 3, 2021. The Eighth District Court of Appeals denied Defendant's *En Banc* Motion on September 20, 2021, and Defendant filed an Appeal to the Ohio Supreme Court on October 20, 2021.

The Supreme Court of Ohio declined to accept jurisdiction to hear Defendant's appeal on December 28, 2021, and no Motion for Reconsideration was filed in the Ohio Supreme Court appeal. Accordingly, on January 24, 2022 Plaintiff moved for the Court to reissue the Confirmation Entry for the sale conducted on March 2, 2020, advising that Defendant's appeals had been exhausted. It was not until August 31, 2022 that the Court reissued the Confirmation Entry.

Accordingly, the August 31, 2022 Confirmation Entry was not premature under the March 3, 2021 Order or the result of a clerical mistake. Rather, the opposite is true. The Defendant was afforded time to file multiple appeals all the way to the Supreme Court of Ohio and only after that, was the Confirmation Entry filed.  For these reasons, Defendant's Emergency Motion should be denied.

### 3.  Defendant's Arguments as to Confirmation are Limited

Finally, any Motion to Vacate or Appeal as to the Confirmation Entry would be moot on the grounds that Plaintiff was the successful bidder at the March 2, 2020 Foreclosure Sale with a credit bid of $100,100.00 dollars. Notably, Plaintiff is owed the principal balance of $126,719.39, as found in the January 7, 2020 Judgment Entry, which was affirmed by the Eighth District Court of Appeals, and tangentially upheld by the Ohio Supreme Court when it declined jurisdiction to hear Defendant's appeal.

> The confirmation process is an ancillary one in which the issues present are limited to whether the sale proceedings conformed to law. Because of this limited nature of the confirmation proceedings, the parties have a limited right to appeal the confirmation. For example, on appeal of the order confirming the sale, the parties may challenge the confirmation of the sale itself, including computation of the final total owed by the mortgagor, accrued interest, and actual amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance. The issues appealed from confirmation are wholly distinct from the issues appealed from the order of foreclosure. In other words, if the parties appeal the confirmation proceedings, they do not get a second bite of the apple, but a first bite of a different fruit.

*US Bank Natl. Assn. v. Alex*, 8th Dist. Cuyahoga No. 101276, 2015-Ohio-871, ¶ 7 citing *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140.

Here, because the sale amount was for less than the principal balance owed to Plaintiff there are no amounts being disbursed from the sale proceeds for accrued interest, advances for taxes, insurance, inspections, appraisals, property protection, or maintenance. Therefore, there is nothing for Defendant to dispute as to the Confirmation Entry, rendering any such effort moot upon its filing.

WHEREFORE, based on the arguments set forth above, the Court should deny Defendant's Emergency Motion.

Respectfully submitted,

**Reimer Law Co.**

_/s/ Mike L. Wiery_____
Mike L. Wiery (0068898)
P.O. Box 96696
30455 Solon Road
Solon, Oh 44139
Phone: (440) 600-5500/Fax: (440) 600-5520
mwiery@reimerlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent via U.S. Regular Mail on <u>September 26, 2022</u> to

the following:

Joanne Brown
4070 Mayfield Road
Cleveland, OH 44112

Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

New Century Liquidating Trust
Successor-in-interest to
New Century Mortgage Corporation
575 Anton Blvd., Costa Mesa, CA 92626

New Century Mortgage Corporation
18400 Von Karman
Suite 1000
Irvine, CA 92612

<u>/s/ Mike L. Wiery</u>
Mike L. Wiery (0068898)
Reimer Law Co.
*Attorney for Plaintiff*



CV18904354                                    130299182

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY
### STATE OF OHIO

Wells Fargo Bank N.A. as Trustee for 2022 SEP 27 A 9: 33
Carrington Mortgage Loan Trust, Series CLERK OF COURTS
2006-NC3 Asset-Backed Pass-Through CUYAHOGA COUNTY
Certificates c/c Carrington Mortgage ) Case No: 18-904354
Services )
          Plaintiff ) Judge: ASHLEY KILBANE
           ) Magistrate:  KEVIN HIPPLEY
           )
-v- ) DEFENDANT'S REPONSE TO PLAINTIFF'S
           ) OPPOSITION TO EMERGENCY MOTION,
           ) AND DEFENDANT'S MOTION TO REMOVE
Virgil H. Collins et. Al, ) THIS CIVIL ACTION TO THE FEDERAL
           ) COURT OF THE NORTHERN DISTRICT OF
          Defendant ) OF OHIO, PER 28 U.S. CODE 1441, AND FOR
           ) INJUNCTIVE RELIEF
           )
           )
_____ )

      Defendant Virgil H. Collins, pro se, comes with DEFENDANT'S RESPONSE TO

PLAINTIFF'S OPPOSITION TO EERGENCY MOTION, AND DEFENDANT'S MOTION

TO REMOVE THIS CIVIL ACTION TO THE FEDERAL COURT OF THE NORTHERN

DISTRICT OF OHIO PER *28 U.S. CODE 1441*, AND FOR INJUNCTIVE RELIEF.

      *28 U.S. Code 1441(a)* states in relevant part; "any civil action brought in a state court of

which the district courts of the United States have jurisdiction, may be removed by the defendant

or the defendants, to the district court of the United States for the district and division embracing

the place where such action is pending".

      The Plaintiff has stated correctly, in their response to Defendant's emergency motion,

that an Appeal by the Defendant of the Conformation of Sale are limited to only whether the sale

proceedings co law, and the Defendant is not entitled to any further litigations on foreclosure

proceedings.  However, the Defendant has discovered new evidence which by due diligence

could not have been discovered in time to move for a new trial under *Fed. R. Civ. 59(b)*.  Ohio

courts have concluded that; "the interest of justice sometimes demand a judgement not be

enforced against a particular party, *Fed. R. Civ. P. 60(b)*provides for such relief for certain

> reasons. Specifically, a party may be relieved of a judgment entered against it on grounds
> of: (1) mistake, inadvertence, surprise, or excusable neglect;  (2) newly discovered
> evidence which by due diligence could not have been discovered in time to move for a
> new trial under *Fed. R. Civ. P. 59(b)*;  (3) fraud (whether previously denominated intrinsic
> or extrinsic), misrepresentation, or other misconduct of an adverse party;  (4) the
> judgment is void;  (5) the judgment has been satisfied, released, or discharged, or a prior
> judgment upon which it is based has been reversed or otherwise vacated, or it is no longer
> equitable that the judgment should have prospective application; or (6) any other reason
> justifying relief from the operation of the judgment. *Cook v. Cleveland State Univ. 2006
> U.S. Dist. LEXIS 13593 HN3.*

Defendant contends that the Decree of Confirmation of sale should be revoked due to the recent

discovery of **Fraud upon the Court** that was not discovered in time to move for a new trial

under *Fed. R. Civ. P. 59(b)*.

Plaintiffs brought this foreclosure case to the court on October 25, 2018.  Although

Plaintiff Wells Fargo was sited as lead Trustee of the case, records show that the legal counsel,

Reimer Law Co., was hired by, and represents Co-Plaintiff Carrington Mortgage Services.

Based in information and belief, Carrington Mortgage Services (CMS) has had at least a

25-year relationship with Co-Defendant New Century Mortgage Corporation (NCMC), and that

relationship is presumably still on going.  NCMC assigned the Defendant's mortgage to Co-

Plaintiff CMS just before this foreclosure case, so therefore, it can be assumed that Reimer is

legal counsel for both Co-Plaintiff CMS, and Co-Defendant NCMC.

Based on information and belief, the Defendant purchased his home from NCMC during

and at the same time that NCMC was under investigation by the Ohio State Attorney General for

mortgage fraud and predatory lending. The Defendant retained legal counsel through references

from the Cleveland Bar Association.  The Defendant advised his assigned counsel that he wanted

to pursue "third party" claims against Co-Defendant NCMC, and Co-Plaintiff CMS, and

provided her with a 24-page Brief, plus multiple exhibits, that contained his answer to the

complaint, claims and counter claims of wrongful foreclosure, and mortgage fraud.

      Despite her continual reassuring the Defendant that she would file his 25-page Brief in

answer to Plaintiffs original complaint, his counsel never filed his answer to the complaint.

Defendant repeatedly asked his counsel to file his complaint and counter claims, and she

continually told him that she would, but his counsel never filed his complaints or counterclaims.

When the Plaintiff made a motion for summary judgment, the Trial Court judge ordered the

Defendant not to respond to it because the Motion for Summary was being held in abeyance. The

Motion for Summary Judgement was held in abeyance from January 15, 2019 through May 24,

2019, and Defendant's attorney still never responded to Plaintiff's motion for Summary

Judgement. The attorney's excuse to the Defendant is that she was ill, and was not aware that

Summary Judgement had been issued, and she asked him to file a pro se objection to the

Magistrate's Decision on Summary Judgement.

      Based on information and belief, Defendant's attorney was sharing his information that

he had obtained to support wrongful foreclosure, and fraud with the legal counsel of Co-Plaintiff

CMS, who then shared it with NCMC, and together they all collaborated to prevent any of his

records from being enter into the trial court record. The Defendant's attorney had revealed to him

that she "knew them well", and had on occasion visited their "plush" Law office, was the answer

she gave the Defendant when he asked her if she knew the Plaintiff's counsel.

      On January 14, 2022, the Defendant filed a grievance, with the Cleveland Bar

Association (CBA), against his attorney concerning her misrepresentation in the Trial Court

proceedings.  The CBA opened an investigation on his attorney which is still ongoing.  On June

14, 2022, I received from CBA, the attorney's response to their investigation, and the attorney indicated in writing that she never intended to file the Defendant's answer to the original complaint, and that she never intended to file the Defendant's complaints or counterclaims, and that she didn't intend to file a response to Plaintiff's Motion for Summary Judgement.

Based on information and belief, the Defendant believes that his attorney collaborated with the Plaintiff's attorneys representing the interest of both Co-Plaintiff, and Co-Defendant, by illegally withholding relevant evidence in the trial court proceedings. That withholding of evidence resulted in a decision of Summary Judgement, and the Decree of Confirmation of Sale. The Defendant further contends that the actions of his attorney, in concert with the Co-Plaintiff, and Co-Defendant, represents ***Fraud upon the Court*** because his attorney was officially an officer of the court.

In *H. K. Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115* HN3, the court ruled that "Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court".

***Wherefore,*** in pursuit of Defendant claims of Fraud upon the Court per *Fed. R. Civ. P. 60(b)(3),* and third-party complaints, and counterclaims per *15 U.S. Code 1641*, and federal question jurisdiction per *28 U.S.C. 1331*, and subject matter jurisdiction per *28 U.S.C. 1332*, Defendant request this honorable court to remove this Civil Action from the jurisdiction of the state court, and move to the jurisdiction of the Federal Court of the Northern District of Ohio per *28 U.S. Code 1441*. Defendant further move this court to issue a prohibitive injunction on Plaintiff to prevent them from the transfer or sale of the property in question until Federal litigations are complete, if possible, to revoke the Decree of the Confirmation pending the outcome of the Federal proceedings.

Respectfully Submitted,

/s/ Virgil H. Collins
Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
216-410-4872
Email: virgilc@netlink.net
Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing was served by regular U.S. Mail postage prepaid on September 27, 2022 upon:

Reimer Law
Mike L. Wiery (0068898)
P.O. Box 39696
30455 Solon Road
Solon, Ohio 44139
Phone: (440) 600-5500
Fax: (440) 600-5520
Email: mwiery@reimerlaw.com

/s/ Virgil H. Collins
Virgil H. Collins
Defendant
(216) 410-4872
Email: virgilc@netlink.net



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**BRIEF IN OPPOSITION**
**October 4, 2022 14:59**

By: MICHAEL L. WIERY 0068898

Confirmation Nbr. 2668520

WELLS FARGO BANK N.A.                              CV 18 904354

vs.

VIRGIL H. COLLINS, ET AL                    **Judge:**  ASHLEY KILBANE

**Pages Filed:**  3

### IN THE COURT OF COMMON PLEAS
### CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates | ) | Case No. CV 18 904354 |
| | ) | |
| | ) | Judge Ashley Kilbane |
| Plaintiff, | ) | Magistrate Kevin Hippley |
| | ) | |
| | ) | **PLAINTIFF'S OPPOSITION TO** |
| v. | ) | **DEFENDANT VIRGIL H. COLLINS'** |
| | ) | **MOTION TO REMOVE TO** |
| Virgil H. Collins, et al., | ) | **FEDERAL COURT** |
| | ) | |
| Defendants. | | |

NOW COMES Plaintiff, Wells Fargo Bank N.A. as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-Backed Pass-Through Certificates ("Carrington," or "Plaintiff"), by and through undersigned counsel, and hereby files its opposition to Defendant Virgil H. Collins' ("Defendant") Motion to Remove this Civil Action to the Federal Court of the Northern District of Ohio ("Motion for Removal").

Defendant's Motion for Removal fails on procedural grounds as the decision on a removal request under 28 USC § 1441 rests with the <u>Federal Court</u>, not the State Court. (See, *Federal Co Bd. of Trustees for the Mem. Civic Ctr. v. Carpenter Co.*, 3d Dist. Allen NO. 1-81-38, 1982 Ohio App. LEXIS 15317, at *11 (Aug. 9, 1982). The three-step procedure for removal is as follows:

> Three procedural steps are required under 28 U.S.C. 1446 for a defendant to remove an action from state court to federal court. **First**, a defendant **must file in the federal court** "a notice of removal * * * containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants." Second, the defendant must give written notice to all adverse parties, and finally, the defendant must file a copy of the removal notice in state court. Removal is not complete until all three steps are taken. *Luri v. Natl. Union Fire Ins. Co. of*

*Pittsburgh*, N.D.Ohio No. 1:09-CV-1664, 2010 U.S. Dist. LEXIS 27598, 2010 WL 1254282 (Mar. 24, 2010). Once the defendant has accomplished these three steps, the case is removed from state court and the state court shall proceed no further unless and until the case is remanded. 28 U.S.C. 1446(d); *Borkowski v. Abood*, 117 Ohio St.3d 347, 2008 Ohio 857, 884 N.E.2d 7, at ¶ 11.

*Huntington Natl. Bank v. White*, 8th Dist. Cuyahoga No. 96835, 2012-Ohio-807, ¶ 8 (emphasis added). Here, Defendant has not filed a Notice of Removal with the Northern District of Ohio containing a short statement on why it should be removed along with copies of all process, pleadings, and orders served on Defendant.

Should Defendant file a Notice of Removal with the Northern District of Ohio, Plaintiff will present its substantive arguments against removal to the Federal Court. However, for the reasons set forth herein, Defendant's present Motion for Removal filed in this Court should be denied.

WHEREFORE, based on the arguments set forth above, the Court should deny Defendant's Motion for Removal.

Respectfully submitted,

**Reimer Law Co.**

/s/ Mike L. Wiery
Mike L. Wiery (0068898)
P.O. Box 96696
31500 Bainbridge Road, Suite 100
Solon, Oh 44139
Phone: (440) 600-5500/Fax: (440) 600-5520
mwiery@reimerlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent via U.S. Regular Mail on <u>October 4, 2022</u> to

the following:

Joanne Brown
4070 Mayfield Road
Cleveland, OH 44112

Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Unknown Spouse, if any, of Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, OH 44143

Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

Unknown Spouse, if any, of Ruth J. Collins
3939 Iowa Street, Apt. 222
San Diego, CA 92104

New Century Liquidating Trust
Successor-in-interest to
New Century Mortgage Corporation
575 Anton Blvd., Costa Mesa, CA 92626

New Century Mortgage Corporation
18400 Von Karman
Suite 1000
Irvine, CA 92612

<div style="text-align: right">

    /s/ Mike L. Wiery
Mike L. Wiery (0068898)
Reimer Law Co.
*Attorney for Plaintiff*

</div>